UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE HERNANDEZ and MEDICINAL
SOLUTIONS COMPASSIONATE CARE
CORP DBA M.S.C.3,

     Plaintiffs,

vs.

CITY OF ADRIAN, CITY ATTORNEY TAMARIS
HENAGAN, FORMER CITY ATTORNEY SARAH
OSBURN, COMMISSIONER ALLEN HELDT,
COMMISSIONER LAD STRAYER, COMMISSIONER
BRAD WATSON, COMMISSIONER MARY
ROBERTS, FORMER COMMISSIONER THOMAS
FAULHABER, FORMER COMMISSIONER JOHN
DUDAS, FORMER COMMISSIONER KIRK
VALENTINE, CLERK ROBIN CONNOR, FORMER
CLERK PAT BAKER, FORMER INTERIM
ADMINISTRATOR RICHARD HABERMAN,
FORMER ADMINISTRATOR NATHAN BURD,
FORMER MAYOR CHUCK JACOBSON,

     Defendants.

Case No:
Hon:
Magistrate:

---

**NOTICE FOR
REMOVAL OF CAUSE
TO UNITED STATES
DISTRICT COURT
EASTERN DISTRICT
OF MICHIGAN
SOUTHERN DIVISION**

---

| | |
|---|---|
| Thomas M.J. Lavigne (P58395) | John J. Gillooly (P41948) |
| Julia A. Gilbert (P74262) | GARAN LUCOW MILLER, P.C. |
| RIVERTOWN LAW FIRM, PLC | Attorney for Defendants |
| Attorneys for Plaintiff | 1155 Brewery Park Blvd., Suite 200 |
| 2930 E. Jefferson Ave. | Detroit, MI  48207 |
| Detroit, MI  48207 | 313.446.5501 |
| 313.446.2235 | jgillooly@garanlucow.com |
| tom@cannabiscounsel.com | |
| http://www.cannabiscounsel.com | |

**NOTICE FOR REMOVAL OF CAUSE TO**
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
<u>**SOUTHERN DIVISION**</u>

TO: Thomas M.J. Lavigne, Esq.
Julia A. Gilbert, Esq.

1. On July 17, 2020, Plaintiffs commenced this action in the Circuit Court for the County of Lenawee, by filing its Summons and Complaint in which, the CITY OF ADRIAN, CITY ATTORNEY TAMARIS HENAGAN, FORMER CITY ATTORNEY SARAH OSBURN, COMMISSIONER ALLEN HELDT, COMMISSIONER LAD STRAYER, COMMISSIONER BRAD WATSON, COMMISSIONER MARY ROBERTS, FORMER COMMISSIONER THOMAS FAULHABER, FORMER COMMISSIONER JOHN DUDAS, FORMER COMMISSIONER KIRK VALENTINE, CLERK ROBIN CONNOR, FORMER CLERK PAT BAKER, FORMER INTERIM ADMINISTRATOR RICHARD HABERMAN, FORMER ADMINISTRATOR NATHAN BURD, FORMER MAYOR CHUCK JACOBSON are the named Defendants.

2. Plaintiffs, NICOLE HERNANDEZ and MEDICINAL SOLUTIONS COMPASSIONATE CARE CORP DBA M.S.C.3, is a Michigan Corporation with its corporate office in the City of Adrian.

1

3. Plaintiffs herein seek recovery from Defendants CITY OF ADRIAN, CITY ATTORNEY TAMARIS HENAGAN, FORMER CITY ATTORNEY SARAH OSBURN, COMMISSIONER ALLEN HELDT, COMMISSIONER LAD STRAYER, COMMISSIONER BRAD WATSON, COMMISSIONER MARY ROBERTS, FORMER COMMISSIONER THOMAS FAULHABER, FORMER COMMISSIONER JOHN DUDAS, FORMER COMMISSIONER KIRK VALENTINE, CLERK ROBIN CONNOR, FORMER CLERK PAT BAKER, FORMER INTERIM ADMINISTRATOR RICHARD HABERMAN, FORMER ADMINISTRATOR NATHAN BURD, FORMER MAYOR CHUCK JACOBSON alleging violations of Plaintiffs' rights to Equal Protection of the Laws as guaranteed to them by the United States Constitution among other allegations.

4. This Court has original jurisdiction over Plaintiffs claims inasmuch as those claims arise under the Constitution and laws of the United States, which provide for equal rights, and this action is removable to this Court pursuant to 28 U.S.C. §1441 (c) (1) (A) and 28 U.S.C. sec. 1443(2). The entire cause is removable, including claims arising under Michigan law, pursuant to 28 U.S.C. sec 1441(c).

5. That this Notice for Removal is hereby filed with this Court within 30 days after receipt by Defendants, CITY OF ADRIAN, CITY ATTORNEY

2

TAMARIS HENAGAN, FORMER CITY ATTORNEY SARAH OSBURN, COMMISSIONER ALLEN HELDT, COMMISSIONER LAD STRAYER, COMMISSIONER BRAD WATSON, COMMISSIONER MARY ROBERTS, FORMER COMMISSIONER THOMAS FAULHABER, FORMER COMMISSIONER JOHN DUDAS, FORMER COMMISSIONER KIRK VALENTINE, CLERK ROBIN CONNOR, FORMER CLERK PAT BAKER, FORMER INTERIM ADMINISTRATOR RICHARD HABERMAN, FORMER ADMINISTRATOR NATHAN BURD, FORMER MAYOR CHUCK JACOBSON. A copy of the initial pleading, which sets forth a claim for relief upon which this action is based, as required by 28 U.S.C. § 1446(b), having been received by Defendants, on August 20, 2020.

6. That written notice of the filing of this Notice for Removal, has been given to the adverse party as required by law and a copy of the Notice for Removal has been filed with the Clerk of the Circuit Court for the County of Lenawee, State of Michigan.

7. Attached is a copy of all process and pleadings served upon these Defendants, CITY OF ADRIAN, CITY ATTORNEY TAMARIS HENAGAN, FORMER CITY ATTORNEY SARAH OSBURN, COMMISSIONER ALLEN HELDT, COMMISSIONER LAD STRAYER, COMMISSIONER BRAD WATSON, COMMISSIONER MARY ROBERTS,

3

FORMER COMMISSIONER THOMAS FAULHABER, FORMER COMMISSIONER JOHN DUDAS, FORMER COMMISSIONER KIRK VALENTINE, CLERK ROBIN CONNOR, FORMER CLERK PAT BAKER, FORMER INTERIM ADMINISTRATOR RICHARD HABERMAN, FORMER ADMINISTRATOR NATHAN BURD, FORMER MAYOR CHUCK JACOBSON in this cause.

WHEREFORE, Defendants CITY OF ADRIAN, CITY ATTORNEY TAMARIS HENAGAN, FORMER CITY ATTORNEY SARAH OSBURN, COMMISSIONER ALLEN HELDT, COMMISSIONER LAD STRAYER, COMMISSIONER BRAD WATSON, COMMISSIONER MARY ROBERTS, FORMER COMMISSIONER THOMAS FAULHABER, FORMER COMMISSIONER JOHN DUDAS, FORMER COMMISSIONER KIRK VALENTINE, CLERK ROBIN CONNOR, FORMER CLERK PAT BAKER, FORMER INTERIM ADMINISTRATOR RICHARD HABERMAN, FORMER ADMINISTRATOR NATHAN BURD, FORMER MAYOR CHUCK JACOBSON respectfully request that this Honorable Court enter an Order removing this cause from the Circuit Court for the County of Lenawee,

4

State of Michigan to the United States District Court, Eastern District of

Michigan, Southern Division.

Respectfully submitted:

GARAN LUCOW MILLER, P.C.

 /s/John J. Gillooly
Attorney for Defendants
1155 Brewery Park Blvd., Suite 200
Detroit, MI   48207
313.446.5501
jgillooly@garanlucow.com
P41948

Dated:  September 18, 2020

#3895453

5

# ATTACHMENT

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| **STATE OF MICHIGAN** | | **CASE NO.** |
|---|---|---|
| 39th    JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | **SUMMONS**<br>HONORABLE<br>CATHERINE A. SALA | 20- 6547 -NZ |

**Court address**
425 N. Main St, Adrian, MI

**Court telephone no.**
(517) 264-4599

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| Nicole Hernandez, 3540 Benner Hwy<br>Adrian Mi 49221 517-920-1294 | | City of Adrian, 135 E. Maumee St, Adrian, MI 49221 517-263-2161 |
| | | Tamaris Henagan, 135 E. Maumee St, 2nd Fl, Adrian, MI 49221 517-264-4815 |
| M.S.C.3 717 Division Street<br>Adrian, MI 49221 517-920-1294 | v | Sarah Osburn, 1735 Sycamore Ct, Saline, MI<br>48176-1671 734-975-1841; 517-372-9000 |
| Plaintiff's attorney, bar no., address, and telephone no. | | Allen Heldt, 135 E. Maumee St, Adrian, MI 49221 517-263-2161 |
| Thomas MJ Lavigne (P58395)<br>Julia A Gilbert (P74262)<br>Cannabis Counsel<br>2930 E Jefferson Ave, Detroit, MI 48207<br>313-446-2235 | | Lad Strayer, 135 E. Maumee St, Adrian, MI 49221 517-263-2161 |
| | | Brad Watson, 135 E. Maumee St, Adrian, MI 49221 517-263-2161 |
| | | Mary Roberts, 135 E. Maumee St, Adrian, MI 49221 517-263-2161 |
| | | Robin Connor, 135 E. Maumee St, Adrian, MI 49221 517-263-2161 |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.        **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to file a written **answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>JUL 1 7 2020 | Expiration date*<br>OCT 1 6 2020 | Court clerk | |
|---|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01  (9/19)  **SUMMONS**                    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| PROOF OF SERVICE | SUMMONS |
| --- | --- |
| | Case No. 20-        -NZ |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ OFFICER CERTIFICATE | OR | ☐ AFFIDAVIT OF PROCESS SERVER |
| --- | --- | --- |
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled Fee $ | | Signature |
| --- | --- | --- | --- |
| Incorrect address fee $ | Miles traveled Fee $ | TOTAL FEE $ | Name (type or print) |
| | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____
Signature

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| **STATE OF MICHIGAN**<br>JUDICIAL DISTRICT<br>39th   JUDICIAL CIRCUIT<br>COUNTY PROBATE | **SUMMONS** | **CASE NO.**<br>20- 6547 -NZ |
|---|---|---|

**Court address**   425 N. Main St, Adrian, MI     CATHERINE A. SALA   **Court telephone no.** 517-264-4599

| Plaintiff's name(s), address(es), and telephone no(s).<br>Nicole Hernandez, 3540 Benner Hwy<br>Adrian Mi 49221 517-920-1294<br><br>M.S.C.3 717 Division Street<br>Adrian, MI 49221 517-920-1294 | v | Defendant's name(s), address(es), and telephone no(s).<br>John Dudas, 1265 Berkshire Ct, Adrian, MI 49221-1375<br>517-263-9128; 517-395-7903<br><br>Kirk Valentine, 969 W. Maumee Apt A, Adrian, MI 49221-1957<br>517-266-9269; 517-206-4956<br><br>Richard Haberman, 31221 Cyril, Fraser, MI 48026-2684 586-296-0620<br><br>Thomas Faulhaber, 419 Budlong St, Adrian, MI 49221-1405 517-263-6616<br><br>Chuck Jacobson 580 Meadowbrook Dr, Adrian, MI 49221-1384 517-263-7767<br><br>Nathan Burd, 932 W. Maumee St, Adrian, MI 49221-1916 614-322-0061<br><br>Pat Baker, 1027 College Ave, Adrian, MI 49221-2527 517-263-2559 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>Thomas MJ Lavigne (P58395)<br>Julia A Gilbert (P74262)<br>Cannabis Counsel<br>2930 E Jefferson Ave, Detroit, MI 48207<br>313-446-2235 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer   pending.

Summons section completed by court clerk.     | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>JUL 17 2020 | Expiration date*<br>OCT 1 6 2020 | Court clerk<br>Roann Allearay |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)  **SUMMONS**                    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| SUMMONS | | |
|---|---|---|
| | Case No. 20- | -NZ |

**PROOF OF SERVICE**

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled Fee $ | | Signature |
|---|---|---|---|
| Incorrect address fee $ | Miles traveled Fee $ | TOTAL FEE $ | Name (type or print) |

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                        Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ , on behalf of _____

Signature

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR THE COUNTY OF LENAWEE

NICOLE HERNANDEZ AND MEDICINAL
SOLUTIONS COMPASSIONATE CARE
CORP DBA M.S.C.3,
      Plaintiffs,

-vs-

CITY OF ADRIAN, CITY ATTORNEY TAMARIS
HENAGAN, FORMER CITY ATTORNEY SARAH
OSBURN, COMMISSIONER ALLEN HELDT,
COMMISSIONER LAD STRAYER, COMMISSIONER
BRAD WATSON, COMMISSIONER MARY
ROBERTS, FORMER COMMISSIONER THOMAS
FAULHABER, FORMER COMMISSIONER JOHN
DUDAS, FORMER COMMISSIONER KIRK
VALENTINE, CLERK ROBIN CONNOR, FORMER
CLERK PAT BAKER, FORMER INTERIM
ADMINISTRATOR RICHARD HABERMAN,
FORMER ADMINISTRATOR NATHAN BURD,
FORMER MAYOR CHUCK JACOBSON
      Defendants.

File No. 20- 6567 -NZ

Judge HONORABLE
CATHERINE A. SALA



FILED
39TH CIRCUIT COURT

JUL 17 2020

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

THOMAS M.J. LAVIGNE (P58395)
JULIA A. GILBERT (P74262)
Cannabis Counsel®
Attorneys for Plaintiff
2930 E. Jefferson Ave.
Detroit, MI 48207
(T) (313) 446-2235

*There is no other pending or resolved civil action arising out of the
transaction or occurrence alleged in this complaint.*

**VERIFIED PETITION FOR  DECLARATORY RELIEF**

**VERIFIED PETITION FOR A WRIT OF MANDAMUS**

**VERIFIED COMPLAINT FOR DENIAL OF DUE PROCESS**

1 of 84

**VERIFIED COMPLAINT FOR FIRST AMENDMENT RETALIATION**

**VERIFIED COMPLAINT FOR DENIAL OF EQUAL PROTECTION**

**VERIFIED COMPLAINT PURSUANT TO 42 USC § 1983**

**VERIFIED PETITION FOR INJUNCTIVE RELIEF**

**VERIFIED COMPLAINT FOR INVERSE CONDEMNATION:
UNCOMPENSATED-TAKING**

**VERIFIED PETITION FOR A DECLARATION THAT CITY OF ADRIAN'S
COMMERCIAL MEDICAL MARIHUANA FACILITIES AND ADULT USE
ESTABLISHMENTS ORDINANCE IS VOID FOR VAGUENESS**

**VERIFIED COMPLAINT FOR VIOLATIONS OF THE OPEN MEETINGS ACT**

**VERIFIED DEMAND FOR DAMAGES**

**REQUEST FOR EXPEDITED SCHEDULING**

Plaintiff Medicinal Solutions Compassionate Care Corp dba M.S.C.3 (M.S.C.3), by its

attorneys Cannabis Counsel®, a registered trademark of Rivertown Law Firm P.L.C., for its

Complaint states as follows:

**INTRODUCTORY STATEMENT**

1. This Complaint and Petition seeks relief and damages against the City of Adrian and its

employees, agents, and officials who unlawfully suspended and unlawfully did not renew

Plaintiff's permit to operate a medical marijuana provisioning center.

2. Plaintiff M.S.C.3 is a Michigan Corporation that has obtained prequalification status for a provisioning center license in the State of Michigan. (See **Exhibit 1**).

3. Plaintiff Nicole Hernandez is 1 of the 2 owners of M.S.C.3.

4. Defendant employees, agents, and officials of the City of Adrian were acting within the scope of their employment and under color of law at all times relevant hereto.

5. At all material times, Defendant City of Adrian employed Defendant employees, agents, and officials and embraced their actions.

6. Policies, practices, and customs of Defendant City of Adrian led to the violations alleged herein.

7. As part of the process of obtaining a medical marijuana provisioning center state license, Plaintiff obtained a permit and certificate of occupancy from the City of Adrian, and the Adrian City Clerk signed the appropriate state application attestations verifying compliance with the ordinance requirements of the Medical Marihuana Facilities Licensing Act (MMFLA), (See **Exhibits 2-3.5**).

8. State law, specifically Rule 19 of the original Administrative Rules of the MMFLA, allowed M.S.C.3 to temporarily operate its business pending full licensure by the state.

9. On January 15th, 2018, City of Adrian Clerk Pat Baker signed Attestation E, titled "Temporary Operation Attestation," (See **Exhibit 2**) before a notary public, attesting that M.S.C.3 was in compliance with the municipal ordinance requirements of the MMFLA.[1]

10. This attestation gave Plaintiff municipal authorization to temporarily operate its business pending full licensure by the State of Michigan.

---

[1] This Attestation was part of the state's original since-supplanted Prequalification Application - the Prequalification Application is the first of 2 steps of the state's MMFLA licensing process, the second being the Facility Application.

11. On January 26th, 2018, City of Adrian Clerk Robin Connor signed Attestation I, titled "Confirmation of Sec. 205 Compliance," also swearing that M.S.C.3 was in compliance with municipal ordinance requirements for operation as a Provisioning Center under the MMFLA. (See **Exhibit 3**).[2]

12. Plaintiff submitted to the state an application (both part 1 Prequalification Application and part 2 Facility Application), which was ultimately found to be sufficient for full licensure by the Marijuana Regulatory Agency (MRA) (which replaced the Bureau of Marijuana Regulation (the Board or BMR)), and passed final inspection.

13. However, BMR initially denied licensure, thus requiring Plaintiff to appeal the denial.

14. During this appeal process, Plaintiff was allowed to operate according to state law and the Attestation signed by Defendant (See **Exhibit 2**).

15. Upon learning of the state's initial denial of Plaintiff's application, Defendant suspended its municipal permit.

16. This suspension was unlawful and violated Plaintiffs' constitutional rights.

17. M.S.C.3's ability to operate while in the process of obtaining its state licensure was prevented by the City of Adrian who illegally denied it the ability to be a temporary operator by illegally suspending its permit.

18. Additionally, Defendants retaliated against Plaintiffs after Plaintiff Hernandez exercised her First Amendment rights by making comments on social media that were critical of Defendants.

---

[2] This Attestation was part of the state's since-supplanted part 2 Facility Application.

19. Plaintiff's permit was suspended at a closed meeting of department heads with no notice or opportunity to respond given to Plaintiff, and without informing the Commission.

20. The Commission that issued the permit was given no notice of the suspension.

21. Defendant worked with other marijuana businesses in the community while denying Plaintiff even basic due process, thus also denying Plaintiff equal protection of the law.

22. Because of the permit suspension by the City of Adrian, M.S.C.3 lost substantial revenue and incurred substantial expenses while having no income.

23. Plaintiff for the past 24 months has had to pay overhead including initially paying rent for a building not being used at 717 Division St, paying city taxes on the building not being used at 717 Division St. after October 2019 when it was bought by the financing owner of M.S.C.3 (because the building was going to be sold and Plaintiff kicked out), paying for insurance and a surety bond required by the City, and paying for utilities.

24. Plaintiff was unable to use the building located at 717 Division Street for any purpose during the lease due to the government's unlawful actions.

25. As a result, all use of the property under the lease was not economically productive or viable, which effectively resulted in an unconstitutional taking of Plaintiff's property.

26. Plaintiff also paid to furnish the facility in preparation for inspections and becoming an operational provisioning center, including the cameras, locks, and safe required.

27. Plaintiff has also paid attorneys fees as it has appealed the state's initial denial and challenged Defendant's actions over the past 2 years.

28. Furthermore, one of the owners, Plaintiff Hernandez, the owner-operator, was taking a monthly check from the business fund just to survive with no incoming money. This cost

was $19,000 for the remainder of 2018 (from denial until the end of the year) and approximately $36,000 for 2019.

29. Plaintiff has paid $10,000 for 2 permit fees while never being allowed to operate because of the City's misconduct.

30. The biggest loss overall, however, has been the loss of revenue which at a minimum is approximately 2 million dollars.

31. Plaintiff at this time has under $30,000 in its bank account while it started it off with $300,000.

32. Plaintiff is continuously losing its business name's goodwill and customers as time goes on.

33. The permit suspension was imposed by the City of Adrian arbitrarily and capriciously without proper notice or hearing, thus depriving Plaintiff of its right to due process.

34. The failure of Defendants to unsuspend and to renew Plaintiff's permit was retaliation for Plaintiff Hernandez's comments on social media, in violation of the First Amendment.

35. Plaintiffs were denied equal protection under the law, in violation of the Fourteenth Amendment.

36. Plaintiffs seek a declaratory judgment that the amendment to Defendant's ordinance that purportedly stripped Plaintiff of its permit is unenforceable because it was illegally passed contrary to the City Charter.

37. Plaintiffs seek a declaratory judgment that, at the time its permit was suspended, the last ordinance regarding medical marijuana facility licensing that had been properly passed and therefore the one that was law at that time was the one passed on April 16, 2018.

38. Plaintiffs seek a declaratory judgment that M.S.C.3's permit was unlawfully suspended.

39. Plaintiffs seek a declaratory judgment that M.S.C.3's permit was unlawfully not renewed.

40. Plaintiffs seek a declaratory judgment that City of Adrian's Commercial Medical Marihuana Facilities and Adult Use Establishments ordinance is void for vagueness.

41. Plaintiffs seek a writ of mandamus ordering the City of Adrian to reissue M.S.C.3's permit.

42. Plaintiffs seek an Order enjoining Defendants from taking any action to interfere with M.S.C.3 regarding the certificate of occupancy (See **Exhibit 3.5**) and provisioning center permit (See **Exhibit 17**) previously issued by Defendant, and Attestation I (See **Exhibit 3**) signed by Defendant employees.

43. Plaintiffs request that this Court provide injunctive relief by ordering Defendants to undo the wrong they have done and unsuspend and reissue M.S.C.3's permit.

44. Simultaneously with this Complaint, Plaintiffs have filed a Motion for Temporary Restraining Order, Show-Cause Order, and Preliminary Injunction.

45. Plaintiffs seek damages pursuant to 42 USC § 1983.

46. Plaintiffs seek damages for violations of the Michigan Constitution.

47. Plaintiffs seek just compensation for the value of the property that the government took without compensation.

48. Furthermore, on at least 3 dates, Adrian City Commission convened a closed session special meeting to discuss pending litigation. The pending litigation was not named.

49. The Adrian City Commission violated the Open Meetings Act by failing to identify the specific pending litigation regarding the closed meetings.

50. In at least 2 instances, the commission convened a closed session special meeting without putting the roll call vote or purpose or purposes for the closed session in the minutes.

51. Plaintiffs seek an Order enjoining the City Commission from further violations of the Open Meetings Act.

## PARTIES

52. Plaintiff M.S.C.3 is a Michigan Corporation headquartered in the City of Adrian, Lenawee County, State of Michigan.

53. Plaintiff Nicole Hernandez is 1 of 2 owners of M.S.C.3.

54. Defendant City of Adrian is a municipality organized under the laws of the State of Michigan. It is located in Lenawee County.

55. Defendant Tamaris Henagan is currently the City Attorney for the City of Adrian.

56. Defendant Sarah Osburn was City Attorney for the City of Adrian when Plaintiff initially received its permit.

57. Defendant Allen Heldt at all relevant times was Commissioner for the City of Adrian.

58. Defendant Lad Strayer at all relevant times was Commissioner for the City of Adrian.

59. Defendant Brad Watson at all relevant times was Commissioner for the City of Adrian.

60. Defendant John Dudas was formerly a Commissioner for the City of Adrian and held that position when Plaintiff's permit was suspended and not renewed.

61. Defendant Thomas Falhaber was formerly a Commissioner for the City of Adrian and held that position when Plaintiff's permit was suspended.

62. Defendant Kirk Valentine was formerly a Commissioner for the City of Adrian and held that position when Plaintiff's permit was suspended.

63. Defendant Mary Roberts took Defendant Faulhaber's seat on the Adrian City Commission and held that position when the suspension was affirmed and when Plaintiff's permit was not renewed.

64. Defendant Pat Baker is the former clerk for the City of Adrian who signed Plaintiff's initial attestations of approval by the City.

65. Defendant Robin Connor is the current clerk for the City of Adrian who recommended Plaintiff's application for renewal be denied and who signed Plaintiff's 2nd temporary authorization form.

66. Defendant Robert Haberman is the former interim Administrator for the City of Adrian when Plaintiff's permit was suspended.

67. Defendant Nathan Burd is the former Administrator for the City of Adrian who held that position when Plaintiff's permit was not renewed

68. Defendant Chuck Jacobson is the former mayor for the City of Adrian who held that position when Plaintiff's permit was issued, suspended, and not renewed.

## JURISDICTION AND VENUE

69. This Court has jurisdiction pursuant to MCR 3.305(A) and MCR 2.605(A) because this is an action for mandamus and a declaration of legal rights between parties and no other court has exclusive jurisdiction over this action, and no law denies the circuit court's jurisdiction over this action.

70. Jurisdiction is proper because an action for injunctive relief against a local public body regarding violation of the Open Meetings Act shall be commenced in the circuit court. MCL 15.271(2).

71. Jurisdiction is proper because state courts may properly hear matters alleging violations of civil rights under 28 USC § 1983. *Felder v. Casey,* 487 U.S. 131, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988).

72. Venue is appropriate pursuant to MCL § 600.1621 because the Plaintiff is located in Lenawee County and Defendant is a governmental unit that exercises or may exercise its governmental authority in Lenawee County.

73. Venue is proper because an action for injunctive relief against a local public body regarding violation of the Open Meetings Act shall be commenced in any county in which the public body serves. MCL 15.271(2).

## FACTUAL ALLEGATIONS

### *Common Allegations*

**I.      Factual Allegations Regarding Defendant's
          Medical Marijuana Ordinance and Plaintiff's Permit**

74. The City of Adrian enacted an ordinance to allow medical marijiuana facilities. The second reading of this ordinance was placed on the City Commission agenda for December 13, 2017, (See **Exhibit 4**), and thereafter it was adopted, (See **Exhibit 5**).

75. On this same date, a Resolution was placed on the agenda to allow Plaintiff Hernandez to continue operation of her business MSC3/MSC3, Inc. while pending the approval of a state license, (See **Exhibit 4**), and this Resolution was passed, (See **Exhibit 5**). This Resolution states, in relevant part:

> WHEREAS, these [emergency rules promulgated by LARA to implement the MMFLA] allow for the temporary operation of a facility by an applicant for a state license; and
> WHEREAS, the City of Adrian has adopted an ordinance allowing medical marihuana facilities in the City; and

WHEREAS, Nicole Hernandez has operated MSC3 within the City and has requested permission to continue operation while the application for a state license is pending; AND

NOW THEREFORE, BE IT RESOLVED, that the Adrian City Commission hereby temporarily authorizes Nicole Hernandez to continue the operation of her business MSC3/MSC3, Inc. while pending the approval of a state license.

NOW THEREFORE BE IT FURTHER RESOLVED, that the City Clerk is hereby authorized to sign all forms required by the State of Michigan for continued operation.

(See **Exhibit 4**, last page).

76. At the time of the Commission meeting where it passed this Resolution, Defendant Commissioners and other Defendant employees, agents, and officials knew that Plaintiff Hernandez was going to ultimately dissolve MSC3, a nonprofit, and form a for-profit corporation, MSC3, Inc. to apply for the state license. (See **Exhibit 6**).

77. The language of the Resolution, therefore, authorizes Nicole Hernandez to continue the operation of her business MSC3/MSC3, Inc.

78. Moreover, this authorization was not attached to any address.

79. M.S.C.3 was eventually formed and MSC3 the non-profit dissolved.[3]

80. On January 15, 2018, Defendant Baker signed for Plaintiffs Attestation E (See **Exhibit 2**) in support of Plaintiff M.S.C.3's state Prequalification Application, giving it municipal authorization to temporarily operate its proposed marijuana facility.

81. At the time Defendant Baker signed Attestation E, Plaintiff was operating at 152 Front Street and the new facility at 717 Division Street was being planned.

82. On January 26, 2018, Defendant Baker signed for Plaintiffs Attestation I, (See **Exhibit 3**), in support of M.S.C.3's state Facility Application attesting that M.S.C.3 was in

---

[3] At the time the for-profit corporation was formed, the non-profit was not fully dissolved and therefore MSC3 was not available and therefore Plaintiff Hernandez formed Medicinal Solutions Compassionate Care Corp dba M.S.C.3.

compliance with the municipal ordinance requirement of section 205 of the MMFLA.

83. Plaintiff leased the Division street property from February 7, 2018 until October 2019 when it was purchased by the financing owner of M.S.C.3.

84. On February 8, 2018, Plaintiff Hernandez was provided a letter from former City Administrator Shane A. Horn, which stated that the new address, 717 Division Street, was in "full compliance with the city of Adrian Medical Marihuana Facilities Ordinances affecting that location," (See **Exhibit 7**), which was required for the state application.

85. On or about February 14, 2018 was Defendant Osburn's last day as city attorney.

86. Amendments making minor changes to the marijuana facilities ordinance of December 13, 2017 were proposed and the first reading of the proposed amendments occurred on April 2, 2018. (See **Exhibit 8**).[4]

87. The second reading of these amendments was placed on the agenda for April 16, 2018 (See **Exhibit 9**),[5] at which time they were adopted, (See **Exhibit 10**, see top of last page showing that the ordinance was approved).

88. On or about May 29, 2018, Defendant Henagan was hired as City Attorney.

89. Upon information and belief, at this time Defendant Henagan represented a marijuana facility, Stateline, as its attorney.

90. Stateline was directly in competition with M.S.C.3 in a nearby city, Morenci.

91. Upon information and belief, Defendant Henagan was not qualified for the position as

---

[4] The documents attached for the sections Minutes (of March 19, 2018), Consent Agenda, Check Register, Special Order, and documents pertaining to the resolution regarding Dial-A-Ride have been removed from this Exhibit due to their length and irrelevancy. They can be reviewed in full at:
https://adriancity.com/wp-content/uploads/agendasminutes/pdf_320.pdf

[5] The documents attached for the sections Minutes (of April 2, 2018), Communications, Check Register, Special Orders, and Resolutions have been removed from this Exhibit due to their length and irrelevancy. They can be reviewed in full at: https://adriancity.com wp-content/uploads/agendasminutes/pdf_321.pdf

City Attorney: she had only been admitted to the State Bar 6 months, had no municipal law experience, and the city had to lower its qualifications in order to hire her.

92. Upon information and belief, this caused Defendant Henagan to violate Plaintiff's constitutional rights because she did not know how to properly act as city attorney.

93. Moreover, Defendant Henagan and Plaintiff Hernandez knew each other prior to Defendant Henagan becoming City Attorney.

94. Plaintiff Hernandez's non-profit MSC3 used to be located at 227 Winter St. in Adrian.

95. Defendant Henagan also worked in this building prior to being city attorney.

96. Defendant Henagan accused Plaintiff of causing the building to smell like marijuana.

97. There was a marijuana grow on the top floor that was more likely the culprit and Plaintiff Hernandez denied the accusation.

98. Defendant Henagan complained to the building owner of 227 Winter St.

99. Plaintiff Hernandez and Defendant Henagan had a confrontation regarding this issue at 227 Winter St. in front of several people.

100. Defendant Henagan is biased against Plaintiff Hernandez and her company Plaintiff M.S.C.3 due to this encounter.

101. Eventually, Plaintiff Hernandez/MSC3 was forced to move to a different location because Defendant Henagan opened a sober living facility in the building.

102. Soon after being hired as the city attorney, Defendant Henagan proposed new amendments to the medical marijuana facility city ordinance, which were effectively a major overhaul of the ordinance.

103. On June 7, 2018, at the 2nd commission meeting where Defendant Henagan was city

attorney, these new amendments had a first reading in front of the commission, (See

**Exhibit 11**), and thereafter (on the same day) they were adopted, (See **Exhibit 12**, bottom

of last page showing that the amended ordinance was adopted).

104. An amendment to an ordinance in Adrian cannot be adopted upon its first reading:

> Except in the case of ordinances which are declared to be emergency ordinances, no ordinance shall be finally passed by the commission until two weeks after the meeting at which it is introduced. A brief description of the subject and contents of the ordinance as introduced shall be published in a newspaper of general circulation in the city at least one week before final passage, either separately or as part of the published proceedings of the commission.

City of Adrian Code of Ordinances, Part 1 - Charter, Section 7.3.

105. The amendments were not declared to be emergency ordinances.

106. The amendments of June 7, 2018 are invalid.

107. On June 13, 2018, Plaintiff M.S.C.3 had its state inspection conducted.

108. On June 13, 2018 Plaintiff's application for a city permit was submitted.

109. On June 19, 2018, Plaintiff Hernandez explained to Defendant Henagan that the

Resolution passed on December 13, 2017 (See **Exhibit 4**) and Attestations E and I (See

**Exhibits 2-3**) were meant to cover both the temporary address on Front Street and the

new address on Division Street - it was meant to go to the business not an address.

110. Nonetheless, on June 21, 2018, Defendant Henagan emailed the state stating that the

Resolution was passed for the previous entity MSC3 and not the newly formed entity

assumed name M.S.C.3. (See **Exhibit 13**).

111. These statements by Defendant Henagan in the email to the state were untrue, as city

employees knew that the old entity was going to be dissolved and a new one formed, (See

**Exhibit 6**), and Plaintiff Hernandez had informed Defendant Henagan of this specifically.

112.   Defendant Henagan either knew it was untrue, or was in willful disregard of evidence that it was untrue.

113.   On June 21, 2018 based on the misinformation given to the state by Defendant Henagan, the state contacted Plaintiff asking it to close down until it obtained a permit and another temporary authorization.

114.   On June 21, 2018, Plaintiff M.S.C.3 closed down.

115.   On July 2, 2018, a Resolution to approve a Medical Marihuana Facility application from Plaintiff was placed on the Adrian City Commission agenda, (See **Exhibit 14**),[6] and was passed, (See **Exhibit 15**).

116.   On July 6, 2018 Defendant Connor signed for M.S.C.3 another Attestation E , again giving Plaintiff municipal authorization to temporarily operate its business pending full licensure by the State of Michigan. (See **Exhibit 16**).

117.   On July 6, 2018, Plaintiff picked up the city permit and found that it:

    a.   incorrectly stated "provisional"permit;

    b.   misstated the issue date (by stating it was issued the day the application was turned in rather than the day the Resolution was approved), and;

    c.   stated an expiration date of July 2, 2019.

(See **Exhibit 17**).

---

[6] The documents attached for the sections Minutes (of June 18, 2018), Check Register and the sections regarding resolutions to authorize re-election of MML Workers' Compensation Fund Trustees, to award a bid for the purchase of mowers, to amend a fire department budget, and to purchase equipment for the fire department, and the Miscellaneous section containing the Departmental Report have been removed from this Exhibit due to their length and irrelevancy. They can be reviewed in full at:
https://adriancity.com/wp-content/uploads/agendasminutes/pdf_332.pdf

118. Plaintiff's permit was not a provisional permit.

119. The June 7, 2018 amendments adding the term "provisional permit" are invalid because, as described above, they were passed contrary to the City Charter.

120. Even if the amendments were valid, the designation of Plaintiff's permit as provisional does not comport with the definition provided in the amended ordinance.

121. "A provisional permit means only that the applicant has submitted a valid application for a marihuana facility permit..." (See **Exhibit 12**, Sec. 46.506(c)).

122. "If approved the city clerk shall issue the application a provisional permit or renew an annual permit." (See **Exhibit 12**, Sec. 46.506(e)).

123. "The City Commission shall approve or deny a permit within one hundred twenty (120) days of receipt of the completed application and fees." (See **Exhibit 12**, Sec. 46.506(i)).

124. Per these amendments, assuming their validity for argument's sake, after an application is submitted to the clerk and the clerk deems it "valid," that valid application is a "provisional permit." That valid application deemed a "provisional permit" goes to the City Commission, and once approved by the City Commission a permit is given.

125. Plaintiff's application went before the City Commission who approved it and even provided an expiration date of a year from when it was issued.

126. Per the ordinance, permits are good for a year while provisional permits are good until they go to the Commission.

127. Plaintiff Hernandez asked Defendant Connor to print off another Permit as the one given contained the errors named above but she would not.

128. Time was of the essence to get the permit to the state because it was processing Plaintiff's state application and so Plaintiff Hernandez submitted the permit as it was.

129. Plaintiff's state application was ultimately found to be sufficient for licensing by the MRA (See **Exhibit 1**).

130. However, the seemingly biased and misinformed Board initially denied a license to Plaintiff, thus requiring Plaintiff to appeal that decision.

131. The state initially denied Plaintiff's application for license on July 12, 2018.

132. Defendant Henagan contacted Plaintiff Hernandez the next day informing her that M.S.C.3's municipal permit was suspended based on the state's initial denial.

133. Plaintiff timely requested an investigative hearing to appeal the state's initial denial.

134. Plaintiff later received a letter in the mail from Defendant regarding the suspension of its municipal permit. (See **Exhibit 18**). The letter was merely informative, did not provide any appeal options, or extend any other due process rights. This letter:

   a. says that M.S.C.3's permit is suspended pending a successful appeal;[7]

   b. acknowledges that Plaintiff Heranandez told Defendant Henagan that she would be appealing the denial;

   c. asks Plaintiff Hernandez to provide proof that an appeal has been submitted to the state of Michigan within 30 days;[8]

   d. repeatedly refers to Plaintiff's permit as provisional;[9]

   e. states that, per the ordinance, within 180 days of the issuance of the "provisional" permit, M.S.C.3 must provide proof of a valid state license or the "provisional"

---

[7] However, upon successfully appealing, Plaintiff's permit was not unsuspended.
[8] Even though this was not required by the Adrian ordinance.
[9] Even though it was granted by the Commission and was a full permit per the Adrian ordinance.

permit will expire.

135.   The letter states "per the ordinance" but does not cite a section of the ordinance.

136.   The section of the ordinance that says proof of a valid state license must be received within 180 days is the section regarding permits (as opposed to provisional permits), found at Sec. 46-502(e).

137.   Provisional permit holders have 120 days, as opposed to 180 days, to obtain required permits, valid state licensing, and approvals, Sec. 46.506(f).

138.   The letter did not cite any ordinance that gave the administration the authority to suspend its permit. (Id.)

139.   Plaintiff was given no pre-deprivation hearing.

140.   There was no municipal authority to suspend Petitioner's permit.

141.   Per the City Charter, "[a]ny license issued by the city may be suspended by the city administrator for cause, and any permit issued by the city may be suspended or revoked by the issuing authority for cause." Chapter 46, Article II - Business Licenses.

142.   Since Plaintiff had a city permit and not a city license, Plaintiff's permit could only be suspended by the issuing authority, i.e. the City Commission.

143.   The City administration unlawfully suspended the permit.

144.   Additionally, the suspension had to have been based on cause.

145.   Per the City Ordinance:

> *Cause* includes the doing or omitting of any act, or permitting any condition to exist in connection with any trade, profession, business or privilege for which a license or permit is granted under the provisions of this Code, or upon any premises or facilities used in connection therewith, which act, omission or condition is:
> (1) Contrary to the health, safety or welfare of the public;
> (2) Unlawful, irregular or fraudulent in nature;

18 of 84

(3) Unauthorized or beyond the scope of the license or permit granted; or

(4) Forbidden by the provisions of this Code or any duly established rule or regulation of the city applicable to the trade, profession, business or privilege for which the license or permit has been granted.

City of Adrian Code of Ordinances, Ch 46, Art II, Sec. 46-31

146. No conduct of Plaintiff could have been deemed "cause."

147. Plaintiff's permit was suspended due to an initial denial by the state, not for "cause" as defined in the City Charter.

148. On August 14, 2018, Plaintiff provided Defendant with proof an appeal was submitted to the state, i.e. that the investigative hearing had been requested.

149. At the end of August, Plaintiff's attorney corresponded with the state medical marijuana licensing division of LARA regarding temporary operation and LARA responded that temporary operators were allowed to remain open and operating as a provisioning center if the requirements of Rule 19 were met and, if the license was initially denied, an investigative hearing had been requested. (See **Exhibit 19**, see response from LARA-BMMR-Legal dated 08-31-2018).

150. Plaintiff met these requirements.

151. Upon information and belief, Defendant Henagan contacted the state and received the same response as Plaintiff's counsel.

152. On September 4, 2018, Plaintiff Hernandez received the same response from the state. (See **Exhibit 20**).

153. After receiving the email, later on September 4, 2018, Plaintiff requested of Defendant Henagan that she reinstate M.S.C.3's permit due to the new information received by the state.

154. Defendant Henagan said that she would see what she could do and that there would be a meeting that coming Thursday to discuss Plaintiff's permit.

   a. Plaintiff Hernandez was told that notes from such a meeting are not able to be received via FOIA.

155. Plaintiff Hernandez did not hear from Defendant Henagan and tried contacting her September 10 and 11 but Defendant Henagan did not answer the phone and then was in a meeting until 10 PM, respectively.

156. On September 12th, Defendant Henagan again said she was in a meeting and could not speak to Plaintiff Hernandez so Plaintiff Hernandez went to city hall to speak with her in person. Defendant Henagan said she was having a meeting the following day about Plaintiff's permit and that she would let Plaintiff Hernandez know the decision about the permit thereafter.

157. Upon information and belief, Defendant Henagan during this time was advising her clients in Morenci that they could operate temporarily prior to their application going before the Board.

158. Upon information and belief, Defendant Henagan continued to advise her clients in Morenci that they could operate even after the Board had tabled their state application and therefore they did not have state prequalification.

159. Defendant Henagan attended the inspection for her client in Morenci the same day that she attended the inspection for Plaintiff.

160. Defendant Henagan knew that Plaintiff could also operate temporarily based on the correspondence she had with the state but she denied Plaintiff - a direct competitor with her client - the ability to temporarily operate.

161. Also on September 12, 2018, Plaintiff through counsel sent a letter again requesting that Plaintiff be allowed to temporarily operate because of the state's position that temporary operators can remain open if certain requirements are met. (See **Exhibit 21**). Counsel quoted in this email part of the response the state had provided him:

> The Department does not plan to take action at this time pending an applicant's request for public investigative hearing. An applicant may temporarily operate if they meet the requirements of Rule 19, request a public investigative hearing as provided under the Emergency Rules, and as long as there is also continued municipal authorization and no violation occurs. An applicant who has been served with a Cease and Desist letter should discontinue temporary operation immediately.

(Id.)

162. The only qualification that was arguably not satisfied was continued municipal authorization; however, Plaintiff was issued a permit giving it municipal approval for a year and Defendant's actions suspending that permit were unconstitutional and contrary to its own ordinance.

163. On September 13, Defendant Henagan told Plaintiff Hernandez that she and the administrative heads decided to keep the permit suspended.

164. However, as stated above, according to the City's ordinance regarding permits, "[a]ny license issued by the city may be suspended by the city administrator for cause, and any

21 of 84

permit issued by the city may be suspended or revoked by the issuing authority for cause." City of Adrian, Code of Ordinances, Section 46-53.

165. Defendant Henagan and Defendant administrative heads did not have authority to suspend Plaintiff's permit.

166. Also on September 13, 2018, Defendant Henagan emailed the Commission and Mayor Jacobson. (See **Exhibit 22**).

167. One of Plaintiff Hernandez's associates received the email through a FOIA request.

168. In this email, Defendant Henagan makes it clear that the decision to deny permits such as Plaintiff's was not per any ordinance:

> [I]t became necessary to determine how the provisional permit applications and actual permits would be affected by state actions. After collaboration with multiple city departments, the city administrator and myself, the decision was made to administratively suspend any permit who's holder has been denied by the state.

(Id).

169. Additionally, Defendant Henagan wrote in this email: "It has also been asserted that an administrative suspension is not allowable under our ordinance. However, these are provisional permits, issued at the discretion of the city, not a permit by right." (Id.)

170. However, as stated above, per Defendant Henagan's amendments and assuming their validity for argument's sake, an application is submitted and once the clerk deems the application "valid," that valid application is a "provisional permit." That valid application deemed a "provisional permit" goes to the City Commission, and once approved by the City Commission a permit is given.

171. Permits approved by the City Commission are full-fledged permits per the ordinance,

not provisional permits.

172. Plaintiff's application went before the City Commission who approved it and even provided an expiration date of a year from when it was issued (per the ordinance, permits are good for a year while provisional permits are good until they go to the Commission).

173. Also on September 13, 2018, Defendant Commissioner Heldt told Plaintiff Hernandez that the Commission did not know Plaintiff's permit had been suspended.

174. Defendant Heldt also told Plaintiff Hernandez that the Commission did not know that Defendant Henagan legally represented a direct competitor of Plaintiff, who was benefiting from Plaintiff being closed.

175. After this conversation, Defendant Heldt called Defendant Henagan to enquire regarding the situation.

176. Thereafter, Defendant Henagan called Plaintiff Hernandez very upset that Plaintiff had contacted the commissioner to "tattle" on her and told Plaintiff Hernandez she was to deal with Defendant Henagan and not the Commission.

177. Plaintiff Hernandez called Defendant Heldt back after this call and Defendant Heldt said among other things that:

    a. Defendant Henagan told him that Plaintiff had a provisional permit that could be suspended at the city's discretion;

    b. Plaintiff Hernandez should come to the commission meeting and her concerns would be addressed there.

178. Defendant Dudas, after playing phone tag with Plaintiff Hernandez, stopped responding to her calls and did not respond to a message from her via Facebook

Messenger.

179. Defendant Strayer said that it was an issue for Defendant Henagan and Defendant Haberman and no one Commissioner had power to tell a city attorney or interim administrator to change any decision they have made, but he would reach out to Defendant Henagan to get the issue on the next pre-meeting agenda.

180. Plaintiff Hernandez reached out to Defendant Jacobson who said he wanted a meeting with her the following Monday morning.

181. Plaintiff Hernandez reached out to other commissioners who told her to bring her issue to the commission meeting on Monday and her problems would be addressed.

182. On September 14, Plaintiff's counsel sent a letter to Defendant Connor and the City Commission. (See **Exhibit 23**).

183. (This letter incorrectly states that Plaintiff did not inform its counsel of the suspension until September 12, 2018; However, this was not the date counsel first learned of the suspension but rather the date counsel sent its initial letter (See **Exhibit 21**) requesting that Plaintiff be allowed to temporarily operate.)

184. This letter explained that the city administrator lacked authority to suspend the permit because Section 46-53 of Adrian's ordinance states that suspension of a permit may only be effectuated by the issuing authority for cause. (Id.)

185. This letter stated that the city administrator did not issue the permit and there was no good cause. (Id.)

186. The letter stated that pursuant to Section 46-53 of Adrian's code, the remedy for improper suspension of a permit is a hearing before a City Commission and requested an

immediate hearing on September 17 to avoid further damages. (Id.)

187. This letter explained the damages Plaintiff was incurring: lost profits and lost potential customers. (Id.)

188. This letter explained that Plaintiff's LARA appeal was not final. (Id.)

189. On September 16, 2018, Plaintiff Hernandez cancelled her meeting with Defendant Jacobson due to having scheduled an appeal hearing in front of the Commission.

190. At the September 17, 2018 Commission meeting, Plaintiff Hernandez was forced to address her issue in the public comment portion because Defendants refused to schedule the appeal as requested.[10]

191. At this meeting, Plaintiff Hernandez stated that Defendant Henagan has a conflict of interest, that there was no authority to suspend Plaintiff's permit without cause, and that Plaintiff was never advised on how to appeal the decision to suspend her permit.

192. At this meeting, Defendant Haberman responded that how they were doing it was okay because that is how they had been doing it.

193. At this meeting, Plaintiff's arguments were not addressed.

194. At this meeting Plaintiff's counsel addressed the Commission and stated that Plaintiff's permit suspension was arbitrary and capricious without due process being comported with and that there was no appeal process.

195. On September 21, Plaintiff Hernandez reached out to 3 of the Commissioners:

    a. One commissioner said he would not discuss medical marijuana.

    b. One responded that there may be possible legal proceedings so he did not know

---

[10] (This hearing can be found at
https://www.facebook.com/wlen1039/videos/1848390005250970/?v=1848390005250970, with Plaintiff Hernandez speaking at 19:16 and Plaintiff counsel speaking at 1:00:24.)

what he could speak to her about.

    c. One responded over a month later saying he is not talking to anyone regarding medical marijuana and did not believe anyone is at that time.

196. Since this time, no Commissioner has been willing to speak with Plaintiff Hernandez regarding her permit.

197. On September 24, 2018, Defendant Jacobson told Plaintiff Hernandez that he did not see the purpose of her having to appeal to the Commission: since the permit was suspended administratively it should be able to be reinstated administratively. He said he would work on that and get back to her.

198. On September 26, Plaintiff Hernandez reached out to Defendant Jacobson to ask about progress with the city permit and he responded to her by requesting a meeting between her, Defendant Henagan, Defendant Haberman, and himself. (See **Exhibit 24**).

199. On October 1, Plaintiff Hernandez met with Defendant Henagan and Defendant Jacobson. Defendant Haberman did not attend.

200. During this meeting, no solution was discussed but rather Defendant Henagan attempted to defend her actions i.e. suspending Plaintiff's permit and having a conflict of interest by representing a company who was a direct competitor with Plaintiff.

201. Defendant Jacobson said he believed Plaintiff should have its permit reinstated and should be able to operate if that is what the state allowed, but that due to social media posts by Plaintiff Hernandez, he did not believe the administrative heads would give the permit back because they were "pretty upset" about the posts.

202. Defendant Jacobson said that if he could not find a way to get Plaintiff its permit

back, that it could be on the October 15 Commission agenda.

203. After Defendant Jacobson left the meeting, Defendant Henagan told Plaintiff Hernandez that Plaintiff would not get its permit back and that Defendant Jacobson did not have the power or authority to do anything about it.

204. Plaintiff Hernandez attempted to reach Defendant Jacobson on October 4, 9, 11 and 15 to no avail.

205. On October 17, 2018 Defendant Jacobson responded via email and said that a letter had been mailed to Plaintiff a week before but not signed for yet.

206. This letter was sent to Plaintiff's closed storefront and was not sent to her attorney.

207. This letter, dated October 4, stated that the mayor had met with city staff and the permit remains suspended due to a LARA bulletin issued October 1, 2018 stating an applicant initially denied licensure, even if appealed, must cease and desist any temporary operation. (See **Exhibit 25**).

208. This bulletin, however, upon information and belief, was merely a news release stating that, under the new Emergency Rules to the MMFLA, an applicant denied licensure - even if that denial is subject to appeal - had to cease and desist by October 31. (See **Exhibit 26**).

209. Enforcement of the October 31 deadline was prohibited by Court of Claims Judge Borello via a TRO on October 30, 2018. (See **Exhibit 27, pp. 3-4**).

210. The letter of October 17 sent to Plaintiff also stated that Plaintiff's request for public hearing had been received but since Plaintiff Hernandez requested a meeting with the mayor, the public hearing was postponed.

27 of 84

211. Plaintiff Hernandez had not requested a meeting with the mayor but rather the mayor, Defendant Jacobson, requested the meeting. (See **Exhibit 24**).

212. The letter also stated that if LARA changed its emergency administrative rules that Plaintiff should reach out to discuss suspension of the permit in relation to any such change in those rules. (See **Exhibit 25**).

213. The letter also stated that if Plaintiff still wanted to appeal to the commission, that the city had to be contacted within 10 days to schedule.

214. However, the hearing had already been requested and this essentially put the responsibility on Plaintiff to request one again rather than on Defendant to schedule what had already been requested.

215. On October 18, Defendant Henagan's client in Morenci, Stateline, was denied a state license but upon information and belief they continued to operate.

216. Upon information and belief, Defendant Henagan advised them to continue operations or at least did not advise them to close while at the same time not allowing Plaintiff to operate.

217. On October 30, Plaintiff Hernandez contacted Defendant Henagan regarding the appeal and the latter told the former that her attorney would have to call to confirm whether or not they still wanted to proceed with an appeal.

218. Plaintiff Hernandez reached out to Defendant Jacobson and she was told she had to have her attorneys speak with the city attorney.

219. Plaintiff should not have had to request an appeal for a 3rd time; Rather, the administration should have scheduled one after it was requested the 1st time.

220. On November 14, 2018, Plaintiff's counsel sent another appeal request to Defendants, this time to the City Commission. (See **Exhibit 28**).

221. This request included the TRO issued by Court of Claims Judge Borello.

222. This letter reiterates that an appeal was requested in September and that no appeal had been scheduled yet.

223. This letter requested that the issue be placed on the agenda for the next meeting scheduled for November 19, 2018.

224. The letter explained that the permit was suspended administratively without authority, subverting the Commission's authority.

225. The letter expressed that it was imperative that the issue be addressed as soon as possible to prevent additional harm to Plaintiff.

226. This letter also again informed the Commission regarding Defendant Henagan's conflict of interest.

227. This letter also requested an extension of the 180-day period within which Plaintiff had to provide Defendant with a copy of a state license.

228. After Plaintiff's counsel's letter, Defendant placed Plaintiff on the Commission meeting scheduled for November 19, 2018.

229. Defendants never informed Plaintiff of this. Fortunately someone outside of Adrian government informed Plaintiff Hernandez that the matter had made it to the agenda.

    a. Defendant Henagan told Plaintiff Hernandez that she sent an email to counsel regarding the date but she never heard back so just placed it on the agenda.

    b. Plaintiff's counsel did not receive any such email.

230. At the November 19, 2017 meeting,[11] Plaintiff's counsel addressed the Commission explaining the permit was suspended without proper authority as it had been issued by the Commission but suspended by the administration.

231. Plaintiff's counsel explained that the suspension was without cause.

232. Plaintiff's counsel explained that Defendant Henagan was not advising the company who she represented - a direct competitor with Plaintiff - to close after it was denied a state license despite suspending Plaintiff's permit for this reason.

233. Plaintiff's counsel explained that the state allowed temporary operators to remain open after an initial denial of the state application.

234. Plaintiff's counsel asked the Commission to reverse the suspension.

235. At this meeting, Defendant Haberman spoke to the Commission and merely reiterated the reasons that BMR had given Plaintiff for denying its license.

236. However, all but 1 of the reasons given by BMR was found to be invalid by an ALJ in its Proposal for Decision, and the MRA adopted this Proposal in full. Plaintiff appealed the 1 remaining reason to the Circuit Court, at which time the state agreed to review the application again as-is and based thereon found that Plaintiff was suitable for licensure.

237. Moreover, BMR was biased and ineffective and would routinely deny applications randomly while providing bogus reasons. This stopped once MRA replaced BMR, proving that BMR was the problem.

238. At this meeting on November 19, Defendant Haberman did not address any of Plaintiff's or Plaintiff's Counsel's arguments.

---

[11] https://www.facebook.com/wlen1039/videos/308027039924287/?v=308027039924287 (52:15)

239. Defendant Henagan spoke at the November 19 meeting and provided multiple citations to city ordinance and city code.

240. As many times as Plaintiff had asked for reason for the initial suspension, none of these citations had been given.

241. Defendant Henagan said that an appeal was not requested by Plaintiff for 6 weeks.

242. However, Plaintiff had never been provided with the information on how to appeal.

243. At this meeting on November 19, Defendant Henagan did not address any of Plaintiff's or Plaintiff's Counsel's arguments.

244. Defendant Henagan stated that the alternative to suspending a permit would have been issuing a citation.

245. However Plaintiff was not operating and not in violation of the ordinance.

246. Defendant Henagan said that a recommendation of revocation could have been given to the Commission but it never was.

247. This indicates she knew the Commission was the authority that could act on a permit.

248. At the November 19 meeting, Defendant Henagan said that a suspension was imposed as opposed to a revocation so that the permit would be available if the appeal of the state's initial denial was successful.

249. Plaintiff's appeal of the state's initial denial was successful but its permit was not returned.

250. At this meeting, Defendant Henagan misled the Commission and advised them that a violation could have been imposed on Plaintiff despite the fact it was closed.

251. Further, Defendant Henagan acknowledged having received Plaintiff's request for an

extension.

252. Also at this meeting, Plaintiff Hernandez provided an update on the appeal of the state's initial denial and explained there was no set time frame.

253. When a Commissioner asked Defendant Henagan what exactly Plaintiff Hernandez did wrong to get the permit suspended, Defendant Henagan replied not being in compliance with the MMFLA.

254. In response, Plaintiff Hernandez explained that the state was still considering applicants initially denied to be within the application process meaning they are not in violation of the MMFLA.

255. Plaintiff Hernandez explained that being initially denied a MMFLA license does not mean you are in violation of the MMFLA.

256. Plaintiff Hernandez explained that only allegations had been made and that was the point of the appeal process.

257. Defendants did not address any of these arguments.

258. Also at this meeting, Plaintiff Hernandez explained that per Adrian ordinance, the issuing body could suspend a permit for listed reasons, none of those reasons existed, and that she was never pointed to that section to be able to defend herself when suspended.

259. Defendants did not address this argument.

260. After hearing arguments at the November 19 meeting, the Commission voted to uphold the suspension.

261. The Plaintiff was victim of the biased, ineffective BMR, whose decision was ultimately proven to be based on misinformation, and Plaintiff was victim again when

Defendants relied on this misinformation without ever knowing what the alleged underlying conduct was.

262. After Plaintiff Hernandez's comments at the November 19 meeting, a man - who upon information and belief owns one of the big-money, favored marijuana businesses that were granted a permit by the city - got up and spoke in defense of Defendant Henagan's conflict of interest and against the length of time that Plaintiff Hernandez had spoken for at the meeting. (~1:24:30).

263. This is the first of two incidents where this man jumped to the defense of the city against Plaintiff Hernandez after she spoke.

264. This man's actions exemplify the cozy relationship Adrian employees have cultivated with businesses who have big money and who are favored: he felt emboldened to jump to Defendant Henagan's defense and to publicly insult Plaintiff Hernandez, a potential competitor in the same market, after witnessing her fervently plead with the Commission for her business's permit to be unsuspended.

265. On November 21, 2018, Defendant Connor allegedly sent a letter to Plaintiff Hernandez stating that, within 10 business days, Plaintiff Hernandez needed to provide a statement that the appeal was being continued with the state, proof the appeal process was moving forward, and the date the appeal would be heard. (See **Exhibit 29**).

266. This letter was not received by Plaintiff or Plaintiff's counsel.

267. On January 7, 2019, Plaintiff Hernandez attended a commission pre-meeting.[12]

268. At this pre-meeting, Defendant Henagan, while discussing her search for training

---

[12] https://www.facebook.com/wlen1039/videos/282887899038678/?v=282887899038678

seminars for city employees to attend regarding recreational marijuana, referenced a meeting that she had with some of the "area investors who are working in medical" - referring to the medical marijuana business owners.

269. At this pre-meeting, Defendant Henagan raved that these marijuana businesses had dealt with cities all over the state but had picked Adrian.

270. She raved about one of the marijuana businesses who will be investing millions of dollars and employing thousands of people in the community.

271. She stated that the businesses had told her they were investing all of the money based on the assumption Adrian would not opt out of recreational marijuana.

272. She said that the permitted businesses she met with are definitely willing to invest in the city in more ways than just opening their businesses. (~33:50)

273. This pre-meeting shows the high regard the big-money, favored business owners are held in by Defendant Henagan and the advocacy she does on their behalf - a vast difference to her attitude toward Plaintiff, a small-business owner.

274. This pre-meeting provides evidence of the fact that permits were given to big businesses because of their deep pockets.

275. This pre-meeting provides one motive for why Plaintiff was denied equal protection of the law - money.

276. The meeting of permit holders referred to by Defendant Henagan upon information and belief occurred on January 2, 2019 with permit holders cherry-picked by Defendant Henagan.

277. Failure to notify Plaintiff of and invite Plaintiff to the meeting again demonstrates that

Plaintiff was denied equal protection of the law by Defendant.

278. Upon information and belief, at this meeting the permit holders were allowed to engage in policy discussions regarding recreational marijuana with Defendant.

279. Upon information and belief, the desires of the permit holders were used to create policy such as not allowing microbusiness.

280. Microbusinesses are one entity that can be applied for without having a medical license first. Not allowing microbusinesses is a benefit to these permit holders.

281. Microbusinesses have ultimately been banned in Adrian.[13]

282. This is evidence that the big-money, favored business permit holders were catered to and given red-carpet-treatment whereas Plaintiff was treated as an annoyance.

283. After Plaintiff Hernandez learned of the permit holder meeting at the pre-meeting, her associate received communications regarding this meeting via FOIA.

284. Defendant Henagan via Defendant Connor emailed the permit holders and asked them to join a round table discussion regarding the marijuana industry in Adrian on January 2, 2019. (See **Exhibit 30**).

285. One recipient of the email asked if the meeting will help understand Adrian's position on recreational marihuana and Defendant Connor responds that the city has not decided its position yet and that would be part of the discussion. (See **Exhibit 31**).

286. In a follow up email, one of the permit holders, Fluresh, sent a letter to Mayor Jacobson and the Commission. (See **Exhibit 32**).

287. This letter tells Defendant Jacobson and the Commission that the company so far had

---

[13] Adrian's Commercial Medical Marihuana Facilities Ordinance was amended again and is now Commercial Medical Marihuana Facilities and Adult Use Establishment. (Attachment 1). The ordinance prohibits from operating in the city, among other things, microbusinesses. Sec. 46-503(c)(1).

invested $3 million of an estimated $12 million build out in Adrian with a long term plan of investing $20-25 million.

288. This letter states Fluresh's plan to employ 60-100 people in the community.

289. This letter states that Fluresh's large investment in Adrian is premised on the assumption that the City was not going to opt out of the recreational marijuana market.

290. It also states that if Adrian opts out of recreational, Fluresh's initial and future investments would be pointless, rendering operations in Adrian commercially infeasible.

291. This letter demonstrates the power given to this big business: it has the power to give a veiled threat to leave Adrian and withdraw its money if a recreational marijuana ordinance was not passed.

292. Upon information and belief, the property Fluresh operates on in Adrian was purchased from the City itself.

293. On February 4, 2019, Defendant Connor sent a letter to Plaintiff. (See **Exhibit 33**).

294. This letter stated that the clerk's office had contacted Plaintiff on November 21, 2018 regarding Plaintiff's request for extension and had requested additional/supplemental information to confirm the reasons for delay to be provided within 10 days of the letter but that nothing had been received.

295. This letter stated that the request for extension was denied and that a recommendation to revoke the permit would be presented to the City Commission at the regularly scheduled meeting on February 18, 2019.

296. Plaintiff's counsel contacted Robin Connor via telephone and explained that no request for more information had been received by Plaintiff or Plaintiff's counsel.

297. On February 6, Plaintiff's counsel followed up on the above phone call and sent a letter to Defendant Connor wherein counsel:

    a. Explained neither counsel nor Plaintiff Hernandez received a request for additional information, i.e. the letter dated November 21, 2018;

    b. Attached the Order Following Prehearing Conference and Notice of Hearing regarding the state appeal;

    c. Explained that the status of the State appeal remained as a pending applicant's request for public investigative hearing;

    d. Explained why Plaintiff would likely succeed on the state appeal, and;

    e. Requested another 120 day extension because it was unknown how long the ALJ would take to render the post-hearing Order.

(See **Exhibit 34**).

298. On February 14, 2019, Plaintiff Hernandez and counsel met with Defendant Burd and Defendant Henagan.

299. At this meeting Plaintiff and counsel:

    a. explained that the State appeal was still pending and gave the latest update;

    b. sought an extension asking that any action on M.S.C.3's Permit be delayed pending the outcome of the appeal process;

    c. explained that M.S.C.3 was allowed to reopen as a temporary operator, and;

    d. demanded M.S.C.3 be permitted to reopen.

300. Also, Plaintiff Hernandez again asserted that she had a full-fledged, not provisional, permit due to the definition of "provisional permit" versus the definition of "permit."

301. Defendant Henagan said that Plaintiff did not have any expectation of having her permit renewed due to Adrian Code of Ordinances § 46-502(b), which states that:

> The issuance of any permit or renewal permit pursuant to this chapter shall not confer any vested rights or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval.

302. Plaintiff's counsel pointed out that just because this was written in the ordinance did not mean that it was legal as other laws protect property interests.

   a. Michigan's Constitution that grants local governments with the legislative power and authority to adopt ordinances states that the power to do so is "subject to the constitution and law." Const 1963, art 7, § 34.

303. At this meeting, Defendant Henagan told Plaintiff Hernandez that there were other people in her situation but that they communicated with her.

304. Plaintiff Hernandez had repeatedly reached out to her and other Defendants.

305. At this meeting, the City Administrator agreed to remove the revocation of permit from the Commission agenda, agreed to look into why the permit was administratively suspended, agreed to look into un-suspending the permit, and said he would get back to them regarding how long the extension Plaintiff applied for would last.

306. The City Administrator said he would contact Plaintiff's counsel but he never did.

307. During the meeting, Defendant Henagan took Plaintiff's counsel into another room to speak about Plaintiff Hernandez's social media posts.

   a. Defendant Henagan was upset about the facebook posts.

   b. She said to counsel that Plaintiff Hernandez had been posting on social media stirring stuff up and that would make it more difficult to resolve the issue.

308.    On February 21, 2019, Plaintiff's counsel sent a letter to Defendant Burd to follow up on the meeting: This letter, among other things, provided additional detail to Defendant Burd regarding the status of Plaintiff's appeal with the state. (See **Exhibit 35**).

309.    April 2, 2019 was 90 days before Plaintiff's permit was set to expire but on April 1, Plaintiff Hernandez was told by Defendant employees that no applications were available / the city was not accepting applications at that time.

310.    Plaintiff Hernandez and counsel attended the pre-meeting to the Commission meeting on April 15, 2019 (speaking at ~41:40):[14]

311.    There, Plaintiff Hernandez addressed her concerns with Defendant's ordinance.

312.    Further, one of the big-money, favored marijuana business owners spoke derogatorily towards Plaintiff Hernandez calling her butthurt for being denied by the state.

    a.    This remark was not addressed by the City, again showing the City's bias in favor of big-money marijuana and against Plaintiff. (~53:30)

    b.    Plaintiff Hernandez tried to respond to his comments that were directed at her but a city employee cut her off, again demonstrating favoritism.

313.    At the pre-meeting to the Commission meeting on April 29, 2019, Plaintiff Hernandez explained to the City that it was not passing ordinances in accordance with the City Charter that requires 2 readings prior to adoption.

314.    Also at the pre-meeting on April 29, Plaintiff Hernandez explained that the City had been violating the Open Meetings Act.

315.    On April 29, 2019 at the commission meeting,[15] amendments to Defendant's

---

[14] https://www.facebook.com/watch/live/?v=417662915698833&ref_watch_permalink
[15] https://www.facebook.com/watch/live/?v=354346048604924&ref-watch_permalink

marijuana facilities ordinance as purportedly adopted June 7, 2018 were placed on the agenda for a reading, (See **Exhibit 36**[16]), and they were adopted after this first reading, (See **Exhibit 37**, see last page showing the Resolution was approved).

316. Also on April 29, Resolution R19-052 passed setting an annual medical marijuana facility application period schedule for 2019 - renewal permits would be accepted May 9, 2019 to May 31, 2019. (See **Exhibit 38**).

317. On May 6, 2019 at the pre-meeting to the Commission meeting, Plaintiff Hernandez again told the Commission that it had been violating the City Charter by the way it was passing ordinances.[17]

318. Also on May 6, 2019 at the Commission meeting during public comment at the end, Plaintiff Hernandez stated again that the Commission had been violating the City Charter by the way it was passing ordinances.

319. On May 9, a Commission meeting was held to address a complaint against Defendant Henagan; However, this meeting was held in private.[18] (See **Exhibit 39**).

320. After Plaintiff Hernandez brought to the City's attention that ordinances had not been passed correctly, the City tried to validate the amendments by reintroducing them again for another first reading on May 20, 2019, (See **Exhibit 40**[19]), and for a second reading

---

[16] The documents attached regarding the resolutions about Marvin Farm, Witt Farm, and the Michigan Department of Agriculture and Rural Development have been removed from this Exhibit due to their length and irrelevancy. They can be reviewed in full at: https://adriancity.com/wp-content/uploads/agendasminutes/pdf_358.pdf

[17] https://www.facebook.com/watch/live/?v=425107878304174&ref=watch_permalink

[18] https://www.facebook.com/watch/live/?v=592139787960283&ref_watch_permalink

[19] The documents attached for the sections Minutes (of May 6 and May 9, 2019), Check Register, Communications, Miscellaneous, and the documents regarding Dial-A-Ride, bridge maintenance, portable toilets, and a tax credit have been removed from this Exhibit due to their length and irrelevancy. They can be reviewed in full at: https://adriancity.com/wp-content/uploads/agendasminutes/pdf_360.pdf

on June 3, 2019, (See **Exhibit 41**).[20]

321. However, the failure to adhere to the Charter requirements for the passage of the amended ordinance in June of 2018 was the initial defect that was not cured by a second reading of proposed amendments in May of 2019.

322. The last amendment to the ordinance regarding medical marijuana facility licensing that was properly passed and therefore the one that was law when Plaintiff's permit was suspended is the one passed on April 16, 2018.

323. The attempted revision of the ordinance by Ms. Henagan was ineffective because the initial adoption of the amendment to the city ordinance was unlawful because it was not passed per the City charter.

324. Within the improperly revised ordinance the City administrator is given power it did not previously have to suspend permits, power that violates the City Charter.

325. According to the City's ordinance regarding permits, "[a]ny license issued by the city may be suspended by the city administrator for cause, and any permit issued by the city may be suspended or revoked by the issuing authority for cause." City of Adrian, Code of Ordinances, Section 46-53.

326. According to the improperly passed amendment to Defendant's medical marijuana facility licensing ordinance, "the city administrator may suspend the permit for failure to comply." City of Adrian, Code of Ordinances, Section 46-510.

327. The City administrator did not have the authority to suspend Plaintiff's permit.

---

[20] The documents attached for the sections Check Register, and documents regarding a proposed fireworks ordinance, various resolutions regarding the awarding of bids, resolutions regarding the Rural Transit Assistance Program, the sale of real property, and the approval of a SmartZone Board budget, and the Criminal Justice Report in the Miscellaneous section have been removed from this Exhibit due to their length and irrelevancy. They can be reviewed in full at: https://adriancity.com/wp-content/uploads/agendasminutes/pdf_361.pdf

328. Also on May 20, 2019 - the date of the Commission meeting where the City tried to validate the amendments by reintroducing them again for another first reading - Resolution R19-068 was passed changing the application period for renewal permits to between May 8, 2019 and June 10, 2019.

329. The amendments to the marijuana ordinance upon which the permit applications were based were not adopted until June 3, 2019.

330. "The effective date of all ordinances shall be prescribed therein, but the effective date, except in the case of emergency ordinances, shall not be less than fifteen days after enactment, nor before publication thereof." Adrian City Charter, § 7.5.

331. The ordinance was not published until June 11, 2019.

332. Therefore, the ordinance under which Plaintiff was supposed to seek a renewal was not effective when the deadline of June 10, 2019 had passed.

333. Plaintiff did not submit a renewal application by June 10 due to these confusing circumstances - Plaintiff was being asked to seek renewal of its permit under an ordinance that was not in effect yet and that did not provide the method of renewal for a permit holder with a suspended permit.

334. On or about May 21, 2019, Plaintiff Hernandez met with the City Administrator and he told her to submit her renewal application and to just explain what was going on.

335. At this meeting, Plaintiff Hernandez asked the City Administrator if she would be renewing a suspended permit but he did not know and he said he would have Defendant Henagan contact Plaintiff's counsel.

336. On May 29, 2019, Plaintiff Hernandez met with the City Administrator again:

a. he assured her he would get back to her with answers to the questions she had regarding her permit;

b. he told her he would get back to her with the status of the indefinite extension that had been requested;

c. Plaintiff Herandez informed him about the status of her appeal with the state;

d. Plaintiff Hernandez informed him that due to problems with the ordinance she was not been able to submit her renewal application;

e. he could not tell her what happened to a suspended permit during a renewal.

337. On May 31, Plaintiff Hernandez met with the mayor and:

a. informed him about the status of the appeal with the state;

b. informed him that due to the problem with the ordinances she had not been able to submit her renewal application;

c. he could not tell her what happened to a suspended permit during a renewal.

338. On June 26, 2019, Plaintiff submitted its renewal application to Adrian.

339. Defendant Connor told Plaintiff Hernandez that the application would not be processed as a renewal due to the deadline of June 10 being missed.

340. Plaintiff Hernandez explained to Defendant Connor that the city had not passed ordinances properly and therefore there was no ordinance properly in effect when the application deadline was established or even when the June 10 deadline passed.

341. Defendant Connor conceded that the ordinance did not go into effect until after the deadline of June 10.

342. Plaintiff Hernandez explained that she had spoken with city officials and nobody

would tell her if she needed to renew the suspended permit or wait for state approval.

343.   Plaintiff was under the impression that her permit was going to be extended until the state application process was over as Plaintiff's counsel had requested this at the meeting on February 14, 2019 and Defendant Burd had seemed amenable.

344.   At the time Plaintiff's permit expired July 2, 2019, she had not received any response from the city.

345.   On September 6, 2019, Plaintiff received a letter dated September 5 from Defendant Connor. (See **Exhibit 42**).

346.   This letter stated that a deficiency notice had been emailed August 23, 2019, and that in this notice it was stated that:

   a.   The permit for M.S.C.3 expired as of 7/31/2019.

   b.   The application received was considered a new application not a renewal because it was received after the deadline.

   c.   Because it was considered a new application, a prequalification letter from the state had to be included.

   d.   A notarized checklist stated the prequalification document was included but it was not and this needed to be submitted within 10 days.

347.   This letter stated that, based on these reasons, Plaintiff was out of compliance and Defendant Connor would be recommending denial of the renewal application at the September 16, 2019 Commission meeting.

348.   Plaintiff received a 2nd letter 5 days later that said the same things but said the Commission meeting would be October 7.

349. On September 10, Plaintiff's counsel sent a letter to Defendant Connor in response to her letter of September 5 (See **Exhibit 44**).

350. This letter, among other things, asked that Plaintiff be removed from the Commission agenda that was set for September 16 as Plaintiff still was waiting for a determination from the state regarding whether to grant a state license. (Id.)

351. Also, this letter, among other things, explained that the box checked on the permit application that prequalification status had been granted was done so in error. (Id.)

352. Another medical marijuana facility working with Adrian, Oasis Wellness Center of Adrian, LLC, was denied a state license on September 10, 2018, but Defendants were willing to work with Oasis (See **Exhibit 43**).

353. An agreement between Oasis and the City states that Oasis' city permit was administratively denied due to initial denial by the state and, since that time, the City and Oasis had an open line of communication regarding the status of the appeal. (Id.)

354. As outlined above, Plaintiff tried on numerous occasions to have an open line of communication with Defendants.

355. As outlined above, Plaintiff updated Defendant numerous times regarding the status of its appeal.

356. This letter contradicts itself by stating there was an open line of communication regarding the appeal process but also states that MRA's final decision to deny on August 6, 2019 was discovered by the City during the permit renewal application for Oasis.

357. This agreement evidences the fact that Plaintiff was not provided with equal treatment under the law: the City was willing to work with Oasis but turned Plaintiff Hernandez

45 of 84

away time after time or led her on that her situation would be looked into but no one at the city ever came close to entering into an official agreement with Plaintiff.

358.   On October 7, 2019, Plaintiff's permit application was denied by the Commission.

359.   Neither Plaintiff nor counsel ever received a letter stating a final decision or the method to appeal the decision.

360.   Adrian's Commercial Medical Marihuana Facilities Ordinance was amended again and is now Commercial Medical Marihuana Facilities and Adult Use Establishment. (Attachment 1).

361.   This ordinance is void for vagueness, as described more fully below.

## II.   Factual Allegations Regarding Plaintiff's State Application Process

362.   Plaintiff anticipated a quick process with the investigative hearing after the initial denial of licensure by the state because the reasons for the denial by the Board were illegitimate.

363.   Plaintiff sought to proceed with the investigative hearing process quickly and upon requesting the hearing also gave the state a witness list and a request for subpoenas of witnesses.

364.   At every step of this process, trusting that fairness and reason would prevail, Plaintiff reasonably believed that licensure was just around the corner.

365.   Unfortunately, Plaintiff's was one of the first investigative hearings for a denial of a medical marijuana license in the state and the process did not run smoothly.

366.   The state was not forthcoming with the documents requested and challenged

Plaintiff's subpoenas.

367. The state was not willing to narrow down the reasons for denial, importantly including withholding which criminal offense allegedly was not disclosed.

368. For these reasons, the investigative hearing was pushed back several times and did not happen until plaintiff's pre-hearing motions were granted months later.

369. After the 1 day hearing, Plaintiff anticipated an opinion from the Administrative Law Judge (ALJ) in 2-3 months, however it was 5 months before this happened.

370. When the ALJ issued its Proposal for Decision recommending to the MRA that licensure be denied for 1 reason - specifically 1 instance of allegedly failing to disclose a criminal offense - while finding the other reasons illegitimate, Plaintiff filed Motions for Rehearing and Reconsideration with the ALJ and Exceptions to the Proposal with the MRA pointing to evidence submitted at the investigative hearing showing that the offense allegedly not disclosed was never charged.

371. The ALJ denied the Motions and the MRA disregarded the Exceptions and 2 months later in September issued a final denial.

372. In November of 2019, Plaintiff filed its appeal to the Lansing Circuit Court.

373. After Plaintiff filed its Brief on Appeal in the end of January 2020, the state offered to review Plaintiff's application again and, after said review, they agreed to license Plaintiff based solely on the initial application. In March of 2020, an Order was entered dismissing the Circuit Court case.

374. Plaintiff now has prequalification status and final licensure from the state, having passed final inspection, but municipal approval, which was already given, now is

unlawfully being denied.

375. Plaintiff through counsel informed Defendant that a state license was granted, but Defendant still denied Plaintiff its permit.

### *Factual Allegations Regarding Open Meetings Act Violations*

376. On October 1, 2018, the Adrian City Commission convened for a special meeting and a closed-session.

377. According to the announcement on the City website, a special meeting was convened at 4:00 pm to host a meet and greet with the city administrator candidates and the public, and a closed meeting occurred after the Commission meeting to discuss attorney-client privilege matters. (See **Exhibit 45**). The attorney-client privilege matter was not named.

378. The specific reason for entering a closed session was not mentioned, i.e. the City did not assert that discussing the matter at an open meeting would have a detrimental financial effect on its litigating or settlement position.

379. Only when an open meeting would have a detrimental financial effect on a public body's litigating or settlement position may a closed session occur. MCL 15.268(e).

380. On November 5, 2018, the Adrian City Commission convened for a special meeting.

381. According to the announcement on the City website, it convened at 5:30 pm to discuss pending litigation. (See **Exhibit 46** p. 1). The pending litigation was not named. The announcement also stated that the Commission may go into closed session for this meeting. (Id.).

382. The specific reason for entering a closed session was not mentioned, i.e. the City did not assert that discussing the matter at an open meeting would have a detrimental

financial effect on its litigating or settlement position.

383. Also on November 5, during the regular agenda of the City Commission meeting, a Resolution was put forth to authorize Sarah Osburn to act on the recommendations of legal counsel regarding Auto-Owners v. Campbell-Durocher v. City of Adrian. (See **Exhibit 46** p. 2[21]). This Resolution was approved. (See **Exhibit 46** p. 3).[22]

384. This Resolution was made based on the recommendation that Attorney Sarah Osburn made during the closed session on November 5, 2018 at 5:30pm. (Id.).

385. The specific reason for entering a closed session was not mentioned, i.e. the City did not assert that discussing the matter at an open meeting would have a detrimental financial effect on its litigating or settlement position.

386. The minutes from the Commission meeting of November 5, 2018 do not contain the roll call vote or the purpose or purposes for calling the closed session. (See **Exhibit 46** pp. 4-12[23]).

387. Under the Open Meetings Act, the roll call vote and the purpose or purposes for calling a closed session shall be entered into the minutes of the meeting at which the vote is taken. MCL 15.267(1).

388. On December 17, 2018, the Adrian City Commission convened for a special meeting.

---

[21] This Exhibit includes only the first page of the agenda to show that a specific resolution was put forth. The agenda in its entirety can be found at: https://adriancity.com/wp-content/uploads/agendasminutes/pdf_345.pdf

[22] This Exhibit includes only one page from the minutes of the November 5, 2018 meeting that were approved on November 19, 2018 to show that a specific resolution was approved. The minutes in their entirety can be found at: https://adriancity.com/wp-content/uploads/agendasminutes/pdf_347.pdf

[23] The first line of the minutes states, in part, that the City Commission met for a pre-meeting study session on Monday, October 15, 2018 at 5:30. This is presumably a typo in 2 respects. First, the date is presumably meant to state November 5, 2018. The date as stated in the title is November 5, 2018, and the Minutes for October 15, 2018 are contained in the agenda for November 5, 2018. Second, the second line of the Minutes state that the pre-meeting study session (which are open to the public) began at 5:30pm, which would put it during the time that the special meeting occurred. However, the agenda for this pre-meeting study session states that it was scheduled for 6:00pm, (p. 13), and therefore the 5:30pm time stated on the Minutes is an error.

389.   According to the announcement on the City website, it convened at 5:30 pm to discuss pending litigation. (See **Exhibit 47** p. 1). The pending litigation was not named. The announcement also stated that the Commission may go into closed session for this meeting. (Id.).

390.   The specific reason for entering a closed session was not mentioned, i.e. the City did not assert that discussing the matter at an open meeting would have a detrimental financial effect on its litigating or settlement position.

391.   Also on December 17, 2018, during the regular agenda of the City Commission meeting, a Resolution was put forth to authorize the recommendation of legal counsel regarding Auto-Owners v. Campbell-Durocher v. City of Adrian. (See **Exhibit 47** p. 2-3, see specifically p. 3, R18-219). This Resolution was approved. (See **Exhibit 47** bottom of p. 4 - p. 5[24]).

392.   This Resolution was made based on the recommendation of Attorney Sarah Osburn that she made during the closed session on December 17, 2018 at 5:30pm. (Id. p. 5).

393.   The specific reason for entering a closed session was not mentioned, i.e. the City did not assert that discussing the matter at an open meeting would have a detrimental financial effect on its litigating or settlement position.

394.   On April 1, 2019, the Adrian City Commission convened for a special meeting.

395.   According to the announcement on the City website, it convened at 5:30 pm to discuss pending litigation. (See **Exhibit 48** p. 1). The pending litigation was not named. The announcement also stated that The Commission may go into closed session for this

---

[24] This Exhibit includes only one page from the minutes of the November 5, 2018 meeting that were approved on November 19, 2018 to show that a specific resolution was approved. The minutes in their entirety can be found at: https://adriancity.com/wp-content/uploads/agendasminutes/pdf_347.pdf

meeting. (Id.)

396. The specific reason for entering a closed session was not mentioned, i.e. the City did not assert that discussing the matter at an open meeting would have a detrimental financial effect on its litigating or settlement position.

397. The minutes from the Commission meeting of April 1, 2019 do not contain the roll call vote or the purpose(s) for calling the closed session. (See **Exhibit 48** pp. 2-5).

## COUNT ONE - DECLARATORY RELIEF REQUESTED

398. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

399. This Court is empowered to enter a declaratory judgment under MCR 2.605.

400. M.S.C.3 seeks a declaratory judgment that Defendant's amendments to its ordinance under which Plaintiff's permit was suspended is unenforceable because it was illegally passed contrary to the City Charter.

401. An amendment to an ordinance in Adrian cannot be adopted upon its first reading:

> Except in the case of ordinances which are declared to be emergency ordinances, no ordinance shall be finally passed by the commission until two weeks after the meeting at which it is introduced. A brief description of the subject and contents of the ordinance as introduced shall be published in a newspaper of general circulation in the city at least one week before final passage, either separately or as part of the published proceedings of the commission.

City of Adrian Code of Ordinances, Part 1 - Charter, Section 7.3.

402. The amendments put forth by Defendant Henagan were passed on the initial reading in violation of the Charter.

403. M.S.C.3 seeks a declaratory judgment that, at the time Plaintiff's permit was suspended, the last medical marijuana facility licensing ordinance that was properly passed was the one passed on April 16, 2018.

404. M.S.C.3 seeks a declaratory judgment that its permit was unlawfully suspended.

405. Per the City Charter, "[a]ny license issued by the city may be suspended by the city administrator for cause, and any permit issued by the city may be suspended or revoked *by the issuing authority for cause*." Adrian City Charter, Chapter 46, Article II - Business Licenses (emphasis added).

406. Since Plaintiff had a city permit and not a city license, Plaintiff's permit could only be suspended by the issuing authority, i.e. the City Commission, for cause.

407. Per the City Ordinance:

> *Cause* includes the doing or omitting of any act, or permitting any condition to exist in connection with any trade, profession, business or privilege for which a license or permit is granted under the provisions of this Code, or upon any premises or facilities used in connection therewith, which act, omission or condition is:
> (1) Contrary to the health, safety or welfare of the public;
> (2) Unlawful, irregular or fraudulent in nature;
> (3) Unauthorized or beyond the scope of the license or permit granted; or
> (4) Forbidden by the provisions of this Code or any duly established rule or regulation of the city applicable to the trade, profession, business or privilege for which the license or permit has been granted.

City of Adrian Code of Ordinances, Ch 46, Art II, Sec. 46-31.

408. No conduct of Plaintiff could have been deemed "cause."

409. Plaintiff's permit was suspended due to an initial denial by the state, not for "cause" as defined in the City Charter.

410. This Court is empowered to order a speedy hearing and advance this case in the calendar under MCR 2.605(D).

## COUNT TWO - PETITION FOR A WRIT OF MANDAMUS

411. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

412. This Court is empowered to enter a writ of mandamus pursuant to MCR 3.305.

413. For the reasons set forth above, Defendant did not have authority to suspend Plaintiff's permit.

414. Since Plaintiff had a city permit and not a city license, Plaintiff's permit could only be suspended by the issuing authority, i.e. the City Commission, for cause.

415. Plaintiff's permit was administratively suspended without the Commission's knowledge and therefore unlawfully.

416. Plaintiff's permit was administratively suspended without cause and therefore unlawfully.

417. For the reasons set forth above, Defendants unlawfully treated Plaintiff's renewal application as a new application, which led to a denial of the application.

418. M.S.C.3 seeks a writ of mandamus ordering the City of Adrian to unsuspend and reissue Plaintiff's permit and to only take lawful action upon it pursuant to valid laws.

## COUNT THREE - DENIAL OF DUE PROCESS

419. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

420. "The Due Process Clause of the Fourteenth Amendment provides that '[no] State [shall] deprive any person of life, liberty, or property, without due process of law[.]'" (See **Exhibit 49** - *Green Genie, Inc. et al, v State of Michigan*, Court of Claims, Hon. Stephen L. Borrello Opinion and Order of 4-30-2019 (citing *In re Forfeiture of 2000 GMC Denali & Contents*, 316 Mich App 562, 573; 892 NW2d 388 (2016)).

421. Substantive due process "protects against the arbitrary exercise of governmental power, whereas the procedural component is fittingly aimed at ensuring constitutionally sufficient procedures for the protection of life, liberty, and property interest." (See **Exhibit 49** citing *Bonner v City of Brighton*, 495 Mich 209, 224; 848 NW2d 380 (2014).

422. The Michigan Constitution similarly protects against deprivation of life, liberty or property, without due process of law. Const 1963, art 1, § 17.

423. Plaintiff was denied both procedural and substantive due process.

424. On July 2, 2018, Plaintiff was granted a permit to operate a provisioning center in the City of Adrian.

425. Plaintiff was authorized by the State of Michigan to operate its business temporarily pending full licensing approval.

426. The Defendant knew or had reason to know that the Plaintiff had made significant expenditures to start and operate its business, and, considering that reliance, Plaintiff had a reasonable expectation that its permit would be continued throughout the entire licensing process.

427. Plaintiffs possessed a property interest in their municipal business permit granted by the City of Adrian. See *Bundo v Walled Lake*, 395 Mich 679; 238 NW2d 154 (1975).

428. Plaintiffs possessed a liberty interest in operating the provisioning center in accordance with Michigan law and thereby to pursue their chosen occupation, which can not be arbitrarily denied by the state. See *Hillside Productions v Duchane*, 249 F.Supp.2d 880, 897 (E.D.Mich. 2003) (citing *R.S.S.W., Inc. v. City of Keego Harbor*, 18 F.Supp.2d 738 (E.D.Mich. 1998)).

429. Defendant interfered with Plaintiff's property and liberty interests by arbitrarily suspending Plaintiff's business permit and by refusing to renew its permit.

430. Contrary to the requirements stated in *Bundo*, Defendants did not provide Plaintiff with notice of the alleged violations and the potential consequences, and did not provide an opportunity to refute the allegations and offer any mitigating circumstances to an impartial decision maker.

431. Defendant did not provide Plaintiff with its final decision in writing.

432. Plaintiff was not notified of Defendant's intent to take such an action, nor was Plaintiff afforded a hearing on the matter until after the fact.

433. Defendant should have provided Plaintiff with rudimentary due process, which requires: (i) timely written notice detailing the reasons for the proposed administrative action; (ii) an effective opportunity to defend by confronting any adverse witnesses and by being allowed to present in person witnesses, evidence, and arguments; (iii) a hearing examiner other than the individual who made the decision or determination under review; and (iv) a written statement of findings. *Bundo*, 395 Mich at 696-97.

434. Defendant's actions have deprived Plaintiff of due process of law contrary to the Fifth and Fourteenth Amendment to the United States Constitution and Article 1 Section 17 of

the Michigan Constitution of 1963, because the lack of procedures attendant upon the deprivation of Plaintiff's property interest were constitutionally insufficient.

435.   Moreover, Defendant's decision to suspend violated these same constitutional provisions because it was arbitrary and capricious, without authority, and was not based on any violation of local ordinances or state law.

436.   "[T]he touchstone of due process, generally, is protection of the individual against arbitrary action of government[.]" (See **Exhibit 49** citing *Bonner*, 495 Mich at 224).

437.   Due to Defendants actions, Plaintiff has been unable to operate its business, and has been damaged by the loss of both customers, business capital, and profits.

## COUNT FOUR - FIRST AMENDMENT RETALIATION

438.   Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

439.   Defendant employees retaliated against Plaintiffs for Plaintiff Hernandez's exercise of her First Amendment rights.

440.   The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech[.]" US Const, Am I.

441.   The 1963 Michigan Constitution provides: "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const 1963, art 1, § 5.

442.   Defendants violated the First Amendment: "it is well established that 'retaliation by public officials against the exercise of First Amendment rights is itself a violation of the

First Amendment.'" *Duchane*, 249 F.Supp.2d at 898 (internal citation omitted).

443.    Plaintiff Hernandez is entitled to relief for this First Amendment retaliation because she was engaged in protected conduct, an adverse action was taken against her that would deter a person of ordinary firmness from engaging in that conduct, and the adverse action was motivated, at least in part, by the protected conduct. *Smith v Campbell*, 250 F3d 1032 (6th Cir 2001).

444.    Plaintiff Hernandez, owner of M.S.C.3, complained on her personal Facebook page that Defendants were passing ordinances wrong.

445.    The First Amendment protects actual speech and symbolic or expressive conduct. *Virginia v Black*, 538 US 343, 358; 123 S Ct 1536; 155 L Ed 2d 535 (2003).

446.    "The hallmark of the protection of free speech is to allow `free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Id.*

447.    Plaintiff Hernandez's posts were protected free speech.

448.    Because of Plaintiff Hernandez's posts, adverse actions were taken against Plaintiff Hernandez and M.S.C.3: Defendants refused to unsuspend M.S.C.3's permit, refused to provide due process regarding the suspension, which was done summarily, refused to work with M.S.C.3 while at the same time working hand-in-hand with similarly situated permit-holders, refused to renew M.S.C.3's permit after receiving its renewal application, and gave away the limited permit to another facility.

449.    This adverse action has devastated Plaintiff Hernandez as it has crippled her business, and considering the power that individual employees of a municipality have when they

work together to railroad a small business, this adverse action will no doubt deter any person of ordinary firmness from posting comments against the municipality. Anyone business owner in Adrian could be run out of town for engaging in protected speech.

450. The adverse action taken by Defendants was motivated, at least in part, by Plaintiff Hernandez's protected conduct.

    a. After M.S.C.3's suspension, Defendant Jacobson told Plaintiff Hernandez that her posts had offended some so he did not believe M.S.C.3 would get its permit back.

    b. Defendant Henagan told Plaintiff's counsel that Plaintiff Hernandez's posts would make it more difficult to resolve her issue.

451. Plaintiff Nicole Hernandez was harmed by this First Amendment retaliation by Defendants.

## COUNT FIVE - DENIAL OF EQUAL PROTECTION

452. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

453. Defendant employees denied Plaintiff the equal protection of the law, as guaranteed by US Const amend XIV, § 1 and Const 1963, art 1, § 2.

454. Defendants created and acted pursuant to an irrational, arbitrary and capricious policy to refuse to work with Plaintiff Hernandez or Plaintiff M.S.C.3 and this was unrelated to public health and safety when compared to other businesses of a similar nature, depriving Plaintiffs of the equal protection of the law.

455. "The Equal Protection Clause requires that those similarly situated should be treated alike. Under the Equal Protection Clause, an individual can bring a claim for the selective

enforcement of an otherwise valid law or regulation. There are three type of selective enforcement claims" including "(2) those brought by individuals who claim they were punished for exercising a constitutionally protected right," and:

> (3) those brought by individuals who are not members of a protected class and are not alleging an infringement of a constitutionally protected right but rather claim to be a 'class of one' and allege that the government intentionally treated them 'differently from others similarly situated and that there [was] no rational basis for the difference in treatment.

*Duchane*, 249 F.Supp.2d 880 at 897 (internal citation omitted).

456. Plaintiff Hernandez exercised her First Amendment right to free speech and criticized the operation of the Adrian government. Thereafter, Defendants completely and unreasonably shut down any attempt that Plaintiff Hernandez made to get her permit unsuspended. This behavior was meant to punish Plaintiff Hernandez for the exercise of her protected right.

457. Additionally, Defendants selectively enforced their ordinance regarding medical marijuana facility permitting, strictly enforcing it with Plaintiffs but giving significant leeway and providing options to other similarly situated businesses.

458. Defendants were willing to enter into an agreement with Oasis (See **Exhibit 43**) but, as detailed above, never provided Plaintiffs any opportunity to enter into such an agreement.

459. Defendants claimed Plaintiff did not provide updates during its appeal process and stated this as 1 reason the suspension remained, but M.S.C.3 did provide updates several occasions, and, moreover, Oasis' failure to update as explained in Exhibit 43 did not result in a permanent suspension of Oasis' permit.

460. Moreover, the city acknowledged the updates given by Oasis and was more than willing to work with them while treating Plaintiffs essentially the opposite.

461. Plaintiff M.S.C.3 was denied equal protection because Defendants intentionally and arbitrarily discriminate against it - it was intentionally treated differently from other similarly situated facilities and there was no rational basis for the difference in treatment. *Village of Willowbrook v Olech*, 528 US 562, 564 (2000).

## COUNT SIX - 42 USC § 1983

462. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

463. Plaintiff's constitutionally protected rights that Defendants violated include:

   a. The right to liberty and property protected in the Due Process Clause of the Fifth and Fourteenth Amendments;

   b. The right to fair and equal treatment guaranteed by the Equal Protection Clause of the Fourteenth Amendment, and;

   c. The right to freedom of speech guaranteed by the First Amendment.

464. Defendant employees, acting under color of state law, granted Plaintiff a permit to operate a provisioning center in the City of Adrian, thereby establishing Plaintiff's property interest in said permit, *Bundo v Walled Lake*, 395 Mich 679; 238 NW2d 154 (1975).

465. Plaintiffs possessed a liberty interest in operating the provisioning center in accordance with Michigan law and thereby to pursue their chosen occupation, which can not be arbitrarily denied by the state. See *Hillside Productions v Duchane*, 249 F.Supp.2d

880, 897 (E.D.Mich. 2003) (citing *R.S.S.W., Inc. v. City of Keego Harbor*, 18 F.Supp.2d 738 (E.D.Mich. 1998)).

466. In granting the permit, Defendant employees gave rise to duties on their part to ensure the constitutionally protected rights identified above were satisfied when depriving Plaintiff of that property.

467. Defendant's decision to suspend and not renew Plaintiff's permit was arbitrary, capricious, without authority, and not based on violation of local ordinances or state law.

468. Plaintiff was not notified of Defendant's intent to take such an action, nor was Plaintiff afforded a hearing on the matter until after the fact. Plaintiff was not provided with rudimentary due process.

469. Defendant employees, acting under color of state law, denied Plaintiff the equal protection of the law, as guaranteed by US Const amend XIV, § 1, when they refused to work with Plaintiff and this was unrelated to public health and safety when compared to other businesses of a similar nature.

470. Defendant employees, acting under color of state law, denied Plaintiff the equal protection of the law by completely and unreasonably shutting down any attempt that Plaintiff Hernandez made to get her permit unsuspended as punishment after Plaintiff Hernandez exercised her First Amendment right to free speech and criticized the operation of the Adrian government on social media.

471. Defendant employees, acting under color of state law, denied Plaintiff the equal protection of the law by selectively enforcing their ordinance regarding medical marijuana facility permitting, strictly enforcing it with Plaintiffs but giving significant

leeway and providing options to other similarly situated businesses.

472. There was intentional and arbitrary discrimination because Plaintiff was intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment.

473. Defendant employees, under color of state law, retaliated against Plaintiff for owner Nicole Hernandez's exercise of her 1st Amendment rights.

474. The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech[.]" US Const, Am I. The 1963 Michigan Constitution provides: "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const 1963, art 1, § 5.

475. Plaintiff Hernandez engaged in protected conduct, an adverse action was taken against her that would deter a person of ordinary firmness from engaging in that conduct, and the adverse action was motivated, at least in part, by the protected conduct.

476. Defendant employees actions are a direct and proximate cause of the deprivation of Plaintiff's rights and their losses.

477. "'[S]elective enforcement intended to discourage or punish the exercise of a constitutional right, especially the right to criticize the government, is sufficient basis for § 1983 relief.'" *Duchane*, 249 F.Supp.2d 880 at 898 (internal citation omitted).

478. Plaintiff Hernandez exercised her First Amendment right to free speech and criticized the operation of the Adrian government. Thereafter, Defendants completely and

unreasonably shut down any attempt that Plaintiff Hernandez made to get her permit unsuspended. This behavior was meant to punish Plaintiff Hernandez for the exercise of her protected right.

479. Plaintiff has established its claim under 42 USC § 1983 because Plaintiff was deprived of its liberty and property and its constitutional rights were violated during the course of this, and the action of Defendants in violating that protected right was under color of state law. *Gomez v Toledo*, 446 US 635 (1980); *United of Omaha Life Ins Co v Solomon*, 960 F2d 31, 33 (6th Cir 1992).

480. Furthermore, the violation of Plaintiff's constitutional rights was caused by a policy or custom of the municipality (see generally *Johnson v Vanderkooi*, 502 Mich 751, 918 NW2d 785 (2018)).

481. Defendant City of Adrian created a policy of treating Plaintiff Hernandez and her business Plaintiff M.S.C.3 differently than any other permit-holder. Defendant worked with Oasis and cultivated a good relationship with other permit-holders, but denied these things to Plaintiffs.

482. Additionally, Defendant City of Adrian created a policy of suspending permits, which had been issued by the Commission, at meetings of department heads prior to providing notice to the permit holders and without providing prior deprivation hearings.

483. As explained by Defendant Henagan:

> [I]t became necessary to determine how the provisional permit applications and actual permits would be affected by state actions. After collaboration with multiple city departments, the city administrator and myself, the decision was made to administratively suspend any permit who's holder has been denied by the state.

(See **Exhibit 22**). I.e. after collaboration between multiple city departments including the city administrator and the city attorney, they created a policy to administratively deny permits without due process.

484. Defendant Henagan also described the city policy of deeming permits issued by the Commission to be "provisional permits" - another attempt to deny due process: "It has also been asserted that an administrative suspension is not allowable under our ordinance. However, these are provisional permits, issued at the discretion of the city, not a permit by right." (Id.)

485. The policy to subvert due process is evidenced in Defendant's statement: "the decision was made to administratively suspend any *permit* who's holder has been denied by the state." (Id.). She states permit, not provisional permit.

486. The policy to subvert due process is also apparent through language added to the Adrian ordinance through one of Defendant Henagan's amendments, which states that:

> The issuance of any permit or renewal permit pursuant to this chapter shall not confer any vested rights or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval.

Adrian Code of Ordinances § 46-502(b)

487. That Defendant issued the permit does not mean that it can subvert the constitutional protection by adding a disclaimer: "the mere fact that an interest exists by the grace of the government no longer precludes that interest from being treated as a 'property' right." *Bundo*, 395 Mich at 692.

488. While § 46-502(b) states a permit is only valid for a year and there should be no expectation of renewal, as in *Bundo*:

> The expenditures made by proprietors of establishments...attest to the fact that something in the nature of an understanding exists that once a license is granted a licensee will be permitted to operate his establishment for more than one year. Were the practice any different, no one would take the risk of opening such an establishment or making the necessary expenditures.

*Id.* at 694.

489.  Big-money marijuana business Fluresh in their letter to Adrian does not seem to have any fears that its permit will not continuously be renewed. (See **Exhibit 32**).

490.  The letter states "Fluresh's large investment in Adrian is premised on the assumption that the City will not opt out of Michigan's recreational marihuana marketplace." (Id.) Presumably, it was also premised on the assumption that its permit would continuously be renewed and that it would receive a recreational permit without issue.

491.  Furthermore, Defendant City of Adrian created a policy of catering to big-money, favored marijuana businesses by denying equal protection under the law to those without as much wealth or influence. This is evidenced by:

    a.  the meeting with cherry-picked permit-holders organized by Defendant Connor and Defendant Henagan;

    b.  that at the meeting and via letter afterwards the big-money permit holders felt emboldened to tell Defendant Henagan that if the City did not vote in recreational marijuana that they would have to move their facility (See **Exhibit 32**);

    c.  the advocacy Defendant Henagan does on behalf of the big-money, favored businesses at the January 7, 2019 pre-meeting to the Commission meeting.[25]

492.  Defendant's policy and customs directly led to Plaintiff's constitutional violations:

---

[25] https://www.facebook.com/wlen1039/videos/282887899038678/?v=282887899038678

a. Defendant's policy of denying equal protection by treating Plaintiffs differently than any other permit-holder is the proximate result of Plaintiffs' loss of liberty and property as it resulted in Defendants' refusal to unsuspend Plaintiff's permit or to consider Plaintiff's renewal application.

b. Defendant's policy of administratively suspending permits at a meeting of department heads without providing notice is the proximate cause of Plaintiff's denial of due process.

c. Defendant's policy of catering to big-money, favored marijuana businesses by denying equal protection under the law to those without as much wealth directly led to the suspension of Plaintiff's permit and the failure to renew its permit.

493. Moreover, Defendant City of Adrian acted with deliberate indifference to the obvious risk that the failure to take a different course of action would cause the specific kind of injury alleged, i.e. that hiring a city attorney fresh out of law school and lowering municipal qualifications in order to hire her rather than hiring an experienced city attorney that met the municipal qualifications could result in constitutional violations. *Johnson*, 502 Mich at 792.

494. Upon information and belief, Defendant Henagan was not qualified for the position as City Attorney as she had no municipal law experience and in fact the city had to lower its qualifications in order to hire her.

495. Upon information and belief, this caused her to violate Plaintiffs' constitutional rights because she did not know how to properly act as city attorney.

496. The city hired Defendant Henagan with deliberate indifference to the risk that hiring

an inexperienced and unqualified city attorney could lead to serious and repeated constitutional violations of those interacting with the City.

## COUNT SEVEN - INJUNCTIVE RELIEF

497. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

498. While an injunction is primarily a preventive tactic aimed at prohibiting future acts or stopping activities in progress, an injunction may be ordered compelling a party to undo the wrong a party has done or take other affirmative action. *Van Buren Pub Sch Dist v Wayne Circuit Judge*, 61 Mich App 6, 232 NW2d 278 (1975) (reversed for other reasons) (school district ordered to take affirmative steps to enable hiring of employees).

499. Plaintiffs seek an Order enjoining Defendants from taking any action to interfere with M.S.C.3 regarding the certificate of occupancy (See **Exhibit 3.5**) and provisioning center permit (See **Exhibit 17**) previously issued by Defendant, and the original Attestation I (See **Exhibit 3**) signed by Defendant employees.

500. Furthermore, Plaintiff requests that this Court order Defendant to undo the wrong it has done by reissuing Plaintiff's permit.

501. Justice requires that this Court Order the injunctions requested.

502. Plaintiff has no adequate remedy at law.

503. Unless Defendant is enjoined from denying Plaintiff's use of the certificate of occupancy, provisioning center permit, and Attestation I previously issued and signed by Defendant, and if it is not ordered to undo the wrong it has done, Plaintiff will be irreparably harmed by (a) substantial loss of revenue (b) the loss of client confidence,

loss of goodwill, and loss of business reputation, and (c) complete failure of Plaintiff as a business.

504. In the absence of a preliminary injunction, Plaintiff would be harmed by the loss of its property interest more than Defendant would be by the granting of such relief.

505. No harm to the public interest will occur if the preliminary injunction is issued.

506. Plaintiff receiving the relief requested will not cause Defendant harm. Defendant initially approved of Plaintiff receiving a permit and the state has fully licensed Plaintiff - it is qualified to be an operational provisioning center.

507. Plaintiff simultaneously with this Complaint/Petition filed a Motion for Temporary Restraining Order, Show-Cause Order, and Preliminary Injunction.

## COUNT EIGHT - INVERSE CONDEMNATION: UNCOMPENSATED-TAKING

508. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

509. The Fifth Amendment of the United States Constitution and Article 10 of the Michigan Constitution both prohibit the taking of private property for public use without just compensation.

510. Plaintiff had a vested property right in its permit. See *Bundo v Walled Lake*, 395 Mich 679, 693-695; 238 NW2d 154 (1976).

511. Plaintiff had a real property interest in its lease agreement. See *Fidelity Trust Co v Wayne Co*, 244 Mich. 182; 221 N.W. 111 (1928).

512. Under Michigan law, a "taking" for purposes of inverse condemnation means that governmental action has permanently deprived the property owner of any possession or

use of the property. *Hart v Detroit*, 416 Mich 488, 331 NW2d 438, 501-502 (1982).

513. Plaintiff was permanently deprived of use of its permit directly because of governmental action, i.e. the unlawful suspension and unlawful failure to renew, and therefore there was a taking of Plaintiffs' property.

514. Furthermore, plaintiff was deprived of the use of its property on 717 Division St., which plaintiff leased from February, 2018 until October 2019.

515. Due to governmental action, Plaintiff was unable to use the building during the entirety of the lease or even after the financing owner of M.S.C.3 bought the building.

516. Moreover, due to the ongoing nature of Plaintiff's appeal of the initial denial of its state application, Plaintiff was unable to use the building for any other purpose during its lease.

517. The government's abuse of power in denying plaintiff's renewal and unlawful suspension of the permit effectively rendered plaintiff's property lease useless, and adversely affected plaintiff's real property interest in the lease.

518. When such a taking has occurred, the Michigan Constitution entitles the property owner to just compensation for the value of the property taken. *Id.,* p. 494.

519. The government abused its powers by affirmatively suspending Plaintiff M.S.C.3's permit without lawful authority or due process. *See Blue Harvest, Inc v Department of Transp*, 288 Mich App 267, 277–278, 792 NW2d 798 (2010) (summarizing the basic elements a plaintiff must establish in an inverse condemnation case).

520. The government abused its powers in instituting a regulatory taking, by depriving plaintiff of all economically viable use of the property, as plaintiff was unable to use the

building per the lease agreement as a result of the government's actions. See *Adams Outdoor Adver. v. City of E. Lansing*, 463 Mich. 17 (2000).

521. The government abused its powers by affirmatively refusing to renew Plaintiff's permit when it unlawfully treated Plaintiff's renewal application as a new application and unlawfully denied the application. *Blue Harvest, supra.*

522. The government's actions were not just a substantial cause but were the sole cause of the loss of the permit's value and of any economically viable use of the property. *Id.*

523. The loss of the value of the permit and of any economically viable use of the property was a direct effect caused by the acts of the government. *Id.* (internal citation omitted).

524. Plaintiff is entitled to just compensation for the value of its property.

## COUNT NINE - UNCONSTITUTIONALLY VAGUE ORDINANCE

525. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

526. Part of the relief Plaintiff M.S.C.3 is requesting is to be permitted in Adrian to operate a provisioning center.

527. Defendant's Commercial Medical Marihuana Facilities and Adult Use Establishments ordinance is void due to its unconstitutional vagueness under the Fourteenth Amendment of the United States Constitution.

528. As the Michigan Court of Appeals has explained, "there are three ways in which an enactment may be found unconstitutionally vague: '(1) failure to provide fair notice of what conduct is prohibited, (2) encouragement of arbitrary and discriminatory enforcement, or (3) being overbroad and impinging on First Amendment freedoms.'"

*People v City of Grand Rapids v Gasper*, 314 Mich App 528, 888 NW 2d 116, 121 (2016) (internal citations omitted).

529.    Adrian's Commercial Medical Marihuana Facilities and Adult Use Establishments ordinance encourages arbitrary and discriminatory enforcement.

530.    The Michigan Court of Appeals has stated that the Court looks to whether the act offers standards for enforcement and administration of the law in order to decide whether an act encourages arbitrary and discriminatory enforcement, and examines whether the defendant has unlimited discretion in enforcement. *Kenefick v. City of Battle Creek*, 284 Mich. App. 653 (2009).

531.    Based on the standard articulated by the Court of Appeals, the ordinance provides no standards for enforcement, allowing Adrian unlimited discretion.

## *Civil Liability*

532.    Regarding "Conduct of permit holder," the ordinance states that "[f]ailure to comply with the requirements contained in this *article* is a civil infraction." Sec. 46-508(g) (emphasis added).

533.    Additionally, the ordinance states under "Violations municipal civil infraction," in relevant part, that:

> [a]ny person and/or entity in violation of any provision of this article or failure to comply with any of the requirements of this article, including the operation of a marihuana facility, establishment, or other business without a permit issued pursuant to this article, is responsible for a municipal civil infraction violation.

Sec. 46-512.

534.    The act provides no standards for enforcement of these sections.

535.    One of the requirements of the article is that:

> A permit holder must submit to the city a copy of their valid state license within 180 days of issuance of the permit under this article. Failure to provide such proof may result in suspension or revocation of the permit.

Sec. 46-502(e).

536.    Furthermore, the Article states:

> If a permit holder has not obtained a valid state license at the end of 180 days, they may request an extension of time on a form provided by the city clerk. The city clerk may require additional/supplemental information to confirm the reasons for delay. Failure to provide the required information may result in denial of extension. Extensions will be granted or denied by the city clerk. The granting of an extension shall not exceed 120 days or the expiration date of the current permit.

Sec. 46-502(f)

537.    Once an applicant has submitted a completed application to the state, it has no control over how fast the state grants or denies it a license, especially if the applicant was initially denied and is appealing that decision.

538.    Per Sec. 46-502(e) of the Adrian ordinance, failure to provide a license within 180 days may result in suspension or revocation of the permit, or per Sec. 46-502(f) if requested an extension will be granted or denied by the city clerk, but per 46-508(g) and Sec. 46-512, the failure to provide a license within 180 days may result in a civil infraction.

539.    There is no standard set forth regarding administration and enforcement of these sections i.e. when in this situation the Defendant will grant or deny an extension, and if it

is denied when it will issue a civil citation, or suspend the permit, or revoke the permit, or some combination thereof.

### *Duration of permit*

540.   This ordinance states under "Generally," in part, that:

> The issuance of any permit or renewal permit pursuant to this article shall not confer any vested rights, property or other right, duty, privilege or interest in a permit of any kind or nature whatsoever including, but not limited to, any claim of entitlement or reasonable expectation of subsequent renewal on the applicant or permit holder and *shall remain valid for one year* immediately following its approval.

Sec. 46-502(b) (emphasis added).

541.   The ordinance states under "Issuance or denial of new or renewal permit" that "[a] permit will lapse and be void if such other required permits, valid state licensing, and approvals are not diligently pursued to completion, but in any event no later than 180 days after the permit is issued. Sec. 46-507(h).

542.   The ordinance also states:

> If a permit holder has not obtained a valid state license at the end of 180 days, they may request an extension of time on a form provided by the city clerk. The city clerk may require additional/supplemental information to confirm the reasons for delay. Failure to provide the required information may result in denial of extension. Extensions will be granted or denied by the city clerk. The granting of an extension shall not exceed 120 days or the expiration date of the current permit.

Sec. 46-502(f)

543.   A permit when issued is valid for a year, but it will automatically lapse and be void after 180 days if a state license is not received, but an extension might be granted by the city clerk, although the effect of this is not clear.

544. The city administration has unfettered discretion to say a permit holder is not being diligent in pursuing a state license and to deem their permit "void" and "lapsed" after 180 days.

545. The city clerk has the unfettered discretion to grant or deny a 180 day extension.

546. The effect of an extension is not clear given that "[a] permit will lapse and be void if such other required permits, valid state licensing, and approvals are not diligently pursued to completion, *but in any event no later than 180 days after the permit is issued.* Sec. 46-507(h) (emphasis added).

    a. Presumably, if an extension is granted the city administration would not deem that permit "void" and "lapsed" at the 180 day mark.

    b. However, per Sec. 46-507(h) they *could* deem such permit "void" and "lapsed."

    c. Defendants could enforce these sections at their whim based on, as in Plaintiff's situation, who they do or do not like or based on which applicants have the deepest pockets.

547. There is no standard set forth regarding administration and enforcement of these sections.

548. Defendants essentially set up a system where a permit is assured for 180 days - even though it states it is valid for a year - but after that if you have not received your state license the Defendants may or may not deem your permit void, based completely on arbitrary decisions by Defendant employees.

549. This is moreover evidenced by the fact that, regarding renewal applications, the ordinance states that "[a]pplications for renewal of permits issued in 2018 shall qualify

for an exception to subsection 46-505(c)." Sec. 46-506(b)(1).

    a. Plaintiff held a permit issued in 2018 and she was forced to submit a permit renewal application, although the city treated this application as a new application not a renewal.

    b. That this section is in the ordinance is evidence that Defendants did not make certain permit holders file a renewal application in 2018 or at least did not make them meet all of the application requirements.

550. These sections encourage arbitrary and discriminatory enforcement.

## *Issuance of permit*

551. This ordinance states under "Definitions" that "[p]ermit means a current, valid permit for a commercial marihuana facility *issued pursuant to this article*, granted to a permit holder valid for a specific permitted premises and a specific permitted property." Sec. 46-501 (emphasis added).

552. It is not clear what it means to have a permit issued pursuant to this article as there are several conflicting sections, which could lead to Defendants arbitrarily deeming someone to have been issued or to not have been issued a permit.

553. This ordinance states under "Issuance or denial of new or renewal permit" that:

> *"[a] permit means only that the applicant has submitted a valid application for a marihuana facility, establishment, or other business permit,* and that the applicant shall not locate or operate a marihuana facility without obtaining all other permits and approvals required by all other applicable ordinances and regulations of the city, as well as, all statute and regulations of the State of Michigan...[internal citations omitted], and all other applicable rules promulgated by the State of Michigan.

Sec. 46-507(b) (emphasis added).

554.    However: the ordinance also states that:

> [t]he city commission shall approve or deny a permit within 120 days of receipt of the completed application and fees. The processing time may be extended upon written notice by the city for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. *No permit is valid until final approval of the city commission.*

Sec. 46-507(k) (emphasis added).

555.    These sections encourage arbitrary and discriminatory enforcement.

556.    Furthermore, in Sec. 46-505 "Requirements for permit application submission," after a long list of requirements the ordinance states any application must contain "[a]ny other information deemed by the city to be required for consideration of a permit. Sec. 46-505(c)(12).

557.    Similarly, the ordinance states that "[t]he city clerk shall not recommend a permit for approval unless all of the following conditions have been met..." and the last item on that list is, "[a]ll additional information deemed by the city to be required for consideration of a permit." Sec. 46-507(e)(6).

558.    These sections encourage arbitrary and discriminatory enforcement as there is no limit to the potential information the city could deem required for an application from a business they did not like.

559.    Furthermore, the ordinance states that:

> [t]he city has no obligation to process or approve any incomplete application. Any time period provided under this article shall not commence until the city receives a completed application, as determined by the city clerk. A determination of a complete application shall not prohibit the city from requiring supplemental information. The city may delay an application while additional

76 of 84

information is requested including, but not limited to, requests for additional disclosures and documentation to be furnished to the city clerk.

Sec. 46-507(l).

560. Since there is no limit to the potential information the city could deem to be required and since there is no mechanism for an applicant to learn what the city has deemed required for its application, then, per Sec. 46-507(1), Defendant employees with unfettered discretion could choose to not review applications of business they do not like simply by 1) requiring additional information for the application and not telling the business owners, or 2) creating an endless list of additional information that is required for the application.

561. There is no standard set forth regarding administration and enforcement of these sections.

### *Renewal of permit*

562. This ordinance states under "Generally," in part, that:

> The issuance of any permit or renewal permit pursuant to this article shall not confer any vested rights, property or other right, duty, privilege or interest in a permit of any kind or nature whatsoever *including, but not limited to, any claim of entitlement or reasonable expectation of subsequent renewal on the applicant or permit holder* and shall remain valid for one year immediately following its approval.

> Sec. 46-502(b) (emphasis added).

563. This section in itself encourages arbitrary and discriminatory enforcement: This section states that no permit holder has a reasonable expectation of subsequent renewal, which gives Defendants unfettered discretion to renew some permits but not others

77 of 84

without reason.

564. Evidence has shown that Adrian is willing to work with certain companies and presumably these companies will continue time after time to have their permit renewed.

565. According to this section, Defendants could arbitrarily refuse to renew a permit held by a company with shallow pockets knowing a company with deep pockets is seeking that permit.

566. Furthermore, the ordinance states that "[i]f written approval is given by each individual, department, or entity in subsection (e), the city clerk *shall* recommend the permit or renewal of an annual permit to the city commission for approval." Sec. 46-507(g) (emphasis added).

567. However, the ordinance also states that:

> The city clerk shall not recommend a permit for renewal unless all of the following additional conditions have been met:
> (1) The applicant possesses the necessary state license or approvals, including those issued pursuant to all applicable state and local laws, rules, or ordinances.
> (2) The applicant has operated the marihuana facility, establishment or other business in accordance with the requirements of this article.
> (3) The marihuana facility, establishment, or other business has not been declared a public nuisance.
> (4) The applicant is operating the marihuana facility, establishment or other business in accordance with federal, state, and local laws and regulations.

Sec. 46-507(f).

568. These sections encourage arbitrary and discriminatory enforcement as a permit holder liked by Defendants could be recommended for renewal under Sec. 46-507(g) whereas a permit holder disliked could be not recommended for renewal under Sec. 46-507(f).

## *Revocation/suspension of permit*

569. The ordinance states that "[a] permit applied for or issued may be denied or revoked on any basis provided under this article including....failure to submit a complete application under section 46-605." Sec. 46-511(b)(1).

570. As explained above, in Sec. 46-505 the ordinance states any application must contain "[a]ny other information deemed by the city to be required for consideration of a permit. Sec. 46-505(c)(12).

571. Consequently, as there is no limit to the potential information the city could deem required and there is no mechanism for an applicant to learn what the city has deemed required for its application, a permit holder seeking renewal could have its application denied or its permit revoked for submitting an incomplete application.

572. These sections encourage arbitrary and discriminatory enforcement.

573. The ordinance also states that "[a] permit applied for or issued may be denied or revoked on any basis provided under this article including.... "[f]ailure of the permit holder or the marihuana facility, establishment, or other business to obtain or maintain a license or approval from the state pursuant to the state or other laws." Sec. 46-511(b)(5).

574. As explained above, per Sec. 46-502(e) of the Adrian ordinance, failure to provide a license within 180 days may result in suspension or revocation of the permit, or per Sec. 46-502(f) if requested an extension will be granted or denied by the city clerk, but per 46-508(g) and Sec. 46-512, the failure to provide a license within 180 days may result in a civil infraction.

575. There is no standard set forth regarding administration and enforcement of these

sections i.e. when in this situation the Defendant will grant or deny an extension, and if it is denied when it will issue a civil citation, or suspend the permit, or revoke the permit, or some combination thereof.

576. Moreover, the ordinance states that "[a] permit applied for or issued may be denied or revoked on any basis provided under this article including…[t]he marihuana facility, establishment or other business is determined by the city to have become a public nuisance or otherwise is operating in a manner detrimental to the public health, safety or welfare." Sec. 46-511(b)(6).

577. It is not explained what could be deemed detrimental to the public health, safety or welfare, and public nuisance is not defined.

578. This section encourages arbitrary and discriminatory enforcement as a vast array of activities could fall into this category and it does not describe how the city is to come to this determination.

## COUNT TEN - VIOLATION OF THE OPEN MEETINGS ACT

579. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

580. A public body may meet in a closed session *regarding litigation* only under the following circumstances:

> To consult with its attorney regarding trial or settlement strategy in connection with specific pending litigation, but only if an open meeting would have a detrimental financial effect on the litigating or settlement position of the public body.

MCL 15.268(e).

581. Public bodies must name the pending litigation before entering into a closed session. *Vermilya v. Delta Coll. Bd. of Trs.*, 325 Mich. App. 416 (2018).

582. In *Vermilya*, the court reasons that MCL 15.286(e) must be read in conjunction with other statutory language of the Open Meetings Act, specifically MCL 15.267(1) and MCL 15.269(1), which require the public body to update the public regarding the reason for the closed meeting exemption. *Id.* Because, under MCL 15.286(e), the public body can only discuss specific pending litigation, the Legislature intended the specific litigation to be identified to justify the public body's decision to hold a closed meeting. *Id.* at 424.

583. The Adrian City Commission violated MCL 15.286(e) by failing to identify the specific pending litigation regarding the closed meetings, as alleged above.

584. Only when discussing the matter at an open meeting would have a detrimental financial effect on the public body's litigating or settlement position may a closed session occur. MCL 15.268(e).

585. Furthermore, the minutes from the Commission meetings of November 5, 2018 and April 1, 2019 do not contain the roll call vote or the purpose or purposes for calling the closed session.

586. Under the Open Meetings Act, the roll call vote and the purpose or purposes for calling a closed session shall be entered into the minutes of the meeting at which the vote is taken. MCL 15.267(1).

587. If the Adrian City Commission is found to be in violation of the Open Meetings Act, since Plaintiff has commenced this civil action against the Adrian City Commission for

injunctive relief, Plaintiff is entitled to recover court costs and actual attorney fees for the action. MCL 15.271(4).

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff petitions this Court for Declaratory and Injunctive Relief and for a Writ of Mandamus ordering that the actions specified below be taken. Plaintiff requests that this Court:

a. Assert jurisdiction over this matter;

b. Order a speedy hearing in this case and advance it in the calendar under MCR 2.605(D);

c. Enter a declaratory judgment in favor of Plaintiffs and against Defendants, declaring as follows:

    i. Defendant's amendment to its ordinance under which Plaintiff's permit was suspended is unenforceable because it was illegally passed contrary to the City Charter.

    ii. At the time Plaintiff's permit was suspended, the last medical marijuana facility licensing ordinance that was properly passed was the one passed on April 16, 2018.

    iii. M.S.C.3's permit was unlawfully suspended.

    iv. M.S.C.3's application for renewal was unlawfully treated as a new application.

d. Issue a writ of mandamus compelling Defendant, by a date certain, to unsuspend and reissue Plaintiff's permit and to only take action upon the permit pursuant to valid laws.

e. Order the Defendant to appear pursuant to MCR 3.305(C), to show cause why a writ of mandamus should not be issued.

82 of 84

f.  Enter an Order enjoining Defendants from taking any action to interfere with M.S.C.3 regarding the certificate of occupancy (See **Exhibit 3.5**) and provisioning center permit (See **Exhibit 17**) previously issued by Defendant, and the original Attestations I (See **Exhibits 3**) signed by Defendant employees.

g.  Enter an Order compelling Defendant to undo the wrong it has done by unsuspending and reissuing Plaintiff's permit.

h.  Award to Plaintiffs damages in an amount deemed appropriate by the Court when considering all of Plaintiff's actual losses.

i.  Award Plaintiff damages for violations of the Michigan Constitution.

j.  Award Plaintiff damages under 42 US § 1983.

k.  Award Plaintiffs punitive damages against Defendant government officials as a result of the reckless indifference with which they violated Plaintiffs' right to due process of law, equal protection under the law, and to be free from retaliation from exercise of the First Amendment.

l.  Award Plaintiff just compensation for the value of the property that the government took without compensation.

m.  Award to Plaintiffs the reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees.

n.  Enjoin the City Commission from further violations of the Open Meetings Act.

o.  Award Plaintiff court costs and actual attorney fees under the Open Meetings Act.

p.  Grant such other and further declaratory and equitable relief this Court deems appropriate, just and proper to protect Plaintiffs from further harm by Defendant.

I declare, under the penalties of perjury, that this instrument has been examined by me and that the contents of this petition are true to the best of my information, knowledge, and belief.

**M.S.C.S**

Date: 7-14-2020   BY: _____
Nicole Hernandez its member

**CANNABIS COUNSEL®**
a registered Trademark and d/b/a of
Rivertown Law Firm, PLC

Date: 7-15 2020

BY: _____
Julia A. Gilbert (P74262)
Cannabis Counsel®
Attorneys for Plaintiffs

ARTICLE XI. - COMMERCIAL MEDICAL MARIHUANA FACILITIES AND ADULT USE ESTABLISHMENTS

DIVISION 1. - GENERALLY

Sec. 46-500. - Legislative intent.

The purpose of this article is to implement the provisions of the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016, and the Michigan Regulation and Taxation Act Initiated Law 1 of 2018, which authorizes the licensing and regulation of commercial medical marihuana facilities or commercial adult use establishments; affords the city the option to allow commercial medical marihuana facilities or commercial adult use establishments; and the authority to regulate commercial medical marihuana facilities or commercial use establishments by requiring a permit and compliance with requirements as provided in this article, in order to maintain the public health, safety and welfare of the public.

Nothing in this article is intended to grant immunity from criminal or civil prosecution, penalty, or sanction for the cultivation, manufacture, possession, use, sale, or distribution of marihuana, in any form, that is not in compliance with the Michigan Medical Marihuana Act, Initiated Law of 2008, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; the Michigan Marihuana Tracking Act, MCL 333.27901 et seq.; the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq.; and all other applicable rules promulgated by the State of Michigan.

As of the effective date of this article, marihuana remains classified as a Schedule 1 controlled substance under the Federal Controlled Substances Act, 21 U.S.C. § 801 et seq., which makes it unlawful to manufacture, distribute, or dispense marihuana, or possess marihuana with the intent to manufacture, distribute, or dispense marihuana. Nothing in this article is intended to grant immunity from any criminal prosecution under federal laws.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 6-7-2018; Ord. No. 19-001, 6-3-2019)

Sec. 46-501. - Definitions.

For the purpose of this article the following words, terms, and phrases shall have the meanings ascribed to them in this section, except when the context clearly indicates a different meaning.

Any term defined by the Michigan Medical Marihuana Act, MCL 333.2621 et seq., shall have the definition given in the Michigan Medical Marihuana Act.

Any term defined by the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., shall have the definition given in the Michigan Medical Marihuana Facilities Licensing Act.

Any term defined by the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq., shall have the definition given in the Michigan Medical Marihuana Tracking Act.

Any term defined by the Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 et seq., shall have the definition given in the Michigan Regulation and Taxation of Marihuana Act.

*Adult use* means recreational marihuana as defined in the Michigan Regulation and Taxation of Marihuana Act.

*City* means the City of Adrian.

*Commercial marihuana facility* means all types of medical or recreational facilities.                    Attachment 1

*Department* means the Michigan State Department of Licensing and Regulatory Affairs or any authorized designated Michigan agency authorized to regulate, issue or administer a Michigan license for a commercial medical marihuana facility.

*Enclosed building* means a combination of materials forming a structure affording a facility or shelter for use or occupancy by individuals or property in which a proper ventilation system allows for all windows, entrances, and exits to safely remain closed, with the exceptions of normal entry and exit of the building for business purposes, and safety or emergency purposes i.e. fire. Building includes a part or parts of the building and all equipment in the building. A building shall not be construed to mean a building incidental to the use for agricultural purposes of the land on which the building is located.

*Grower* or *grower facility* means a commercial entity that cultivates, dries, trims, or cures and packages marihuana for sale to a processor or provisioning center. Grower facilities are divided into classes: class A facility—up to 500 plants; class B facility—up to 1,000 plants; class C facility—up to 1,500 plants, and excess grower—expansion of grower who already holds five adult use class C grower licenses.

*License* means a current, valid license for a commercial medical marihuana facility issued by the State of Michigan.

*Licensee* means a person holding a current, valid Michigan license for a commercial medical marihuana facility.

*Marihuana* means that term as defined in Section 7106 of the Public Health Code, 1978 PA 368, MCL 333.7106.

*Marihuana plant(s)* means any plant of the species Cannabis sativa L.

*Medical marihuana* means that term as defined in the Public Health Code, MCL 333.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; and the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.

*Medical marihuana facility(s)* means any facility, establishment and/or center at a specific location which is licensed under this chapter to operate under the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., including a provisioning center, grower, processor, safety compliance facility, and secure transporter. The term does not include or apply to a "primary caregiver" or "caregiver" as the term is defined in the Michigan Medical Marihuana Act, MCL 333.26421 et seq.

*Permit* means a current, valid permit for a commercial marihuana facility issued pursuant to this article, granted to a permit holder valid for a specific permitted premises and a specific permitted property.

*Permit holder* means the person that holds a current, valid permit under this article.

*Permitted premises* means the particular building or buildings within which the permit holder will be authorized to conduct the facility's activities pursuant to the permit.

*Permitted property* means the real property comprised of the lot, parcel or other designated unit of real property upon which the permitted premises is situated.

*Person* means a natural person, company, partnership, profit or non-profit corporation, limited liability company, or any joint venture for a common purpose.

*Processor* or *processor facility* means a commercial entity that purchases marihuana from a grower and that extracts resin from the marihuana or creates a marihuana-infused product for sale and transfer in packaged form to a provisioning center.

*Provisioning center* or *retail establishment* means a commercial entity that purchases marihuana from a grower or processor and sells, supplies, or provides marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers. Provisioning center or retail establishment includes any commercial property where marihuana is sold at retail to registered qualifying patients or registered primary caregivers. The term does not include or apply to a non-commercial location used by a primary caregiver to assist a qualifying patient connected to the caregiver through the department's marihuana registration process in accordance with the MMMA.

*Recreational marihuana* means that term as defined in the Public Health Code, MCL 333.1101 et seq. and Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 et seq.

*Recreational marihuana facility(s)* means any facility, establishment and/or center at a specific location which is licensed under this chapter to operate under the Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 et seq., including a provisioning center, grower, excess grower, processor, safety compliance facility, secure transporter, marihuana event organizer, temporary marihuana event, and designated consumption establishment.

*Safety compliance facility* means a commercial entity that receives marihuana from a medical marihuana facility or registered primary caregiver, tests it for contaminants and for tetrahydrocannabinol and other cannabinoids, returns the test results, and may return the marihuana to the medical marihuana facility.

*School* (as defined in MCL 257.627a) means an educational institution operated by a local school district or by a private, denominational, or parochial organization. School does not include either of the following:

> (1)  An educational institution that the department of education determines has its entire student population in residence at the institution.
>
> (2)  An educational institution to which all students are transported in motor vehicles.

*Secure transporter* means a commercial entity that stores medical marihuana and transports medical marihuana between medical marihuana facilities for a fee.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 6-7-2018; Ord. No. 19-001, 6-3-2019; Ord. No. 20-002, 2-3-2020)

DIVISION 2. - PERMITS

Sec. 46-502. - Generally.

> (a)  No person shall operate a commercial marihuana facility, establishment or other business which requires state licensure, in the city without first obtaining a permit from the city clerk. Further, any permit application approved pursuant to this article should not be effective and no marihuana facility, establishment, or other business which requires state licensure may operate unless said operation is pursuant to a license or approval issued under the authorized state licensing agency.
>
> (b)  The issuance of any permit or renewal permit pursuant to this article shall not confer any vested rights, property or other right, duty, privilege or interest in a permit of any kind or nature whatsoever including, but not limited to, any claim of entitlement or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval.
>
> (c)  A permit holder may transfer a permit issued under this article to a different location upon receiving approval from the city commission. In order to request approval to transfer a permit location, the permit holder must make a written request to the city clerk, indicating the current permit location and the proposed permit

location. Upon receiving the written request, the city clerk shall refer a copy of the written request to each of the following for their approval: the fire department, the building inspection department, the police department, the zoning administrator, and the city treasurer. Prior to final approval of transfer the permit holder must submit an updated application and any supporting documents. No permit transfer shall be recommended for approval unless each individual department gives written approval that the permit holder and the proposed permit location meet the standards identified in this article, including but not limited to section 46-505, and the city clerk has determined the proposed location meets the requirements of section 46-505.

(d) A permit holder may transfer a valid permit issued under this article to a new individual or entity upon obtaining approval from the city commission. A request for transfer of a valid permit to a new individual or entity must be made in writing, to the city clerk. The permit holder must provide documentation from the state agency indicating the state license may be transferred. Upon receiving the written request the city clerk shall consider the request as a new application for a permit and the procedures set forth in section 46-505 shall be followed including submission of the non-refundable permit application fee. Application fees are non-transferable.

(e) A permit holder must submit to the city a copy of their valid state license within 180 days of issuance of the permit under this article. Failure to provide such proof may result in suspension or revocation of the permit.

(f) If a permit holder has not obtained a valid state license at the end of 180 days, they may request an extension of time on a form provided by the city clerk. The city clerk may require additional/supplemental information to confirm the reasons for delay. Failure to provide the required information may result in denial of extension. Extensions will be granted or denied by the city clerk. The granting of an extension shall not exceed 120 days or the expiration date of the current permit.

(g) If the facility is a new build/construction and State licensing has not been issued within 180 days, the permit holder may request a form from the city clerk to apply for building and/or fire inspection waivers. A waiver will be granted or denied by the city clerk. The granting of a waiver shall not exceed one year or the expiration date of the current permit.

(h) To the extent permissible under law, all information submitted in conjunction with an application for a permit or permit renewal required by this article is confidential and exempt from disclosure under the Michigan Freedom of Information Act, 1976 PA 442, MCL 15.231 et seq., including the trade secrets or commercial or financial information exemptions available under Section 13(f) of the Michigan Freedom of Information Act. Furthermore, no personal or medical information concerning the applicant shall be submitted to the medical marihuana commission.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 6-7-2018; Ord. No. 19-001, 6-3-2019)

Sec. 46-503. - Authorization and prohibition of commercial marihuana facilities/establishments in the city.

(a) The following types of commercial medical marihuana facilities are authorized to operate in the city:
  (1) Growers: class A, B, and C.
  (2) Marihuana processor.
  (3) Marihuana provisioning center.
  (4) Marihuana secure transporter.
  (5) Marihuana safety compliance facility.

(b) The following types of commercial adult-use marihuana establishments are authorized to operate in the city:

(1)   Growers: class A, B, and C and excess growers.

(2)   Marihuana processor.

(3)   Marihuana retailer.

(4)   Marihuana secure transporter.

(5)   Marihuana safety compliance facility.

(c)   The following types of commercial adult-use marihuana establishments and/or license holders are prohibited from operating in the city:

(1)   Marihuana microbusinesses.

(2)   Marihuana event organizers.

(3)   Temporary marihuana events.

(4)   Designated consumption establishments.

(Ord. No. 17-035, 12-13-2017; Ord. No. 19-013, 10-7-2019)

Sec. 46-504. - Number of facilities authorized by city.

(a)   Growers:

(1)   Class A: unlimited.

(2)   Class B: unlimited.

(3)   Class C: unlimited

Excess grower: Total of four permits, single and/or dual purpose, in the east and west industrial overlay districts combined. Specifically two excess grower permits in the east overlay and two excess grower permits in the west overlay.

(b)   Processors: unlimited.

(c)   Provisioning centers and retail establishments: unlimited, pursuant to state and local zoning regulations, maximum of ten permits, single and/or dual purpose, issued within the B-1 and B-2 districts combined, all other permits to be issued within the industrial overlay districts.

(d)   Safety compliance facilities: unlimited.

(e)   Secure transporters: unlimited.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 4-16-2018; Ord. No. 19-013, 10-7-2019; Ord. No. 20-002, 2-3-2020)

Sec. 46-505. - Requirements for permit application submission.

(a)   Every marihuana facility, establishment, or other business in the city shall be subject to the terms and provisions set forth in this article. No person shall operate a marihuana facility, establishment, or other business in the city without a current, valid permit issued by the city pursuant to the provisions of this article. The permit requirements set forth in this article shall be in addition to, not in lieu of any other licensing and/or permitting requirements imposed by any other federal, state, or local law.

(b)   Applications for permits shall be made annually. Each complete application for a permit or permits required by this article shall be made on forms provided by the city clerk.

(c)   Every applicant for a marihuana facility, establishment, or other business permit shall complete and file the application form provided by the city clerk's office. Any application missing information in any required field will be deemed incomplete and is subject to denial of the permit by the city clerk. Each question in the

application must be answered in its entirety and all the information requested and required by this article must be submitted with the application. Failure to comply with these rules and the application requirements in this article is grounds for denial of the application. An application for a commercial marihuana facility permit shall contain all of the following:

(1) Current documentation from the State of Michigan showing approved pre-qualification status for any state required commercial marihuana license or a copy of a valid state required commercial marihuana license.

(2) If the applicant is an individual, the applicant's name, date of birth, physical address, email, one or more phone numbers, including emergency contact information, and a copy of a valid unexpired driver's license or state ID for the applicant. Acceptable ID will be issued by the state in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq.; and all other applicable rules promulgated by the State of Michigan.

(3) If the applicant is not an individual, the names, dates of birth, physical addresses, email addresses, and one or more phone numbers of each stakeholder of the applicant, including designation of a stakeholder as an emergency contact person and contact information for the emergency contact person, a copy of a valid unexpired driver's license or state ID for each applicant or stakeholder of the applicant. Acceptable ID will be issued by the state in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq.; and all other applicable rules promulgated by the State of Michigan.

Additionally, if the applicant is a limited liability company, articles of incorporation of organization, internal revenue service SS-4 EIN confirmation letter, and the operating agreement or bylaws of the applicant, are required.

(4) The name and address of the proposed commercial marihuana facility and any additional contact information deemed necessary by the city clerk including name, address, and telephone number of the owner(s) of all real property where the facility is located.

(5) One of the following: (a) proof of ownership of the entire premises wherein the commercial marihuana facility is to be operated; or (b) a notarized statement from the property owner for use of the premises in a manner requiring licensure under this article along with a copy of any lease for the premises.

(6) A signed release shall be provided, on a form included with the application, permitting the city police department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any disqualifying felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other state or the United States.

(7) A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim, demand, action, legal redress or recourse against the city, its elected and appointed officials and its employees and agents for any claims, damages, liabilities, causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders,

employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the city, its elected and appointed officials, employees, attorneys, and agents.

(8)   A signed acknowledgement that all cultivation must be performed in an enclosed building.

(9)   An affidavit that neither the applicant nor any stakeholder of the applicant is in default to the city, specifically that the applicant or stakeholder of the applicant has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the city.

(10)   For each permit type the following documentation is required:

a.   Proof of a surety bond in the amount of $100,000.00 with the city listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article in a manner and surety approved by the city attorney; or, in the alternative,

b.   Proof of creation of an escrow account as follows:

1.   The account must be provided by a state or federally regulated financial institution or other financial institution approved by the city attorney based upon an objective assessment of the institution's financial stability; and

2.   The account must be for the benefit of the city to guarantee performance by licensee in compliance with this article and applicable law; and

3.   The account must be in the amount of $20,000.00 and in a form prescribed by the city attorney.

(11)   Proof of an insurance policy covering each facility and naming the city, its elected and appointed officials, employees, and agents, as additional insured parties, available for the payment of any damages arising out of an act or omission of the applicant or its stakeholders, agents, employees, or subcontractors, in the amount of (a) at least $1,000,000.00 for property damage; (b) at least $1,000,000.00 for injury to one person; and (c) at least $2,000,000.00 for injury to two or more persons resulting from the same occurrence. The insurance policy underwriter must have a minimum A.M. Best Company insurance ranking of B+, consistent with state law. The policy shall provide that the city shall be notified by the insurance carrier 30 days in advance of any cancellation.

(12)   Any other information deemed by the city to be required for consideration of a permit.

(d)   All applications shall be accompanied by a non-refundable permit application fee for each permit type. The renewal fee is established to defray the costs of the administration of this article and is set by resolution of the city commission.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 4-16-2018; Ord. No. 18-009, 6-7-2018; Ord. No. 19-001, 6-3-2019; Ord. No. 20-002, 2-3-2020)

Sec. 46-506. - Requirements for application for renewal of annual permit.

(a)   A completed application for a renewal permit must be received by the city clerk no later than 90 days prior to the expiration of the current permit. Pending applications for annual renewal or amendments of existing permits shall be reviewed, and granted or denied by the city commission prior to new permit applications being considered.

(b)   Applications for renewal of permits shall be made annually. Each complete application for a permit or permits required by this article shall be made on forms provided by the city clerk and must meet all requirements of section 46-505.

(1)   Applications for renewal of permits issued in 2018 only shall qualify for an exception to subsection 46-505(c)

(c)   All renewal applications shall be accompanied by a non-refundable permit application fee for each permit type. The renewal fee is established to defray the costs of the administration of this article, and is set by resolution of the city commission.

(Ord. No. 19-001, 6-3-2019; Ord. No. 20-002, 2-3-2020)

Editor's note— See note at § 46-507.

Sec. 46-507. - Issuance or denial of new or renewal permit.

(a)   Upon submission of an applicant's completed application, including all required information and documentation, the city clerk shall accept the application and assign it a sequential number based on the date and time the application was accepted and refer a copy of the application to each of the following for their approval: the fire department, the building inspection department, the police department, the zoning administrator, the city treasurer, and the legal department.

(b)   A permit means only that the applicant has submitted a valid application for a marihuana facility, establishment, or other business permit, and that the applicant shall not locate or operate a marihuana facility without obtaining all other permits and approvals required by all other applicable ordinances and regulations of the city, as well as, all statutes and regulations of the State of Michigan including but not limited to the Public Health Code, MCL 333.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.; the Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 et seq., and all other applicable rules promulgated by the State of Michigan.

(c)   A permit is valid only for the permit holder and location identified on the permit and may only be transferred by approval of the city commission pursuant to subsections 46-502(c) and (d) of this article.

(d)   The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.

(e)   The city clerk shall not recommend a permit for approval unless all of the following conditions have been met:

(1)   The fire department and building department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this article.

(2)   The zoning administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit and zoning exception permit.

(3)   The city treasurer has confirmed that the applicant and the proposed location are not in default to the city.

(4)   The police department has determined that the applicant has met the requirements of this article with respect to the background check and security plan.

(5)   The legal department has determined that the applicant has satisfied the requirements of this article with respect to submission of all required documents and completeness of the application.

(6)   All additional information deemed by the city to be required for consideration of a permit.

(f)   The city clerk shall not recommend a permit for renewal unless all of the following additional conditions have been met:

(1)   The applicant possesses the necessary state license or approvals, including those issued pursuant to all applicable state and local laws, rules, or ordinances.

(2)   The applicant has operated the marihuana facility, establishment or other business in accordance with the c requirements of this article.

(3)   The marihuana facility, establishment, or other business has not been declared a public nuisance.

(4)   The applicant is operating the marihuana facility, establishment or other business in accordance with federal, state, and local laws and regulations.

(g)   If written approval is given by each individual, department, or entity in subsection (e), the city clerk shall recommend the permit or renewal of an annual permit to the city commission for approval.

(h)   A permit will lapse and be void if such other required permits, valid state licensing, and approvals are not diligently pursued to completion, but in any event no later than 180 days after the permit is issued.

(i)   Any applicant for a commercial marihuana facility, establishment or other business permit whose building is not yet in existence at the time of city commission approval shall have one year immediately following the date of approval to complete construction of the building, in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.

(j)   Within 90 days of receipt of a complete application and all required fees, all inspections, review and processing of the application shall be completed, and the city clerk shall make a recommendation to the city commission to approve or deny the marihuana facility permit.

(k)   The city commission shall approve or deny a permit within 120 days of receipt of the completed application and fees. The processing time may be extended upon written notice by the city for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. No permit is valid until final approval of the city commission.

(l)   The city has no obligation to process or approve any incomplete application. Any time period provided under this article shall not commence until the city receives a completed application, as determined by the city clerk. A determination of a complete application shall not prohibit the city from requiring supplemental information. The city may delay an application while additional information is requested including, but not limited to, requests for additional disclosures and documentation to be furnished to the city clerk.

(m)   If more qualified applications are received than the number of permits allowed for provisioning centers or retails establishments in the B-1 and B-2 districts under this article, the city commission may review and amend this article as it determines advisable.

(n)   If applicant fails to comply with this article, a permit may be denied as provided under this article. In addition to failing to comply with this article, a permit may be denied for the following reasons:

(1)   The applicant made a material misrepresentation on the application.

(2)   The applicant fails to correct any deficiencies in the application or supply additional required information.

(3)   The applicant fails to satisfy compliance with the municipality, state law, or this article.

(4)   The applicant is operating a commercial marihuana facility without a current, valid permit.

Any denial of a permit shall be in writing and shall state the reason for the denial.

(o)   Denial of permit by the City Commission may be appealed to the circuit court of this state.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 4-16-2018; Ord. No. 18-009, 6-7-2018; Ord. No. 19-001, 6-3-2019; Ord. No. 20-002, 2-3-2020)

Editor's note— Ord. No. 19-001, adopted June 3, 2019, added a new § 46-506 and subsequently renumbered former § 46-506 as § 46-507.

Sec. 46-508. - Conduct of permit holder.

(a) Each permit holder shall, as a condition of obtaining and maintaining a permit, agree to comply at all times with applicable local and state building, zoning, fire, health and sanitation statutes, ordinances and regulations.

(b) The premises shall be operated and maintained at all times consistent with responsible business practices and so that no excessive demands will be placed upon public health or safety services, nor any excessive risk of harm to the public health, safety or sanitation.

(c) Permit holder shall immediately notify the city clerk and update as required the information provided on the application and the permit. Further, the permit holder shall notify the city clerk, within ten business days, of any other change in the information required by this article or that may materially affect the state license or the permit. Failure to do so may result in suspension or revocation of the permit.

(d) An applicant or permit holder has a duty to notify the city clerk in writing within ten business days of any pending criminal charge, and any criminal conviction or other offense, including but not limited to any violation of building, fire, or zoning codes, the Michigan Medical Marihuana Act (MCL 333.26421 et seq.), Medical Marihuana Facilities Licensing Act (MCL 333.27101 et seq.), Michigan Medical Marihuana Tracking Act, (MCL 333.27901 et seq.), Michigan Regulation and Taxation of Marihuana Act, (MCL 333.27951 et seq.), and all other applicable rules promulgated by the State of Michigan, committed by the applicant, permit holder, any owner, principal, officer, director, manager or employee relating to the cultivation, processing, manufacture, storage, sale, distribution, testing or consumption of any form of marihuana within ten days of the event.

(e) The permit holder may not operate any other commercial marihuana facility in the permitted premises or on the permitted property, or in its name at any other location within the city without first obtaining a separate permit.

(f) A signed acknowledgement of the permit holder's intent to acquire and maintain a valid marihuana facility license from the State of Michigan is a condition for issuance and maintenance of a marihuana facility permit under this article. In the event of a lapse in the state issued medical marihuana facility license, for any reason, the applicant may not continue operation of any marihuana facility in the City of Adrian, unless and until a valid state license is reinstated or obtained.

(g) Failure to comply with the requirements contained in this article is a civil infraction.

(Ord. No. 17-035, 12-13-2017; Ord. No. 19-001, 6-3-2019; Ord. No. 20-002, 2-3-2020)

Editor's note— Ord. No. 19-001, adopted June 3, 2019, renumbered § 46-507 as § 46-508.

Sec. 46-509. - Operational requirements.

A commercial marihuana facility issued a permit under this article and operating in the city shall at all times comply with the following operational requirements, which the city commission may review and amend from time to time as it determines reasonable.

(1) Commercial marihuana facilities shall comply with the zoning code, the building code, and the property maintenance code at all times.

(2) The facility must hold a valid local permit and the state required commercial marihuana facility license for the type of commercial marihuana facility carried out at the permitted property.

(3) Each commercial marihuana facility shall be operated from the permitted premises on the permitted property. No commercial marihuana facility shall be permitted to operate from a moveable, mobile or transitory location, except for a permitted and licensed secure transporter when engaged in the lawful

transport of marihuana.

(4) No person under the age of 18 shall be permitted to enter into the permitted premises without a parent or legal guardian.

(5) Commercial marihuana facilities shall be closed for business and no sale or other distribution of marihuana in any form shall occur upon the premises or be delivered from the premises between the hours of 9:00 p.m. and 7:00 a.m.

(6) Permit holders shall at all times maintain a security system that meets state law requirements, and shall also include:

    a. Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the permitted premises;

    b. Burglary alarm systems which are professionally monitored and operated 24 hours a day, seven days a week;

    c. A locking safe permanently affixed to the permitted premises that shall store all marihuana and cash remaining at the facility overnight;

    d. All marihuana in whatever form stored at the permitted premises shall be kept in a secure manner and shall not be visible from outside the permitted premises, nor shall it be grown, processed, exchanged, displayed or dispensed outside the permitted premises;

    e. All security recordings and documentation shall be preserved for at least 48 hours by the permit holder and made available to law enforcement upon request for inspection.

(7) No commercial provisioning center shall be located within 1,000 feet of any of the following uses:

    a. A school, public or private, including pre-school through college or within 250 feet of any of the following uses:

        1. A church or house of worship located in a residential district.

        2. A park or playground.

        3. A state licensed day-care facility as defined in the City of Adrian Zoning Ordinance, definition(s) 2.46.

        4. A facility that provides substance abuse disorder services as defined by MCL 330.62305.

(8) The amount of marihuana on the permitted property and under the control of the permit holder, owner or operator of the facility shall not exceed the amount permitted by the state license.

(9) The marihuana offered for sale and distribution must be packaged and labeled in accordance with state law. Provisioning centers are prohibited from selling, soliciting or receiving orders for marihuana or marihuana products over the internet.

(10) No pictures, photographs, drawings, or other depictions of marihuana or marihuana paraphernalia shall appear on the outside of any permitted premises nor be visible outside of the permitted premises on the permitted property. The words "marihuana," "cannabis" and any other words used or intended to convey the presence or availability of marihuana shall not appear on the outside of the permitted premises nor be visible outside of the permitted premises on the permitted property.

(11) The sale, consumption, or use of alcohol or tobacco products on the permitted premises is prohibited. Smoking or consumption of controlled substances, including marihuana, on the permitted premises is prohibited.

(12) All activities of commercial marihuana facilities, including without limitation, distribution, growth, cultivation, or the sale of marihuana, and all other related activity permitted under the permit holder's

license or permit must occur indoors. The facility's operation and design shall minimize any impact to adjacent uses, including the control of any odor by maintaining and operating an air filtration system so that no odor is detectable outside the permitted premises.

(13) A patient may not grow his or her own marihuana at a commercial marihuana facility.

(14) No person operating a facility shall provide or otherwise make available marihuana to any person who is not legally authorized to receive marihuana under state law.

(15) All necessary building, electrical, plumbing and mechanical permits must be obtained for any part of the permitted premises in which electrical, wiring, lighting or watering devices that support the cultivation, growing, harvesting or testing of marihuana are located.

(16) The permit holder, owner and operator of the facility shall use lawful methods in controlling waste or by-products from any activities allowed under the license or permit.

(17) Marihuana may be transported by a secure transporter within the city under this article, and to effectuate its purpose, only:

   a. By persons who are otherwise authorized by state law to possess marihuana for commercial purposes;

   b. In a manner consistent with all applicable state laws and rules, as amended;

   c. In a secure manner designed to prevent the loss of the marihuana;

   d. No vehicle used for transportation or delivery of marihuana under this article shall have for markings the words "marihuana," "cannabis," or any similar words; pictures or other renderings of the marihuana plant; advertisements for marihuana or for its sale, transfer, cultivation, delivery, transportation or manufacture, or any other word, phrase or symbol indicating or tending to indicate that the vehicle is transporting marihuana.

   e. No vehicle may be used for the ongoing or continuous storage of marihuana, but may only be used incidental to, and in furtherance of, the transportation of marihuana.

(18) The city commission may impose such reasonable terms and conditions on a commercial medical marihuana facility special use as may be necessary to protect the public health, safety and welfare, and to obtain compliance with the requirements of this article and applicable law.

(19) No facility shall be operated in a manner creating noise, dust, vibration, glare, fumes, or odors beyond the boundaries of the property on which the facility is operated; or creating any other nuisance that hinders the public health, safety and welfare of the residents of the City of Adrian.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 4-16-2018; Ord. No. 19-001, 6-3-2019; Ord. No. 20-002, 2-3-2020)

Editor's note— Ord. No. 19-001, adopted June 3, 2019, renumbered § 46-508 as § 46-509.

Sec. 46-510. - Effective permit; suspension; daily violation.

   (a) Acceptance of the permit constitutes consent by the permit holder and its owners, officers, managers, agents and employees for any state, federal or local law enforcement to conduct random and unannounced examinations of the facility and all articles of property in that facility at any time to ensure compliance with this article and any other local regulations.

   (b) The city may require an applicant or permit holder of a marihuana facility, establishment, or other business to produce documents, records, or any other material pertinent to the investigation of an application or alleged violation of this article. Failure to provide the required material may be grounds for application denial or

(c) Issuance of a permit does not prohibit prosecution by the federal government for violation of its laws or prosecution by state authorities for violations of the Act or other violations not protected by the Act.

(d) Compliance with city ordinances and state statutes is a condition of maintenance of a permit and a permit may be suspended for failure to comply with any of the provisions of this article. The city administrator may suspend the permit for failure to comply. Appeals of an administrative suspension must be made in writing, to the attention of the city clerk, within 30 days after the suspension notice has been served on the permit holder or posted on the permitted premises. Appeals shall be heard by the city commission at the next regularly scheduled meeting after receipt of the written appeal.

(e) Suspension of a permit is not an exclusive remedy and the penalty provisions of this article are not intended to foreclose any other remedy or sanction that might be available to, or imposed by the city, including criminal prosecution.

(f) In addition to any other remedies, the city may institute proceedings for injunction, mandamus, abatement or other appropriate remedies to prevent, enjoin, abate or remove any violations of this article. The rights and remedies provided herein are civil in nature. The imposition of a fine shall not exempt the violator from compliance with the provisions of this article.

(Ord. No. 17-035, 12-13-2017; Ord. No. 19-001, 6-3-2019)

Editor's note— Ord. No. 19-001, adopted June 3, 2019, renumbered § 46-509 as § 46-510.

Sec. 46-511. - Permit revocation; bases for revocation or denial; appeal of permit revocation or denial.

(a) Any permit issued under this article may be recommended for revocation by the city clerk to the city commission if the city clerk finds and determines that grounds for revocation exist. Any grounds for revocation must be provided to the permit holder at least ten days prior to the date of the city commission meeting at which the recommendation for revocation will be heard. Notice of the meeting shall be sent by first class mail to the mailing address given on the permit application or any updated mailing address provided to the city clerk in writing subsequent to the filing of an application.

(b) A permit applied for or issued may be denied or revoked on any basis provided under this article including the following:

(1) A material violation of any provision of this article, including, but not limited to, the failure to submit a complete application under section 46-505; or

(2) Any conviction of a disqualifying felony by the permit holder, stakeholder, or any person holding an ownership interest in the permit; or

(3) Commission of fraud or misrepresentation or the making of a false statement by the applicant, permit holder, or any stakeholder of the applicant or permit holder while engaging in any activity for which this article requires a permit; or

(4) Failure to obtain, maintain or renew a permit issued by the city clerk pursuant to this article; or

(5) Failure of the permit holder or the marihuana facility, establishment or other business to obtain or maintain a license or approval from the state pursuant to the state or other laws; or

(6) The marihuana facility, establishment or other business is determined by the city to have become a public nuisance or otherwise is operating in a manner detrimental to the public health, safety or welfare.

(c) The denial of an application or revocation of a permit by the city commission shall be final for purposes of judicial review.

**Editor's note—** Ord. No. 19-001, adopted June 3, 2019, added a new § 46-511 and subsequently renumbered former § 46-511 as § 46-514.

Sec. 46-512. - Violations municipal civil infraction.

Any person and/or entity in violation of any provision of this article or failure to comply with any of the requirements of this article, including the operation of a marihuana facility, establishment, or other business without a permit issued pursuant to this article, is responsible for a municipal civil infraction violation. The city shall assess fines and abatement costs of each violation together with all remedies available under MCL 600.8701 et seq. Increased civil fines may be imposed for a repeat violation. As used in this section "repeat violation" shall mean a second or any subsequent infraction of the same requirement or provision committed by a person or establishment within any 12-month period. Each day a violation continues, including each day that a person shall operate a medical marihuana facility without a permit or assist in the operation of a medical marijuana facility without a valid permit in effect for that property, shall constitute a separate offense. Upon the third offense in any 12-month period, a recommendation for permit denial or revocation may be made to the city commission. Fines for each offense shall be as set forth in section 2-373 of the Adrian City Code.

(Ord. No. 19-001, 6-3-2019)

Sec. 46-513. - Fees for permits.

The fees for the permit herein defined shall be set by resolution of the city commission. The fee shall defray the costs incurred by the city for inspection, administration and enforcement of this article and shall not exceed any limitations imposed by Michigan law.

(Ord. No. 17-035, 12-13-2017; Ord. No. 19-001, 6-3-2019)

**Editor's note—** Ord. No. 19-001, adopted June 3, 2019, renumbered § 46-510 as § 46-513.

Sec. 46-514. - Severability.

The provisions of this article are hereby declared severable. If any part of this article is declared invalid for any reason by a court of competent jurisdiction, that declaration does not affect or impair the validity of all other provisions that are not subject to that declaration.

(Ord. No. 17-035, 12-13-2017; Ord. No. 19-001, 6-3-2019)

**Note—** See editor's note at end of § 46-511.



STATE OF MICHIGAN

GRETCHEN WHITMER
GOVERNOR

DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS
LANSING

ORLENE HAWKS
DIRECTOR

VIA EMAIL

Date:  March 19, 2020

Addressee:  Medicinal Solutions Compassionate Care Corp.

Address:  717 Division Street
Adrian, MI 49221

RE:    Prequalification status for your pending application

Dear Applicant:

The Marijuana Regulatory Agency considered your partial application for prequalification status on _March 19, 2020_ and determined that you have prequalification status pursuant to the licensing provisions of the Medical Marihuana Facilities Licensing Act (MMFLA) and Administrative Rule 5 (R 333.205).  This letter may be provided to a municipality as documentation of your prequalification status.  Please note that this is a pending status until all application requirements in Administrative Rule 7 (R 333.207) are completed. A state operating license for a marijuana facility cannot be issued at this stage of the application. During final application review, the agency will consider all information relevant to eligibility including information that has been newly acquired or information that is newly apparent since determination of prequalification status. This prequalification status will expire one year from the date of prequalification status if the applicant has not received its initial state operating license.

If you have not already done so, please submit a facility license application (Step 2) for each state operating license for which you wish to apply.  It is recommended that facility license applications not be submitted more than 60 days prior to the date you anticipate that your proposed facility will be ready for inspection. You may submit a paper application online through the Accela Citizen Access Portal on the agency website at www.michigan.gov/mmfl or your application may be submitted by mail or in person.

**Mailing Address:**
Department of Licensing & Regulatory Affairs
Marijuana Regulatory Agency
Medical Facilities Licensing
P.O. Box. 30205
Lansing, MI 48909

**In Person:**
Department of Licensing & Regulatory Affairs
Marijuana Regulatory Agency
Medical Facilities Licensing
2407 North Grand River
Lansing, MI  48906

Sincerely,

Desmond Mitchell, Division Director
Licensing Division
Marijuana Regulatory Agency
Michigan Department of Licensing and Regulatory Affairs

MARIJUANA REGULATORY AGENCY
2407 NORTH GRAND RIVER • P.O. BOX 30205 • LANSING, MICHIGAN 48909

EXHIBIT I


LICENSING AND REGULATORY AFFAIRS
CUSTOMER DRIVEN BUSINESS MINDED

## ATTESTATION E
(Use BLUE or BLACK ink ONLY)

## TEMPORARY OPERATION ATTESTATION
(To be signed by the municipal clerk or their designee and submitted by the applicant)
Do not sign until notary is present

**PART A:**
I, _____Pat Baker_____ (clerk/designee) of __City of Adrian__ (municipality), hereby attest to the Bureau of Medical Marihuana Regulation (Bureau) that the applicant for a state operating license as named below in part B, is authorized to temporarily operate a proposed marihuana facility as provided in the LARA-BMMR, Emergency Administrative Rules filed with the Sec. of State on 12/4/17, because 1 of the following conditions applies:

(1) The applicant's proposed marihuana facility is within a municipality that adopted an ordinance before December 15, 2017 but is pending the adoption of an ordinance pursuant to section 205 of the Medical Marihuana Facilities Licensing Act, 2016 PA 281 (MMFLA). I further attest that the following are accurate:

    (a)  The municipality has adopted an ordinance before December 15, 2017.

    (b)  The municipality authorizes the temporary operation of the applicant.

(2) The applicant's proposed marihuana facility is within a municipality that has adopted an ordinance pursuant to section 205 of the MMFLA before December 15, 2017. I further attest that the following are accurate:

    (a)  The municipality has adopted an ordinance pursuant to section 205 of the MMFLA, including, if applicable, the disclosure of any limitations on the number or type of marihuana facilities, or both.

    (b)  The municipality authorizes the temporary operation of the applicant. A resolution may be adopted by a municipality that authorizes the clerk of the municipality or his or her designee to sign this attestation form.

_____Pat Baker_____
Clerk (or designee)

_____City of Adrian_____
Municipality

_____January 15, 2018_____
Date

Christina L. Bowman
Notary Public-State of Michigan
County of Lenawee
My Commission Expires 10/27/2021

Subscribed and sworn to by _____Pat Baker_____ before me on _____1/15/18_____ .
    (Clerk or designee)                                  (date)

_____      _____CHRISTINA L BOWMAN_____
Notary Public Signature                           Notary Public Printed Name

State of _MICHIGAN_, County of _LENAWEE_. Acting in the County of _LENAWEE_, MI

My commission expires: _10/27/2021_ .

**PART B:**
I, the applicant, understand that I am submitting this Attestation E in compliance with the Emergency Administrative Rules. I understand that if I do not comply with the Emergency Administrative Rules and the MMFLA, I shall cease and desist operation of a proposed marihuana facility and may be subject to all the penalties, sanctions, and remedies under state and federal law, the MMFLA or the Emergency Administrative Rules. I understand that temporary operation under the Emergency Administrative Rules does not guarantee issuance of a state operating licensee.

_____
Applicant Signature

_____President_____
Title

_____1-15-18_____
Date

EXHIBIT 2



**ATTESTATION I**
(Use BLUE or BLACK ink ONLY)

**CONFIRMATION OF SEC. 205 COMPLIANCE**
(To be signed by the municipal clerk or their designee and submitted by the applicant)
Do not sign until notary is present

**PART A:**

I, _Pat Baker_ (clerk/designee) of _City of Adrian_ (municipality), hereby attest to the Bureau of Medical Marihuana Regulation (Bureau) that the applicant for a state operating license as named below in part B, is in compliance with the municipal ordinance requirement of section 205 of the Medical Marihuana Facilities Licensing Act, 2016 PA 281 (MMFLA) and as provided in the LARA-BMMR, Emergency Administrative Rules filed with the Secretary of State on December 4, 2017.

I further attest that:

1. The municipality has adopted an ordinance under section 205 of the MMFLA and <u>a copy of the local ordinance is attached.</u>

2. <u>Attached</u> is a description of the limitations on the number of each type of marihuana facility (if applicable).

3. <u>Attached</u> is a copy of any zoning regulations. In the following space is the description of any zoning regulations that apply to the proposed marihuana facility within the municipality.

4. <u>Attached</u> is a description of any violation of the local ordinance or zoning regulations committed by the applicant named below, but only if those violations relate to activities licensed under this act or the Michigan medical marihuana act. (if applicable)

_Pat Baker_
Clerk (or designee)

_City of Adrian_
Municipality

_1/26/2018_
Date

Subscribed and sworn to by _Pat Baker_ before me on _January 26, 2018_
(Clerk or designee)                            (date)

_(signature)_
Notary Public Signature

_Christina L Bowman_
Notary Public Printed Name

State of _Michigan_, County of _Lenawee_, Acting in the County of _Lenawee_, _Michigan_
My commission expires: _10/27/2021_.

Christina L. Bowman
Notary Public-State of Michigan
County of Lenawee
My Commission Expires 10/27/2021

**PART B:**

I, the applicant, understand that I am submitting this Attestation I in compliance with Section 205 of the MMFLA and the Emergency Administrative Rules.

_(signature)_
Applicant Signature

_1-26-18_
Date

_President_
Title

EXHIBIT 3

# CERTIFICATE OF OCCUPANCY

## CITY OF ADRIAN
## 135 EAST MAUMEE STREET
## ADRIAN, MI. 49221

*This is to certify that the occupant of the structure under the Certificate of Occupancy application,*

| OCO2018-021 | PZCP18-013 |
|---|---|

*issued by the Building/Inspection Department, and having complied with the requirements of the ordinance, permission is hereby granted to occupy* **717 DIVISION ST** *as set forth in the corresponding application under which the permits were granted, so far as completed.*

| | |
|---|---|
| **Description:** | Certificate of Occupancy (Medical Marihuana dispensary) |
| **Date Finaled:** | 06/28/2018 |
| **Date of Issue:** | 06/28/2018 |

*Approved per City of Adrian*
*Zoning Regulations, Section 26.05, Certificates (3)*

| *Owner* | *Applicant* |
|---|---|
| I.I.2. LLC | **Nicole Hernandez** |
| 2981 TREAT ST # 112 | **717 Division St.** |
| ADRIAN MI 49221-4415 | **Adrian MI 49221** |

| | | | |
|---|---|---|---|
| Fire Suppression Installed: | ☐ | **Occupant Load:** | 60 |
| Fire Suppression Not Required | ☒ | **Use Group:** | M |
| | | **Construction Type:** | 3B |

Michigan Building Code

_____
Don Bartenslager, Fire Chief
City of Adrian

_____
**Rick Gritzmaker, Building Inspector**
**City of Adrian**

NON-TRANSFERABLE

EXHIBIT 35

## AGENDA
## ADRIAN CITY COMMISSION
## SPECIAL MEETING
## DECEMBER 13, 2017,
## 7:00PM

I.  PRAYER AND PLEDGE OF ALLEGIANCE TO THE FLAG

II.  ROLL CALL

III.  REGULAR AGENDA

    A. ORDINANCES

        1. **Ord. 17-035.** Second reading and adoption of an ordinance to create Section 46-500 of Chapter 46, of the Adrian Code, entitled "Commercial Medical Marihauna Facilities".

    B. RESOLUTIONS

        1. **R17-145, City Commission,** Resolution to authorize Nicole Hernandez to continue the operation of her business MSC3/MSC3 Inc. while pending the approval of a state license.

IV.  PUBLIC COMMENT

V.  COMMISSIONER COMMENTS

EXHIBIT 4

ORDINANCE NO. 17-035

## AN ORDINANCE TO CREATE SECTION 46-500 OF CHAPTER 46, OF THE ADRIAN CODE, ENTITLED "COMMERCIAL MEDICAL MARIHUANA FACILITIES"

### ARTICLE XI

### DIVISION 1. GENERALLY

Section 46-500. Legislative Intent. The purpose of this ordinance is to implement the provisions of the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016, which authorizes the licensing and regulation of Commercial Medical Marihuana Facilities and affords the City the option of whether or not to allow Commercial Medical Marihuana Facilities; to regulate Commercial Medical Marihuana Facilities by requiring a Permit and compliance with requirements as provided in this Ordinance, in order to maintain the public health, safety and welfare of the public.

Section 46-501. Definitions. The following words, terms, and phrases when used in this article shall have the meanings ascribed to them in this section, except when the context clearly indicates a different meaning.

"*Department*" means the Michigan State Department of Licensing and Regulatory Affairs or any authorized designated Michigan agency authorized to regulate, issue or administer a Michigan License for a Commercial Medical Marihuana Facility.

"*Grower*" or "*Grower Facility*" means a commercial entity that cultivated, dries, trims, or cu res and packages Marihuana for sale to a Processor or Provisioning Center. Grower facilities are divided into classes.  A Class A facility can have up to 500 plants; a Class B facility can have up to 1,000 plants and a Class C facility can have up to 1,500 plants.

"*License*" means a current and valid License for a Commercial Medical Marihuana Facility issued by the State of Michigan.

"*Licensee*" means a person holding a current and valid Michigan License for a Commercial Medical Marihuana Facility.

"*Marihuana*" means that termed as defined in section 7106 of the public health code, 1978 PA 368, MCL 333.7106.

"*Medical Marihuana Facility(s)*" means any facility, establishment and/or center that is required to be licensed under this Chapter including a Provisioning Center, Grower, Processor, Safety Compliance Facility, and Secure Transporter.

1

"*Marihuana Plant(s)*" means any plant of the species Cannabis sativa L.

"*Processor*" or "*Processor Facility*" means a commercial entity that purchases Marihuana from a Grower and that extracts resin from the Marihuana or creates a Marihuana-infused product for sale and transfer in packaged form to a Provisioning Center.

"*Provisioning Center*" means a commercial entity that purchases Marihuana from a Grower or Processor and sells, supplies, or provides Marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers. Provisioning Center includes any commercial property where Marihuana is sold at retail to registered qualifying patients or registered primary caregivers. A noncommercial location used by a primary caregiver to assist a qualifying patient connected to the caregiver through the department's Marihuana registration process in accordance with the MMMA is not a Provisioning Center for the purposes of this Ordinance.

"*Permit*" means a current and valid Permit for a Commercial Medical Marihuana Facility issued pursuant to this Ordinance, which shall be granted to a Permit Holder only for and limited to a specific Permitted Premises and a specific Permitted property.

"*Permit Holder*" means the person that holds a current and valid Permit under this Ordinance.

"*Permitted Premises*" means the particular building or buildings within which the Permit Holder will be authorized to conduct the Facility's activities pursuant to the permit.

"*Permitted Property*" means the real property comprised of the lot, parcel or other designated unit of real property upon which the Permitted Premise is situated.

"*Person*" means a natural person, company, partnership, profit or non-profit corporation, limited liability company, or any joint venture for a common purpose.

"*Safety Compliance Facility*" means a commercial entity that receives Marihuana from a Medical Marihuana Facility or registered primary caregiver, tests it for contaminants and for tetrahydrocannabinol and other cannabinoids, returns the test results, and may return the Marihuana to the Medical Marihuana Facility.

"*Secure Transporter*" means a commercial entity that stores Marihuana and transports Marihuana between Medical Marihuana Facilities for a fee.

DIVISION 2.  Permits

2

Section 46-502. Required.

a. No person shall operate a Commercial Medical Marihuana Facility in the City of Adrian without first obtaining a permit from the City Clerk.

Section 46-503.  Commercial Medical Marihuana Facilities authorized to operate in the City.

a. Growers, Class A, B and C
b. Processors
c. Provisioning Centers
d. Safety Compliance Facilities
e. Secure Transporters.

Section 46-504. Number of Facilities authorized by City

a. Growers:
   Class A:  unlimited
   Class B:  unlimited
   Class C:  unlimited

b. Processors:                    unlimited
c. Provisioning Centers:          5 permits in the B-1 and B-2 districts combined, unlimited in the Industrial overlay district.
d. Safety Compliance Facilities:  unlimited
e. Secure Transporters:           unlimited

Section 46-505. Application.

a. Application for a permit shall be made annually on forms provided by the City Clerk.
b. The permit requirements set forth in this chapter shall be in addition to and not in lieu of any other licensing and permitting requirements imposed by any other federal, state, or local law.
c. Upon receipt of a completed application and payment of the required fee, the city clerk shall forward a copy of the application to each of the following departments for their approval: the Fire Department, the Building Department, the Police Department, the Zoning Administrator, and the City Treasurer.
d. No application shall be approved unless:
   1) The Fire Department and Building Department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this ordinance.
   2) The Zoning Administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit.

3

        3) The City Treasurer has confirmed that the applicant and the proposed location are not in default to the City.

        4) The Police Department has determined that the applicant has met the requirements of this chapter with respect to the background check and security plan.

e. Each year, any pending applications for renewal or amendment of existing permits shall be reviewed and granted or denied before applications for new permits are considered.

f. The issuance of any permit pursuant to this Chapter does not create an exception, defense, or immunity to any person in regard to any potential criminal liability the person may have for the production, distribution, or possession of marihuana.

g. A permit and a renewal permit shall not confer any vested rights or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval. A completed application or renewal application must be received by the City Clerk no later than 90 days prior to the expiration of the current permit.

h. No permit issued under this section may be transferred or assigned and no license is valid for any location other than the location specified in the license.

i. All inspections, review and processing of the application shall be completed within 90 days of receipt of a complete application and all required fees.

j. Any denial of a permit shall be in writing and shall state the reason for denial.

k. A denial of a permit may be appealed to the Zoning Board of Appeals.

l. If more qualified applications are received than the number of permits allowed for provisioning centers in the B-1 and B-2 districts under this ordinance, the approved applications shall be assigned a number and will be entered into a drawing for the available permits. The specific procedures for the drawing shall be adopted by the city commission by resolution. The Commission may also adopt a policy by resolution to give preference to local businesses and to businesses legally operating at the time this ordinance is adopted.

m. Any applicant for a commercial medical marihuana facility permit whose building is not yet in existence at the time of city commission approval shall have one year immediately following the date of approval to complete construction of the building, in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.

Section 46-506. Conditions of Issuance.

The City Clerk shall not issue a permit until all of the following conditions have been met:

a. The address of the facility and any other contact information shall be listed on the application form.

b. The name and address of the owners of all real property where the facility is located shall be listed on the application form.

c. All documentation showing the proposed permit holder's valid tenancy, ownership or other legal interest in the proposed permitted property and permitted premises.

4

d. If the proposed permit holder is not the owner of the property, a notarized statement from the owner of such property authorizing the use of the property for a commercial medical marihuana facility.

e. If the proposed permit holder is a corporation, non-profit organization, limited liability company or any other entity other than a natural person it must state its legal status, attach a copy of all company formation documents (including amendments), proof of registration with the State of Michigan and a certificate of good standing along with the articles, resolutions and by-laws/operating agreements.

f. The name and addresses of all owners and managers of the facility shall be listed on the application form.

g. A copy of a valid unexpired driver's license or state issued ID for all owners, directors, officers and managers of the proposed facility.

h. Evidence of a valid sales tax license for the business if such a license is required by state law or local regulations.

i. A signed release shall be provided, on a form included with the application, permitting the City of Adrian police department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other state or the United States.

j. Proof that a valid and current certificate of occupancy has been issued by the building official indicating that all necessary inspections have been conducted, which may include but are not limited to electrical inspection, plumbing inspection and mechanical inspection.

k. Where the application identifies electrical devices are being used or intended to be used in conjunction with a permit, proof that the fire department has inspected and approved the use or proposed use and that any necessary permits for electrical alterations have been obtained.

l. Where the application identifies structural modifications have been made or are intended in conjunction with the permit, proof that the building code officials have inspected the property and issued the necessary permits.

m. A copy of the Business and Operations plan showing in detail the commercial medical marihuana facility's proposed plan of operation, including without limitation, the following:

1) A description of the type of facility proposed and the anticipated or actual number of employees.

2) A security plan which shall include a general description of security system, current centrally alarmed and monitored security system service agreement for the proposed permitted premises, and confirmation that those systems will meet state requirements and be approved by the state prior to commencing operations.

3) A general description by category of all products to be sold.

4) A list of material safety data sheets for all nutrients, pesticides and other chemicals proposed for use in the commercial medical marihuana facility.

5) A description and plan for all equipment and methods that will be employed

5

to stop any impact to adjacent uses, including enforceable assurances that no odor will be detectable from outside the permitted premises.

6) A plan for disposal of marihuana and related byproducts that will be used at the facility.

7) A technology plan that includes the plan for data collection and data security.

n. Identify any business that is directly involved in the growing, processing, testing, transporting or sale of marihuana for the facility.

o. State whether applicant has ever applied for and been denied any commercial license or certificate by a licensing authority in Michigan or any other jurisdiction or whether any commercial license has been restricted, suspended, revoked or not renewed. Describe the facts and circumstances concerning the application, denial, restriction, suspension, revocation or nonrenewal including the licensing authority, the date each action was taken, and the reason for each action.

p. Provide a signed and sealed (by a Michigan registered architect, surveyor or professional engineer) site plan and interior floor plan of the permitted premises and the permitted property.

q. List any other commercial medical marihuana facility that the licensee is authorized to operate in any other jurisdiction within the state, or another state and the applicant's involvement in each facility.

r. Provide any other information reasonably requested by the City regarding the processing or consideration of the application.

s. An affidavit that the applicant is not in default to the City. Specifically, that the applicant has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the City.

t. For provisioning centers, a proposed patient recordkeeping plan that will track quantities sold to individual patients and caregivers, and will monitor inventory.

u. A description of procedures for testing of contaminants including mold and pesticides.

v. An estimate of the number and types of jobs that the facility is expected to create, the amount and type of compensation expected to be paid for such jobs, and the projected annual budget and revenue of the facility.

w. A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim demand, action, legal redress or recourse against the City of Adrian, its elected and appointed officials and its employees and agents for any claims, damages, liabilities, causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders, employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the City of Adrian, its elected and appointed officials, employees, attorneys, and agents.

6

x. As it relates to Grower Facilities:
  1). A cultivation plan that includes at a minimum, a description of the cultivation methods to be used, including plans for the growing mediums, treatments, and/or additives.
  2). A production testing plan that includes, at a minimum, a description of how and when samples for laboratory testing will be selected, what type of Testing will be requested and how the test results will be used.
  3). An affidavit that all operations will be conducted in conformance with the the MMFLA and all other applicable state laws.
  4). A chemical and pesticide storage plan that states the names of the pesticides to be used in cultivation and where and how pesticides and chemicals will be stored, along with a plan for the disposal of unused pesticides.
  5). The applicant shall acknowledge that all cultivation must be performed in Building.
y. Proof of an insurance policy covering the facility in the amount of at least one million dollars for property damage; one million dollars for injury to one person; and at least two million dollars for two or more persons resulting from the same occurrence. The City shall be notified by the insurance carrier 30 days in advance of any cancellation.
z. Proof of a surety bond in the amount of $100,000 with the City listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this ordinance or in the alternative applicant can create an escrow account for the benefit of the City at a city approved financial institution in the amount of $20,000.
aa. Proof of liquid assets that equal or exceed the state's capitalization requirements.

## Section 46-507. Conduct of Permit Holder.

a. Each Permit Holder shall, as a condition of obtaining and maintaining a permit, agree to comply at all times with applicable local and state building, zoning, fire, health and sanitation statutes, ordinances and regulations.
b. The premises shall be operated and maintained at all times consistent with responsible business practices and so that no excessive demands will be placed upon public health or safety services, nor any excessive risk of harm to the public health, safety or sanitation.
c. Permit Holder shall immediately notify the City Clerk and update as required the information provided on the application and the permit. Further, the Permit Holder shall notify the City Clerk of any other changes that that may materially affect the state license or the permit.
d. An applicant or permit holder has a duty to notify the City Clerk in writing of any pending criminal charge, and any criminal conviction or other offense, including but not limited to, Michigan Medical Marihuana Act (MCL 333.26421 et seq) violations, Medical Marihuana Facilities Licensing Act (MCL 333.27101 et seq) violations, building, fire, zoning violations by the applicant, permit holder, any

owner, principal, officer, director, manager or employee relating to the cultivation, processing, manufacture, storage, sale, distribution, testing or consumption of any form of marihuana within 10 days of the event.

e. The permit holder may not operate any other commercial medical marihuana facility in the permitted premises or on the permitted property, or in its name at any other location within the City without first obtaining a separate permit.

f. The permit holder may not transfer the permit to any other individual or entity.

g. Failure to comply with the requirements contained in this section is a civil infraction.

Section 46-508.  Operational Requirements: a commercial medical marihuana facility issued a permit under this ordinance and operating in the City shall at all times comply with the following operational requirements, which the city commission may review and amend from time to time as it determines reasonable.

a. Commercial medical marihuana facilities shall comply with the zoning code, the building code, and the property maintenance code at all times.

b. The facility must hold a valid local permit and state medical marihuana facility license for the type of commercial medical marihuana facility carried out at the permitted property.

c. Each commercial medical marihuana facility shall be operated from the permitted premises on the permitted property.  No commercial medical marihuana facility shall be permitted to operate from a moveable, mobile or transitory location, except for a permitted and licensed secure transporter when engaged in the lawful transport of marihuana.

d. No person under the age of 18 shall be permitted to enter into the permitted premises without a parent or legal guardian.

e. Medical marihuana facilities shall be closed for business and no sale or other distribution of marihuana in any form shall occur upon the premises or be delivered from the premises between the hours of 9:00 p.m. and 7:00 a.m.

f. Permit holders shall at all times maintain a security system that meets state law requirements, and shall also include:

    1). Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the permitted premises;

    2). Burglary alarm systems which are professionally monitored and operated 24 hours a day, 7 days a week;

    3). A locking safe permanently affixed to the permitted premises that shall store all marihuana and cash remaining at the facility overnight;

    4). All marihuana in whatever form stored at the permitted premises shall be kept in a secure manner and shall not be visible from outside the Permitted premises, nor shall it be grown, processed, exchanged, displayed or dispensed outside the permitted premises;

    5). All security recordings and documentation shall be preserved for at at least 48 hours by the permit holder and made available to law

8

enforcement upon request for inspection.

g. No commercial provisioning center shall be located within 500 feet from any educational institution or school, college or university, or public or private park, with the minimum distance measured horizontally between the nearest property lines.

h. The amount of marihuana on the permitted property and under the control of the permit holder, owner or operator of the facility shall not exceed the amount permitted by the state license.

i. The marihuana offered for sale and distribution must be packaged and labeled in accordance with state law. The facility is prohibited from selling, soliciting or receiving orders for marihuana or marihuana products over the internet.

j. No pictures, photographs, drawings, or other depictions of marihuana or marihuana paraphernalia shall appear on the outside of any permitted premises nor be visible outside of the permitted premises on the permitted property. The words "marihuana," "cannabis" and any other words used or intended to convey the presence or availability of marihuana shall not appear on the outside of the permitted premises nor be visible outside of the permitted premises on the permitted property.

k. The sale, consumption, or use of alcohol or tobacco products on the permitted premises is prohibited. Smoking or consumption of controlled substances, including marihuana, on the permitted premises is prohibited.

l. All activities of commercial medical marihuana facilities, including without limitation, distribution, growth, cultivation, or the sale of marihuana, and all other related activity permitted under the permit holder's license or permit must occur indoors. The facility's operation and design shall minimize any impact to adjacent uses, including the control of any odor by maintaining and operating an air filtration system so that no odor is detectable outside the permitted premises.

m. A patient may not grow his or her own marihuana at a commercial medical marihuana facility.

n. No person operating a facility shall provide or otherwise make available marihuana to any person who is not legally authorized to receive marihuana under state law.

o. All necessary building, electrical, plumbing and mechanical permits must be obtained for any part of the permitted premises in which electrical, wiring, lighting or watering devices that support the cultivation, growing, harvesting or testing of marijuana are located.

p. The permit holder, owner and operator of the facility shall use lawful methods in controlling waste or by-products from any activities allowed under the license or permit.

q. Marihuana may be transported by a secure transporter within the City under this ordinance, and to effectuate its purpose, only:

   1) By persons who are otherwise authorized by state law to possess marihuana for medical purposes;

   2) In a manner consistent with all applicable state laws and rules, as

9

amended;

3) In a secure manner designed to prevent the loss of the marihuana;
4) No vehicle used for transportation or delivery of marihuana under this ordinance shall have for markings the words "marihuana," "cannabis," or any similar words; pictures or other renderings of the marihuana plant; advertisements for marihuana or for its sale, transfer, cultivation, delivery, transportation or manufacture, or any other word, phrase or symbol indicating or tending to indicate that the vehicle is transporting marihuana.
5) No vehicle may be used for the ongoing or continuous storage of marihuana, but may only be used incidental to, and in furtherance of, the transportation of marihuana.

r. The City Commission may impose such reasonable terms and conditions on a commercial medical marihuana facility special use as may be necessary to protect the public health, safety and welfare, and to obtain compliance with the requirements of this ordinance and applicable law.

s. No facility shall be operated in a manner creating noise, dust, vibration, glare, fumes, or odors beyond the boundaries of the property on which the facility is operated; or creating any other nuisance that hinders the public health, safety and welfare of the residents of the City of Adrian.

## Section 46-509.  Effective permit; suspension; daily violation.

a. A permit is valid only for the location identified on the permit and cannot be transferred to another location in the City without a new application.
b. A permit is valid for one year from the date of issuance.
c. The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.
d. Acceptance by the permit holder of the permit constitutes consent by the permit holder and its owners, officers, managers, agents and employees for any state, federal or local law enforcement to conduct random and unannounced examinations of the facility and all articles of property in that facility at any time to ensure compliance with this ordinance, any other local regulations and with the permit.
e. A permit does not prohibit prosecution by the federal government for violation of its laws or prosecution by state authorities for violations of the Act or other violations not protected by the Act.
f. Compliance with city ordinance and state statutes is a condition of maintenance of a permit and a permit may be suspended for failure to comply with any of the provisions of this section.
g. Suspension of a permit is not an exclusive remedy and nothing contained herein is intended to limit the City's ability to prosecute code violations that may have been the cause of the suspension or any other code violations not protected by this

10

Act.

h. Violations of the provisions of this ordinance or failure to comply with any of the requirements of this ordinance is a civil infraction. The fine for this civil infraction is $500.00 and abatement costs of each violation together with all remedies available under MCLA 600.8701, et seq. Each day a violation continues shall be deemed a separate civil infraction.

i. Operating a medical marihuana facility without a valid permit or assisting in the operation of a medical marihuana facility without a valid permit for that property is a civil infraction. The fine for this civil infraction shall be $500.00. Each day that a person shall operate a medical marihuana facility without a permit or assist in the operation of a medical marijuana facility without a valid permit in effect for that property shall constitute as a separate offense.

j. In addition to any other remedies, the City may institute proceedings for injunction, mandamus, abatement or other appropriate remedies to prevent, enjoin, abate or remove any violations of this ordinance. The rights and remedies provided herein are civil in nature. The imposition of a fine shall not exempt the violator from compliance with the provisions of this ordinance.

Section 46 -510. Fees for licenses. The fees for the permit herein defined shall be set by resolution of the city commission. The fee shall defray the costs incurred by the City for inspection, administration and enforcement of this ordinance and shall not exceed any limitations imposed by Michigan law.

Section 46-511. Severability. The provisions of this ordinance are hereby declared severable. If any part of this ordinance is declared invalid for any reason by a court of competent jurisdiction, that declaration does not affect or impair the validity of all other provisions that are not subject to that declaration.

INTRODUCTION................................................................... November 29, 2017

SUMMARY PUBLISHED.....................................................

ADOPTION............................................................................

COMPLETE PUBLICATION.................................................

EFFECTIVE DATE...............................................................

On motion by Commissioner_____, seconded by Commissioner_____, this Ordinance was _____ by a _____ vote.

11

R17-145                                                    December 13, 2017

**RE: CITY COMMISSION – RESOLUTION TO AUTHORIZE NICOLE HERNANDEZ TO CONTINUE THE OPERATION OF HER BUSINESS MSC3/ MSC3, INC. WHILE PENDING THE APPROVAL OF A STATE LICENSE**

### RESOLUTION

WHEREAS, the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016 was signed into law on September 21, 2016; and

WHEREAS, the Michigan Department of Licensing and Regulatory Affairs has promulgated emergency rules for implementing this Act; and

WHEREAS, these emergency rules allow for the temporary operation of a facility by an applicant for a state license; and

WHEREAS, the City of Adrian has adopted an ordinance allowing medical marihuana facilities in the City; and

WHEREAS, Nicole Hernandez has operated MSC3 within the City and has requested permission to continue operation while the application for a state license is pending; AND

NOW THEREFORE, BE IT RESOLVED, that the Adrian City Commission hereby temporarily authorizes Nicole Hernandez to continue the operation of her business MSC3/MSC3, Inc. while pending the approval of a state license.

NOW THEREFORE BE IT FURTHER RESOLVED, that the City Clerk is hereby authorized to sign all forms required by the State of Michigan for continued operation.


On motion of Commissioner _____, supported by

Commissioner _____, the above Resolution was

_____ by a _____ vote.

## MINUTES
## SPECIAL MEETING
## ADRIAN CITY COMMISSION
## MONDAY, DECEMBER 13, 2017
## 7:00 P.M.

Official proceedings of the December 13, 2017 special meeting of the City Commission, Adrian, Michigan.

The special meeting was opened with a moment of silence followed by the Pledge of Allegiance to the Flag.

PRESENT: Mayor Jacobson and Commissioners Strayer, Heldt, Faulhaber and Dudas and Watson.

Mayor Jacobson in the Chair.

### REGULAR AGENDA

**Ord. 17-035**.Second reading and adoption of an ordinance to create Section 46-500 of Chapter 46, of the Adrian Code, entitled "Commercial Medical Marihuana Facilities".

Nicole Hernandez, MSC3, began by thanking the Commission for moving things forward.

The Commission then each gave their view of the ordinance, with Commissioner Watson against it, Commissioner Faulhaber weighing the pros and cons, and the rest of the Commission in support of the ordinance. Some of the reasons for support were, compassion for the patients, job opportunities, and assistance with blight in the City.

On motion by Commissioner Heldt, seconded by Commissioner Strayer, this ordinance was adopted by a 5-1-0 vote.

Ayes: Mayor Jacobson and Commissioners Heldt, Faulhaber, Dudas and Strayer
Nays: Commissioner Watson
Abstained: None

### R17-145

RE: **CITY COMMISSION – Resolution to Authorize Nicole Hernandez to Continue the Operation of Her Business MSC3/ MSC3, Inc. while Pending the Approval of a State License.**

WHEREAS, the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016 was signed into law on September 21, 2016; and

WHEREAS, the Michigan Department of Licensing and Regulatory Affairs has promulgated emergency rules for implementing this Act; and

WHEREAS, these emergency rules allow for the temporary operation of a facility by an applicant for a state license; and

WHEREAS, the City of Adrian has adopted an ordinance allowing medical marihuana facilities in the City; and

WHEREAS, Nicole Hernandez has operated MSC3 within the City and has requested permission to continue operation while the application for a state license is pending; AND

EXHIBIT **5**

NOW THEREFORE, BE IT RESOLVED, that the Adrian City Commission hereby temporarily authorizes Nicole Hernandez to continue the operation of her business MSC3/MSC3, Inc. while pending the approval of a state license.

NOW THEREFORE BE IT FURTHER RESOLVED, that the City Clerk is hereby authorized to sign all forms required by the State of Michigan for continued operation. Susan Burkert – Adrian – was very upset that the ordinance was passed; requested the Commission not allow 5 facilities.

Commissioners Watson, Dudas and Heldt were confused as to why this was on the agenda as it was not discussed beforehand and did not follow the process. Sarah Osburn explained that this resolution will allow MSC3 to continue operation while pending the approval of a state license; this was actually discussed in a pre-meeting and both City Attorney Osburn and Administrator Horn felt that this was the direction that the Commission wished to go. Mayor Jacobson also saw the resolution for the first time today but from his recollection for the pre-meeting felt that the Commission has been presented with what was agreed upon.

On motion by Commissioner Heldt, seconded by Commissioner Strayer, this resolution was adopted by a 5-1-0 vote.

Ayes: Mayor Jacobson and Commissioners Heldt, Faulhaber, Dudas and Strayer
Nays: Commissioner Watson
Abstained: None

**PUBLIC COMMENT**
1. Nicole Hernandez – MSC3 – thanked the Commission for approving the resolution; this temporary authorization does need to be in place in order for them to be able to continue to operate while waiting for a state license.
2. Tamar Zarate – Adrian – thanked the Commission for approving the ordinance as it allows those with illnesses to have access to medication other than what the pharmaceuticals provide.

**COMMISSIONER COMMENT**
1. Commissioner Watson clarified that he believes in the compassion side of medical marihuana but is against the commercial activity of it here in Adrian. Is also concerned that we have approved a draft that will have changes to it and that these edits will not be understood. Commissioners Strayer and Heldt agreed that edits will need to be made as they will also be made as the State moves forward.

The meeting was adjourned at 7:45 pm.


Chuck Jacobson                          Pat Baker
Mayor                                   City Clerk



**Sarah Osburn** 🏴

RE: Adrian Ordinances (marked-up)

To: Nicole Hernandez

Hi Nicole -

What is the full name of your business? I am preparing a resolution for Wednesday.

Thanks,

Sarah

See More from Nicole Hernandez

---

Found in Sent - nicole@ Mailbox

☆ **Nicole Hernandez**                          December 13, 2017 at 3:43 PM

Re: Adrian Ordinances (marked-up)

To: Sarah Osburn

MSC3 is the name of current caregiver facility, and MSC3, Inc. will be the new name that is applying for the state license.

See More from Sarah Osburn

EXHIBIT 6



**City of Adrian**

Office of the City Administrator

135 E. Maumee St. • Adrian, Michigan 49221-2703

(517) 264-4881 • Fax (517) 264-4882

February 8, 2018

To Whom It May Concern:

Please be advised that the location of 717 Division Street, Adrian, MI is in full compliance with City of Adrian Medical Marijuana Facilities Ordinances affecting that location.

Sincerely,

Shane A. Horn
City Administrator
City of Adrian
shorn@adrianmi.gov

EXHIBIT 7

# AGENDA
# ADRIAN CITY COMMISSION
## April 2, 2018,
## 7:00PM

I.   PRAYER AND PLEDGE OF ALLEGIANCE TO THE FLAG

II.  ROLL CALL

III. APPROVAL OF THE MINUTES OF THE MARCH 19, 2018 REGULAR MEETING OF THE ADRIAN CITY COMMISSION.

IV.  PRESENTATION OF ACCOUNTS

V.   CONSENT AGENDA

1. **CR18-017. Finance.** Resolution to set a public hearing date for April 16, 2018 to hear and consider comments to a Special Assessment Roll for delinquent invoices, including a ten (10%) percent penalty for late payment.

2. **CR18-018. Finance.** Resolution to set a public hearing date for April 16, 2018 to hear and consider comments to a Special Assessment Roll for delinquent water and sewer charges, including a ten (10%) percent penalty for late payment.

3. **CR18-019. Finance.** Resolution to set a public hearing date for April 16, 2018 to hear and consider comments regarding the adoption of the proposed FY2018-19 Budget and General Appropriations Act.

4. **CR18-020. Utilities.** Resolution to award a bid for the Westside Storage Tank Roof Repair for the Water Plant.

5. **CR18-021. Parks & Engineering Services.** Resolution to award a bid for Lawn Fertilization & Weed Control.

6. **CR18-022. Parks & Engineering Services.** Resolution to award a bid for Construction of Storage Barn at Oakwood Cemetery.

7. **CR18-023. Utilities Department.** Resolution to award a bid for the Broad Street HVAC Replacement Project.

VI.  REGULAR AGENDA

A. ORDINANCES

1. **Ord. 18-003.** Second reading and adoption of an ordinance to amend Article XIII, Section 13.4 of the Adrian Zoning Code "B-1 Local Business District".

2. **Ord. 18-004.** Second reading and adoption of an ordinance to amend Article XIV, Section 14.03 of the Adrian Zoning Code "B-2 Community Business District".

EXHIBIT 8

3. **Ord. 18-007.** Second reading and adoption of an ordinance to amend Section 3.1 of Article III of the Adrian Zoning/Development Regulations and the Zoning Map to the extent of deleting 329 Logan St. from WH Warehouse & Wholesale and including the same in the I-1 Light Industrial.

4. **Ord. 18-008.** First reading and introduction of an ordinance to amend Chapter 26, Article II, Section 26-74, to adopt Chapter 38 of the 2015 International Fire Code.

5. **Ord. 18-009.** First reading and introduction of an ordinance to amend Article XI, Commercial Medical Marihauna Facilities.

B. SPECIAL ORDERS

1. **SO-1.** Public hearing to hear and consider comments regarding the Special Assessment Roll for SAD #389.

C. RESOLUTIONS

1. **R18-040. Finance.** Resolution confirming Special Assessment Roll for SAD #389 and certifying costs – Springtime Acres.

2. **R18-041, Transportation.** Resolution to approve the RE-revised Controlled Substances and Alcohol Misuse Testing Policy for Adrian Dial-A-Ride.

3. **R18-042. Administration.** Resolution to approve a Medical Marihuana Application and Fee Schedule.

4. **R18-043, Administration.** Resolution to approve a Special Event Permit Application fee for use of alcohol in City parks.

VII. MISCELLANEOUS

1. Human Relations Commission Meeting minutes.

VIII. PUBLIC COMMENT

IX. COMMISSIONER COMMENTS



# REGULAR AGENDA

ORDINANCE NO 18-003

**AN ORDINANCE TO AMEND THE ZONING CODE OF THE CITY OF ADRIAN, XIII**

Article XIII, Section 13.4, of the Adrian Zoning Code is hereby amended to read as follows:

ARTICLE XIII
B-1 LOCAL BUSINESS DISTRICT

SECTION 13.4 ~~PRINCIPAL USES SUBJECT TO A SPECIAL APPROVAL USE~~
USES SUBJECT TO A ZONING EXCEPTION PERMIT

add...

3. Medical Marihuana Provision Centers as defined in ARTICLE II

   Subject to the following conditions

   a) All such facilities shall hold a valid License for the appropriate operation as issued by the State of Michigan.

   b) The Licensee shall have, or shall have applied for, a Permit as described in Section of 46-505.

   c) No more than ten (10) such Provisioning Centers shall be permitted anywhere within the city (Excluding Marijuana Overlay Districts).

   d) No such facility shall be situated within 1000 feet of any of the following uses:

      i) a school, public or private, including pre-school through college

   e) No such facility shall be situated within 250 feet of any of the following uses:

      i) a church or house of worship located in a residential district
      ii) a park or playground
      iii) a state licensed day-care facility as defined in the City of Adrian Zoning Ordinance, definition(s) 2.46
      iv) a facility that provides substances abuse disorder services as defined by MCL 330.6230S

City of Adrian
Planning Commission                                                Page 1

f)    No such facility shall be situated adjacent to or abutting a zoning district or lot zoned for single-family residential use (R-1 through R-4).

g)    Those provisions for signs contained in ARTICLE XXX of this ordinance notwithstanding, signage shall be limited to one identification sign, to be affixed flat against the front wall of the facility of size not to exceed eight (8)sq ft. *Ord. No. 17-035 Section 46.508 (J)*

h)    Drive-through, drive-up or curb-side service facilities are prohibited.

I)    A property owner shall have no vested rights or nonconforming use rights that would serve as a basis for failing to comply with this ordinance or any amendment of this ordinance.

j)    While the Planning Commission may issue a Zoning Exception Permit conditionally, no operation may commence or continue until the required Permit has been issued by the City Clerk and all conditions enumerated in Sections 46-506 and 46-507 are being met.

INTRODUCTION ...............................................................

SUMMARY PUBLISHED...............................................

ADOPTION .......................................................................

COMPLETED PUBLICATION.............................................

EFFECTIVE DATE.............................................................

City of Adrian
Planning Commission    Page 2

ORDINANCE NO 18-004

## AN ORDINANCE TO AMEND THE ZONING CODE OF THE CITY OF ADRIAN, XIII

Article XIV, Section 14.03, of the Adrian Zoning Code is hereby amended to read as follows:

## ARTICLE XIV
## B-2 COMMUNITY BUSINESS DISTRICT SECTION

14.03 USES SUBJECT TO A ZONING EXCEPTION PERMIT

add...

15. Medical Marihuana Provision Centers as defined in ARTICLE II

Subject to the following conditions

a) All such facilities shall hold a valid License for the appropriate operation as issued by the State of Michigan.

b) The Licensee shall have, or shall have applied for, a Permit as described in Section of 46-505.

c) No more than ten (10) such Provisioning Centers shall be permitted anywhere within the city (Excluding Marijuana Overlay Districts).

d) No such facility shall be situated within 1000 feet of any of the following uses:

   i) a school, public or private, including pre-school through college

e) No such facility shall be situated within 250 feet of any of the following uses:

   i) a church or house of worship located in a residential district
   ii) a park or playground
   iii) a state licensed day-care facility as defined in the City of Adrian Zoning Ordinance, definition(s) 2.46
   iv) a facility that provides substances abuse disorder services as defined by MCL 330.6230S

f) No such facility shall be situated adjacent to or abutting a zoning district or lot

City of Adrian
Planning Commission                                                                        Page 1

zoned for single-family residential use (R-1 through R-4).

g)    Those provisions for signs contained in ARTICLE XXX of this ordinance notwithstanding, signage shall be limited to one identification sign, to be affixed flat against the front wall of the facility of size not to exceed eight (8)sq ft. *Ord. No. 17-035 Section 46.508 (J)*

h)    Drive-through, drive-up or curb-side service facilities are prohibited.

I)    A property owner shall have no vested rights or nonconforming use rights that would serve as a basis for failing to comply with this ordinance or any amendment of this ordinance.

j)    While the Planning Commission may issue a Zoning Exception Permit conditionally, no operation may commence or continue until the required Permit has been issued by the City Clerk and all conditions enumerated in Sections 46-506 and 46-507 are being met.

INTRODUCTION ...............................................................

SUMMARY PUBLISHED...............................................

ADOPTION ...................................................................

COMPLETED PUBLICATION............................................

EFFECTIVE DATE..............................................................

City of Adrian
Planning Commission

ORDINANCE NO. 18-007

AN ORDINANCE TO AMEND THE CITY OF ADRIAN ZONING/DEVELOPMENT REGULATIONS.

The City of Adrian Ordains:

1. That Section 3.1 of Article III of the City of Adrian Zoning/Development Regulations, and the Zoning Map to which reference is therein made, is amended to the extent of deleting the following property hereinafter described from WH Warehouse & Wholesale and including the same in the I-1 **Light Industrial.**

2. Parcel described as follows:

**LEGAL DESCRIPTION**
COM AT PT ON N LI LOGAN ST 754' W OF W LI CENTER ST TH W ON N LI LOGAN ST 335.6' N PAR WITH DIVISION ST TO PT ON N LI BLK 1 140' E OF DIV ST ELY 328.9' S 137.3' TO BEG LOW MFG CO ADD

3. More commonly known as: **329 Logan St.**

INTRODUCTION .................................................................

SUMMARY PUBLISHED .....................................................

ADOPTION ........................................................................

COMPLETED PUBLICATION ...............................................

EFFECTIVE DATE................................................................

On Motion by Commissioner_____, supported by Commissioner_____, this ordinance was adopted by a _____vote.

March 6, 2018

Honorable Mayor
     And City Commission,

At their February 6, 2018 meeting the Adrian City Planning Commission voted unanimously to recommend to the City Commission the approval of rezoning **329 Logan St.** from **WH Warehouse & Wholesale to I-1 Light Industrial** and adopted the following resolution in support of this rezoning:

**RESOLUTION**

WHEREAS, 3.3 Zoning of Annexed Areas of the City of Adrian Zoning/Development Regulations require the rezoning of **329 Logan St.** a single parcel identified in Case file 18-004, from **WH Warehouse & Wholesale to I-1 Light Industrial**; and

WHEREAS, the City of Adrian Comprehensive Plan Future Land Use Map calls for designation of such parcel as industrial; and

WHEREAS, the Community Development Department has conducted a review in accordance with the review standards found in the Zoning/Development Regulations, Article XXVIII - Amendments pertaining to Official Zoning Map Amendments;

NOW THEREFORE BE IT RESOLVED that the Adrian City Planning Commission accepts the review and analysis conducted by the Community Development Department to approve this request; and

BE IT FURTHER RESOLVED that this rezoning would have no tangible impact on the surrounding industrial district; and

BE IT FURTHER RESOLVED that the Adrian City Planning Commission finds that the application is in compliance with the standards for Official Zoning Map Amendments; and

BE IT FURTHER RESOLVED that the Adrian City Planning Commission approve the rezoning Parcel XA0- 615-1003-00; and

BE IT FURTHER RESOLVED that the Adrian City Planning Commission recommends that the Adrian City Commission approve the request to amend the City of Adrian Official Zoning Map in accordance with said findings.

Respectfully submitted,

David Rohr, Planning & Zoning Administrator



# Adrian Fire Department

208 S Main St.
Adrian, MI 49221
517-264-4856

## Memorandum

To: Mayor Jacobson, City Commission and Administrator Horn

Form: Tim Bartenslager, Fire Chief

Date: March 28, 2018

Re:   NFPA 1, Chapter 38

NFPA 1, Fire Code, advances fire and life safety for the public and first responders as well as property protection by providing a comprehensive, integrated approach in fire code regulation and hazard management.

Currently, the fire department is using the IFC (International Fire Code) 2015 while conducting plan reviews. This code does not specifically address marijuana processing facilities. This year, NFPA 1 added a chapter addressing these types of facilities. Chapter 38 of this code (Marijuana Growing, Processing, or Extraction Facilities) applies to the growing and processing of marijuana within new and existing buildings. This chapter does not apply to the retail sale of marijuana where growing and processing does not occur.

Adopting this chapter will provide specific direction to the fire inspectors when conducting plan reviews to these types of facilities. I have attached a copy for review. It's my recommendation to adopt NFPA 1, chapter 38 as written before the marijuana application process is approved. Please contact me if you have any questions.

ORDINANCE 18-008

**AN ORDINANCE TO AMEND THE CODE OF THE CITY OF ADRIAN, CHAPTER 26, ARTICLE II, FIRE PREVENTION CODE.**

Chapter 26-74, Article II, of the Adrian Code is hereby amended to read as follows:

Add:  INTERNATIONAL FIRE CODE – CHAPTER 38

Chapter 38   Marijuana Growing, Processing, or Extraction Facilities

38.1 * Application.

38.1.1 *
Chapter 38 shall apply to the growing and processing of marijuana within new and existing buildings.

38.1.2
The use, storage, transfilling, and handling of hazardous materials shall comply with this chapter, and other applicable provisions of this Code.

38.1.3
Chapter 38 shall not apply to the retail sale of marijuana where growing and processing does not occur.

38.1.4
Where a material, its use, or associated process poses multiple hazards, all hazards shall be addressed in accordance with applicable requirements of this Code.

38.1.5 *
The occupancy of buildings or portions of buildings where the growing or processing of marijuana occurs shall be in accordance with Chapter 6 and the applicable building code.

38.2 Permits.
Permits, where required, shall comply with Section 1.12.

38.3 Fire Protection Systems.
Fire protection systems shall be provided in accordance with Chapter 13.

38.4 * Means of Egress.
Means of egress shall be in accordance with Chapter 14.

38.5 Growing or Production of Marijuana.

38.5.1 Ventilation for Light Fixtures.

Light fixture ductwork shall be installed in accordance with the manufacturer and NFPA 90A.

38.5.2 Odor Control.
The use of ozone generators used for odor control shall comply with Chapter 54.

38.5.3 Interior Finish, Contents, and Furnishings.

38.5.3.1
Interior finish, including the use of any plastic, mylar, or other thin film sheeting to enclose rooms or cover any walls or ceilings shall be in accordance with Sections 12.5 and 12.6.

38.5.3.2
Hanging of plastic from ceiling or from suspended overhead structures to create wall dividers shall not be permitted.

38.5.4 Fumigation.

38.5.4.1 * General.
Any marijuana growing facility that is fumigated shall comply with 38.5.4.

38.5.4.2 * Sources of Ignition.
Sources of ignition shall be shut off during the fumigation activity and remain shut off until the required ventilation is completed.

38.5.4.3 Notification.

38.5.4.3.1
The AHJ and fire department shall be notified in writing not less than 48 hours before the building, structure, or space is to be closed in connection with the utilization of any toxic or flammable fumigant.

38.5.4.3.2
Notification, as required by 38.5.4.3.1, shall include the following:

(1) The location of the enclosed space to be fumigated or fogged
(2) The occupancy
(3) The fumigants or insecticides to be utilized
(4) The person or persons responsible for the operation
(5) The date and time at which the operation will begin

38.5.4.3.3
Written notice of any fumigation or insecticidal fogging operation shall be given to all affected occupants of the building, structure, or space in which such operations are to be conducted with sufficient advance notice to allow the occupants to evacuate the building, structure, or space.

**38.5.4.3.4**
Written notice, as required by 38.5.4.3.3, shall inform the occupants as to the purposes, anticipated duration, and hazards associated with the fumigation or insecticidal fogging operation.

**38.5.4.4 Signage.**

**38.5.4.4.1**
Approved warning signs indicating the danger, type of chemical involved, and necessary precautions shall be posted on all doors and entrances to the premises, including interior rooms and areas.

**38.5.4.4.2**
Signage shall be located at the exterior main entry and at the entries to those areas being fumigated indicating the duration of the fumigation.

**38.5.4.5 Watch Personnel.**

**38.5.4.5.1**
During the period fumigation is in progress a watchperson shall remain on duty at the entrance or entrances to the enclosed fumigated space until after the fumigation is completed and the building, structure, or space is properly ventilated and safe for occupancy.

**38.5.4.5.2**
Sufficient watchpersons shall be provided to prevent any person from entering the enclosed space under fumigation unobserved.

**38.5.4.6 Occupancy During Fumigation.**
Occupants of the building, structure, or space to be fumigated, except the personnel conducting the fumigation, shall be evacuated from such building, structure, or space prior to commencing fumigation operations.

**38.5.4.7 Sealing of Building Structure, or Space.**
Paper, and other similar materials, used to wrap or cover a building, structure, or space in excess of that required for the sealing of cracks, casements, and similar openings shall meet the flame propagation performance criteria of Test Method 1 or Test Method 2 of NFPA 701.

**38.5.4.8 Maintenance of Openiugs.**
All openings to the building, structure, or space to be fumighted or fogged shall be kept securely closed during such operation.

**38.5.4.9 Venting and Cleanup.**
At the end of the exposure period the following procedures shall be followed:

(1) Fumigators shall safely and properly ventilate the premises and contents.

(2) Fumigant containers, residues, debris, and other materials used for such fumigation shall be properly disposed. (3) Obstructions shall be cleared from gas-fired appliance vents.

38.5.5 Pesticide Application.

38.5.5.1
A warning sign shall be provided to indicate that pesticides have been applied.

38.5.5.2
A record of pesticide application shall be provided and shall include the following:

(1) The pesticide product or chemical used
(2) The date and time the pesticide was applied
(3) When the room or area is safe to reoccupy

38.6 *  Processing or Extraction.

38.6.1 General.

38.6.1.1 Extraction Room.

38.6.1.1.1
Extraction rooms in a marijuana extraction facility shall be constructed in accordance with the building code and this Code.

38.6.1.1.2  *
For other than C02 and nonhazardous extraction process, the marijuana extraction equipment and process shall be located in a room of noncombustible construction dedicated to the extraction process and the room shall not be used for any other purpose.

38.6.1.1.3
Marijuana extraction shall not be located in any building containing assembly, educational, day care, health care, ambulatory health care, residential board and care, residential, or detention and correctional facilities.

38.6.1.1.4 * Means of Egress.
For extraction rooms using hazardous materials, each room shall be provided with at least one exit access door complying with the following:

(1)  The door shall swing in the direction of egress travel.
(2)  The door shall be provided with a self-closing or automatic closing device.
(3)  The door shall be equipped with panic or fire exit hardware.

38.6.1.2 Staffing.

38.6.1.2.1 *
For other than approved, unattended processes, the extraction process shall be continuously staffed.

38.6.1.2.2 *
Staff monitoring the extraction process shall be trained in the followiug:

(1)  The extraction process
(2)*  The transfer of solvents, where applicable
(3)  All emergency procedures

38.6.1.2.3
All staff training records shall be maintained on-site and made available to the AHJ upon request.

38.6.1.3 Operator Training.

38.6.1.3.1
In addition to the provisions of 38.6.1.2, the operator of the marijuana extraction equipment shall also receive training in safe operation of the equipment.

38.6.1.3.2 *
Documentation of training required by 38.6.1.3.1 shall be maintained on-site and made available to the AHJ upon request.

38.6.1.4 Signage.

38.6.1.4.1

All applicable safety data sheets (SDS) shall be posted in the extraction room.

38.6.1.4.2
The NFPA 704 hazard rating diamond sign and no smoking signs shall be posted on the exterior of the extraction room door.

38.6.1.4.3
Applicable hazard warning signage shall be posted throughout the facility as applicable for emergency equipment.

38.6.1.5 Systems, Equipment, and Processes.

38.6.1.5.1 General.

38.6.1.5.1.1

Systems, equipment, and processes shall be in accordance with 38.6.1.5.1 through 38.6.1.5.6.3.

38.6.1.5.1.2
Systems, equipment, and processes shall include, but are not limited to, vessels, chambers, containers, cylinders, tanks, piping, tubing, valves, fittings, and pumps.

38.6.1.5.1.3
In addition to the requirements in 38.6.1.5, systems, equipment, and processes shall also comply with 60.5.1.6, other applicable provisions of this Code, the building code, and NFPA 90A.

38.6.1.5.1.4
Systems or equipment used for the extraction of marijuana/cannabis oils and products from plant material shall be performed using equipment that has been listed or approved.

38.6.1.5.2 Equipment.

38.6.1.5.2.1
Where an explosion condition exists, heating equipment such as vacuum ovens, heating mantels, heat guns, or other equipment shall not be used to heat flammable or combustible liquids or oils containing liquefied petroleum gasses.

38.6.1.5.2.2
Refrigerators, freezers, and other cooling equipment used to store or cool flammable liquids shall be listed for the storage of flammable/combustible liquids or be listed for Class I, Division 1 locations, as described in Article 501 of NFPA 70.

38.6.1.5.2.3 *
LPG tanks shall comply with 69.2.1.

38.6.1.5.3 Approval for Systems and Equipment with No Listing.

38.6.1.5.3.1
Where the system used for extraction of marijuana oils and products from plant material is not listed, the system shall have a designer of record.

38.6.1.5.3.2
The designer of record shall be a registered design professional.

38.6.1.5.4 * Documentation for Equipment with No Listing.
For systems and equipment not listed for the specific use, a technical report in accordance with Section 1.15 documenting the design or peer review of the equipment shall be prepared and submitted to the AHJ for review and approval.

38.6.1.5.5 Change of Extraction Medium.

38.6.1.5.5.1
Where the medium of extraction or solvent is changed from the material indicated in the technical report or as required by the manufacturer, the technical report shall be revised at the cost of the facility owner and submitted for review and approval by the AHJ prior to the use of the equipment with the new medium or solvent.

38.6.1.5.5.2
If the original designer of record is not available, then the new designer of record shall comply with 38.6.1.5.3.1.

38.6.1.5.6  Equipment Field Verification.

38.6.1.5.6.1
Prior to operation of the extraction equipment, the designer of record for the equipment shall inspect the site of the extraction process once equipment has been installed for compliance with the technical report and the building analysis.

38.6.1.5.6.2
The designer of record performing the field verification shall provide a report of findings and observations of the site inspection to the
AHJ for review and approval prior to the approval of the extraction process.

38.6.1.5.6.3
The field inspection report authored by designer of record shall include the serial number of the equipment used in the process and shall confirm the equipment installed is the same model and type of equipment identified in the technical report.

38.6.2 Liquefied Petroleum Gas {LPG) Extraction.

38.6.2.1 General.
Marijuana extraction facilities using liquefied petroleum gas solvents shall comply with 38.6.1 and 38.6.2.

38.6.2.2 Exhaust.

38.6.2.2.1
An approved exhaust system shall be provided for LPG extractions.

38.6.2.2.2
The exhaust systems shall be installed and maintained accordance with NFPA 91 or the mechanical code.

38.6.2.2.3
All LPG extraction operations, including processes for off-gassing spent plant material and oil retrieval, shall be conducted within a chemical fume hood or enclosure in compliance with

NFPA 91 or the mechanical code.

38.6.2.3 Electrical.

38.6.2.3.1
All conductive equipment and conductive objects within the exhaust room shall be bonded and grounded with a resistance of less than
1.0 x 106 ohms in accordance with NFPA 70.

38.6.2.3.2
The area within a hood or enclosure used for LPG extractions shall be classified as a Class I, Division 1 hazardous location in accordance with NFPA 70.

38.6.2.3.3
Areas adjacent to Class I, Division 1 locations shall be classified in accordance with NFPA 70.

38.6.2.3.4
All electrical components within the extraction room shall be interlocked with the hazardous exhaust system such that room lighting and other extraction room electrical equipment will only operate when the exhaust system is in operation.

38.6.2.3.5
An automatic emergency power system shall be provided for the following items, when installed:

(1) Extraction room lighting
(2) Extraction room ventilation system
(3) Solvent gas detection system

38.6.2.4 Extraction Room Gas Detection System.

38.6.2.4.1
An approved continuous gas detection system shall be provided.

38.6.2.4.2 *

The gas detection system shall alert the extraction operator in an approved manner at a gas detection threshold no greater than
25 percent of the gas LELILFL.

38.6.2.4.3
Gas detection systems shall be provided with constant noninterlocked power.

38.6.2.5 Protection.
An automatic suppression system shall be provided within hoods or enclosures, including ductwork, in accordance with the following:

(1)  An automatic water sprinkler system that meets all applicable requirements of NFPA 13
(2)  A carbon dioxide extinguishing system that meets all applicable requirements of NFPA 12
(3)  A dry chemical extinguishing system that meets all applicable requirements of NFPA 17
(4)  A gaseous agent extinguishing system that meets all applicable requirements of NFPA 2001

38.6.2.6 Storage.
LPG containers not in use shall not be stored within extraction rooms.

38.6.2.7 Facility Piping Systems.
LPG liquid piping systems shall be in compliance with NFPA 58.

38.6.3 Flammable and Combustible Liquid Extraction.

38.6.3.1 General.
Marijuana extraction facilities using flammable and combustible liquid solvents shall comply
with 38.6.1 and 38.6.3.

38.6.3.2 Exhaust.

38.6.3.2.1 *
Extraction and post oil processing operations, including dispensing of flammable liquids between
containers, shall be performed in one of the following locations:

(1) A chemical fume hood in accordance with Chapter 7 of NFPA 45
(2) An approved exhaust system installed in accordance with NFPA 91 or the mechanical code

38.6.3.2.2
Unheated processes at atmospheric pressure using less than 16 oz (473 ml) of flammable liquids
shall not be required to comply with
38.6.3.2.1.

38.6.3.2.3
Classified electrical systems shall be in accordance with NFPA 70.

38.6.3.2.4
All electrical components within the chemical fume hood or exhausted enclosure shall be
interlocked such that the exhaust system shall be in operation for lighting and components to be
used.

38.6.3.3 Storage and Handling.
The storage, use, and handling of flammable liquids shall be in compliance with this chapter and
Chapter 66.

38.6.3.4
Heating of flammable or combustible liquids over an open flame shall be prohibited.

38.6.4 Carbon Dioxide Extraction.

38.6.4.1 General.
Marijuana extraction facilities using carbon dioxide solvents shall comply with 38.6.1 and 38.6.4.

38.6.4.2 Storage and Handling.
All $CO_2$ compressed gas cylinders shall be secured to a fixed object to prevent falling.

3B.G.4.3 $CO_2$ Gas Detection.

38.6.4.3.1
An approved, listed $CO_2$ detector shall be installed in the $CO_2$ extraction room.

38.6.4.3.2
Auto calibrating and self-zeroing devices or detectors shall be prohibited.

38.6.4.3.3
The detector shall be set to alarm at 5000 ppm of $CO_2$.

38.6.4.4 * $CO_2$ Discharges.
The extraction equipment pressure relief devices and blow-off valves shall be piped to the exterior of the building.

38.7 * Transfilling.
Filling LPG extraction equipment supply containers shall be in compliance with 69.3.5, 69.4.2, and NFPA 58.

INTRODUCTION...................................................................

SUMMARY PUBLISHED...........................................................

ADOPTION..........................................................................

COMPLETE PUBLICATION.......................................................

EFFECTIVE DATE.................................................................

On motion by Commissioner_____, seconded by

Commissioner_____, this Ordinance was _____ by a

_____ vote.

## ORDINANCE NO. 17-035

## AN ORDINANCE TO AMEND SECTION 46-500 OF CHAPTER 46, OF THE ADRIAN CODE, ENTITLED "COMMERCIAL MEDICAL MARIHUANA FACILITIES"

ARTICLE XI. - COMMERCIAL MEDICAL MARIHUANA FACILITIES

DIVISION 1. - GENERALLY

Sec. 46-500. - Legislative intent.

The purpose of this article is to implement the provisions of the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016, which authorizes the licensing and regulation of commercial medical marihuana facilities and affords the city the option of whether or not to allow commercial medical marihuana facilities; to regulate commercial medical marihuana facilities by requiring a permit and compliance with requirements as provided in this article, in order to maintain the public health, safety and welfare of the public.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-501. - Definitions.

The following words, terms, and phrases when used in this article shall have the meanings ascribed to them in this section, except when the context clearly indicates a different meaning.

*Department* means the Michigan State Department of Licensing and Regulatory Affairs or any authorized designated Michigan agency authorized to regulate, issue or administer a Michigan license for a commercial medical marihuana facility.

*Grower* or *grower facility* means a commercial entity that cultivated, dries, trims, or cures and packages marihuana for sale to a processor or provisioning center. Grower facilities are divided into classes. A Class A facility can have up to 500 plants; a Class B facility can have up to 1,000 plants; and a Class C facility can have up to 1,500 plants.

*License* means a current and valid license for a commercial medical marihuana facility issued by the State of Michigan.

*Licensee* means a person holding a current and valid Michigan license for a commercial medical marihuana facility.

*Marihuana* means that termed as defined in section 7106 of the public health code, 1978 PA 368, MCL 333.7106.

*Marihuana plant(s)*" means any plant of the species Cannabis sativa L.

*Medical marihuana facility(s)* means any facility, establishment and/or center that is required to be licensed under this chapter including a provisioning center, grower, processor, safety compliance facility, and secure transporter.

1

*Permit* means a current and valid permit for a commercial medical marihuana facility issued pursuant to this article, which shall be granted to a permit holder only for and limited to a specific permitted premises and a specific permitted property.

*Permit holder* means the person that holds a current and valid permit under this article.

*Permitted premises* means the particular building or buildings within which the permit holder will be authorized to conduct the facility's activities pursuant to the permit.

*Permitted property* means the real property comprised of the lot, parcel or other designated unit of real property upon which the permitted premises is situated.

*Person* means a natural person, company, partnership, profit or non-profit corporation, limited liability company, or any joint venture for a common purpose.

*Processor* or *processor facility* means a commercial entity that purchases marihuana from a grower and that extracts resin from the marihuana or creates a marihuana-infused product for sale and transfer in packaged form to a provisioning center.

*Provisioning center* means a commercial entity that purchases marihuana from a grower or processor and sells, supplies, or provides marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers. Provisioning center includes any commercial property where marihuana is sold at retail to registered qualifying patients or registered primary caregivers. A noncommercial location used by a primary caregiver to assist a qualifying patient connected to the caregiver through the department's marihuana registration process in accordance with the MMMA is not a provisioning center for the purposes of this article.

*Safety compliance facility* means a commercial entity that receives marihuana from a medical marihuana facility or registered primary caregiver, tests it for contaminants and for tetrahydrocannabinol and other cannabinoids, returns the test results, and may return the marihuana to the medical marihuana facility.

*Secure transporter* means a commercial entity that stores marihuana and transports marihuana between medical marihuana facilities for a fee.

(Ord. No. 17-035, 12-13-2017)

DIVISION 2. - PERMITS

Sec. 46-502. - Required.

No person shall operate a commercial medical marihuana facility in the City of Adrian without first obtaining a permit from the city clerk.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-503. - Commercial medical marihuana facilities authorized to operate in the city.

(a)   Growers, Class A, B and C.

(b)   Processors.

2

(c)  Provisioning centers.

(d)  Safety compliance facilities.

(e)  Secure transporters.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-504. - Number of facilities authorized by city.

(a) Growers:

  Class A: unlimited

  Class B: unlimited

  Class C: unlimited

(b) Processors: unlimited

(c) Provisioning centers: ~~Five~~ Ten permits in the B-1 and B-2 districts combined, unlimited in the Industrial overlay district.

(d) Safety compliance facilities: unlimited

(e) Secure transporters: unlimited

(Ord. No. 17-035, 12-13-2017)

Sec. 46-505. - Application.

(a) Application for a permit shall be made annually on forms provided by the city clerk.

(b) The permit requirements set forth in this chapter shall be in addition to and not in lieu of any other licensing and permitting requirements imposed by any other federal, state, or local law.

(c) Upon receipt of a completed application and payment of the required fee, the city clerk shall forward a copy of the application to each of the following departments for their approval: the fire department, the building department, the police department, the zoning administrator, and the city treasurer.

(d)  No application shall be approved unless:

  (1) The fire department and building department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this article.

  (2) The zoning administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit.

  (3) The city treasurer has confirmed that the applicant and the proposed location are not in default to the city.

(4) The police department has determined that the applicant has met the requirements of this chapter with respect to the background check and security plan.

(e) Each year, any pending applications for renewal or amendment of existing permits shall be reviewed and granted or denied before applications for new permits are considered.

(f) The issuance of any permit pursuant to this chapter does not create an exception, defense, or immunity to any person in regard to any potential criminal liability the person may have for the production, distribution, or possession of marihuana.

(g) A permit and a renewal permit shall not confer any vested rights or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval. A completed application or renewal application must be received by the city clerk no later than 90 days prior to the expiration of the current permit.

(h) No permit issued under this section may be transferred or assigned and no license is valid for any location other than the location specified in the license.

(i) All inspections, review and processing of the application shall be completed within 90 days of receipt of a complete application and all required fees.

(j) Any denial of a permit shall be in writing and shall state the reason for denial.

(k) A denial of a permit may be appealed to the ~~zoning board of appeals~~ **Medical Marihuana Permit Appeal Board, members of which are appointed by the City Commission by resolution.**

(l) If more qualified applications are received than the number of permits allowed for provisioning centers in the B-1 and B-2 districts under this article, the ~~approved applications shall be assigned a number and will be entered into a drawing for the available permits. The specific procedures for the drawing shall be adopted by the city commission by resolution. The commission may also adopt a policy by resolution to give preference to local businesses and to businesses legally operating at the time this article is adopted~~ **City Commission may review and amend this ordinance as it determines to be advisable.**

(m) Any applicant for a commercial medical marihuana facility permit whose building is not yet in existence at the time of city commission approval shall have one year immediately following the date of approval to complete construction of the building, in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.

(n) **The City Commission shall approve or deny a permit within one hundred twenty (120) days of receipt of the completed application and fees. The processing time may be extended upon written notice by the City for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. The City has no obligation to process or approve any incomplete Application, and any times provided under this Ordinance shall not begin to run until the City receives a completed Application, as determined by the City Clerk. A determination of a complete Application shall not prohibit the City from requiring supplemental information.**

4

(Ord. No. 17-035, 12-13-2017)

Sec. 46-506. - Conditions of issuance.

The city clerk shall not issue a permit until all of the following conditions have been met:

(1) The address of the facility and any other contact information shall be listed on the application form.

(2) The name and address of the owners of all real property where the facility is located shall be listed on the application form.

(3) All documentation showing the proposed permit holder's valid tenancy, ownership or other legal interest in the proposed permitted property and permitted premises.

(4) If the proposed permit holder is not the owner of the property, a notarized statement from the owner of such property authorizing the use of the property for a commercial medical marihuana facility.

(5) If the proposed permit holder is a corporation, non-profit organization, limited liability company or any other entity other than a natural person it must state its legal status, attach a copy of all company formation documents (including amendments), proof of registration with the State of Michigan and a certificate of good standing along with the articles, resolutions and by-laws/operating agreements.

(6) The name and addresses of all owners and managers of the facility shall be listed on the application form.

(7) A copy of a valid unexpired driver's license or state issued ID for all owners, directors, officers and managers of the proposed facility.

(8) Evidence of a valid sales tax license for the business if such a license is required by state law or local regulations.

(9) A signed release shall be provided, on a form included with the application, permitting the City of Adrian police department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other state or the United States.

(10) Proof that a valid and current certificate of occupancy has been issued by the building official indicating that all necessary inspections have been conducted, which may include but are not limited to electrical inspection, plumbing inspection and mechanical inspection **is required within 180 days of a permit being issued.**

(11) Where the application identifies electrical devices are being used or intended to be used in conjunction with a permit, proof that the fire department has inspected and approved the use or proposed use and that any necessary permits for electrical alterations have been obtained.

(12)Where the application identifies structural modifications have been made or are intended in conjunction with the permit, proof that the building code officials have inspected the property and issued the necessary permits.

5

(13) A copy of the business and operations plan showing in detail the commercial medical marihuana facility's proposed plan of operation, including without limitation, the following:

  a.   A description of the type of facility proposed and the anticipated or actual number of employees.

  b.   A security plan which shall include a general description of security system, current centrally alarmed and monitored security system service agreement for the proposed permitted premises, and confirmation that those systems will meet state requirements and be approved by the state prior to commencing operations.

  c.   A general description by category of all products to be sold.

  d.   A list of material safety data sheets for all nutrients, pesticides and other chemicals proposed for use in the commercial medical marihuana facility.

  e.   A description and plan for all equipment and methods that will be employed to stop any impact to adjacent uses, including enforceable assurances that no odor will be detectable from outside the permitted premises.

  f.   A plan for disposal of marihuana and related byproducts that will be used at the facility.

  g.   A technology plan that includes the plan for data collection and data security.

(14) ~~Identify any business that is directly involved in the growing, processing, testing, transporting or sale of marihuana for the facility.~~

(15) State whether applicant has ever applied for and been denied any commercial license or certificate by a licensing authority in Michigan or any other jurisdiction or whether any commercial license has been restricted, suspended, revoked or not renewed. Describe the facts and circumstances concerning the application, denial, restriction, suspension, revocation or nonrenewal including the licensing authority, the date each action was taken, and the reason for each action.

(16) Provide a signed and sealed (by a Michigan registered architect, surveyor or professional engineer) site plan and interior floor plan of the permitted premises and the permitted property.

(17) List any other commercial medical marihuana facility that the licensee is authorized to operate in any other jurisdiction within the state, or another state and the applicant's involvement in each facility.

(18) Provide any other information reasonably requested by the city regarding the processing or consideration of the application.

(19) An affidavit that the applicant is not in default to the city. Specifically, that the applicant has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the city.

(20) For provisioning centers, a proposed patient recordkeeping plan that will track quantities sold to individual patients and caregivers, and will monitor inventory.

(21) A description of procedures for testing of contaminants including mold and pesticides.

(22) An estimate of the number and types of jobs that the facility is expected to create, the amount and type of compensation expected to be paid for such jobs, and the projected annual budget and revenue of the facility.

(23) A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim demand, action, legal redress or recourse against the City of Adrian, its elected and appointed officials and its employees and agents for any claims, damages, liabilities, causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders, employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the City of Adrian, its elected and appointed officials, employees, attorneys, and agents.

(24) As it relates to grower facilities:

a. A cultivation plan that includes at a minimum, a description of the cultivation methods to be used, including plans for the growing mediums, treatments, and/or additives.

b. A production testing plan that includes, at a minimum, a description of how and when samples for laboratory testing will be selected, what type of testing will be requested and how the test results will be used.

c. An affidavit that all operations will be conducted in conformance with the MMFLA and all other applicable state laws.

d. A chemical and pesticide storage plan that states the names of the pesticides to be used in cultivation and where and how pesticides and chemicals will be stored, along with a plan for the disposal of unused pesticides.

e. The applicant shall acknowledge that all cultivation must be performed in building.

(25) Proof of an insurance policy covering the facility in the amount of at least $1,000,000.00 for property damage; $1,000,000.00 for injury to one person; and at least $2,000,000.00 for two or more persons resulting from the same occurrence. The city shall be notified by the insurance carrier 30 days in advance of any cancellation.

(26) Proof of a surety bond in the amount of $100,000.00 with the city listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article or in the alternative applicant can create an escrow account for the benefit of the city at a city-approved financial institution in the amount of $20,000.00.

(27) Proof of liquid assets that equal or exceed the state's capitalization requirements.

(Ord. No. 17-035, 12-13-2017)

7

Sec. 46-507. - Conduct of permit holder.

(a) Each permit holder shall, as a condition of obtaining and maintaining a permit, agree to comply at all times with applicable local and state building, zoning, fire, health and sanitation statutes, ordinances and regulations.

(b) The premises shall be operated and maintained at all times consistent with responsible business practices and so that no excessive demands will be placed upon public health or safety services, nor any excessive risk of harm to the public health, safety or sanitation.

(c) Permit holder shall immediately notify the city clerk and update as required the information provided on the application and the permit. Further, the permit holder shall notify the city clerk of any other changes that may materially affect the state license or the permit.

(d) An applicant or permit holder has a duty to notify the city clerk in writing of any pending criminal charge, and any criminal conviction or other offense, including but not limited to, Michigan Medical Marihnana Act (MCL 333.26421 et seq.) violations, Medical Marihuana Facilities Licensing Act (MCL 333.27101 et seq.) violations, building, fire, zoning violations by the applicant, permit holder, any owner, principal, officer, director, manager or employee relating to the cultivation, processing, manufacture, storage, sale, distribution, testing or consumption of any form of marihuana within ten days of the event.

(e) The permit holder may not operate any other commercial medical marihuana facility in the permitted premises or on the permitted property, or in its name at any other location within the city without first obtaining a separate permit.

(f) The permit holder may not transfer the permit to any other individual or entity.

(g) Failure to comply with the requirements contained in this section is a civil infraction.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-508. - Operational requirements.

A commercial medical marihuana facility issued a permit under this article and operating in the city shall at all times comply with the following operational requirements, which the city commission may review and amend from time to time as it determines reasonable.

(1) Commercial medical marihuana facilities shall comply with the zoning code, the building code, and the property maintenance code at all times.

(2) The facility must hold a valid local permit and state medical marihuana facility license for the type of commercial medical marihuana facility carried out at the permitted property.

(3) Each commercial medical marihuana facility shall be operated from the permitted premises on the permitted property. No commercial medical marihuana facility shall be permitted to operate from a moveable, mobile or transitory location, except for a permitted and licensed secure transporter when engaged in the lawful transport of marihuana.

8

(4)   No person under the age of 18 shall be permitted to enter into the permitted premises without a parent or legal guardian.

(5)   Medical marihuana facilities shall be closed for business and no sale or other distribution of marihuana in any form shall occur upon the premises or be delivered from the premises between the hours of 9:00 p.m. and 7:00 a.m.

(6)   Permit holders shall at all times maintain a security system that meets state law requirements, and shall also include:

    a.   Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the permitted premises;

    b.   Burglary alarm systems which are professionally monitored and operated 24 hours a day, seven days a week;

    c.   A locking safe permanently affixed to the permitted premises that shall store all marihuana and cash remaining at the facility overnight;

    d.   All marihuana in whatever form stored at the permitted premises shall be kept in a secure manner and shall not be visible from outside the permitted premises, nor shall it be grown, processed, exchanged, displayed or dispensed outside the permitted premises;

    e.   All security recordings and documentation shall be preserved for at least 48 hours by the permit holder and made available to law enforcement upon request for inspection.

(7)   No commercial provisioning center shall be located within ~~500~~ 250 feet from any educational institution or school, college or university, or public or private park, with the minimum distance measured horizontally between the nearest property lines.

(8)   The amount of marihuana on the permitted property and under the control of the permit holder, owner or operator of the facility shall not exceed the amount permitted by the state license.

(9)   The marihuana offered for sale and distribution must be packaged and labeled in accordance with state law. ~~The facility~~ Provisioning centers are ~~is~~ prohibited from selling, soliciting or receiving orders for marihuana or marihuana products over the internet.

(10)   No pictures, photographs, drawings, or other depictions of marihuana or marihuana paraphernalia shall appear on the outside of any permitted premises nor be visible outside of the permitted premises on the permitted property. The words "marihuana," "cannabis" and any other words used or intended to convey the presence or availability of marihuana shall not appear on the outside of the permitted premises nor be visible outside of the permitted premises on the permitted property.

(11)   The sale, consumption, or use of alcohol or tobacco products on the permitted premises is prohibited. Smoking or consumption of controlled substances, including marihuana, on the permitted premises is prohibited.

(12)   All activities of commercial medical marihuana facilities, including without limitation, distribution, growth, cultivation, or the sale of marihuana, and all other related activity

permitted under the permit holder's license or permit must occur indoors. The facility's operation and design shall minimize any impact to adjacent uses, including the control of any odor by maintaining and operating an air filtration system so that no odor is detectable outside the permitted premises.

(13) A patient may not grow his or her own marihuana at a commercial medical marihuana facility.

(14) No person operating a facility shall provide or otherwise make available marihuana to any person who is not legally authorized to receive marihuana under state law.

(15) All necessary building, electrical, plumbing and mechanical permits must be obtained for any part of the permitted premises in which electrical, wiring, lighting or watering devices that support the cultivation, growing, harvesting or testing of marijuana are located.

(16) The permit holder, owner and operator of the facility shall use lawful methods in controlling waste or by-products from any activities allowed under the license or permit.

(17) Marihuana may be transported by a secure transporter within the city under this article, and to effectuate its purpose, only:

    a.   By persons who are otherwise authorized by state law to possess marihuana for medical purposes;

    b.   In a manner consistent with all applicable state laws and rules, as amended;

    c.   In a secure manner designed to prevent the loss of the marihuana;

    d.   No vehicle used for transportation or delivery of marihuana under this article shall have for markings the words "marihuana," "cannabis," or any similar words; pictures or other renderings of the marihuana plant; advertisements for marihuana or for its sale, transfer, cultivation, delivery, transportation or manufacture, or any other word, phrase or symbol indicating or tending to indicate that the vehicle is transporting marihuana.

    e.   No vehicle may be used for the ongoing or continuous storage of marihuana, but may only be used incidental to, and in furtherance of, the transportation of marihuana.

(18) The city commission may impose such reasonable terms and conditions on a commercial medical marihuana facility special use as may be necessary to protect the public health, safety and welfare, and to obtain compliance with the requirements of this article and applicable law.

(19) No facility shall be operated in a manner creating noise, dust, vibration, glare, fumes, or odors beyond the boundaries of the property on which the facility is operated; or creating any other nuisance that hinders the public health, safety and welfare of the residents of the City of Adrian.

(Ord. No. 17-035, 12-13-2017)

10

Sec. 46-509. - Effective permit; suspension; daily violation.

(a) A permit is valid only for the location identified on the permit and cannot be transferred to another location in the city without a new application.

(b) A permit is valid for one year from the date of issuance.

(c) The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.

(d) Acceptance by the permit holder of the permit constitutes consent by the permit holder and its owners, officers, managers, agents and employees for any state, federal or local law enforcement to conduct random and unannounced examinations of the facility and all articles of property in that facility at any time to ensure compliance with this article, any other local regulations and with the permit.

(e) A permit does not prohibit prosecution by the federal government for violation of its laws or prosecution by state authorities for violations of the Act or other violations not protected by the Act.

(f) Compliance with city ordinance and state statutes is a condition of maintenance of a permit and a permit may be suspended for failure to comply with any of the provisions of this section.

(g) Suspension of a permit is not an exclusive remedy and nothing contained herein is intended to limit the city's ability to prosecute code violations that may have been the cause of the suspension or any other code violations not protected by this Act.

(h) Violations of the provisions of this article or failure to comply with any of the requirements of this article is a civil infraction. The fine for this civil infraction is $500.00 and abatement costs of each violation together with all remedies available under MCL 600.8701 et seq. Each day a violation continues shall be deemed a separate civil infraction.

(i) Operating a medical marihuana facility without a valid permit or assisting in the operation of a medical marihuana facility without a valid permit for that property is a civil infraction. The fine for this civil infraction shall be $500.00. Each day that a person shall operate a medical marihuana facility without a permit or assist in the operation of a medical marijuana facility without a valid permit in effect for that property shall constitute as a separate offense.

(j) In addition to any other remedies, the city may institute proceedings for injunction, mandamus, abatement or other appropriate remedies to prevent, enjoin, abate or remove any violations of this article. The rights and remedies provided herein are civil in nature. The imposition of a fine shall not exempt the violator from compliance with the provisions of this article.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-510. - Fees for licenses.

The fees for the permit herein defined shall be set by resolution of the city commission. The fee shall defray the costs incurred by the city for inspection, administration and enforcement of this article and shall not exceed any limitations imposed by Michigan law.

11

(Ord. No. 17-035, 12-13-2017)

Sec. 46-511. - Severability.

The provisions of this article are hereby declared severable. If any part of this article is declared invalid for any reason by a court of competent jurisdiction, that declaration does not affect or impair the validity of all other provisions that are not subject to that declaration.

(Ord. No. 17-035, 12-13-2017)


INTRODUCTION.................................................................................

SUMMARY PUBLISHED......................................................................

ADOPTION..........................................................................................

COMPLETE PUBLICATION...................................................................

EFFECTIVE DATE..............................................................................


On motion by Commissioner_____, seconded by

Commissioner_____, this Ordinance was _____ by a

_____ vote.

12

# MEMO

DATE:     March 29, 2018

TO:       Hon. Mayor Jacobson and City Commission

FROM:     Shane A. Horn, City Administrator

SUBJECT:  Medical Marijuana Application and Fee Schedule

City staff with assistance from the Medical Marijuana Committee has compiled a Medical Marihuana Facilities Permit Application that has been reviewed by Sarah Osburn and the firm of Cohl, Stoker & Toskey, P.C. The Resolution is asking the Commission to approve of the Application packet that will be made available to prospective business owners.

The Resolution also sets a nonrefundable annual fee of $5,000 per facility license to defray our administrative and enforcement costs as allowed in Act 281 of 2016.

We would also propose an open application period starting on May 1, 2018 until the close of business on July 31, 2018.

**AGENDA**
**ADRIAN CITY COMMISSION**
**April 16, 2018,**
**7:00PM**

I.  PRAYER AND PLEDGE OF ALLEGIANCE TO THE FLAG

II.  ROLL CALL

III.  APPROVAL OF THE MINUTES OF THE APRIL 2, 2018 REGULAR MEETING OF THE ADRIAN CITY COMMISSION.

IV.  PRESENTATION OF ACCOUNTS

V.  COMMUNICATIONS

    1.  **C-1. Finance.** Revenue and Expenditure Report for March.

VI.  REGULAR AGENDA

    A.  ORDINANCES

        1.  **Ord. 18-009.** Second reading and adoption of an ordinance to amend Article XI, Commercial Medical Marihauna Facilities.

    B.  SPECIAL ORDERS

        1.  **SO-1.** Public hearing to hear and consider comments to a Special Assessment Roll for delinquent invoices, including a ten (10%) percent penalty for late payment.

        2.  **SO-2.** Public hearing to hear and consider comments to a Special Assessment Roll for delinquent water and sewer charges, including a ten (10%) percent penalty for late payment.

        3.  **SO-3.** Public hearing to hear and consider comments regarding the adoption of the proposed FY2018-19 Budget and General Appropriations Act.

    C.  RESOLUTIONS

        1.  **R18-044. Finance.** Resolution confirming Special Assessment Roll for delinquent invoices, including a ten (10%) percent penalty for late payment.

        2.  **R18-045. Finance.** Resolution confirming Special Assessment Roll for delinquent water and sewer charges, including a ten (10%) percent penalty for late payment.

        3.  **R18-046. Finance.** Resolution adopting the proposed FY2018-19 Budget and General Appropriations Act.

EXHIBIT 9

4. **R18-047. Utilities.** Resolution to award a bid for the Maple Ave. Sewer & Road Improvement project.

5. **R18-048. Utilities.** Resolution to waive the bid process and extend a contract with Tetra Tech of Ann Arbor, MI to include construction engineering oversight for the Maple Ave. Sewer & Road Improvement project.

6. **R18-049. Parks & Engineering.** Resolution to approve the submittal of the FY2021 funding application for the MDOT 2021 Local Bridge Program and to direct the City Administrator upon grant award to adjust the FY2020-21 Capital Improvement Budget.

VII.   MISCELLANEOUS

1. Adrian Fire Department Report.

2. D.A.R.T. Passenger Ridership Report.

3. Departmental Report.

4. Engage Adrian (seeclickfix) Report.

5. Inspection Report.

6. Planning Commission Meeting minutes.

7. DDA Meeting minutes.

VIII.   PUBLIC COMMENT

IX.   COMMISSIONER COMMENTS



# REGULAR AGENDA

ORDINANCE NO. 17-035

## AN ORDINANCE TO AMEND SECTION 46-500 OF CHAPTER 46, OF THE ADRIAN CODE, ENTITLED "COMMERCIAL MEDICAL MARIHUANA FACILITIES"

ARTICLE XI. - COMMERCIAL MEDICAL MARIHUANA FACILITIES

DIVISION 1. - GENERALLY

Sec. 46-500. - Legislative intent.

The purpose of this article is to implement the provisions of the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016, which authorizes the licensing and regulation of commercial medical marihuana facilities and affords the city the option of whether or not to allow commercial medical marihuana facilities; to regulate commercial medical marihuana facilities by requiring a permit and compliance with requirements as provided in this article, in order to maintain the public health, safety and welfare of the public.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-501. - Definitions.

The following words, terms, and phrases when used in this article shall have the meanings ascribed to them in this section, except when the context clearly indicates a different meaning.

*Department* means the Michigan State Department of Licensing and Regulatory Affairs or any authorized designated Michigan agency authorized to regulate, issue or administer a Michigan license for a commercial medical marihuana facility.

*Grower* or *grower facility* means a commercial entity that cultivated, dries, trims, or cures and packages marihuana for sale to a processor or provisioning center. Grower facilities are divided into classes. A Class A facility can have up to 500 plants; a Class B facility can have up to 1,000 plants; and a Class C facility can have up to 1,500 plants.

*License* means a current and valid license for a commercial medical marihuana facility issued by the State of Michigan.

*Licensee* means a person holding a current and valid Michigan license for a commercial medical marihuana facility.

*Marihuana* means that termed as defined in section 7106 of the public health code, 1978 PA 368, MCL 333.7106.

*Marihuana plant(s)"* means any plant of the species Cannabis sativa L.

*Medical marihuana facility(s)* means any facility, establishment and/or center that is required to be licensed under this chapter including a provisioning center, grower, processor, safety compliance facility, and secure transporter.

1

*Permit* means a current and valid permit for a commercial medical marihuana facility issued pursuant to this article, which shall be granted to a permit holder only for and limited to a specific permitted premises and a specific permitted property.

*Permit holder* means the person that holds a current and valid permit under this article.

*Permitted premises* means the particular building or buildings within which the permit holder will be authorized to conduct the facility's activities pursuant to the permit.

*Permitted property* means the real property comprised of the lot, parcel or other designated unit of real property upon which the permitted premises is situated.

*Person* means a natural person, company, partnership, profit or non-profit corporation, limited liability company, or any joint venture for a common purpose.

*Processor* or *processor facility* means a commercial entity that purchases marihuana from a grower and that extracts resin from the marihuana or creates a marihuana-infused product for sale and transfer in packaged form to a provisioning center.

*Provisioning center* means a commercial entity that purchases marihuana from a grower or processor aud sells, supplies, or provides marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers. Provisioning center includes any commercial property where marihuana is sold at retail to registered qualifying patients or registered primary caregivers. A noncommercial location used by a primary caregiver to assist a qualifying patient connected to the caregiver through the department's marihuana registration process in accordance with the MMMA is not a provisioning center for the purposes of this article.

*Safety compliance facility* means a commercial entity that receives marihuana from a medical marihuana facility or registered primary caregiver, tests it for contaminants and for tetrahydrocannabinol and other cannabinoids, returns the test results, and may return the marihuana to the medical marihuana facility.

*Secure transporter* means a commercial entity that stores marihuana and transports marihuana between medical marihuana facilities for a fee.

(Ord. No. 17-035, 12-13-2017)

DIVISION 2. - PERMITS

Sec. 46-502. - Required.

No person shall operate a commercial medical marihuana facility in the City of Adrian without first obtaining a permit from the city clerk.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-503. - Commercial medical marihuana facilities authorized to operate in the city.

(a) Growers, Class A, B and C.

(b) Processors.

2

(c)    Provisioning centers.

(d)    Safety compliance facilities.

(e)    Secure transporters.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-504. - Number of facilities authorized by city.

(a)  Growers:

    Class A: unlimited

    Class B: unlimited

    Class C: unlimited

(b)  Processors: unlimited

(c)  Provisioning centers: ~~Five~~ **Ten** permits in the B-1 and B-2 districts combined, unlimited in the Industrial overlay district.

(d)  Safety compliance facilities: unlimited

(e)  Secure transporters: unlimited

(Ord. No. 17-035, 12-13-2017)

Sec. 46-505. - Application.

(a)  Application for a permit shall be made annually on forms provided by the city clerk.

(b)  The permit requirements set forth in this chapter shall be in addition to and not in lieu of any other licensing and permitting requirements imposed by any other federal, state, or local law.

(c)  Upon receipt of a completed application and payment of the required fee, the city clerk shall forward a copy of the application to each of the following departments for their approval: the fire department, the building department, the police department, the zoning administrator, and the city treasurer.

(d)  No application shall be approved unless:

    (1)  The fire department and building department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this article.

    (2)  The zoning administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit.

    (3)  The city treasurer has confirmed that the applicant and the proposed location are not in default to the city.

3

(4)  The police department has determined that the applicant has met the requirements of this chapter with respect to the background check and security plan.

(e)  Each year, any pending applications for renewal or amendment of existing permits shall be reviewed and granted or denied before applications for new permits are considered.

(f)  The issuance of any permit pursuant to this chapter does not create an exception, defense, or immunity to any person in regard to any potential criminal liability the person may have for the production, distribution, or possession of marihuana.

(g)  A permit and a renewal permit shall not confer any vested rights or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval. A completed application or renewal application must be received by the city clerk no later than 90 days prior to the expiration of the current permit.

(h)  No permit issued under this section may be transferred or assigned and no license is valid for any location other than the location specified in the license.

(i)  All inspections, review and processing of the application shall be completed within 90 days of receipt of a complete application and all required fees.

(j)  Any denial of a permit shall be in writing and shall state the reason for denial.

(k)  A denial of a permit may be appealed to the ~~zoning board of appeals~~ **Medical Marihuana Permit Appeal Board, members of which are appointed by the City Commission by resolution.**

(l)  If more qualified applications are received than the number of permits allowed for provisioning centers in the B-1 and B-2 districts under this article, the ~~approved applications shall be assigned a number and will be entered into a drawing for the available permits. The specific procedures for the drawing shall be adopted by the city commission by resolution. The commission may also adopt a policy by resolution to give preference to local businesses and to businesses legally operating at the time this article is adopted~~ **City Commission may review and amend this ordinance as it determines to be advisable.**

(m)  Any applicant for a commercial medical marihuana facility permit whose building is not yet in existence at the time of city commission approval shall have one year immediately following the date of approval to complete construction of the building, in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.

(n)  **The City Commission shall approve or deny a permit within one hundred twenty (120) days of   receipt of the completed application and fees. The processing time may be extended upon written notice by the City for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. The City has no obligation to process or approve any incomplete Application, and any times provided under this Ordinance shall not begin to run until the City receives a completed Application, as determined by the City Clerk. A determination of a complete Application shall not prohibit the City from requiring supplemental information.**

4

(Ord. No. 17-035, 12-13-2017)

Sec. 46-506. - Conditions of issuance.

The city clerk shall not issue a permit until all of the following conditions have been met:

(1)  The address of the facility and any other contact information shall be listed on the application form.

(2)  The name and address of the owners of all real property where the facility is located shall be listed on the application form.

(3)  All documentation showing the proposed permit holder's valid tenancy, ownership or other legal interest in the proposed permitted property and permitted premises.

(4)  If the proposed permit holder is not the owner of the property, a notarized statement from the owner of such property authorizing the use of the property for a commercial medical marihuana facility.

(5)  If the proposed permit holder is a corporation, non-profit organization, limited liability company or any other entity other than a natural person it must state its legal status, attach a copy of all company formation documents (including amendments), proof of registration with the State of Michigan and a certificate of good standing along with the articles, resolutions and by-laws/operating agreements.

(6)  The name and addresses of all owners and managers of the facility shall be listed on the application form.

(7)  A copy of a valid unexpired driver's license or state issued ID for all owners, directors, officers and managers of the proposed facility.

(8)  Evidence of a valid sales tax license for the business if such a license is required by state law or local regulations.

(9)  A signed release shall be provided, on a form included with the application, permitting the City of Adrian police department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other state or the United States.

(10) Proof that a valid and current certificate of occupancy has been issued by the building official indicating that all necessary inspections have been conducted, which may include but are not limited to electrical inspection, plumbing inspection and mechanical inspection **is required within 180 days of a permit being issued.**

(11) Where the application identifies electrical devices are being used or intended to be used in conjunction with a permit, proof that the fire department has inspected and approved the use or proposed use and that any necessary permits for electrical alterations have been obtained.

(12) Where the application identifies structural modifications have been made or are intended in conjunction with the permit, proof that the building code officials have inspected the property and issued the necessary permits.

5

(13) A copy of the business and operations plan showing in detail the commercial medical marihuana facility's proposed plan of operation, including without limitation, the following:

    a.   A description of the type of facility proposed and the anticipated or actual number of employees.

    b.   A security plan which shall include a general description of security system, current centrally alarmed and monitored security system service agreement for the proposed permitted premises, and confirmation that those systems will meet state requirements and be approved by the state prior to commencing operations.

    c.   A general description by category of all products to be sold.

    d.   A list of material safety data sheets for all nutrients, pesticides and other chemicals proposed for use in the commercial medical marihuana facility.

    e.   A description and plan for all equipment and methods that will be employed to stop any impact to adjacent uses, including enforceable assurances that no odor will be detectable from outside the permitted premises.

    f.   A plan for disposal of marihuana and related byproducts that will be used at the facility.

    g.   A technology plan that includes the plan for data collection and data security.

(14) ~~Identify any business that is directly involved in the growing, processing, testing, transporting or sale of marihuana for the facility.~~

(15) State whether applicant has ever applied for and been denied any commercial license or certificate by a licensing authority in Michigan or any other jurisdiction or whether any commercial license has been restricted, suspended, revoked or not renewed. Describe the facts and circumstances concerning the application, denial, restriction, suspension, revocation or nonrenewal including the licensing authority, the date each action was taken, and the reason for each action.

(16) Provide a signed and sealed (by a Michigan registered architect, surveyor or professional engineer) site plan and interior floor plan of the permitted premises and the permitted property.

(17) List any other commercial medical marihuana facility that the licensee is authorized to operate in any other jurisdiction within the state, or another state and the applicant's involvement in each facility.

(18) Provide any other information reasonably requested by the city regarding the processing or consideration of the application.

(19) An affidavit that the applicant is not in default to the city. Specifically, that the applicant has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the city.

(20) For provisioning centers, a proposed patient recordkeeping plan that will track quantities sold to individual patients and caregivers, and will monitor inventory.

(21) A description of procedures for testing of contaminants including mold and pesticides.

6

(22) An estimate of the number and types of jobs that the facility is expected to create, the amount and type of compensation expected to be paid for such jobs, and the projected annual budget and revenue of the facility.

(23) A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim demand, action, legal redress or recourse against the City of Adrian, its elected and appointed officials and its employees and agents for any claims, damages, liabilities, causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders, employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the City of Adrian, its elected and appointed officials, employees, attorneys, and agents.

(24) As it relates to grower facilities:

   a.   A cultivation plan that includes at a minimum, a description of the cultivation methods to be used, including plans for the growing mediums, treatments, and/or additives.

   b.   A production testing plan that includes, at a minimum, a description of how and when samples for laboratory testing will be selected, what type of testing will be requested and how the test results will be used.

   c.   An affidavit that all operations will be conducted in conformance with the MMFLA and all other applicable state laws.

   d.   A chemical and pesticide storage plan that states the names of the pesticides to be used in cultivation and where and how pesticides and chemicals will be stored, along with a plan for the disposal of unused pesticides.

   e.   The applicant shall acknowledge that all cultivation must be performed in building.

(25) Proof of an insurance policy covering the facility in the amount of at least $1,000,000.00 for property damage; $1,000,000.00 for injury to one person; and at least $2,000,000.00 for two or more persons resulting from the same occurrence. The city shall be notified by the insurance carrier 30 days in advance of any cancellation.

(26) Proof of a surety bond in the amount of $100,000.00 with the city listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article or in the alternative applicant can create an escrow account for the benefit of the city at a city-approved financial institution in the amount of $20,000.00.

(27) Proof of liquid assets that equal or exceed the state's capitalization requirements.

(Ord. No. 17-035, 12-13-2017)

7

Sec. 46-507. - Conduct of permit holder.

(a) Each permit holder shall, as a condition of obtaining and maintaining a permit, agree to comply at all times with applicable local and state building, zoning, fire, health and sanitation statutes, ordinances and regulations.

(b) The premises shall be operated and maintained at all times consistent with responsible business practices and so that no excessive demands will be placed upon public health or safety services, nor any excessive risk of harm to the public health, safety or sanitation.

(c) Permit holder shall immediately notify the city clerk and update as required the information provided on the application and the permit. Further, the permit holder shall notify the city clerk of any other changes that may materially affect the state license or the permit.

(d) An applicant or permit holder has a duty to notify the city clerk in writing of any pending criminal charge, and any criminal conviction or other offense, including but not limited to, Michigan Medical Marihuana Act (MCL 333.26421 et seq.) violations, Medical Marihuana Facilities Licensing Act (MCL 333.27101 et seq.) violations, building, fire, zoning violations by the applicant, permit holder, any owner, principal, officer, director, manager or employee relating to the cultivation, processing, manufacture, storage, sale, distribution, testing or consumption of any form of marihuana within ten days of the event.

(e) The permit holder may not operate any other commercial medical marihuana facility in the permitted premises or on the permitted property, or in its name at any other location within the city without first obtaining a separate permit.

(f) The permit holder may not transfer the permit to any other individual or entity.

(g) Failure to comply with the requirements contained in this section is a civil infraction.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-508. - Operational requirements.

A commercial medical marihuana facility issued a permit under this article and operating in the city shall at all times comply with the following operational requirements, which the city commission may review and amend from time to time as it determines reasonable.

(1) Commercial medical marihuana facilities shall comply with the zoning code, the building code, and the property maintenance code at all times.

(2) The facility must hold a valid local permit and state medical marihuana facility license for the type of commercial medical marihuana facility carried out at the permitted property.

(3) Each commercial medical marihuana facility shall be operated from the permitted premises on the permitted property. No commercial medical marihuana facility shall be permitted to operate from a moveable, mobile or transitory location, except for a permitted and licensed secure transporter when engaged in the lawful transport of marihuana.

8

(4) No person under the age of 18 shall be permitted to enter into the permitted premises without a parent or legal guardian.

(5) Medical marihuana facilities shall be closed for business and no sale or other distribution of marihuana in any form shall occur upon the premises or be delivered from the premises between the hours of 9:00 p.m. and 7:00 a.m.

(6) Permit holders shall at all times maintain a security system that meets state law requirements, and shall also include:

   a. Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the permitted premises;

   b. Burglary alarm systems which are professionally monitored and operated 24 hours a day, seven days a week;

   c. A locking safe permanently affixed to the permitted premises that shall store all marihuana and cash remaining at the facility overnight;

   d. All marihuana in whatever form stored at the permitted premises shall be kept in a secure manner and shall not be visible from outside the permitted premises, nor shall it be grown, processed, exchanged, displayed or dispensed outside the permitted premises;

   e. All security recordings and documentation shall be preserved for at least 48 hours by the permit holder and made available to law enforcement upon request for inspection.

(7) No commercial provisioning center shall be located within ~~500~~ 1000 feet ~~from any educational institution or school, college or university, or public or private park, with the minimum distance measured horizontally between the nearest property lines.~~ of any of the following uses:

   a. a school, public or private, including pre-school through college

   or within 250 feet of any of the following uses:

   a. a church or house of worship located in a residential district
   b. a park or playground
   c. a state licensed day-care facility as defined in the City of Adrian Zoning Ordinance, definition(s) 2.46
   d. a facility that provides substances abuse disorder services as defined by MCL 330.6230S

(8) The amount of marihuana on the permitted property and under the control of the permit holder, owner or operator of the facility shall not exceed the amount permitted by the state license.

(9) The marihuana offered for sale and distribution must be packaged and labeled in accordance with state law. ~~The facility~~ Provisioning centers are ~~is~~ prohibited from selling, soliciting or receiving orders for marihuana or marihuana products over the internet.

9

(10) No pictures, photographs, drawings, or other depictions of marihuana or marihuana paraphernalia shall appear on the outside of any permitted premises nor be visible outside of the permitted premises on the permitted property. The words "marihuana," "cannabis" and any other words used or intended to convey the presence or availability of marihuana shall not appear on the outside of the permitted premises nor be visible outside of the permitted premises on the permitted property.

(11) The sale, consumption, or use of alcohol or tobacco products on the permitted premises is prohibited. Smoking or consumption of controlled substances, including marihuana, on the permitted premises is prohibited.

(12) All activities of commercial medical marihuana facilities, including without limitation, distribution, growth, cultivation, or the sale of marihuana, and all other related activity permitted under the permit holder's license or permit must occur indoors. The facility's operation and design shall minimize any impact to adjacent uses, including the control of any odor by maintaining and operating an air filtration system so that no odor is detectable outside the permitted premises.

(13) A patient may not grow his or her own marihuana at a commercial medical marihuana facility.

(14) No person operating a facility shall provide or otherwise make available marihuana to any person who is not legally authorized to receive marihuana under state law.

(15) All necessary building, electrical, plumbing and mechanical permits must be obtained for any part of the permitted premises in which electrical, wiring, lighting or watering devices that support the cultivation, growing, harvesting or testing of marijuana are located.

(16) The permit holder, owner and operator of the facility shall use lawful methods in controlling waste or by-products from any activities allowed under the license or permit.

(17) Marihuana may be transported by a secure transporter within the city under this article, and to effectuate its purpose, only:

    a.    By persons who are otherwise authorized by state law to possess marihuana for medical purposes;

    b.    In a manner consistent with all applicable state laws and rules, as amended;

    c.    In a secure manner designed to prevent the loss of the marihuana;

    d.    No vehicle used for transportation or delivery of marihuana under this article shall have for markings the words "marihuana," "cannabis," or any similar words; pictures or other renderings of the marihuana plant; advertisements for marihuana or for its sale, transfer, cultivation, delivery, transportation or manufacture, or any other word, phrase or symbol indicating or tending to indicate that the vehicle is transporting marihuana.

    e.    No vehicle may be used for the ongoing or continuous storage of marihuana, but may only be used incidental to, and in furtherance of, the transportation of marihuana.

10

(18) The city commission may impose such reasonable terms and conditions on a commercial medical marihuana facility special use as may be necessary to protect the public health, safety and welfare, and to obtain compliance with the requirements of this article and applicable law.

(19) No facility shall be operated in a manner creating noise, dust, vibration, glare, fumes, or odors beyond the boundaries of the property on which the facility is operated; or creating any other nuisance that hinders the public health, safety and welfare of the residents of the City of Adrian.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-509. - Effective permit; suspension; daily violation.

(a) A permit is valid only for the location identified on the permit and cannot be transferred to another location in the city without a new application.

(b) A permit is valid for one year from the date of issuance.

(c) The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.

(d) Acceptance by the permit holder of the permit constitutes consent by the permit holder and its owners, officers, managers, agents and employees for any state, federal or local law enforcement to conduct random and unannounced examinations of the facility and all articles of property in that facility at any time to ensure compliance with this article, any other local regulations and with the permit.

(e) A permit does not prohibit prosecution by the federal government for violation of its laws or prosecution by state authorities for violations of the Act or other violations not protected by the Act.

(f) Compliance with city ordinance and state statutes is a condition of maintenance of a permit and a permit may be suspended for failure to comply with any of the provisions of this section.

(g) Suspension of a permit is not an exclusive remedy and nothing contained herein is intended to limit the city's ability to prosecute code violations that may have been the cause of the suspension or any other code violations not protected by this Act.

(h) Violations of the provisions of this article or failure to comply with any of the requirements of this article is a civil infraction. The fine for this civil infraction is $500.00 and abatement costs of each violation together with all remedies available under MCL 600.8701 et seq. Each day a violation continues shall be deemed a separate civil infraction.

(i) Operating a medical marihuana facility without a valid permit or assisting in the operation of a medical marihuana facility without a valid permit for that property is a civil infraction. The fine for this civil infraction shall be $500.00. Each day that a person shall operate a medical marihuana facility without a permit or assist in the operation of a medical marijuana facility without a valid permit in effect for that property shall constitute as a separate offense.

11

(j)  In addition to any other remedies, the city may institute proceedings for injunction, mandamus, abatement or other appropriate remedies to prevent, enjoin, abate or remove any violations of this article. The rights and remedies provided herein are civil in nature. The imposition of a fine shall not exempt the violator from compliance with the provisions of this article.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-510. - Fees for licenses.

The fees for the permit herein defined shall be set by resolution of the city commission. The fee shall defray the costs incurred by the city for inspection, administration and enforcement of this article and shall not exceed any limitations imposed by Michigan law.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-511. - Severability.

The provisions of this article are hereby declared severable. If any part of this article is declared invalid for any reason by a court of competent jurisdiction, that declaration does not affect or impair the validity of all other provisions that are not subject to that declaration.

(Ord. No. 17-035, 12-13-2017)

INTRODUCTION.....................................................................

SUMMARY PUBLISHED............................................................

ADOPTION.............................................................................

COMPLETE PUBLICATION......................................................

EFFECTIVE DATE...................................................................

On motion by Commissioner_____, seconded by Commissioner_____, this Ordinance was _____ by a _____ vote.

12

**MINUTES**
**ADRIAN CITY COMMISSION**
**April 16, 2018,**
**7:00PM**

At 5:30pm, the City Commission began a pre-meeting study session and discussed the following Items; Habitat of Lenawee discussion with Lynne Punnett, Economic Development Update with Chris Miller. Meeting adjourned at 6:43 pm.

The Commission began the regularly scheduled meeting at 7:00pm.

Official proceedings of the April 16, 2018 regular meeting of the City Commission, Adrian, Michigan.

The regular meeting was opened with a moment of silence and followed by the Pledge of Allegiance to the Flag.

**PRESENT**: Mayor Jacobson &, Commissioners Dudas, Strayer, Faulhaber and Valentine, Heldt and Watson.

Mayor Jacobson in the Chair.

**On motion by Commissioner Faulhaber, seconded by Commissioner Valentine the minutes of the April 2, 2018 Regular City Commission Meeting, were adopted by a 7-0 vote.**

**PRESENTATION OF ACCOUNTS**

Utility Department Vouchers

Vouchers #4604 through #4609 .................................. $12,642.41

General Fund

Vouchers #23629 through #23639 ............................. $115,639.82

Clearing Account Vouchers

amounting to.............................................................. $430,319.88

TOTAL EXPENDITURES ................................................................. $558,601.11

**On motion by Commissioner Heldt, seconded by Commissioner Strayer, the vouchers were approved by a 7-0 vote.**

**COMMUNICATIONS**

EXHIBIT 10

**C-1. Finance.** Revenue and Expenditure Report for March.

**No Commissioner Comments**

**Mayor Jacobson read a proclamation declaring April 27th as Arbor Day in the City of Adrian. We are the longest running Arbor Day City in the State of Michigan. For 41 years the National Arbor Day Foundation has considered the City of Adrian Tree City USA.**

**Mayor Jacobson also presented a plaque to the Lenawee Christian Girls Varsity Basketball Team honoring them for winning the Class D State Championship with a record of 26-1.**

**REGULAR AGENDA**
**ORDINANCES**

**Ord. 18-009.** Second reading and adoption of an ordinance to amend Article XI, Commercial Medical Marihuana Facilities.

**ORDINANCE NO. 17-035**

**AN ORDINANCE TO AMEND SECTION 46-500 OF CHAPTER 46, OF THE ADRIAN CODE, ENTITLED "COMMERCIAL MEDICAL MARIHUANA FACILITIES"**

ARTICLE XI. - COMMERCIAL MEDICAL MARIHUANA FACILITIES

DIVISION 1. - GENERALLY

Sec. 46-500. - Legislative intent.

The purpose of this article is to implement the provisions of the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016, which authorizes the licensing and regulation of commercial medical marihuana facilities and affords the city the option of whether or not to allow commercial medical marihuana facilities; to regulate commercial medical marihuana facilities by requiring a permit and compliance with requirements as provided in this article, in order to maintain the public health, safety and welfare of the public.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-501. - Definitions.

The following words, terms, and phrases when used in this article shall have the meanings ascribed to them in this section, except when the context clearly indicates a different meaning.

*Department* means the Michigan State Department of Licensing and Regulatory Affairs or any authorized designated Michigan agency authorized to regulate, issue or administer a Michigan license for a commercial medical marihuana facility.

*Grower* or *grower facility* means a commercial entity that cultivated, dries, trims, or cures and packages marihuana for sale to a processor or provisioning center. Grower facilities are divided into classes. A Class A facility can have up to 500 plants; a Class B facility can have up to 1,000 plants; and a Class C facility can have up to 1,500 plants.

*License* means a current and valid license for a commercial medical marihuana facility issued by the State of Michigan.

*Licensee* means a person holding a current and valid Michigan license for a commercial medical marihuana facility.

*Marihuana* means that termed as defined in section 7106 of the public health code, 1978 PA 368, MCL 333.7106.

*Marihuana plant(s)*" means any plant of the species Cannabis sativa L.

*Medical marihuana facility(s)* means any facility, establishment and/or center that is required to be licensed under this chapter including a provisioning center, grower, processor, safety compliance facility, and secure transporter.

*Permit* means a current and valid permit for a commercial medical marihuana facility issued pursuant to this article, which shall be granted to a permit holder only for and limited to a specific permitted premises and a specific permitted property.

*Permit holder* means the person that holds a current and valid permit under this article.

*Permitted premises* means the particular building or buildings within which the permit holder will be authorized to conduct the facility's activities pursuant to the permit.

*Permitted property* means the real property comprised of the lot, parcel or other designated unit of real property upon which the permitted premises is situated.

*Person* means a natural person, company, partnership, profit or non-profit corporation, limited liability company, or any joint venture for a common purpose.

*Processor* or *processor facility* means a commercial entity that purchases marihuana from a grower and that extracts resin from the marihuana or creates a marihuana-infused product for sale and transfer in packaged form to a provisioning center.

*Provisioning center* means a commercial entity that purchases marihuana from a grower or processor and sells, supplies, or provides marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers. Provisioning center includes any commercial property where marihuana is sold at retail to registered qualifying patients or registered primary caregivers. A noncommercial location used by a primary caregiver to assist a qualifying patient connected to the caregiver through the department's marihuana registration process in accordance with the MMMA is not a provisioning center for the purposes of this article.

*Safety compliance facility* means a commercial entity that receives marihuana from a medical marihuana facility or registered primary caregiver, tests it for contaminants and for tetrahydrocannabinol and other cannabinoids, returns the test results, and may return the marihuana to the medical marihuana facility.

*Secure transporter* means a commercial entity that stores marihuana and transports marihuana between medical marihuana facilities for a fee.

(Ord. No. 17-035, 12-13-2017)

DIVISION 2. - PERMITS

Sec. 46-502. - Required.

No person shall operate a commercial medical marihuana facility in the City of Adrian without first obtaining a permit from the city clerk.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-503. - Commercial medical marihuana facilities authorized to operate in the city.

(a)   Growers, Class A, B and C.

(b)   Processors.

(c)   Provisioning centers.

(d)   Safety compliance facilities.

(e)   Secure transporters.

(Ord. No. 17-035, 12-13-2017) Sec. 46-504. - Number of facilities authorized by city.

(a)  Growers:

Class A: unlimited

Class B: unlimited

Class C: unlimited

(b)  Processors: unlimited

(c)  Provisioning centers: ~~Five~~ **Ten** permits in the B-1 and B-2 districts combined, unlimited in the Industrial overlay district.

(d)  Safety compliance facilities: unlimited

(e)  Secure transporters: unlimited

(Ord. No. 17-035, 12-13-2017) Sec. 46-505. - Application.

(a)  Application for a permit shall be made annually on forms provided by the city clerk.

(b)  The permit requirements set forth in this chapter shall be in addition to and not in lieu of any other licensing and permitting requirements imposed by any other federal, state, or local law.

(c)  Upon receipt of a completed application and payment of the required fee, the city clerk shall forward a copy of the application to each of the following departments for their approval: the fire department, the building department, the police department, the zoning administrator, and the city treasurer.

(d)   No application shall be approved unless:

(1)  The fire department and building department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this article.

(2)  The zoning administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit.

(3) The city treasurer has confirmed that the applicant and the proposed location are not in default to the city.

(4) The police department has determined that the applicant has met the requirements of this chapter with respect to the background check and security plan.

(e) Each year, any pending applications for renewal or amendment of existing permits shall be reviewed and granted or denied before applications for new permits are considered.

(f) The issuance of any permit pursuant to this chapter does not create an exception, defense, or immunity to any person in regard to any potential criminal liability the person may have for the production, distribution, or possession of marihuana.

(g) A permit and a renewal permit shall not confer any vested rights or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval. A completed application or renewal application must be received by the city clerk no later than 90 days prior to the expiration of the current permit.

(h) No permit issued under this section may be transferred or assigned and no license is valid for any location other than the location specified in the license.

(i) All inspections, review and processing of the application shall be completed within 90 days of receipt of a complete application and all required fees.

(j) Any denial of a permit shall be in writing and shall state the reason for denial.

(k) A denial of a permit may be appealed to the ~~zoning board of appeals~~ **Medical Marihuana Permit Appeal Board, members of which are appointed by the City Commission by resolution.**

(l) If more qualified applications are received than the number of permits allowed for provisioning centers in the B-1 and B-2 districts under this article, the ~~approved applications shall be assigned a number and will be entered into a drawing for the available permits. The specific procedures for the drawing shall be adopted by the city commission by resolution. The commission may also adopt a policy by resolution to give preference to local businesses and to businesses legally operating at the time this article is adopted~~ **City Commission may review and amend this ordinance as it determines to be advisable.**

(m) Any applicant for a commercial medical marihuana facility permit whose building is not yet in existence at the time of city commission approval shall have one year immediately following the date of approval to complete construction of the building, in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.

**(n) The City Commission shall approve or deny a permit within one hundred twenty (120) days of receipt of the completed application and fees. The processing time may be extended upon written notice by the City for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. The City has no obligation to process or approve any incomplete Application, and any times provided under this Ordinance shall not begin to run until the City receives a completed Application, as determined by the City Clerk. A determination of a complete Application shall not prohibit the City from requiring supplemental information.**

(Ord. No. 17-035, 12-13-2017)

Sec. 46-506. - Conditions of Issuance.

The city clerk shall not issue a permit until all of the following conditions have been met:

(1)  The address of the facility and any other contact information shall be listed on the application form.

(2)  The name and address of the owners of all real property where the facility is located shall be listed on the application form.

(3)  All documentation showing the proposed permit holder's valid tenancy, ownership or other legal interest in the proposed permitted property and permitted premises.

(4)  If the proposed permit holder is not the owner of the property, a notarized statement from the owner of such property authorizing the use of the property for a commercial medical marihuana facility.

(5)  If the proposed permit holder is a corporation, non-profit organization, limited liability company or any other entity other than a natural person it must state its legal status, attach a copy of all company formation documents (including amendments), proof of registration with the State of Michigan and a certificate of good standing along with the articles, resolutions and by-laws/operating agreements.

(6)  The name and addresses of all owners and managers of the facility shall be listed on the application form.

(7)  A copy of a valid unexpired driver's license or state issued ID for all owners, directors, officers and managers of the proposed facility.

(8)  Evidence of a valid sales tax license for the business if such a license is required by state law or local regulations.

(9)  A signed release shall be provided, on a form included with the application, permitting the City of Adrian police department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other state or the United States.

(10) Proof that a valid and current certificate of occupancy has been issued by the building official indicating that all necessary inspections have been conducted, which may include but are not limited to electrical inspection, plumbing inspection and mechanical inspection **is required within 180 days of a permit being issued**.

(11) Where the application identifies electrical devices are being used or intended to be used in conjunction with a permit, proof that the fire department has inspected and approved the use or proposed use and that any necessary permits for electrical alterations have been obtained.

(12) Where the application identifies structural modifications have been made or are intended in conjunction with the permit, proof that the building code officials have inspected the property and issued the necessary permits.

(13) A copy of the business and operations plan showing in detail the commercial medical marihuana facility's proposed plan of operation, including without limitation, the following:

a.  A description of the type of facility proposed and the anticipated or actual number of employees.

b.  A security plan which shall include a general description of security system, current centrally alarmed and monitored security system service agreement for the proposed permitted premises, and confirmation that those systems will meet state requirements and be approved by the state prior to commencing operations.

c.  A general description by category of all products to be sold.

d.  A list of material safety data sheets for all nutrients, pesticides and other chemicals proposed for use in the commercial medical marihuana facility.

e.  A description and plan for all equipment and methods that will be employed to stop any impact to adjacent uses, including enforceable assurances that no odor will be detectable from outside the permitted premises.

f.  A plan for disposal of marihuana and related byproducts that will be used at the facility.

g.  A technology plan that includes the plan for data collection and data security.

(14)  ~~Identify any business that is directly involved in the growing, processing, testing, transporting or sale of marihuana for the facility.~~

(15)  State whether applicant has ever applied for and been denied any commercial license or certificate by a licensing authority in Michigan or any other jurisdiction or whether any commercial license has been restricted, suspended, revoked or not renewed. Describe the facts and circumstances concerning the application, denial, restriction, suspension, revocation or nonrenewal including the licensing authority, the date each action was taken, and the reason for each action.

(16) Provide a signed and sealed (by a Michigan registered architect, surveyor or professional engineer) site plan and interior floor plan of the permitted premises and the permitted property.

(17)  List any other commercial medical marihuana facility that the licensee is authorized to operate in any other jurisdiction within the state, or another state and the applicant's involvement in each facility.

(18) Provide any other information reasonably requested by the city regarding the processing or consideration of the application.

(19) An affidavit that the applicant is not in default to the city. Specifically, that the applicant has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the city.

(20) For provisioning centers, a proposed patient recordkeeping plan that will track quantities sold to individual patients and caregivers, and will monitor inventory.

(21)  A description of procedures for testing of contaminants including mold and pesticides.

(22)  An estimate of the number and types of jobs that the facility is expected to create, the amount and type of compensation expected to be paid for such jobs, and the projected annual budget and revenue of the facility.

(23)  A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state

laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim demand, action, legal redress or recourse against the City of Adrian, its elected and appointed officials and its employees and agents for any claims, damages, liabilities, causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders, employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the City of Adrian, its elected and appointed officials, employees, attorneys, and agents.

(24) As it relates to grower facilities:

    a.    A cultivation plan that includes at a minimum, a description of the cultivation methods to be used, including plans for the growing mediums, treatments, and/or additives.

    b.    A production testing plan that includes, at a minimum, a description of how and when samples for laboratory testing will be selected, what type of testing will be requested and how the test results will be used.

    c.    An affidavit that all operations will be conducted in conformance with the MMFLA and all other applicable state laws.

    d.    A chemical and pesticide storage plan that states the names of the pesticides to be used in cultivation and where and how pesticides and chemicals will be stored, along with a plan for the disposal of unused pesticides.

    e.    The applicant shall acknowledge that all cultivation must be performed in building.

(25) Proof of an insurance policy covering the facility in the amount of at least $1,000,000.00 for property damage; $1,000,000.00 for injury to one person; and at least $2,000,000.00 for two or more persons resulting from the same occurrence. The city shall be notified by the insurance carrier 30 days in advance of any cancellation.

(26) Proof of a surety bond in the amount of $100,000.00 with the city listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article or in the alternative applicant can create an escrow account for the benefit of the city at a city-approved financial institution in the amount of $20,000.00.

(27) Proof of liquid assets that equal or exceed the state's capitalization requirements.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-507. - Conduct of permit holder.

(a) Each permit holder shall, as a condition of obtaining and maintaining a permit, agree to comply at all times with applicable local and state building, zoning, fire, health and sanitation statutes, ordinances and regulations.

(b) The premises shall be operated and maintained at all times consistent with responsible business practices and so that no excessive demands will be placed upon public health

or safety services, nor any excessive risk of harm to the public health, safety or sanitation.

(c)   Permit holder shall immediately notify the city clerk and update as required the information provided on the application and the permit. Further, the permit holder shall notify the city clerk of any other changes that may materially affect the state license or the permit.

(d)   An applicant or permit holder has a duty to notify the city clerk in writing of any pending criminal charge, and any criminal conviction or other offense, including but not limited to, Michigan Medical Marihuana Act (MCL 333.26421 et seq.) violations, Medical Marihuana Facilities Licensing Act (MCL 333.27101 et seq.) violations, building, fire, zoning violations by the applicant, permit holder, any owner, principal, officer, director, manager or employee relating to the cultivation, processing, manufacture, storage, sale, distribution, testing or consumption of any form of marihuana within ten days of the event.

(e)   The permit holder may not operate any other commercial medical marihuana facility in the permitted premises or on the permitted property, or in its name at any other location within the city without first obtaining a separate permit.

(f)   The permit holder may not transfer the permit to any other individual or entity.

(g)   Failure to comply with the requirements contained in this section is a civil infraction.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-508. - Operational requirements.

A commercial medical marihuana facility issued a permit under this article and operating in the city shall at all times comply with the following operational requirements, which the city commission may review and amend from time to time as it determines reasonable.

(1) Commercial medical marihuana facilities shall comply with the zoning code, the building code, and the property maintenance code at all times.

(2)   The facility must hold a valid local permit and state medical marihuana facility license for the type of commercial medical marihuana facility carried out at the permitted property.

(3) Each commercial medical marihuana facility shall be operated from the permitted premises on the permitted property. No commercial medical marihuana facility shall be permitted to operate from a moveable, mobile or transitory location, except for a permitted and licensed secure transporter when engaged in the lawful transport of marihuana.

(4)   No person under the age of 18 shall be permitted to enter into the permitted premises without a parent or legal guardian.

(5)   Medical marihuana facilities shall be closed for business and no sale or other distribution of marihuana in any form shall occur upon the premises or be delivered from the premises between the hours of 9:00 p.m. and 7:00 a.m.

(6) Permit holders shall at all times maintain a security system that meets state law requirements, and shall also include:

a.   Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the permitted premises;

b.   Burglary alarm systems which are professionally monitored and operated 24 hours a day, seven days a week;

c.   A locking safe permanently affixed to the permitted premises that shall store all marihuana and cash remaining at the facility overnight;

d.   All marihuana in whatever form stored at the permitted premises shall be kept in a secure manner and shall not be visible from outside the permitted premises, nor shall it be grown, processed, exchanged, displayed or dispensed outside the permitted premises;

e.   All security recordings and documentation shall be preserved for at least 48 hours by the permit holder and made available to law enforcement upon request for inspection.

(7) No commercial provisioning center shall be located within ~~500~~ **1000** feet ~~from any educational institution or school, college or university, or public or private park, with the minimum distance measured horizontally between the nearest property lines.~~ **of any of the following uses:**

**a.  a school, public or private, including pre-school through college**

**or within 250 feet of any of the following uses:**

**a.  a church or house of worship located in a residential district**
**b.  a park or playground**
**c.  a state licensed day-care facility as defined in the City of Adrian Zoning**
**Ordinance, definition(s) 2.46**
**d.  a facility that provides substances abuse disorder services as defined by**
**MCL 330.6230S**

(8)  The amount of marihuana on the permitted property and under the control of the permit holder, owner or operator of the facility shall not exceed the amount permitted by the state license.

(9) The marihuana offered for sale and distribution must be packaged and labeled in accordance with state law. ~~The facility~~ **Provisioning centers are** ~~is~~ prohibited from selling, soliciting or receiving orders for marihuana or marihuana products over the internet.

(10) No pictures, photographs, drawings, or other depictions of marihuana or marihuana paraphernalia shall appear on the outside of any permitted premises nor be visible outside of the permitted premises on the permitted property. The words "marihuana," "cannabis" and any other words used or intended to convey the presence or availability of marihuana shall not appear on the outside of the permitted premises nor be visible outside of the permitted premises on the permitted property.

(11) The sale, consumption, or use of alcohol or tobacco products on the permitted premises is prohibited. Smoking or consumption of controlled substances, including marihuana, on the permitted premises is prohibited.

(12) All activities of commercial medical marihuana facilities, including without limitation, distribution, growth, cultivation, or the sale of marihuana, and all other related activity permitted under the permit holder's license or permit must occur indoors. The facility's operation and design shall minimize any impact to adjacent uses, including the control of any odor by maintaining and operating an air filtration system so that no odor is detectable outside the permitted premises.

(13) A patient may not grow his or her own marihuana at a commercial medical marihuana facility.

(14) No person operating a facility shall provide or otherwise make available marihuana to any person who is not legally authorized to receive marihuana under state law.

(15) All necessary building, electrical, plumbing and mechanical permits must be obtained for any part of the permitted premises in which electrical, wiring, lighting or watering devices that support the cultivation, growing, harvesting or testing of marijuana are located.

(16) The permit holder, owner and operator of the facility shall use lawful methods in controlling waste or by-products from any activities allowed under the license or permit.

(17) Marihuana may be transported by a secure transporter within the city under this article, and to effectuate its purpose, only:

a. By persons who are otherwise authorized by state law to possess marihuana for medical purposes;

b. In a manner consistent with all applicable state laws and rules, as amended;

c. In a secure manner designed to prevent the loss of the marihuana;

d. No vehicle used for transportation or delivery of marihuana under this article shall have for markings the words "marihuana," "cannabis," or any similar words; pictures or other renderings of the marihuana plant; advertisements for marihuana or for its sale, transfer, cultivation, delivery, transportation or manufacture, or any other word, phrase or symbol indicating or tending to indicate that the vehicle is transporting marihuana.

e. No vehicle may be used for the ongoing or continuous storage of marihuana, but may only be used incidental to, and in furtherance of, the transportation of marihuana.

(18) The city commission may impose such reasonable terms and conditions on a commercial medical marihuana facility special use as may be necessary to protect the public health, safety and welfare, and to obtain compliance with the requirements of this article and applicable law.

(19) No facility shall be operated in a manner creating noise, dust, vibration, glare, fumes, or odors beyond the boundaries of the property on which the facility is operated; or creating any other nuisance that hinders the public health, safety and welfare of the residents of the City of Adrian.

(Ord. No. 17-035, 12-13-2017) Sec. 46-509. - Effective permit; suspension; daily violation.

(a) A permit is valid only for the location identified on the permit and cannot be transferred to another location in the city without a new application.

(b) A permit is valid for one year from the date of issuance.

(c) The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.

(d) Acceptance by the permit holder of the permit constitutes consent by the permit holder and its owners, officers, managers, agents and employees for any state, federal or local law enforcement to conduct random and unannounced examinations of the facility and all articles of property in that facility at any time to ensure compliance with this article, any other local regulations and with the permit.

(e) A permit does not prohibit prosecution by the federal government for violation of its laws or prosecution by state authorities for violations of the Act or other violations not protected by the Act.

(f) Compliance with city ordinance and state statutes is a condition of maintenance of a permit and a permit may be suspended for failure to comply with any of the provisions of this section.

(g) Suspension of a permit is not an exclusive remedy and nothing contained herein is intended to limit the city's ability to prosecute code violations that may have been the cause of the suspension or any other code violations not protected by this Act.

(h) Violations of the provisions of this article or failure to comply with any of the requirements of this article is a civil infraction. The fine for this civil infraction is $500.00 and abatement costs of each violation together with all remedies available under MCL 600.8701 et seq. Each day a violation continues shall be deemed a separate civil infraction.

(i) Operating a medical marihuana facility without a valid permit or assisting in the operation of a medical marihuana facility without a valid permit for that property is a civil infraction. The fine for this civil infraction shall be $500.00. Each day that a person shall operate a medical marihuana facility without a permit or assist in the operation of a medical marijuana facility without a valid permit in effect for that property shall constitute as a separate offense.

(j) In addition to any other remedies, the city may institute proceedings for injunction, mandamus, abatement or other appropriate remedies to prevent, enjoin, abate or remove any violations of this article. The rights and remedies provided herein are civil in nature. The imposition of a fine shall not exempt the violator from compliance with the provisions of this article.

(Ord. No. 17-035, 12-13-2017) Sec. 46-510. - Fees for licenses.

The fees for the permit herein defined shall be set by resolution of the city commission. The fee shall defray the costs incurred by the city for inspection, administration and enforcement of this article and shall not exceed any limitations imposed by Michigan law.

(Ord. No. 17-035, 12-13-2017) Sec. 46-511. - Severability.

The provisions of this article are hereby declared severable. If any part of this article is declared invalid for any reason by a court of competent jurisdiction, that declaration does not affect or impair the validity of all other provisions that are not subject to that declaration.

(Ord. No. 17-035, 12-13-2017)

**On motion by Commissioner Heldt, seconded by Commissioner Strayer, this Ordinance was approved by a 6-1 vote.**

**YES:** Mayor Jacobson, Commissioners Heldt, Faulhaber, Watson, Dudas and Strayer

**NO:** Commissioner Valentine

**INTRODUCTION**................................................................April 2, 2018

**SUMMARY PUBLISHED**....................................................April 9, 2018

**ADOPTION**.......................................................................April 16, 2018

**COMPLETE PUBLICATION**..............................................April 23, 2018

**EFFECTIVE DATE**............................................................May 1, 2018

## SPECIAL ORDERS

### SO-1

### SPECIAL ORDER

The Mayor called for the hearing and consideration of comments to the confirmation of the Special Assessment Roll for delinquent invoices, including a ten (10%) percent penalty for late payment.

### Discussion

**Open: 7:08**

Jessica Bauerle-Evans

319 Dennis Street

> Commented on a bill received for trash being out the wrong day.  Was concerned that the picture taken of the trash was not date stamped.

**Closed: 7:12**

### SO-2

### SPECIAL ORDER

The Mayor called for the hearing and consideration of comments to the confirmation of the Special Assessment Roll for delinquent water and sewer charges, including a ten (10%) percent penalty for late payment.

### Discussion

**AGENDA
ADRIAN CITY COMMISSION
SPECIAL MEETING
June 7, 2018,
7:00PM**

I.    PRAYER AND PLEDGE OF ALLEGIANCE TO THE FLAG

II.   ROLL CALL

III.  REGULAR AGENDA

    A. ORDINANCES

        1.  **Ord. 18-009.** Amendment to Section 46-500 of Chapter 46, of the Adrian Code, entitled "Commercial Medical Marihuana Facilities".

    B. RESOLUTIONS

        1.  **R18-078. Administration.** Resolution to approve a revised Medical Marihuana application and to give the City Administrator the authority to refund the $5,000.00 permit fee under certain circumstances.

        2.  **R18-079. Administration.** Resolution to approve of the reassignment of interest in property located at 2817 W. Beecher Street from TRC Income Fund, LLC to Fluresh, LLC.

        3.  **R18-080. Administration.** Resolution to approve a purchase agreement with Fluresh, LLC for 1751 W. Beecher Street (parcel formerly part of 2817 W. Beecher).

        4.  **R18-081. Administration.** Resolution to agree to terms requested by Fluresh, LLC to not exercise its retained oil, gas and all other mineral rights in such a way that involves use of the surface land at 1751 W. Beecher Street, and authorize the Mayor and City Clerk to sign any agreement or deed to that effect.

IV.   PUBLIC COMMENT

V.    COMMISSIONER COMMENTS

EXHIBIT 11

ORDINANCE NO. 18-009

## AMENDMENT TO SECTION 46-500 OF CHAPTER 46, OF THE ADRIAN CODE, ENTITLED "COMMERCIAL MEDICAL MARIHUANA FACILITIES"

ARTICLE XI. - COMMERCIAL MEDICAL MARIHUANA FACILITIES DIVISION 1. - GENERALLY Sec. 46-500. - Legislative intent.

The purpose of this article is to implement the provisions of the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016, which authorizes the licensing and regulation of commercial medical marihuana facilities; and affords the City the option of whether or not to allow commercial medical marihuana facilities; **and the authority** to regulate commercial medical marihuana facilities by requiring a permit and compliance with requirements as provided in this article, in order to maintain the public health, safety and welfare of the public.

**Nothing in this article is intended to grant immunity from criminal or civil prosecution, penalty, or sanction for the cultivation, manufacture, possession, use, sale, or distribution of marihuana, in any form, that is not in compliance with the Michigan Medical Marihuana Act, Initiated Law of 2008, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; the Michigan Marihuana Tracking Act, MCL 333.27901 et seq.; and all other applicable rules promulgated by the state of Michigan.**

**As of the effective date of this article, marihuana remains classified as a Schedule 1 controlled substance under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq., which makes it unlawful to manufacture, distribute, or dispense marihuana, or possess marihuana with the intent to manufacture, distribute, or dispense marihuana. Nothing in this article is intended to grant immunity from any criminal prosecution under federal laws.**

(Ord. No. 17-035, 12-13-2017)

**Sec. 46-501. - Definitions.**

**For the purpose of this article** the following words, terms, and phrases shall have the meanings ascribed to them in this section, except when the context clearly indicates a different meaning.

**Any term defined by the Michigan Medical Marihuana Act. MCL 33.2621 et seq., shall have the definition given in the Michigan Medical Marihuana Act.**

**Any term defined by the Michigan Medical Marihuana Facilities Licensing Act. MCL 33.27101 et seq., shall have the definition given in the Michigan Medical Marihuana Facilities Licensing Act.**

**Any term defined by the Michigan Medical Marihuana Tracking Act. MCL 33.27901 et seq., shall have the definition given in the Michigan Medical Marihuana Tracking Act.**

*City* means the City of Adrian.

*Department* means the Michigan State Department of Licensing and Regulatory Affairs or any authorized designated Michigan agency authorized to regulate, issue or administer a Michigan license for a commercial medical marihuana facility.

**Enclosed Building means a combination of materials forming a structure affording a facility or shelter for use or occupancy by individuals or property in which a proper ventilation system allows for all windows, entrances, and exits may safely remain closed, with the exceptions of normal entry and exit of the building for business purposes, and safety or emergency purposes i.e. Fire. Building includes a part or parts of the building and all equipment in the building. A building shall not be construed to mean a building incidental to the use for agricultural purposes of the land on which the building is located.**

*Grower* or *grower facility* means a commercial entity that cultivates, dries, trims, or cures and packages marihuana for sale to a processor or provisioning center. Grower facilities are divided into classes: A Class A facility -- ~~can have~~ up to 500 plants; a Class B facility -- ~~can have~~ up to 1,000 plants; and a Class C facility -- ~~can have~~ up to 1,500 plants.

*License* means a current, ~~and~~ valid license for a commercial medical marihuana facility issued by the State of Michigan.

*Licensee* means a person holding a current, ~~and~~ valid Michigan license for a commercial medical marihuana facility.

*Marihuana* means that ~~termed~~ as defined in section **7106 of the public health code, 1978 PA 368, MCL 333.7106.**

*Marihuana plant(s)*" means any plant of the species Cannabis sativa L.

*Medical Marihuana* **means that term as defined in the Public Health Code, MCL 33.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; and the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.**

*Medical marihuana facility(s)* means any facility, establishment and/or center **at a specific location which is** licensed under this chapter to operate under **the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.,** including a provisioning center, grower, processor, safety compliance facility, and secure transporter. **The term does not include or apply to a "primary caregiver" or "caregiver" as the term is defined in the Michigan Medical Marihuana Act, MCL 333.26421 et seq.**

*Permit* means a current, ~~and~~ **valid** permit for a commercial medical marihuana facility issued pursuant to this article, ~~which shall be~~ granted to a permit holder ~~only~~ **valid for** ~~and limited to~~ a specific permitted premises and a specific permitted property.

*Permit holder* means the person that holds a current, ~~and~~ **valid** permit under this article.

*Permitted premises* means the particular building or buildings within which the permit holder will be authorized to conduct the facility's activities pursuant to the permit.

*Permitted property* means the real property comprised of the lot, parcel or other designated unit of real property upon which the permitted premises is situated.

*Person* means a natural person, company, partnership, profit or non-profit corporation, limited liability company, or any joint venture for a common purpose.

*Processor* or *processor facility* means a commercial entity that purchases marihuana from a grower and that extracts resin from the marihuana or creates a marihuana-infused product for sale and transfer in packaged form to a provisioning center.

*Provisioning center* means a commercial entity that purchases marihuana from a grower or processor and sells, supplies, or provides marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers. Provisioning center includes any commercial property where marihuana is sold at retail to registered qualifying patients or registered primary caregivers. **The term does not include or apply to a** A non-commercial location used by a primary caregiver to assist a qualifying patient connected to the caregiver through the department's marihuana registration process in accordance with the MMMA. ~~is not a provisioning center for the purposes of this article.~~

*Safety compliance facility* means a commercial entity that receives marihuana from a medical marihuana facility or registered primary caregiver, tests it for contaminants and for tetrahydrocannabinol and other cannabinoids, returns the test results, and may return the marihuana to the medical marihuana facility.

**School (as defined in MCL 257.627a) means an educational institution operated by a local school district or by a private, denominational, or parochial organization. School does not include either of the following:**

**(i) An educational institution that the department of education determines has its entire student population in residence at the institution.**

**(ii) An educational institution to which all students are transported in motor vehicles.**

*Secure transporter* means a commercial entity that stores **medical** marihuana and transports **medical** marihuana between medical marihuana facilities for a fee.

(Ord. No. 17-035, 12-13-2017)

## DIVISION 2. - PERMITS

### Sec. 46-502. - Required.

(a) No person shall operate a commercial medical marihuana facility in the City of Adrian without first obtaining a permit from the city clerk.

(b) **The issuance of any permit or renewal permit pursuant to this chapter shall not confer any vested rights or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval.**

(c) **A completed application for renewal permit must be received by the city clerk no later than 90 days prior to the expiration of the current permit. Pending applications**

for annual renewal or amendment of existing permits shall be reviewed, and granted or denied by the city clerk prior to new permit application being considered.

(d) No permit issued under this section may be transferred or assigned and no license is valid for any location other than the location specified in the license.

(e) A permit holder must submit to the City a copy of their valid state license within 180 days of issuance of the permit under this article. Failure to provide such proof will result in revocation of suspension of the permit.

(f) If a permit holder has not obtained a valid state license at the end of 180 days, they may request an extension of time from the city clerk.

(g) If the facility is a new build and construction or licensing is not complete after 180 days, the permit holder may request, from the city clerk, an extension of time to obtain the state license.

(h) The city clerk may require additional/supplemental information to confirm the reasons for delay. Extension(s) will be granted or denied at the discretion of the city.

(Ord. No. 17-035, 12-13-2017)

## Sec. 46-503. - Commercial medical marihuana facilities authorized to operate in the city.

(a)   Growers, Class A, B and C.

(b)   Processors.

(c)   Provisioning centers.

(d)   Safety compliance facilities.

(e)   Secure transporters.

(Ord. No. 17-035, 12-13-2017)

## Sec. 46-504. - Number of facilities authorized by city.

(a) Growers:

Class A: unlimited

Class B: unlimited

Class C: unlimited

(b) Processors: unlimited

(c) Provisioning centers: Ten permits in the B-1 and B-2 districts combined, unlimited in the Industrial overlay district.

(d) Safety compliance facilities: unlimited

(e) Secure transporters: unlimited

(Ord. No. 17-035, 12-13-2017)

Sec. 46-505 - **Requirements and procedure for aApplication**

No person shall operate a marihuana facility in the city of Adrian without a current, valid marihuana facility permit issued by the City pursuant to the provisions of this article. The permit requirements set forth in this chapter shall be in addition to, not in lieu of any other licensing and/or permitting requirements imposed by any other federal, state, or local law. Applications for permits shall be made annually on forms provided by the city clerk and must meet the following requirements:

(a) Every applicant for a medical marihuana facility permit shall complete and file the application form provided by in the city clerk's office. Any application missing information in any *required field* will be deemed incomplete and is subject to denial of the permit by the city clerk. Each question in the application must be answered in its entirety and all the information requested and required by this article must be submitted in the application. Failure to comply with these rules and the application requirements in the article is grounds for denial of the application. The application shall contain any information required by the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., and the following information:

    (1) Name, address, and telephone number of the owner(s) of all real property where the facility is located.

    (2) Name, address, and telephone number of the of the proposed permit holder.

    (3) If the property owner and the proposed permit holder are not the same person, all documentation showing the proposed permit holder's valid tenancy, ownership or other legal interest in the proposed permitted property and permitted premises.

    (4) If the proposed permit holder is not the owner of the property, a notarized statement from the owner of such property authorizing the use of the property for commercial medical marihuana facility.

    (5) A copy of a valid unexpired driver's license or state ID for the proposed permit holder. Acceptable ID will be issued by the state in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.

    (6) If the proposed permit holder is a corporation, non-profit organization, limited liability company or any other entity other than a natural person it must state its legal status, attach a copy of all company formation documents (including amendments), proof of registration with the State of Michigan and a certificate of good standing along with the articles, resolutions and by-laws/operating agreements, and a copy of a valid unexpired driver's license or state issued ID for all owners, directors, officers and managers of the entity .

    (7) A signed release shall be provided, on a form included with the application, permitting the City of Adrian police department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other state or the United States.

(8)   A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim demand, action, legal redress or recourse against the City of Adrian, its elected and appointed officials and its employees and agents for any claims, damages, liabilities, causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders, employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the City of Adrian, its elected and appointed officials, employees, attorneys, and agents.

(9)   A signed acknowledgement that all cultivation must be performed in an enclosed building.

(10)   An affidavit that the applicant is not in default to the city. Specifically, that the applicant has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the city.

(11)   Proof of a surety bond in the amount of $100,000.00 with the city listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article or in the alternative applicant can create an escrow account for the benefit of the city at a city-approved financial institution in the amount of $20,000.00.

(12)   Any other information deemed by the City to be required for consideration of a permit.

(a)   Application for a permit shall be made annually on forms provided by the city clerk.

(b)   The permit requirements set forth in this chapter shall be in addition to and not in lieu of any other licensing and permitting requirements imposed by any other federal, state, or local law.

(c)   Upon receipt of a completed application and payment of the required fee, the city clerk shall forward a copy of the application to each of the following departments for their approval: the fire department, the building department, the police department, the zoning administrator, and the city treasurer.

(d)   No application shall be approved unless:

(1)   The fire department and building department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this article.

(2)   The zoning administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit.

(3) The city treasurer has confirmed that the applicant and the proposed location are not in default to the city.

(4) The police department has determined that the applicant has met the requirements of this chapter with respect to the background check and security plan.

(e) Each year, any pending applications for renewal or amendment of existing permits shall be reviewed and granted or denied before applications for new permits are considered.

(f) The issuance of any permit pursuant to this chapter does not create an exception, defense, or immunity to any person in regard to any potential criminal liability the person may have for the production, distribution, or possession of marihuana.

(g) A permit and a renewal permit shall not confer any vested rights or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval. A completed application or renewal application must be received by the city clerk no later than 90 days prior to the expiration of the current permit.

(h) No permit issued under this section may be transferred or assigned and no license is valid for any location other than the location specified in the license.

(i) All inspections, review and processing of the application shall be completed within 90 days of receipt of a complete application and all required fees.

(j) Any denial of a permit shall be in writing and shall state the reason for denial.

(k) A denial of a permit may be appealed to the Medical Marihuana Permit Appeal Board, members of which are appointed by the City Commission by resolution.

(l) If more qualified applications are received than the number of permits allowed for provisioning centers in the B 1 and B 2 districts under this article, the City Commission may review and amend this ordinance as it determines to be advisable.

(m) Any applicant for a commercial medical marihuana facility permit whose building is not yet in existence at the time of city commission approval shall have one year immediately following the date of approval to complete construction of the building, in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.

(n) The City Commission shall approve or deny a permit within one hundred twenty (120) days of receipt of the completed application and fees. The processing time may be extended upon written notice by the City for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. The City has no obligation to process or approve any incomplete Application, and any times provided under this Ordinance shall not begin to run until the City receives a completed Application, as determined by the City Clerk. A determination of a complete Application shall not prohibit the City from requiring supplemental information.

Sec. 46.506 Issuance or Denial of permit. Conditions of issuance.

(a) Upon submission of an applicant's completed application, including all required information and documentation, the city clerk shall accept the application and

assign it a sequential number by facility type based on the date and time the application was accepted.

(b) Within 60 days of receipt of a complete application and all required fees, all inspections, review and processing of the application shall be completed, and the city clerk shall approve or deny the marihuana facility permit. The city clerk shall issue marihuana facility permits in order of sequential application number previously assigned.

(c) A provisional permit means only that the applicant has submitted a valid application for a marihuana facility permit, and that the applicant shall not locate or operate a marijuana facility without obtaining all other permits and approvals required by all other applicable ordinances and regulations of the city, as well as, all statutes and regulations of the state of Michigan including but not limited to the Public Health Code, MCL 33.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; and the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.

(d) The city clerk shall *not* issue a permit until *all* of the following conditions have been met:

(1) The fire department and building department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this article

(2) The zoning administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit.

(3) The city treasurer has confirmed that the applicant and the proposed location are not in default to the city.

(4) The police department has determined that the applicant has met the requirements of this chapter with respect to the background check and security plan

(e) If approved the city clerk shall issue the applicant a provisional permit or renew an annual permit.

(f) A provisional permit will lapse and be void if such other required permits, valid state licensing, and approvals are not diligently pursued to completion, but in any event no later than 120 days after the provisional permit is issued.

(g) A signed acknowledgement of permit holder's intent to acquire and maintain a valid marihuana facility license from the state of Michigan is a condition for issuance and maintenance of a marihuana facility permit under this article. In the event of a lapse in the state issued medical marihuana facility license, for any reason, the applicant may not continue operation of any marihuana facility in the city of Adrian, unless and until a valid state license if reinstated or obtained.

(h) Any applicant for a commercial medical marihuana facility permit whose building is not yet in existence at the time of city commission approval shall have one year immediately following the date of approval to complete construction of the building,

in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.

(i) The City Commission shall approve or deny a permit within one hundred twenty (120) days of receipt of the completed application and fees. The processing time may be extended upon written notice by the City for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. The City has no obligation to process or approve any incomplete Application, and any times provided under this Ordinance shall not begin to run until the City receives a completed Application, as determined by the City Clerk. A determination of a complete Application shall not prohibit the City from requiring supplemental information. The City may delay an application while additional information is requested including, but not limited to, requests for additional disclosures and documentation to be furnished to the department.

(j) If more qualified applications are received than the number of permits allowed for provisioning center in B-1 and B-2 districts under this article, the City Commission may review and amend this ordinance as it determines advisable.

(k) If applicant fails to comply with this article, a permit may be denied as provided under this article. In addition to failing to comply with this article, a permit may be denied for the following reasons:

(1) The applicant made a material misrepresentation on the application
(2) The applicant fails to correct any deficiencies in the application or supply additional required information.
(3) The applicant fails to satisfy compliance with the municipality, state law, or this ordinance.
(4) The applicant is operating a medical marihuana facility without a current, valid permit.

Any denial of a provisional permit shall be in writing and shall state the reason for the denial.

(l) Denial of a permit by the city clerk may be may be appealed to the City Commission. Denial of permit by the City Commission may be appealed to the Circuit Court of this State.

~~The city clerk shall not issue a permit until all of the following conditions have been met:~~
~~(1) The address of the facility and any other contact information shall be listed on the application form.~~
~~(2) The name and address of the owners of all real property where the facility is located shall be listed on the application form.~~

(3)  All documentation showing the proposed permit-holder's valid tenancy, ownership or other legal interest in the proposed permitted property and permitted premises.

(4)  If the proposed permit holder is not the owner of the property, a notarized statement from the owner of such property authorizing the use of the property for a commercial medical marihuana facility.

(5)  If the proposed permit holder is a corporation, non-profit organization, limited liability company or any other entity other than a natural person it must state its legal status, attach a copy of all company formation documents (including amendments), proof of registration with the State of Michigan and a certificate of good standing along with the articles, resolutions and by-laws/operating agreements.

(6)  The name and addresses of all owners and managers of the facility shall be listed on the application form.

(7)  A copy of a valid unexpired driver's license or state issued ID for all owners, directors, officers and managers of the proposed facility.

(8)  Evidence of a valid sales tax license for the business if such a license is required by state law or local regulations.

(9)  A signed release shall be provided, on a form included with the application, permitting the City of Adrian police department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any felony or any controlled substance related misdemeanor under Michigan law or the law of any other state or the United States.

(10) Proof that a valid and current certificate of occupancy has been issued by the building official indicating that all necessary inspections have been conducted, which may include but are not limited to electrical inspection, plumbing inspection and mechanical inspection is required within 180 days of a permit being issued.

(11) Where the application identifies electrical devices are being used or intended to be used in conjunction with a permit, proof that the fire department has inspected and approved the use or proposed use and that any necessary permits for electrical alterations have been obtained.

(12) Where the application identifies structural modifications have been made or are intended in conjunction with the permit, proof that the building code officials have inspected the property and issued the necessary permits.

(13) A copy of the business and operations plan showing in detail the commercial medical marihuana facility's proposed plan of operation, including without limitation, the following:

   a.  A description of the type of facility proposed and the anticipated or actual number of employees.

   b.  A security plan which shall include a general description of security system, current centrally alarmed and monitored security system service agreement for the proposed permitted premises, and confirmation that those systems will meet state requirements and be approved by the state prior to commencing operations.

c. A general description by category of all products to be sold.

d. A list of material safety data sheets for all nutrients, pesticides and other chemicals proposed for use in the commercial medical marihuana facility.

e. A description and plan for all equipment and methods that will be employed to stop any impact to adjacent uses, including enforceable assurances that no odor will be detectable from outside the permitted premises.

f. A plan for disposal of marihuana and related byproducts that will be used at the facility.

g. A technology plan that includes the plan for data collection and data security.

(14) State whether applicant has ever applied for and been denied any commercial license or certificate by a licensing authority in Michigan or any other jurisdiction or whether any commercial license has been restricted, suspended, revoked or not renewed. Describe the facts and circumstances concerning the application, denial, restriction, suspension, revocation or nonrenewal including the licensing authority, the date each action was taken, and the reason for each action.

(15) Provide a signed and sealed (by a Michigan registered architect, surveyor or professional engineer) site plan and interior floor plan of the permitted premises and the permitted property.

(16) List any other commercial medical marihuana facility that the licensee is authorized to operate in any other jurisdiction within the state, or another state and the applicant's involvement in each facility.

(17) Provide any other information reasonably requested by the city regarding the processing or consideration of the application.

(18) An affidavit that the applicant is not in default to the city. Specifically, that the applicant has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the city.

(19) For provisioning centers, a proposed patient recordkeeping plan that will track quantities sold to individual patients and caregivers, and will monitor inventory.

(20) A description of procedures for testing of contaminants including mold and pesticides.

(21) An estimate of the number and types of jobs that the facility is expected to create, the amount and type of compensation expected to be paid for such jobs, and the projected annual budget and revenue of the facility.

(22) A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim demand, action, legal redress or recourse against the City of Adrian, its elected and appointed officials and its employees and agents for any claims, damages, liabilities,

~~causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders, employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the City of Adrian, its elected and appointed officials, employees, attorneys, and agents.~~

~~(23) As it relates to grower facilities:~~

~~a.   A cultivation plan that includes at a minimum, a description of the cultivation methods to be used, including plans for the growing mediums, treatments, and/or additives.~~

~~b.   A production testing plan that includes, at a minimum, a description of how and when samples for laboratory testing will be selected, what type of testing will be requested and how the test results will be used.~~

~~c.   An affidavit that all operations will be conducted in conformance with the MMFLA and all other applicable state laws.~~

~~d.   A chemical and pesticide storage plan that states the names of the pesticides to be used in cultivation and where and how pesticides and chemicals will be stored, along with a plan for the disposal of unused pesticides.~~

~~e.   The applicant shall acknowledge that all cultivation must be performed in building.~~

~~(24)Proof of an insurance policy covering the facility in the amount of at least $1,000,000.00 for property damage; $1,000,000.00 for injury to one person; and at least $2,000,000.00 for two or more persons resulting from the same occurrence. The city shall be notified by the insurance carrier 30 days in advance of any cancellation.~~

~~(25) Proof of a surety bond in the amount of $100,000.00 with the city listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article or in the alternative applicant can create an escrow account for the benefit of the city at a city approved financial institution in the amount of $20,000.00.~~

~~(26) Proof of liquid assets that equal or exceed the state's capitalization requirements.~~

(Ord. No. 17-035, 12-13-2017)

Sec. 46-507. - Conduct of permit holder.

(a) Each permit holder shall, as a condition of obtaining and maintaining a permit, agree to comply at all times with applicable local and state building, zoning, fire, health and sanitation statutes, ordinances and regulations.

(b) The premises shall be operated and maintained at all times consistent with responsible business practices and so that no excessive demands will be placed upon public health or safety services, nor any excessive risk of harm to the public health, safety or sanitation.

(c) Permit holder shall immediately notify the city clerk and update as required the information provided on the application and the permit. Further, the permit holder shall notify the city clerk of any other changes that may materially affect the state license or the permit.

(d) An applicant or permit holder has a duty to notify the city clerk in writing of any pending criminal charge, and any criminal conviction or other offense, including but not limited to, Michigan Medical Marihuana Act (MCL 333.26421 et seq.) violations, Medical Marihuana Facilities Licensing Act (MCL 333.27101 et seq.) violations, building, fire, zoning violations by the applicant, permit holder, any owner, principal, officer, director, manager or employee relating to the cultivation, processing, manufacture, storage, sale, distribution, testing or consumption of any form of marihuana within ten days of the event.

(e) The permit holder may not operate any other commercial medical marihuana facility in the permitted premises or on the permitted property, or in its name at any other location within the city without first obtaining a separate permit.

(f) The permit holder may not transfer the permit to any other individual or entity.

(g) Failure to comply with the requirements contained in this section is a civil infraction.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-508. - Operational requirements.

A commercial medical marihuana facility issued a permit under this article and operating in the city shall at all times comply with the following operational requirements, which the city commission may review and amend from time to time as it determines reasonable.

(1) Commercial medical marihuana facilities shall comply with the zoning code, the building code, and the property maintenance code at all times.

(2) The facility must hold a valid local permit and state medical marihuana facility license for the type of commercial medical marihuana facility carried out at the permitted property.

(3) Each commercial medical marihuana facility shall be operated from the permitted premises on the permitted property. No commercial medical marihuana facility shall be permitted to operate from a moveable, mobile or transitory location, except for a permitted and licensed secure transporter when engaged in the lawful transport of marihuana.

(4) No person under the age of 18 shall be permitted to enter into the permitted premises without a parent or legal guardian.

(5) Medical marihuana facilities shall be closed for business and no sale or other distribution of marihuana in any form shall occur upon the premises or be delivered from the premises between the hours of 9:00 p.m. and 7:00 a.m.

(6) Permit holders shall at all times maintain a security system that meets state law requirements, and shall also include:

    a. Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the permitted premises;

    b. Burglary alarm systems which are professionally monitored and operated 24 hours a day, seven days a week;

c. A locking safe permanently affixed to the permitted premises that shall store all marihuana and cash remaining at the facility overnight;

d. All marihuana in whatever form stored at the permitted premises shall be kept in a secure manner and shall not be visible from outside the permitted premises, nor shall it be grown, processed, exchanged, displayed or dispensed outside the permitted premises;

e. All security recordings and documentation shall be preserved for at least 48 hours by the permit holder and made available to law enforcement upon request for inspection.

(7) No commercial provisioning center shall be located within 1000 feet of any of the following uses:

a. a school, public or private, including pre-school through college

or within 250 feet of any of the following uses:

a. a church or house of worship located in a residential district
b. a park or playground
c. a state licensed day-care facility as defined in the City of Adrian Zoning Ordinance, definition(s) 2.46
d. a facility that provides substances abuse disorder services as defined by MCL 330.6230S

(8) The amount of marihuana on the permitted property and under the control of the permit holder, owner or operator of the facility shall not exceed the amount permitted by the state license.

(9) The marihuana offered for sale and distribution must be packaged and labeled in accordance with state law. Provisioning centers are prohibited from selling, soliciting or receiving orders for marihuana or marihuana products over the internet.

(10) No pictures, photographs, drawings, or other depictions of marihuana or marihuana paraphernalia shall appear on the outside of any permitted premises nor be visible outside of the permitted premises on the permitted property. The words "marihuana," "cannabis" and any other words used or intended to convey the presence or availability of marihuana shall not appear on the outside of the permitted premises nor be visible outside of the permitted premises on the permitted property.

(11) The sale, consumption, or use of alcohol or tobacco products on the permitted premises is prohibited. Smoking or consumption of controlled substances, including marihuana, on the permitted premises is prohibited.

(12) All activities of commercial medical marihuana facilities, including without limitation, distribution, growth, cultivation, or the sale of marihuana, and all other related activity permitted under the permit holder's license or permit must occur indoors. The facility's operation and design shall minimize any impact to adjacent uses, including the control of any odor by maintaining and operating an air filtration system so that no odor is detectable outside the permitted premises.

14

(13) A patient may not grow his or her own marihuana at a commercial medical marihuana facility.

(14) No person operating a facility shall provide or otherwise make available marihuana to any person who is not legally authorized to receive marihuana under state law.

(15) All necessary building, electrical, plumbing and mechanical permits must be obtained for any part of the permitted premises in which electrical, wiring, lighting or watering devices that support the cultivation, growing, harvesting or testing of marijuana are located.

(16) The permit holder, owner and operator of the facility shall use lawful methods in controlling waste or by-products from any activities allowed under the license or permit.

(17) Marihuana may be transported by a secure transporter within the city under this article, and to effectuate its purpose, only:

    a.    By persons who are otherwise authorized by state law to possess marihuana for medical purposes;

    b.    In a manner consistent with all applicable state laws and rules, as amended;

    c.    In a secure manner designed to prevent the loss of the marihuana;

    d.    No vehicle used for transportation or delivery of marihuana under this article shall have for markings the words "marihuana," "cannabis," or any similar words; pictures or other renderings of the marihuana plant; advertisements for marihuana or for its sale, transfer, cultivation, delivery, transportation or manufacture, or any other word, phrase or symbol indicating or tending to indicate that the vehicle is transporting marihuana.

    e.    No vehicle may be used for the ongoing or continuous storage of marihuana, but may only be used incidental to, and in furtherance of, the transportation of marihuana.

(18) The city commission may impose such reasonable terms and conditions on a commercial medical marihuana facility special use as may be necessary to protect the public health, safety and welfare, and to obtain compliance with the requirements of this article and applicable law.

(19) No facility shall be operated in a manner creating noise, dust, vibration, glare, fumes, or odors beyond the boundaries of the property on which the facility is operated; or creating any other nuisance that hinders the public health, safety and welfare of the residents of the City of Adrian.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-509. - Effective permit; suspension; daily violation.

(a) A permit is valid only for the location identified on the permit and cannot be transferred to another location in the city without a new application.

(b) A permit is valid for one year from the date of issuance.

15

(c)  The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.

(d)  Acceptance by the permit holder of the permit constitutes consent by the permit holder and its owners, officers, managers, agents and employees for any state, federal or local law enforcement to conduct random and unannounced examinations of the facility and all articles of property in that facility at any time to ensure compliance with this article, any other local regulations and with the permit.

(e)  A permit does not prohibit prosecution by the federal government for violation of its laws or prosecution by state authorities for violations of the Act or other violations not protected by the Act.

(f)  Compliance with city ordinance and state statutes is a condition of maintenance of a permit and a permit may be suspended for failure to comply with any of the provisions of this section.

(g)  Suspension of a permit is not an exclusive remedy and nothing contained herein is intended to limit the city's ability to prosecute code violations that may have been the cause of the suspension or any other code violations not protected by this Act.

(h)  Violations of the provisions of this article or failure to comply with any of the requirements of this article is a civil infraction. The fine for this civil infraction is $500.00 and abatement costs of each violation together with all remedies available under MCL 600.8701 et seq. Each day a violation continues shall be deemed a separate civil infraction.

(i)  Operating a medical marihuana facility without a valid permit or assisting in the operation of a medical marihuana facility without a valid permit for that property is a civil infraction. The fine for this civil infraction shall be $500.00. Each day that a person shall operate a medical marihuana facility without a permit or assist in the operation of a medical marijuana facility without a valid permit in effect for that property shall constitute as a separate offense.

(j)  In addition to any other remedies, the city may institute proceedings for injunction, mandamus, abatement or other appropriate remedies to prevent, enjoin, abate or remove any violations of this article. The rights and remedies provided herein are civil in nature. The imposition of a fine shall not exempt the violator from compliance with the provisions of this article.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-510. - Fees for licenses.

The fees for the permit herein defined shall be set by resolution of the city commission. The fee shall defray the costs incurred by the city for inspection, administration and enforcement of this article and shall not exceed any limitations imposed by Michigan law.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-511. - Severability.

16

17

The provisions of this article are hereby declared severable. If any part of this article is declared invalid for any reason by a court of competent jurisdiction, that declaration does not affect or impair the validity of all other provisions that are not subject to that declaration.

(Ord. No. 17-035, 12-13-2017)

17

# AGENDA
# ADRIAN CITY COMMISSION
# SPECIAL MEETING
## June 7, 2018 - 7:00PM

Official proceedings of the June 7, 2018 Special Meeting of the City Commission, Adrian, Michigan

The meeting was opened with a moment of silence and followed by the Pledge of Allegiance to the Flag.

**PRESENT:**    Mayor Jacobson & Commissioners Heldt, Watson, Strayer, Dudas and Valentine.

**ABSENT:**    Commissioner Faulhaber

Mayor Jacobson in the Chair.

**REGULAR AGENDA**

**ORDINANCES**

### ORDINANCE NO. 18-009

### AMENDMENT TO SECTION 46-500 OF CHAPTER 46, OF THE ADRIAN CODE, ENTITLED "COMMERCIAL MEDICAL MARIHUANA FACILITIES"

ARTICLE XI. - COMMERCIAL MEDICAL MARIHUANA FACILITIES DIVISION 1. – GENERALLY Sec. 46-500. - Legislative intent.

The purpose of this article is to implement the provisions of the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016, which authorizes the licensing and regulation of commercial medical marihuana facilities; and affords the City the option of whether or not to allow commercial medical marihuana facilities; **and the authority** to regulate commercial medical marihuana facilities by requiring a permit and compliance with requirements as provided in this article, in order to maintain the public health, safety and welfare of the public.

**Nothing in this article is intended to grant immunity from criminal or civil prosecution, penalty, or sanction for the cultivation, manufacture, possession, use, sale, or distribution of marihuana, in any form, that is not in compliance with the Michigan Medical Marihuana Act, Initiated Law of 2008, MCL 333.26421 et seq.; the Michigan**

EXHIBIT 12

Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; the Michigan Marihuana Tracking Act, MCL 333.27901 et seq.; and all other applicable rules promulgated by the state of Michigan.

As of the effective date of this article, marihuana remains classified as a Schedule 1 controlled substance under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq., which makes it unlawful to manufacture, distribute, or dispense marihuana, or possess marihuana with the intent to manufacture, distribute, or dispense marihuana. Nothing in this article is intended to grant immunity from any criminal prosecution under federal laws.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-501. - Definitions.

For the purpose of this article the following words, terms, and phrases shall have the meanings ascribed to them in this section, except when the context clearly indicates a different meaning.

Any term defined by the Michigan Medical Marihuana Act. MCL 33.2621 et seq., shall have the definition given in the Michigan Medical Marihuana Act.

Any term defined by the Michigan Medical Marihuana Facilities Licensing Act. MCL 33.27101 et seq., shall have the definition given in the Michigan Medical Marihuana Facilities Licensing Act.

Any term defined by the Michigan Medical Marihuana Tracking Act. MCL 33.27901 et seq., shall have the definition given in the Michigan Medical Marihuana Tracking Act.

City means the City of Adrian.

Department means the Michigan State Department of Licensing and Regulatory Affairs or any authorized designated Michigan agency authorized to regulate, issue or administer a Michigan license for a commercial medical marihuana facility.

Enclosed Building means a combination of materials forming a structure affording a facility or shelter for use or occupancy by individuals or property in which a proper ventilation system allows for all windows, entrances, and exits may safely remain closed, with the exceptions of normal entry and exit of the building for business purposes, and safety or emergency purposes i.e. Fire. Building includes a part or parts of the building and all equipment in the building. A building shall not be construed to mean a building incidental to the use for agricultural purposes of the land on which the building is located.

Grower or grower facility means a commercial entity that cultivates, dries, trims, or cures and packages marihuana for sale to a processor or provisioning center. Grower facilities are divided into classes: A Class A facility -- can have up to 500 plants; a Class B facility -- can have up to 1,000 plants; and a Class C facility -- can have up to 1,500 plants.

License means a current, and valid license for a commercial medical marihuana facility issued by the State of Michigan.

Licensee means a person holding a current, ~~and~~ valid Michigan license for a commercial medical marihuana facility.

Marihuana means that ~~termed~~ as defined in section **7106 of the public health code, 1978 PA 368, MCL 333.7106.**

Marihuana plant(s)" means any plant of the species Cannabis sativa L.

**Medical Marihuana means that term as defined in the Public Health Code, MCL 33.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; and the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.**

Medical marihuana facility(s) means any facility, establishment and/or center **at a specific location which is** licensed under this chapter to operate under **the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.**, including a provisioning center, grower, processor, safety compliance facility, and secure transporter. **The term does not include or apply to a "primary caregiver" or "caregiver" as the term is defined in the Michigan Medical Marihuana Act, MCL 333.26421 et seq.**

Permit means a current, ~~and~~ **valid** permit for a commercial medical marihuana facility issued pursuant to this article, ~~which shall be~~ granted to a permit holder ~~only~~ **valid** for ~~and limited to~~ a specific permitted premises and a specific permitted property.

Permit holder means the person that holds a current, ~~and~~ **valid** permit under this article.

Permitted premises means the particular building or buildings within which the permit holder will be authorized to conduct the facility's activities pursuant to the permit.

Permitted property means the real property comprised of the lot, parcel or other designated unit of real property upon which the permitted premises is situated.

Person means a natural person, company, partnership, profit or non-profit corporation, limited liability company, or any joint venture for a common purpose.

Processor or processor facility means a commercial entity that purchases marihuana from a grower and that extracts resin from the marihuana or creates a marihuana-infused product for sale and transfer in packaged form to a provisioning center.

Provisioning center means a commercial entity that purchases marihuana from a grower or processor and sells, supplies, or provides marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers. Provisioning center includes any commercial property where marihuana is sold at retail to registered qualifying patients or registered primary caregivers. **The term does not include or apply to a A** non-commercial location used by a primary caregiver to assist a qualifying patient connected to the caregiver through the department's marihuana registration process in accordance with the MMMA. ~~is not a provisioning center for the purposes of this article.~~

Safety compliance facility means a commercial entity that receives marihuana from a medical marihuana facility or registered primary caregiver, tests it for contaminants and for tetrahydrocannabinol and other cannabinoids, returns the test results, and may return the marihuana to the medical marihuana facility.

School (as defined in MCL 257.627a) means an educational institution operated by a local school district or by a private, denominational, or parochial organization. School does not include either of the following:

(i) An educational institution that the department of education determines has its entire student population in residence at the institution.

(ii) An educational institution to which all students are transported in motor vehicles.

Secure transporter means a commercial entity that stores medical marihuana and transports medical marihuana between medical marihuana facilities for a fee.

(Ord. No. 17-035, 12-13-2017)

## DIVISION 2. - PERMITS

### Sec. 46-502. - Required.

(a) No person shall operate a commercial medical marihuana facility in the City of Adrian without first obtaining a permit from the city clerk.

(b) The issuance of any permit or renewal permit pursuant to this chapter shall not confer any vested rights or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval.

(c) A completed application for renewal permit must be received by the city clerk no later than 90 days prior to the expiration of the current permit. Pending applications for annual renewal or amendment of existing permits shall be reviewed, and granted or denied by the city clerk prior to new permit application being considered.

(d) No permit issued under this section may be transferred or assigned and no license is valid for any location other than the location specified in the license.

(e) A permit holder must submit to the City a copy of their valid state license within 180 days of issuance of the permit under this article. Failure to provide such proof will result in revocation of suspension of the permit.

(f) If a permit holder has not obtained a valid state license at the end of 180 days, they may request an extension of time from the city clerk.

(g) If the facility is a new build and construction or licensing is not complete after 180 days, the permit holder may request, from the city clerk, an extension of time to obtain the state license.

(h) The city clerk may require additional/supplemental information to confirm the reasons for delay. Extension(s) will be granted or denied at the discretion of the city.

(Ord. No. 17-035, 12-13-2017)

### Sec. 46-503. - Commercial medical marihuana facilities authorized to operate in the city.

(a)   Growers, Class A, B and C.

(b)   Processors.

(c)   Provisioning centers.

(d)   Safety compliance facilities.

(e)   Secure transporters.

(Ord. No. 17-035, 12-13-2017)

**Sec. 46-504. - Number of facilities authorized by city.**

(a) Growers:

    Class A: unlimited

    Class B: unlimited

    Class C: unlimited

(b) Processors: unlimited

(c) Provisioning centers: Ten permits in the B-1 and B-2 districts combined, unlimited in the Industrial overlay district.

(d) Safety compliance facilities: unlimited

(e) Secure transporters: unlimited

(Ord. No. 17-035, 12-13-2017)

Sec. 46-505 - **Requirements and procedure for aApplication**

No person shall operate a marihuana facility in the city of Adrian without a current, valid marihuana facility permit issued by the City pursuant to the provisions of this article. The permit requirements set forth in this chapter shall be in addition to, not in lieu of any other licensing and/or permitting requirements imposed by any other federal, state, or local law. Applications for permits shall be made annually on forms provided by the city clerk and must meet the following requirements:

(a) Every applicant for a medical marihuana facility permit shall complete and file the application form provided by in the city clerk's office. Any application missing information in any required field will be deemed incomplete and is subject to denial of the permit by the city clerk. Each question in the application must be answered in its entirety and all the information requested and required by this article must be submitted in the application. Failure to comply with these rules and the application requirements in the article is grounds for denial of the application. The application shall contain any information required by the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., and the following information:

(1)     Name, address, and telephone number of the owner(s) of all real property where the facility is located.

(2)     Name, address, and telephone number of the of the proposed permit holder.

(3)     If the property owner and the proposed permit holder are not the same person, all documentation showing the proposed permit holder's valid tenancy, ownership or other legal interest in the proposed permitted property and permitted premises.

(4)     If the proposed permit holder is not the owner of the property, a notarized statement from the owner of such property authorizing the use of the property for commercial medical marihuana facility.

(5)     A copy of a valid unexpired driver's license or state ID for the proposed permit holder. Acceptable ID will be issued by the state in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.

(6)     If the proposed permit holder is a corporation, non-profit organization, limited liability company or any other entity other than a natural person it must state its legal status, attach a copy of all company formation documents (including amendments), proof of registration with the State of Michigan and a certificate of good standing along with the articles, resolutions and by-laws/operating agreements, and a copy of a valid unexpired driver's license or state issued ID for all owners, directors, officers and managers of the entity .

(7)     A signed release shall be provided, on a form included with the application, permitting the City of Adrian police department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other state or the United States.

(8)     A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim demand, action, legal redress or recourse against the City of Adrian, its elected and appointed officials and its employees and agents for any claims, damages, liabilities, causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders, employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the City of Adrian, its elected and appointed officials, employees, attorneys, and agents.

(9)   A signed acknowledgement that all cultivation must be performed in an enclosed building.

(10)   An affidavit that the applicant is not in default to the city. Specifically, that the applicant has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the city.

(11)   Proof of a surety bond in the amount of $100,000.00 with the city listed as the oblige to guarantee the performance by applicant of the terms, conditions and obligations of this article or in the alternative applicant can create an escrow account for the benefit of the city at a city-approved financial institution in the amount of $20,000.00.

(12)   Any other information deemed by the City to be required for consideration of a permit.

(a)  Application for a permit shall be made annually on forms provided by the city clerk.

(b)  The permit requirements set forth in this chapter shall be in addition to and not in lieu of any other licensing and permitting requirements imposed by any other federal, state, or local law.

(c)  Upon receipt of a completed application and payment of the required fee, the city clerk shall forward a copy of the application to each of the following departments for their approval: the fire department, the building department, the police department, the zoning administrator, and the city treasurer.

(d)  No application shall be approved unless:

(1)  The fire department and building department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this article.

(2)  The zoning administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit.

(3)  The city treasurer has confirmed that the applicant and the proposed location are not in default to the city.

(4)  The police department has determined that the applicant has met the requirements of this chapter with respect to the background check and security plan.

(e)  Each year, any pending applications for renewal or amendment of existing permits shall be reviewed and granted or denied before applications for new permits are considered.

(f)  The issuance of any permit pursuant to this chapter does not create an exception, defense, or immunity to any person in regard to any potential criminal liability the person may have for the production, distribution, or possession of marihuana.

(g)  A permit and a renewal permit shall not confer any vested rights or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval. A completed application or renewal application

~~must be received by the city clerk no later than 90 days prior to the expiration of the current permit.~~

~~(h) No permit issued under this section may be transferred or assigned and no license is valid for any location other than the location specified in the license.~~

~~(i) All inspections, review and processing of the application shall be completed within 90 days of receipt of a complete application and all required fees.~~

~~(j) Any denial of a permit shall be in writing and shall state the reason for denial.~~

~~(k) A denial of a permit may be appealed to the Medical Marihuana Permit Appeal Board, members of which are appointed by the City Commission by resolution.~~

~~(l) If more qualified applications are received than the number of permits allowed for provisioning centers in the B-1 and B-2 districts under this article, the City Commission may review and amend this ordinance as it determines to be advisable.~~

~~(m) Any applicant for a commercial medical marihuana facility permit whose building is not yet in existence at the time of city commission approval shall have one year immediately following the date of approval to complete construction of the building, in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.~~

~~(n) The City Commission shall approve or deny a permit within one hundred twenty (120) days of receipt of the completed application and fees. The processing time may be extended upon written notice by the City for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. The City has no obligation to process or approve any incomplete Application, and any times provided under this Ordinance shall not begin to run until the City receives a completed Application, as determined by the City Clerk. A determination of a complete Application shall not prohibit the City from requiring supplemental information.~~

## Sec. 46.506 Issuance or Denial of permit. ~~Conditions of issuance.~~

(a) Upon submission of an applicant's completed application, including all required information and documentation, the city clerk shall accept the application and assign it a sequential number by facility type based on the date and time the application was accepted.

(b) Within 60 days of receipt of a complete application and all required fees, all inspections, review and processing of the application shall he completed, and the city clerk shall approve or deny the marihuana facility permit. The city clerk shall issue marihuana facility permits in order of sequential application number previously assigned.

(c) A provisional permit means only that the applicant has submitted a valid application for a marihuana facility permit, and that the applicant shall not locate or operate a marihuana facility without obtaining all other permits and approvals required by all other applicable ordinances and regulations of the city, as well as,

all statutes and regulations of the state of Michigan including but not limited to the Public Health Code, MCL 33.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; and the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.

(d) The city clerk shall not issue a permit until all of the following conditions have been met:

> (1) The fire department and building department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this article

> (2) The zoning administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit.

> (3) The city treasurer has confirmed that the applicant and the proposed location are not in default to the city.

> (4) The police department has determined that the applicant has met the requirements of this chapter with respect to the background check and security plan

(e) If approved the city clerk shall issue the applicant a provisional permit or renew an annual permit.

(f) A provisional permit will lapse and be void if such other required permits, valid state licensing, and approvals are not diligently pursued to completion, but in any event no later than 120 days after the provisional permit is issued.

(g) A signed acknowledgement of permit holder's intent to acquire and maintain a valid marihuana facility license from the state of Michigan is a condition for issuance and maintenance of a marihuana facility permit under this article. In the event of a lapse in the state issued medical marihuana facility license, for any reason, the applicant may not continue operation of any marihuana facility in the city of Adrian, unless and until a valid state license if reinstated or obtained.

(h) Any applicant for a commercial medical marihuana facility permit whose building is not yet in existence at the time of city commission approval shall have one year immediately following the date of approval to complete construction of the building, in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.

(i) The City Commission shall approve or deny a permit within one hundred twenty (120) days of receipt of the completed application and fees. The processing time may be extended upon written notice by the City for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. The City has no obligation to process or approve any incomplete Application, and any times provided under this Ordinance shall not begin to run until the City receives a completed Application, as determined by the City Clerk. A

determination of a complete Application shall not prohibit the City from requiring supplemental information. The City may delay an application while additional information is requested including, but not limited to, requests for additional disclosures and documentation to be furnished to the department.

(j) If more qualified applications are received than the number of permits allowed for provisioning center in B-1 and B-2 districts under this article, the City Commission may review and amend this ordinance as it determines advisable.

(k) If applicant fails to comply with this article, a permit may be denied as provided under this article. In addition to failing to comply with this article, a permit may be denied for the following reasons:

    (1) The applicant made a material misrepresentation on the application
    (2) The applicant fails to correct any deficiencies in the application or supply additional required information.
    (3) The applicant fails to satisfy compliance with the municipality, state law, or this ordinance.
    (4) The applicant is operating a medical marihuana facility without a current, valid permit.

Any denial of a provisional permit shall be in writing and shall state the reason for the denial.

(l) Denial of a permit by the city clerk may be may be appealed to the City Commission. Denial of permit by the City Commission may be appealed to the Circuit Court of this State.

~~The city clerk shall not issue a permit until all of the following conditions have been met:~~

~~(1) The address of the facility and any other contact information shall be listed on the application form.~~

~~(2) The name and address of the owners of all real property where the facility is located shall be listed on the application form.~~

~~(3) All documentation showing the proposed permit holder's valid tenancy, ownership or other legal interest in the proposed permitted property and permitted premises.~~

~~(4) If the proposed permit holder is not the owner of the property, a notarized statement from the owner of such property authorizing the use of the property for a commercial medical marihuana facility.~~

~~(5) If the proposed permit holder is a corporation, non-profit organization, limited liability company or any other entity other than a natural person it must state its legal status, attach a copy of all company formation documents (including amendments), proof of registration with the State of Michigan and a certificate of good standing along with the articles, resolutions and by-laws/operating agreements.~~

(6) The name and addresses of all owners and managers of the facility shall be listed on the application form.

(7) A copy of a valid unexpired driver's license or state issued ID for all owners, directors, officers and managers of the proposed facility.

(8) Evidence of a valid sales tax license for the business if such a license is required by state law or local regulations.

(9) A signed release shall be provided, on a form included with the application, permitting the City of Adrian police department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any felony or any controlled substance related misdemeanor under Michigan law or the law of any other state or the United States.

(10) Proof that a valid and current certificate of occupancy has been issued by the building official indicating that all necessary inspections have been conducted, which may include but are not limited to electrical inspection, plumbing inspection and mechanical inspection is required within 180 days of a permit being issued.

(11) Where the application identifies electrical devices are being used or intended to be used in conjunction with a permit, proof that the fire department has inspected and approved the use or proposed use and that any necessary permits for electrical alterations have been obtained.

(12) Where the application identifies structural modifications have been made or are intended in conjunction with the permit, proof that the building code officials have inspected the property and issued the necessary permits.

(13) A copy of the business and operations plan showing in detail the commercial medical marihuana facility's proposed plan of operation, including without limitation, the following:

   a. A description of the type of facility proposed and the anticipated or actual number of employees.

   b. A security plan which shall include a general description of security system, current centrally alarmed and monitored security system service agreement for the proposed permitted premises, and confirmation that those systems will meet state requirements and be approved by the state prior to commencing operations.

   c. A general description by category of all products to be sold.

   d. A list of material safety data sheets for all nutrients, pesticides and other chemicals proposed for use in the commercial medical marihuana facility.

   e. A description and plan for all equipment and methods that will be employed to stop any impact to adjacent uses, including enforceable assurances that no odor will be detectable from outside the permitted premises.

   f. A plan for disposal of marihuana and related byproducts that will be used at the facility.

   g. A technology plan that includes the plan for data collection and data security.

(14) State whether applicant has ever applied for and been denied any commercial license or certificate by a licensing authority in Michigan or any other jurisdiction or whether any commercial license has been restricted, suspended, revoked or not renewed. Describe the facts and circumstances concerning the application, denial, restriction, suspension, revocation or nonrenewal including the licensing authority, the date each action was taken, and the reason for each action.

(15) Provide a signed and sealed (by a Michigan registered architect, surveyor or professional engineer) site plan and interior floor plan of the permitted premises and the permitted property.

(16) List any other commercial medical marihuana facility that the licensee is authorized to operate in any other jurisdiction within the state, or another state and the applicant's involvement in each facility.

(17) Provide any other information reasonably requested by the city regarding the processing or consideration of the application.

(18) An affidavit that the applicant is not in default to the city. Specifically, that the applicant has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the city.

(19) For provisioning centers, a proposed patient recordkeeping plan that will track quantities sold to individual patients and caregivers, and will monitor inventory.

(20) A description of procedures for testing of contaminants including mold and pesticides.

(21) An estimate of the number and types of jobs that the facility is expected to create, the amount and type of compensation expected to be paid for such jobs, and the projected annual budget and revenue of the facility.

(22) A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim, demand, action, legal redress or recourse against the City of Adrian, its elected and appointed officials and its employees and agents for any claims, damages, liabilities, causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders, employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the City of Adrian, its elected and appointed officials, employees, attorneys, and agents.

(23) As it relates to grower facilities:

    a.    A cultivation plan that includes at a minimum, a description of the cultivation methods to be used, including plans for the growing mediums, treatments, and/or additives.

b. A production testing plan that includes, at a minimum, a description of how and when samples for laboratory testing will be selected, what type of testing will be requested and how the test results will be used.

c. An affidavit that all operations will be conducted in conformance with the MMFLA and all other applicable state laws.

d. A chemical and pesticide storage plan that states the names of the pesticides to be used in cultivation and where and how pesticides and chemicals will be stored, along with a plan for the disposal of unused pesticides.

e. The applicant shall acknowledge that all cultivation must be performed in building.

(24) Proof of an insurance policy covering the facility in the amount of at least $1,000,000.00 for property damage; $1,000,000.00 for injury to one person; and at least $2,000,000.00 for two or more persons resulting from the same occurrence. The city shall be notified by the insurance carrier 30 days in advance of any cancellation.

(25) Proof of a surety bond in the amount of $100,000.00 with the city listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article or in the alternative applicant can create an escrow account for the benefit of the city at a city approved financial institution in the amount of $20,000.00.

(26) Proof of liquid assets that equal or exceed the state's capitalization requirements.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-507. - Conduct of permit holder.

(a) Each permit holder shall, as a condition of obtaining and maintaining a permit, agree to comply at all times with applicable local and state building, zoning, fire, health and sanitation statutes, ordinances and regulations.

(b) The premises shall be operated and maintained at all times consistent with responsible business practices and so that no excessive demands will be placed upon public health or safety services, nor any excessive risk of harm to the public health, safety or sanitation.

(c) Permit holder shall immediately notify the city clerk and update as required the information provided on the application and the permit. Further, the permit holder shall notify the city clerk of any other changes that may materially affect the state license or the permit.

(d) An applicant or permit holder has a duty to notify the city clerk in writing of any pending criminal charge, and any criminal conviction or other offense, including but not limited to, Michigan Medical Marihuana Act (MCL 333.26421 et seq.) violations, Medical Marihuana Facilities Licensing Act (MCL 333.27101 et seq.) violations, building, fire, zoning violations by the applicant, permit holder, any owner, principal, officer, director, manager or employee relating to the cultivation, processing, manufacture, storage, sale, distribution, testing or consumption of any form of marihuana within ten days of the event.

(e) The permit holder may not operate any other commercial medical marihuana facility in the permitted premises or on the permitted property, or in its name at any other location within the city without first obtaining a separate permit.

(f) The permit holder may not transfer the permit to any other individual or entity.

(g) Failure to comply with the requirements contained in this section is a civil infraction.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-508. - Operational requirements.

A commercial medical marihuana facility issued a permit under this article and operating in the city shall at all times comply with the following operational requirements, which the city commission may review and amend from time to time as it determines reasonable.

(1) Commercial medical marihuana facilities shall comply with the zoning code, the building code, and the property maintenance code at all times.

(2) The facility must hold a valid local permit and state medical marihuana facility license for the type of commercial medical marihuana facility carried out at the permitted property.

(3) Each commercial medical marihuana facility shall be operated from the permitted premises on the permitted property. No commercial medical marihuana facility shall be permitted to operate from a moveable, mobile or transitory location, except for a permitted and licensed secure transporter when engaged in the lawful transport of marihuana.

(4) No person under the age of 18 shall be permitted to enter into the permitted premises without a parent or legal guardian.

(5) Medical marihuana facilities shall be closed for business and no sale or other distribution of marihuana in any form shall occur upon the premises or be delivered from the premises between the hours of 9:00 p.m. and 7:00 a.m.

(6) Permit holders shall at all times maintain a security system that meets state law requirements, and shall also include:

    a. Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the permitted premises;

    b. Burglary alarm systems which are professionally monitored and operated 24 hours a day, seven days a week;

    c. A locking safe permanently affixed to the permitted premises that shall store all marihuana and cash remaining at the facility overnight;

    d. All marihuana in whatever form stored at the permitted premises shall be kept in a secure manner and shall not be visible from outside the permitted premises, nor shall it be grown, processed, exchanged, displayed or dispensed outside the permitted premises;

    e. All security recordings and documentation shall be preserved for at least 48 hours by the permit holder and made available to law enforcement upon request for inspection.

(7) No commercial provisioning center shall be located within 1000 feet of any of the following uses:

    a. a school, public or private, including pre-school through college

or within 250 feet of any of the following uses:

    a. a church or house of worship located in a residential district
    b. a park or playground
    c. a state licensed day-care facility as defined in the City of Adrian Zoning Ordinance, definition(s) 2.46
    d. a facility that provides substances abuse disorder services as defined by MCL 330.6230S

(8) The amount of marihuana on the permitted property and under the control of the permit holder, owner or operator of the facility shall not exceed the amount permitted by the state license.

(9) The marihuana offered for sale and distribution must be packaged and labeled in accordance with state law. Provisioning centers are prohibited from selling, soliciting or receiving orders for marihuana or marihuana products over the internet.

(10) No pictures, photographs, drawings, or other depictions of marihuana or marihuana paraphernalia shall appear on the outside of any permitted premises nor be visible outside of the permitted premises on the permitted property. The words "marihuana," "cannabis" and any other words used or intended to convey the presence or availability of marihuana shall not appear on the outside of the permitted premises nor be visible outside of the permitted premises on the permitted property.

(11) The sale, consumption, or use of alcohol or tobacco products on the permitted premises is prohibited. Smoking or consumption of controlled substances, including marihuana, on the permitted premises is prohibited.

(12) All activities of commercial medical marihuana facilities, including without limitation, distribution, growth, cultivation, or the sale of marihuana, and all other related activity permitted under the permit holder's license or permit must occur indoors. The facility's operation and design shall minimize any impact to adjacent uses, including the control of any odor by maintaining and operating an air filtration system so that no odor is detectable outside the permitted premises.

(13) A patient may not grow his or her own marihuana at a commercial medical marihuana facility.

(14) No person operating a facility shall provide or otherwise make available marihuana to any person who is not legally authorized to receive marihuana under state law.

(15) All necessary building, electrical, plumbing and mechanical permits must be obtained for any part of the permitted premises in which electrical, wiring, lighting or watering devices that support the cultivation, growing, harvesting or testing of marihuana are located.

(16) The permit holder, owner and operator of the facility shall use lawful methods in controlling waste or by-products from any activities allowed under the license or permit.

(17) Marihuana may be transported by a secure transporter within the city under this article, and to effectuate its purpose, only:

    a.    By persons who are otherwise authorized by state law to possess marihuana for medical purposes;

    b.    In a manner consistent with all applicable state laws and rules, as amended;

    c.    In a secure manner designed to prevent the loss of the marihuana;

    d.    No vehicle used for transportation or delivery of marihuana under this article shall have for markings the words "marihuana," "cannabis," or any similar words; pictures or other renderings of the marihuana plant; advertisements for marihuana or for its sale, transfer, cultivation, delivery, transportation or manufacture, or any other word, phrase or symbol indicating or tending to indicate that the vehicle is transporting marihuana.

    e.    No vehicle may be used for the ongoing or continuous storage of marihuana, but may only be used incidental to, and in furtherance of, the transportation of marihuana.

(18) The city commission may impose such reasonable terms and conditions on a commercial medical marihuana facility special use as may be necessary to protect the public health, safety and welfare, and to obtain compliance with the requirements of this article and applicable law.

(19) No facility shall be operated in a manner creating noise, dust, vibration, glare, fumes, or odors beyond the boundaries of the property on which the facility is operated; or creating any other nuisance that hinders the public health, safety and welfare of the residents of the City of Adrian.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-509. - Effective permit; suspension; daily violation.

(a) A permit is valid only for the location identified on the permit and cannot be transferred to another location in the city without a new application.

(b) A permit is valid for one year from the date of issuance.

(c) The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.

(d) Acceptance by the permit holder of the permit constitutes consent by the permit holder and its owners, officers, managers, agents and employees for any state, federal or local law enforcement to conduct random and unannounced examinations of the facility and all articles of property in that facility at any time to ensure compliance with this article, any other local regulations and with the permit.

(e) A permit does not prohibit prosecution by the federal government for violation of its laws or prosecution by state authorities for violations of the Act or other violations not protected by the Act.

(f) Compliance with city ordinance and state statutes is a condition of maintenance of a permit and a permit may be suspended for failure to comply with any of the provisions of this section.

(g) Suspension of a permit is not an exclusive remedy and nothing contained herein is intended to limit the city's ability to prosecute code violations that may have been the cause of the suspension or any other code violations not protected by this Act.

(h) Violations of the provisions of this article or failure to comply with any of the requirements of this article is a civil infraction. The fine for this civil infraction is $500.00 and abatement costs of each violation together with all remedies available under MCL 600.8701 et seq. Each day a violation continues shall be deemed a separate civil infraction.

(i) Operating a medical marihuana facility without a valid permit or assisting in the operation of a medical marihuana facility without a valid permit for that property is a civil infraction. The fine for this civil infraction shall be $500.00. Each day that a person shall operate a medical marihuana facility without a permit or assist in the operation of a medical marihuana facility without a valid permit in effect for that property shall constitute as a separate offense.

(j) In addition to any other remedies, the city may institute proceedings for injunction, mandamus, abatement or other appropriate remedies to prevent, enjoin, abate or remove any violations of this article. The rights and remedies provided herein are civil in nature. The imposition of a fine shall not exempt the violator from compliance with the provisions of this article.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-510. - Fees for licenses.

The fees for the permit herein defined shall be set by resolution of the city commission. The fee shall defray the costs incurred by the city for inspection, administration and enforcement of this article and shall not exceed any limitations imposed by Michigan law.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-511. - Severability.

The provisions of this article are hereby declared severable. If any part of this article is declared invalid for any reason by a court of competent jurisdiction, that declaration does not affect or impair the validity of all other provisions that are not subject to that declaration.

(Ord. No. 17-035, 12-13-2017)

**On motion by Commissioner Dudas, seconded by Commissioner Strayer, this amended Ordinance was adopted by a 6-0 vote.**

## Thelen, Michelle (LARA)

| | |
|---|---|
| **From:** | Tamaris Henagan < THenagan@adrianmi.gov > |
| **Sent:** | Thursday, June 21, 2018 10:11 AM |
| **To:** | Thelen, Michelle (LARA) |
| **Cc:** | Robin Connor; Michelle Dewey; Richard Haberman |
| **Subject:** | M.S.C.3 inquiry |

Dear Ms. Thelen,

This email is in response to your inquiry regarding the state application for Medicinal Solutions Compassionate Care Corp (M.S.C.3). After looking into the timing of the Attestation E for temporary operation my position is that the Attestation was signed with the understanding that the business would be operating at the 152 E Front Street location. However, since there is no specific address listed on the attestation and in combination with the resolution to continue operating in the City of Adrian that was granted on the applicant's behalf, the attestation would still be valid for the 717 Division St (another City of Adrian address) address if the business relocated there.

As for the resolution itself and your specific questions regarding the timeline, the resolution was approved for MSC3 on December 13, 2017. The City had no knowledge of the new incorporation or assumed name that was filed by the applicant. We also had no knowledge of the dissolution of MSC3. As such, I can only confirm that the resolution was approved for the previously incorporated entity of MSC3.

If you have any additional questions please feel free to contact me.

Sincerely,

Tamaris Henagan
City Attorney
517-264-4816

EXHIBIT 13

**AGENDA**
**ADRIAN CITY COMMISSION**
**July 2, 2018,**
**7:00PM**

I.  PRAYER AND PLEDGE OF ALLEGIANCE TO THE FLAG

II.  ROLL CALL

III.  APPROVAL OF THE MINUTES OF THE JUNE 18, 2018 REGULAR MEETING OF THE ADRIAN CITY COMMISSION

IV.  PRESENTATION OF ACCOUNTS

V.  REGULAR AGENDA

RESOLUTIONS

1. **R18-091. City Commission.** Resolution to authorize re-election of MML Workers' Compensation Fund Trustees.

2. **R18-092. Parks & Engineering Services.** Resolution to award a bid for the purchase of two Toro mowers.

3. **R18-093. Fire Department.** Resolution to amend the FY2018-19 Budget to reflect a change in service and staffing.

4. **R18-094. Fire Department.** Resolution to waive the bid process and purchase a Stryker Ambulance Cot and Loading System.

5. **R18-095. City Clerk.** Resolution to approve or deny a Medical Marihuana Facility application from Medicinal Solutions Compassionate Care Corporation (M.S.C.3).

6. **R18-096. City Clerk.** Resolution to approve or deny a Medical Marihuana Facility application from North Coast Collective.

VI.  MISCELLANEOUS

1. Departmental Report.

VII.  PUBLIC COMMENT

VIII.  COMMISSIONER COMMENTS

EXHIBIT 14



# REGULAR AGENDA

June 28, 2018

**MEMORANDUM**

TO:     Richard Haberman, Interim City Administrator
        Honorable Mayor Chuck Jacobson and City Commissioners

FROM: Robin Connor, City Clerk

SUBJECT: Medical Marihuana Facility Applications

---

City staff has reviewed and approved Medical Marihuana Facility applications from Medicinal Solutions Compassionate Care Corporation d/b/a M.S.C.3, for 717 Division Street, and North Coast Collective, for 922 E. Beecher Street.  Both applications have been reviewed by all of the required City departments, and have either been approved or have been provided with a waiver where appropriate.

I have reviewed each application and recommend approval by the City Commission.

Thank you,

Robin Connor

City Clerk

July 2, 2018

R18-095

RE:   **CITY CLERK -- Approval of Medical Marihuana Facility Permit for Medicinal Solutions Compassionate Care Corporation (M.S.C.3)**

## RESOLUTION

WHEREAS, the Adrian City Commission has adopted a Commercial Medical Marihuana Facilities Ordinance, Medical Marihuana Zoning Ordinances, and Medical Marihuana Zoning Ordinance Overlays; and

WHEREAS, Medicinal Solutions Compassionate Care Corporation (M.S.C.3) has submitted a Medical Marihuana Facility Permit Application for 717 Division Street, Adrian, Michigan; and

WHEREAS, the City Clerk has reviewed the application, confirms that the required inspections have been conducted, and that the application meets the requirements of the adopted Medical Marihuana Facility Ordinances, and recommends approval of a provisional permit to Medicinal Solutions Compassionate Care Corporation (M.S.C.3) for 717 Division Street, Adrian, Michigan.

NOW, THEREFORE BE IT RESOLVED, that the Adrian City Commission by this resolution, hereby approves a provisional Medical Marihuana Permit for Medicinal Solutions Compassionate Care Corporation (M.S.C.3), for 717 Division Street, Adrian, Michigan.

On motion by Commissioner _____

seconded by Commissioner _____

this resolution was _____ by a_____ vote.

July 2, 2018

**R18-096**

RE:   **CITY CLERK – Approval of Medical Marihuana Facility Permit for North Coast Collective**

## RESOLUTION

WHEREAS, the Adrian City Commission has adopted a Commercial Medical Marihuana Facilities Ordinance, Medical Marihuana Zoning Ordinances, and Medical Marihuana Zoning Ordinance Overlays; and

WHEREAS, North Coast Collective has submitted a Medical Marihuana Facility Permit Application for 922 E. Beecher Street, Adrian, Michigan; and

WHEREAS, the City Clerk has reviewed the application, confirms that the required inspections have been conducted, and that the application meets the requirements of the adopted Medical Marihuana Facility Ordinances, and recommends approval of a provisional permit to North Coast Collective for 922 E. Beecher Street, Adrian, Michigan.

NOW, THEREFORE BE IT RESOLVED, that the Adrian City Commission by this resolution, hereby approves a provisional Medical Marihuana Permit for North Coast Collective, for 922 E. Beecher Street, Adrian, Michigan.

On motion by Commissioner _____,

seconded by Commissioner _____,

this resolution was _____ by a_____ vote.

WHEREAS, staff has researched the purchase of the equipment needed to begin a full-time transport service, and two items need are a Stryker Power Pro XT ambulance cot, and a Power Load System for the cot; and

WHEREAS, this system is certified to lift and load up to a 700 pound patient into the ambulance unassisted, greatly reducing the chance of an injury resulting from lifting or loading a stretcher; and

WHEREAS, staff research resulted in a total cost estimate of $39,801.60, however a cot and power load system has become available directly from the manufacturer at a cost of $35,500.00 on a first come, first serve basis; and

WHEREAS, the Interim Fire Chief and Interim City Administrator recommend the bid process be waived, and the purchase of a Stryker Power Pro XT ambulance cot and a Power Load System from Stryker be approved.

NOW THEREFORE BE IT RESOLVED that the Adrian City Commission hereby waives the bid process and authorizes the purchase of a Stryker Power Pro XT ambulance cot and Power Load System from Stryker at a cost of $35,500.00.

**Fire Chief Aric Massengill gave a short video presentation showing how the cot operates with the ambulance. Also discussed why they wanted to wave the bid process and the discounts being offered.**

**On motion by Commissioner Watson, seconded by Commissioner Heldt, this resolution was adopted by a 7-0 vote.**

**R18-095 – CITY CLERK – Approval of Medical Marihuana Facility Permit for Medicinal Solutions Compassionate Care Corporation (M.S.C.3)**

**RESOLUTION**

WHEREAS, the Adrian City Commission has adopted a Commercial Medical Marihuana Facilities Ordinance, Medical Marihuana Zoning Ordinances, and Medical Marihuana Zoning Ordinance Overlays; and

WHEREAS, Medicinal Solutions Compassionate Care Corporation (M.S.C.3) has submitted a Medical Marihuana Facility Permit Application for 717 Division Street, Adrian, Michigan; and

WHEREAS, the City Clerk has reviewed the application, confirms that the required inspections have been conducted, and that the application meets the requirements of the adopted Medical Marihuana Facility Ordinances, and recommends approval of a provisional permit to Medicinal Solutions Compassionate Care Corporation (M.S.C.3) for 717 Division Street, Adrian, Michigan.

NOW, THEREFORE BE IT RESOLVED, that the Adrian City Commission by this resolution, hereby approves a provisional Medical Marihuana Permit for Medicinal Solutions Compassionate Care Corporation (M.S.C.3), for 717 Division Street, Adrian, Michigan.

EXHIBIT 15

On motion by Commissioner Heldt, seconded by Commissioner Dudas, this resolution was adopted by a 6-1 vote.

   YES:   Mayor Jacobson, Commissioners Heldt, Faulhaber, Watson, Dudas and Strayer.

   NO:   Commissioner Valentine

## R18-096 - CITY CLERK – Approval of Medical Marihuana Facility Permit for North Coast Collective

### RESOLUTION

WHEREAS, the Adrian City Commission has adopted a Commercial Medical Marihuana Facilities Ordinance, Medical Marihuana Zoning Ordinances, and Medical Marihuana Zoning Ordinance Overlays; and

WHEREAS, North Coast Collective has submitted a Medical Marihuana Facility Permit Application for 922 E. Beecher Street, Adrian, Michigan; and

WHEREAS, the City Clerk has reviewed the application, confirms that the required inspections have been conducted, and that the application meets the requirements of the adopted Medical Marihuana Facility Ordinances, and recommends approval of a provisional permit to North Coast Collective for 922 E. Beecher Street, Adrian, Michigan.

NOW, THEREFORE BE IT RESOLVED, that the Adrian City Commission by this resolution, hereby approves a provisional Medical Marihuana Permit for North Coast Collective, for 922 E. Beecher Street, Adrian, Michigan.

On motion by Commissioner Heldt, seconded by Commissioner Strayer, this resolution was adopted by a 6-1 vote.

   YES:   Mayor Jacobson, Commissioners Heldt, Faulhaber, Watson, Dudas and Strayer.

   NO:   Commissioner Valentine

**Commissioner Watson**

As the first applicants you are the trailblazers so understand you are also going to be watched very closely and making the first impression to the community.  It should be a genuinely good impression and that it is a respectable industry we have in our City.

**PUBLIC COMMENT**

**Carole Cheney**
**810 W. Maple Ave.**

- Expressed her frustration over the growth of Bamboo and the damage it has done to her property and the surrounding properties.  She felt that the City should be responsible for the damage to her lawn and the others it has affected.



City of Adrian
MEDICAL MARIHUANA FACILITIES PROVISIONAL
PERMIT
ISSUED TO:

M.S.C.1

FOR PROPERTY LOCATED AT:

717 DIVISION STREET

Application #: MM18-005.
Date of Issue: June 14, 2018

Permit #: MMP18-001
Date of Expiration:   July 2, 2019

Waiver issued

□Yes     xNo
Date of Expiration:

Extension of Provisional Permit Issued

□Yes     xNo
Date of Expiration:

Approved/Issued By:

Robin Connor
City Clerk

EXHIBIT 17



**City of Adrian**

Office of the City Attorney

135 E. Maumee St. • Adrian, Michigan 49221

(517) 264-4816 • Fax (517) 264-4164

July 30, 2018

Nicole Hernandez
Medicinal Solutions Compassionate Care Corporation (M.S.C.3)
717 Division Street
Adrian, Michigan 49221

RE:     Suspension of Provisional Permit #MMP-001

Dear Ms. Hernandez:

Please be advised that pursuant to the State of Michigan's denial of a medical marihuana facility license to M.S.C.3, the Provisional Permit (#MMP-001) issued by the City of Adrian on June 14, 2018 is hereby suspended pending a successful appeal.

As you have indicated your intent to appeal the state's decision, please provide proof that an appeal has been submitted to the state of Michigan to the City within 30 days of the date of service of the denial. Failure to provide proof of appeal may result in revocation of the Provisional Permit. Further per our ordinance, if the City does not receive proof of a valid state license within 180 days of issuance the Provisional Permit will expire, in this case on December 11, 2018.

Should M.S.C.3 appeal the State of Michigan's denial, and the appeal process be ongoing on December 11, 2018, you may ask for an extension for good cause of the Provisional Permit through the City Clerk.  If you fail to provide either proof of a successful appeal within 30 days, or to timely apply for and be granted an extension (if necessary) of the Provisional Permit by December 11, 2018. your Provisional Permit will be revoked.

If you have any questions regarding the process, please feel free to contact my office.

Very Truly Yours,

Tamaris Henagan
City Attorney

TH/mld

EXHIBIT 18

 Gmail

Thomas Lavigne <lawyer.lavigne@gmail.com>

---

## MSC3; can they open?
3 messages

---

**Thomas Lavigne** <tom@cannabiscounsel.com>
To: LARA-BMMR-Legal@michigan.gov

Mon, Aug 27, 2018 at 2:12 PM

MSC3 was a temporary operator denied a license at the July meeting of the Medical Marihuana Licensing Board. Our understanding was that MSC3 cannot be open pending the appeal. Another owner of CannaKings - Refinery Ventures in Morenci told my Client she could be open as he was told he could be open and that he is open and advertising pending his appeal of a denial of his Pre-Qualification. Meanwhile our Client was so conservative she refused, even during temporary operations, to sell to anyone but their patients connected through the registry, as was the only sales they had been doing ever since the McQueen ruling!

Thomas M.J. Lavigne J.D.
Cannabis Counsel® P.L.C. Law Firm
*Lawyers Who Roll The Right Way®*
313-446-2235 (ABEL) office
2930 Jefferson Avenue East, Detroit, Michigan 48207
313-784-9327 fax
tom@cannabiscounsel.com
www.cannabiscounsel.com

Confidentiality Notice: ATTORNEY-CLIENT PRIVILEGE - ATTORNEY WORK PRODUCT
This E-mail contains confidential legal stuff. If it wasn't intended for you, you should probably delete it without reading it, or bad legal stuff could happen to you. Anything in this email that discusses settlement or compromise negotiations is protected from subsequent use by FRE and MRE 408 and FRE and MRE 410.
**ELECTRONIC SIGNATURE:** Nothing contained in this communication is intended to constitute an electronic signature or subscription under MCR 2.507 unless a specific statement to the contrary is included in this message.

---

**LARA-BMMR-Legal** <LARA-BMMR-Legal@michigan.gov>
To: Thomas Lavigne <tom@cannabiscounsel.com>

Fri, Aug 31, 2018 at 2:12 PM

Thank you for contacting the Department of Licensing and Regulatory Affairs (LARA), Bureau of Medical Marihuana Regulation (BMMR).

The Department cannot give legal advice. However, we can provide information.

The Department does not plan to take action at this time pending an applicant's request for public investigative hearing. An applicant may temporarily operate if they meet the requirements of Rule 19, request a public investigative hearing as provided under the Emergency Rules, and as long as there is also continued municipal authorization and no violation occurs. An applicant who has been served with a Cease and Desist letter should

EXHIBIT 19

discontinue temporary operation immediately.

I hope this helps.

**Legal Division**

Bureau of Medical Marihuana Regulation

Licensing and Regulatory Affairs

LARA-BMMR-Legal@michigan.gov



[Quoted text hidden]

---

**Thomas Lavigne** <tom@cannabiscounsel.com>                    Thu, Jan 17, 2019 at 5:44 PM
To: LARA-BMMR-Legal <LARA-BMMR-Legal@michigan.gov>

Is being denied licensing by the board a violation of the MMFLA?

Thomas M.J. Lavigne J.D.
Cannabis Counsel®
*Lawyers Who Roll The Right Way*®
Registered Trademarks of Rivertown Law Firm P.L.C.
d/b/a Cannabis Counsel®
313-446-2235 (ABEL) office
2930 Jefferson Avenue East, Detroit, Michigan 48207
313-784-9327 fax
tom@cannabiscounsel.com
www.cannabiscounsel.com

Confidentiality Notice: ATTORNEY-CLIENT PRIVILEGE - ATTORNEY WORK PRODUCT
This E-mail contains confidential legal stuff. If it wasn't intended for you, you should probably delete
it without reading it, or bad legal stuff could happen to you. Anything in this email that discusses
settlement or compromise negotiations is protected from subsequent use by FRE and MRE 408
and FRE and MRE 410.
ELECTRONIC SIGNATURE: Nothing contained in this communication is intended to constitute an electronic signature or subscription
under MCR 2.507 unless a specific statement to the contrary is included in this message.

[Quoted text hidden]

7:33     ••II LTE ▇

<     **4 Messages**    ∧ ∨

Attention Jennifer - M.S.C.3

Hi Jennifer, My name is Nicole Hernandez we...

● **LARA-BMMR-Legal**     9/4/18
⇒ RE: Attention Jennifer - M.S.C.3     Details  
To: Nicole Hernandez

Nicole,

The Department does not plan to take action at this time pending an applicant's request for public investigative hearing. An applicant may temporarily operate if they meet the requirements of Rule 19, request a public investigative hearing as provided under the Emergency Rules, and as long as there is also continued municipal authorization and no violation occurs. An applicant who has been served with a Cease and Desist letter should discontinue temporary operation immediately.

I hope this helps,

Legal Division

        🗑    ↩   

EXHIBIT **20**

Partner Attorneys:
  Matthew R. Abel, J.D.
  Ann M. Cisco, J.D.
  Thomas M.J. Lavigne, J.D.

Associate Attorneys:
  Julia A. Gilbert, J.D.
  Sean M. Myers, J.D.

Of Counsel:
  Alan L. Kaufman, J.D.
  Steven N. Rich, J.D.



www.cannabiscounsel.com

2930 E. Jefferson Ave.
Detroit, MI 48207
tel. 313-446-2235
fax. 313-784-9327

info@cannabiscounsel.com

# Cannabis Counsel® P.L.C.

September 12, 2018

Tamaris Henagen, City Attorney
City of Adrian
135 E. Maumee St
Adrian, MI 49221

Re: MSC3

Dear Tamaris,

The purpose of this letter is to open MSC3, pursuant to the permit previously granted pursuant to the Adrian ordinance and the Marihuana Facilities Licensing Act and the guidance given by the State of Michigan's Bureau of Medical Marihuana Regulation ("BMMR"). The Adrian Ordinance Sec. 46-502(e) provides:

> A permit holder must submit to the city a copy of their valid state license within 180-days of issuance of the permit under this article. ...

When we asked the State of Michigan BMMR whether we could open the shop pending the appeal, they replied as follows:

> The Department does not plan to take action at this time pending an applicant's request for public investigative hearing. An applicant may temporarily operate if they meet the requirements of Rule 19, request a public investigative hearing as provided under the Emergency Rules, and as long as there is also continued municipal authorization and no violation occurs. An applicant who has been served with a Cease and Desist letter should discontinue temporary operation immediately.

The new 9/11/18 Advisory Bulletin from BMMR, categorized temporary operators like MSC3 as being qualified to remain open because she submitted both phases of her Medical Marihuana Facilities Licensing Act Application before February 15, 2018.

s/Thomas Lavigne

EXHIBIT 21

EXHIBIT 22

Partner Attorneys:
  Matthew R. Abel, J.D.
  Ann M. Cisco, J.D.
  Thomas M.J. Lavigne, J.D.

Associate Attorneys:
  Julia Gilbert, J.D.
  Sean Myers, J.D.

Of Counsel:
  Alan Kaufman, J.D.
  Steve Rich, J.D.



www.cannabiscounsel.com

2930 E. Jefferson Ave.
Detroit, MI  48207
tel. 313-446-2235
fax. 313-784-9327

info@cannabiscounsel.com

# Cannabis Counsel® P.L.C.

September 14, 2018

Robin Connor, City Clerk
City of Adrian
135 East Maumee Street
Adrian, MI 49221

Re: Urgent Appeal of the Wrongful Suspension of MSC3's Temporary Operating Permit for a Medical Marijuana Facility.

Dear Ms. Connor, and The City of Adrian Commission,

Medicinal Solutions Compassionate Care Corporation (hereinafter "MSC3") has operated as a safe access point for medical marijuana patients since 2011. Throughout their existence, MSC3 has always proudly operated in tandem with all relevant City of Adrian commissions, attorneys, boards, and bureaus. Since the passage of the Medical Marijuana Facilities Licensing Act (hereinafter "MMFLA") in 2016, MSC3 has sought to be the first licensed, legal Provisioning Center in the City of Adrian. *See* MCL 333.27201, *et seq.*

Since prior to July 2018, MSC3 has been approved to operate a medical marijuana facility within the city limits of the City of Adrian pursuant to a Permit issued by the City Commission. On July 12, 2018, MSC3 was denied a Provisioning Center license (hereinafter "License") by the LARA board. Immediately thereafter, MSC3 appealed the denial by LARA and a hearing on this appeal is pending.

On September 12, 2018, MSC3 informed their general counsel that their Permit had been suspended by the Administrator for the City of Adrian pursuant to Sec. 46-53 of the City of Adrian Code of Ordinances. In the same conversation, general counsel was further informed that the basis for this suspension was LARA's pre-appeal denial of MSC3's application to operate a License pursuant to the MMFLA. This suspension is the impetus for this urgent appeal.

Later on the same day, general counsel for MSC3 reached out to LARA for guidance on this issue. LARA representatives informed general counsel that the denial of MSC3's State License Application by the Board was not an impediment to operation during the entirety of the appeal process. According to LARA, MSC3 is still authorized to temporarily operate as a Provisioning Center pursuant to Rule 19 of the Emergency Rules until the appeal process is resolved. So it appears that the suspension of MSC3's local Permit was in error, and was at least premature.

EXHIBIT 23

Page 1 of 2

Furthermore, pursuant to the City of Adrian Code of Ordinances, the City Administrator lacked the authority to suspend the permit held by MSC3 in the first place. Section 46-53 of the Code states that suspension of a Permit, like the one held by MSC3, may only be effectuated by the "issuing authority for cause." In this case, the issuing authority is the City Commission, not the Administrator, because the former, not the latter, issued the permit to MSC3. Moreover, the Administrator lacked the requisite good cause (as defined in Sec. 46-31 of the City Code of Ordinances) that is necessary to suspend such a permit.[1]

Pursuant to Section 46-53 of the City Code, the remedy for an improper suspension of a permit, is a hearing before the City Commission. The next meeting of the City Commission will occur on September 17th, 2018. Without its permit, MSC3 is unable to operate its business, and is losing profits and potential customers each day, despite being authorized by the State to conduct business. Therefore, MSC3, through its general counsel, Cannabis Counsel, P.L.C., hereby requests an immediate hearing be scheduled before the Adrian City Commission at the September 17th meeting in order to avoid any additional damage and loss to MSC3 and to resolve all of these issues. Because the LARA appeal is not final, and notwithstanding the wrongful acts or omissions of the City Administrator, there is no impediment to the continued and responsible operation of MSC3's business. Therefore, the City Commission should grant this request to allow MSC3 to argue its case in front of the Commission as soon as feasible.

If you have any questions, please do not hesitate to call at (313) 446-2235, or email at attorneyseanmyers@gmail.com.

Respectfully,

Sean M. Myers (P78687)
Assistant General Counsel for MSC3
Cannabis Counsel, P.L.C.
2930 E. Jefferson Avenue
Detroit, MI

cc:
Chuck Jacobson, Mayor
Allen Heldt, Commissioner
Brad Watson, Commissioner
John Dudas, Commissioner
Kirk Valentine, Commissioner
Lad Strayer, Commissioner
Thomas Faulhaber, Commissioner

135 East Maumee Street
Adrian, MI 49221

---

[1] *Cause* includes the doing or omitting of any act, or permitting any condition to exist in connection with any trade, profession, business or privilege for which a license or permit is granted under the provisions of this Code, or upon any premises or facilities used in connection therewith, which act, omission or condition is:

    (1)Contrary to the health, safety or welfare of the public;

    (2)Unlawful, irregular or fraudulent in nature;

    (3)Unauthorized or beyond the scope of the license or permit granted; or

    (4)Forbidden by the provisions of this Code or any duly established rule or regulation of the city applicable to the trade, profession, business or privilege for which the license or permit has been granted.

**4:13**



< Home (7)   Chuck Jacobson >
Active 3h ago



cell number or I would've just called. Was curious to know what is going on with my permit. You said you were going to look into just getting it taken care of administratively. Please let me know if that is the case or I if this is in fact going to just be heard at a commission meeting.

SEP 26, 12:17 PM

I've talked to rich and Tamaris and we'd like to set up a meeting with all of us to discuss together



EXHIBIT 2H



# City of Adrian

Office of the City Attorney

135 E. Maumee St. • Adrian, Michigan 49221

(517) 264-4816 • Fax (517) 264-4164

October 4, 2018

Nicole Hernandez
Medicinal Solutions Compassionate Care Corporation (M.S.C.3)
717 Division Street
Adrian, Michigan 49221

RE: Suspension of Provisional Permit #MMP-001

Dear Ms. Hernandez:

Please be advised that per the agreement in our October 1, 2018 meeting, Mayor Jacobson met with City staff regarding the suspension of your permit. At this time the permit remains suspended, particularly in light of the LARA bulletin issued on October 1, 2018, under which "an applicant that has been denied licensure – even if that denial is subject to appeal – or has not been issued a license by October 31, 2018, must cease and desist any temporary operation."

Your request for public hearing has already been received by the city, however since you also requested a pre-hearing meeting with the Mayor, your public hearing was postponed. After discussion an agreement was made that the mayor would attend the city meeting before further considering your request to lift the suspension. Though the suspension currently remains in effect, the Mayor cannot deny your appeal individually, therefore you are still entitled to a public hearing before the commission. Should you wish to proceed with an appeal to the commission, please contact me within 10 days to schedule a hearing.

Further, should LARA issue new emergency administrative rules in the future that would allow applicants to temporarily operate while under appeal, you may contact the City Attorney's office at that time to discuss the suspension of your permit in relation to any such change to those rules.

In addition, please be aware that delinquent property taxes in the amount of $4,022.05 are owed on the property occupied by M.S.C.3. Should your suspension be lifted in the future, the delinquent taxes must be paid before your permit will be reinstated.

EXHIBIT 25

If you have any further questions regarding this correspondence, please feel free to contact my office, or Mayor Jacobson.


Very Truly Yours,

Tamaris Henagan
City Attorney

TH/mld

Cc'd

OFFICIAL WEBSITE OF MICHIGAN.GOV

DEPARTMENT OF
# LICENSING AND REGULATORY AFFAIRS

LARA / LARA NEWS RELEASES

## Michigan's New Emergency Rules Require Unlicensed Operation of Medical Marihuana Facilities to End on October 31, 2018

Media Contact: LARA Communications 517-373-9280
Email: **mediainfo@michigan.gov**

The Dept. of Licensing and Regulatory Affairs (LARA) has issued **new emergency administrative rules** to continue the implementation of the Medical Marihuana Facilities Licensing Act (MMFLA). These rules will ensure:

- Continued access for medical marihuana patients

- The integrity of the marihuana facilities licensing process

- A necessary transition to state-licensed medical marihuana safety standards

Under the new rules, proposed medical marihuana facilities that would otherwise require a state operating license under the MMFLA may continue to operate with local approval until October 31, 2018 without impacting the applicant's eligibility for licensure.

These emergency rules, while in effect, supersede:

- Rule 19 of the 5/30/18 Emergency Rules

- The entirety of the 9/11/18 Emergency Rules

Under these new emergency rules, an applicant that has been denied licensure – even if that denial is subject to appeal – or has not been issued a state operating license by October 31, 2018, must cease and desist any temporary operation. Any temporary operation after October 31, 2018 is considered unlicensed activity and may result in a referral to law enforcement, the Michigan State Police and/or the Department of Attorney General.

Applicants who have been temporarily operating with local authorization – and have been issued a state operating license by October 31, 2018 – must do the following within a 30-calendar-day transition period beginning the day a state operating license is received:

- Record, tag, and/or package all marihuana product in the licensee's possession in accordance with the statewide monitoring system.

EXHIBIT 26

- If licensed as a grower or processor, comply with all testing requirements as prescribed by the MMFLA and the 5/30/18 Emergency Rules prior to transferring marihuana product.

- If licensed as a provisioning center, obtain a signed written acknowledgement from caregivers/patients consenting to the sale or transfer of marihuana product. Prior to sale or transfer, verify the patient/caregiver has a valid driver license or government-issued identification card, holds a valid registry identification card, and is not over the purchasing limits as prescribed in Rule 41 of the 5/30/18 Emergency Rules.

Under these new emergency rules, after the 30-calendar-day period has elapsed, any marihuana product that was not acquired in compliance with the MMFLA and the 5/30/18 Emergency Rules – from a licensed marihuana facility – must be destroyed in accordance with Rule 36 of the 5/30/18 Emergency Rules.

All temporary operators should consider transition plans to licensure and the impact they may have on their current business operation. Temporary operators who have not yet filed the facility portion of their application are almost certainly not going to be presented to the Medical Marihuana Licensing Board at the meeting on October 18, 2018.

At any time during this 30-calendar-day period and thereafter, a marihuana facility is subject to an inspection by the department, through its investigators, agents, auditors, or the state police. These rules are set to expire November 30, 2018.

For more information on BMMR, please visit: **www.michigan.gov/bmmr**
For more information about LARA, please visit **www.michigan.gov/lara**

### 

## RELATED CONTENT

**LARA Director Orlene Hawks Testifies Before COVID-19 Joint Select Committee**

**MPSC ends investigation ensuring customers of phone company that exited Michigan had access to other service**

**State of Michigan launches online map of free Wi-Fi hotspots to help residents who lack access to broadband internet**

**Regulated utilities extend protections, assistance for vulnerable households to June 12**

**Homeowners, businesses urged to call MISS DIG 811 in advance as construction and backyard projects resume**

**MPSC kicks off annual assessment of funding factor for Low-Income Energy Assistance Fund**

MLCC Makes it Easier for Liquor Licensees to Move Business Outdoors Launches New Reopening Resources Webpage

Michigan receives additional $35.1 million to help struggling households pay energy costs

Notification of Medical Marijuana Product Recall for Plan B Wellness

MPSC approves DTE Electric rate increase as company works to modernize infrastructure, boost reliability

MPSC concludes investigation into Consumers Energy fire that led to the statewide energy emergency amid polar vortex

Leaders urge Michiganders struggling financially to be proactive, seek help with utility bills as state, energy providers offer assistance

LARA Director and State Fire Marshal Urge Michiganders to Take a Proactive Approach Towards Fire Safety

Michigan's Alcohol Beverage Industry Steps Up With Generous Donations During COVID-19 Health Crisis

Unregistered Taxi Company in Jackson Ordered to Cease Operations

LARA Revokes Mortuary Science License of Royal Funeral Home in Battle Creek

MPSC establishes comment period on Enbridge Energy's application for Line 5 tunnel project in Straits of Mackinac

565 Michigan Businesses Are Using the Spirits Buy Back Program with Two Days to Go

In-State Alcohol Retailers and Consumers Big Winners in U.S. Sixth Circuit Court Decision

**Administrative Rules**
**LARA FOIA Process**

**MICHIGAN.GOV HOME**
**ADA**
**MICHIGAN NEWS**
**POLICIES**

**COPYRIGHT 2020 STATE OF MICHIGAN**



Partner Attorneys:
 Matthew R. Abel, J.D.
 Ann M. Cisco, J.D.
 Thomas M.J. Lavigne, J.D.

Associate Attorneys:
 Julia A. Gilbert, J.D.
 Sean M. Myers, J.D.

Of Counsel:
 Alan L. Kaufman, J.D.
 Steven N. Rich, J.D.

www.cannabiscounsel.com

2930 E. Jefferson Ave.
Detroit, MI 48207
tel. 313-446-2235
fax. 313-784-9327

info@cannabiscounsel.com

# Cannabis Counsel® P.L.C.

Nov. 14, 2018

City of Adrian
135 E. Maumee St.
Adrian, MI 49221

> Re:   **MSC3 Appeal of Suspension**
>        **Appellant's <u>Second</u> Demand for Appeal Hearing**

Dear City Commission,

Our law firm represents MSC3 as general counsel. On September 14th, 2018, pursuant to the Adrian City Code, our law firm filed with the City Clerk, Robin Connor, a request for an appeal hearing before the City Commission regarding the administrative denial of MSC3's permit to operate as a Medical Marihuana Facility in the City. As of the date of this letter, November 14th, no appeal hearing has been granted to MSC3 by the City Commission.

While it is true that MSC3 State License Application was denied by the Board of Medical Marihuana Regulation, an appeal of this denial is currently pending. LARA representatives have informed general counsel that MSC3 is still authorized to temporarily operate as a Provisioning Center pursuant to Rule 19 of the Emergency Rules until the appeal process is resolved. Furthermore, the Court of Claims has issued a preliminary injunction, enjoining LARA from imposing any further deadlines requiring the cessation of operations by facilities like MSC3 operating under temporary operating authority.[1] Therefore, the only current barrier to MSC3 operating its business is this City's suspension of the permit.

Therefore, we hereby request to be placed on the agenda for the next city commission meeting, currently scheduled for November 19th, 2018. MSC3's permit was suspended administratively without authority, subverting this Commission's authority, and it is imperative that this issue be addressed as soon as possible to prevent any additional harm to their business.

---

[1] See attached: *First Class Inc. v. State of Michigan*, Michigan Court of Claims, Case No. 18-000229-MB

EXHIBIT 27

Furthermore, if you did not already know, you should be advised that your City Attorney, Tamaris Henagan has a conflict of interest in advising you about MSC3's licensing. In her private practice, Ms. Henagan represents a company, State Line Wellness, that is also seeking a provisioning center license in Morenci, MI. This company is a direct competitor with MSC3 due to its relative close proximity and the lack of other local options for consumers. Upon information and belief, Ms. Henagan has advised her client, State Line Wellness, that they may continue to operate as a provisioning center pending appeal, after their own license was denied by the board on October 18th, while also advising the City of Adrian that MSC3 must be closed, under the same circumstances.

Your City Attorney continues to obstruct our appeal of MSC3's permit suspension, claiming we requested a prehearing with the Mayor, when it was in fact the Mayor who requested that prehearing. In that prehearing on September 24th, 2018 my client was promised the reversal of the suspension of its permit. This however was again obstructed by your City Attorney, resulting in the direct benefit to her clients in Morenci, being advised the opposite.

Therefore, we request that you either summarily reverse the suspension of MSC3's permit, or place the appeal of MSC3 on the city commission agenda so that we may be heard.

Also, we request an extension of the 180-day period within which MSC3 had to provide the City with a copy of her State License.

Respectfully,

Thomas M.J. Lavigne (P58395)
General Counsel for MSC3
Cannabis Counsel, P.L.C.
2930 E. Jefferson Avenue
Detroit, MI

cc:
Chuck Jacobson, Mayor
Allen Heldt, Commissioner
Brad Watson, Commissioner
John Dudas, Commissioner
Kirk Valentine, Commissioner
Lad Strayer, Commissioner
Thomas Faulhaber, Commissioner

Enclosure.

STATE OF MICHIGAN

COURT OF CLAIMS

FIRST CLASS, INC.,

      Plaintiff,

v                                  Case No. 18-000229-MB

STATE OF MICHIGAN and DEPARTMENT OF    Hon. Stephen L. Borrello
LICENSING AND REGULATORY AFFAIRS,

      Defendants.

_____/

## ORDER GRANTING TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

      Pending before this Court is plaintiff's motion for temporary restraining order to enjoin and restrain defendants from enforcing the October 31, 2018 deadline contained in the October 1, 2018 Emergency Rules promulgated by defendant Department of Licensing and Regulatory Affairs. The Court, having reviewed the pleadings, finds that at this juncture in the proceedings, plaintiff has made the requisite showing of a likelihood of success on the merits with respect to whether the shortening of the deadline from December 15, 2018, to October 31, 2018, for temporary operating applicants such as plaintiff to cease operations was arbitrary and capricious. See *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 141-142; 807 NW2d 866 (2011); *Thermatool Corp v Borzym*, 227 Mich App 366, 376; 575 NW2d 334 (1998). In addition, the Court finds that, at this juncture of the proceedings, that plaintiff has, based on allegations that it would be forced to cease all business operations and could potentially be exposed to criminal liability, made the requisite showing of irreparable harm. See MCR 3.310(B)(1). In addition, the Court concludes that the balance of harm and the public interest weighs in favor of the issuance of temporary relief. See *Thermatool Corp*, 227 Mich App at 376.

      IT IS HEREBY ORDERED that defendants are enjoined and restrained from enforcing the October 31, 2018 deadline contained in the October 1, 2018 Emergency Rules.

      IT IS HEREBY FURTHER ORDERED that defendants are enjoined and restrained from imposing any other deadline requiring the cessation of operations by facilities such as plaintiff currently operating under temporary operating authority until further order of this Court.

IT IS HEREBY FURTHER ORDERED that defendants shall appear and show cause as to why a preliminary injunction should not issue at a hearing to be held on Friday November 9, at 1:00 p.m., in the Courtroom of the Michigan Court of Appeals, located on the second floor of the Michigan Hall of Justice, 925 West Ottawa Street, Lansing, Michigan.  See MCR 3.310(A).

Date: October 30, 2018

Stephen L. Borrello
Judge, Court of Claims



Partner Attorneys:
  Matthew R. Abel, J.D.
  Ann M. Cisco, J.D.
  Thomas M.J. Lavigne, J.D.

Associate Attorneys:
  Julia A. Gilbert, J.D.
  Sean M. Myers, J.D.

Of Counsel:
  Alan L. Kaufman, J.D.
  Steven N. Rich, J.D.

www.cannabiscounsel.com

2930 E. Jefferson Ave.
Detroit, MI 48207
tel. 313-446-2235
fax. 313-784-9327

info@cannabiscounsel.com

# Cannabis Counsel® P.L.C.

Nov. 14, 2018

City of Adrian
135 E. Maumee St.
Adrian, MI 49221

> Re:   **MSC3 Appeal of Suspension**
>       **Appellant's <u>Second</u> Demand for Appeal Hearing**

Dear City Commission,

Our law firm represents MSC3 as general counsel. On September 14th, 2018, pursuant to the Adrian City Code, our law firm filed with the City Clerk, Robin Connor, a request for an appeal hearing before the City Commission regarding the administrative denial of MSC3's permit to operate as a Medical Marihuana Facility in the City. As of the date of this letter, November 14th, no appeal hearing has been granted to MSC3 by the City Commission.

While it is true that MSC3 State License Application was denied by the Board of Medical Marihuana Regulation, an appeal of this denial is currently pending. LARA representatives have informed general counsel that MSC3 is still authorized to temporarily operate as a Provisioning Center pursuant to Rule 19 of the Emergency Rules until the appeal process is resolved. Furthermore, the Court of Claims has issued a preliminary injunction, enjoining LARA from imposing any further deadlines requiring the cessation of operations by facilities like MSC3 operating under temporary operating authority.[1] Therefore, the only current barrier to MSC3 operating its business is this City's suspension of the permit.

Therefore, we hereby request to be placed on the agenda for the next city commission meeting, currently scheduled for November 19th, 2018. MSC3's permit was suspended administratively without authority, subverting this Commission's authority, and it is imperative that this issue be addressed as soon as possible to prevent any additional harm to their business.

---

[1] See attached: *First Class Inc. v. State of Michigan*, Michigan Court of Claims, Case No. 18-000229-MB

EXHIBIT 28

Furthermore, if you did not already know, you should be advised that your City Attorney, Tamaris Henagan has a conflict of interest in advising you about MSC3's licensing. In her private practice, Ms. Henagan represents a company, State Line Wellness, that is also seeking a provisioning center license in Morenci, MI. This company is a direct competitor with MSC3 due to its relative close proximity and the lack of other local options for consumers. Upon information and belief, Ms. Henagan has advised her client, State Line Wellness, that they may continue to operate as a provisioning center pending appeal, after their own license was denied by the board on October 18th, while also advising the City of Adrian that MSC3 must be closed, under the same circumstances.

Your City Attorney continues to obstruct our appeal of MSC3's permit suspension, claiming we requested a prehearing with the Mayor, when it was in fact the Mayor who requested that prehearing. In that prehearing on September 24th, 2018 my client was promised the reversal of the suspension of its permit. This however was again obstructed by your City Attorney, resulting in the direct benefit to her clients in Morenci, being advised the opposite.

Therefore, we request that you either summarily reverse the suspension of MSC3's permit, or place the appeal of MSC3 on the city commission agenda so that we may be heard.

Also, we request an extension of the 180-day period within which MSC3 had to provide the City with a copy of her State License.

Respectfully,

Thomas M.J. Lavigne (P58395)
General Counsel for MSC3
Cannabis Counsel, P.L.C.
2930 E. Jefferson Avenue
Detroit, MI

cc:
Chuck Jacobson, Mayor
Allen Heldt, Commissioner
Brad Watson, Commissioner
John Dudas, Commissioner
Kirk Valentine, Commissioner
Lad Strayer, Commissioner
Thomas Faulhaber, Commissioner

Enclosure.

## STATE OF MICHIGAN

## COURT OF CLAIMS

FIRST CLASS, INC.,

      Plaintiff,

v                            Case No. 18-000229-MB

STATE OF MICHIGAN and DEPARTMENT OF    Hon. Stephen L. Borrello
LICENSING AND REGULATORY AFFAIRS,

      Defendants.
_____/

## ORDER GRANTING TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

      Pending before this Court is plaintiff's motion for temporary restraining order to enjoin and restrain defendants from enforcing the October 31, 2018 deadline contained in the October 1, 2018 Emergency Rules promulgated by defendant Department of Licensing and Regulatory Affairs. The Court, having reviewed the pleadings, finds that at this juncture in the proceedings, plaintiff has made the requisite showing of a likelihood of success on the merits with respect to whether the shortening of the deadline from December 15, 2018, to October 31, 2018, for temporary operating applicants such as plaintiff to cease operations was arbitrary and capricious. See *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 141-142; 807 NW2d 866 (2011); *Thermatool Corp v Borzym*, 227 Mich App 366, 376; 575 NW2d 334 (1998). In addition, the Court finds that, at this juncture of the proceedings, that plaintiff has, based on allegations that it would be forced to cease all business operations and could potentially be exposed to criminal liability, made the requisite showing of irreparable harm. See MCR 3.310(B)(1). In addition, the Court concludes that the balance of harm and the public interest weighs in favor of the issuance of temporary relief. See *Thermatool Corp*, 227 Mich App at 376.

      IT IS HEREBY ORDERED that defendants are enjoined and restrained from enforcing the October 31, 2018 deadline contained in the October 1, 2018 Emergency Rules.

      IT IS HEREBY FURTHER ORDERED that defendants are enjoined and restrained from imposing any other deadline requiring the cessation of operations by facilities such as plaintiff currently operating under temporary operating authority until further order of this Court.

IT IS HEREBY FURTHER ORDERED that defendants shall appear and show cause as to why a preliminary injunction should not issue at a hearing to be held on Friday November 9, at 1:00 p.m., in the Courtroom of the Michigan Court of Appeals, located on the second floor of the Michigan Hall of Justice, 925 West Ottawa Street, Lansing, Michigan. See MCR 3.310(A).

Date: October 30, 2018

Stephen L. Borrello
Judge, Court of Claims



135 E. Maumee St. • Adrian, Michigan 49221

Office of the City Clerk

(517) 264-4866• Fax (517) 266-8016

November 21, 2018

Nichole Hernández
MSC3
c/o Thomas Lavigne
Cannabis Counsel
2930 E. Jefferson Ave.
Detroit, MI 48207

Dear Ms. Hernandez,

Your request for an extension of your medical marihuana facility permit due to inability to obtain a State License within 180 days has been forwarded to me. As a one-time courtesy accept this as a request in writing. However, in the future please make any request for extension directly to the office of the city clerk.

Per our ordinance if a permit holder has not obtained a valid state license at the end of 180 days they may request an extension of time from the city clerk. (Section 46-502)(f). Additionally, Section 46-505 (h) enables the City Clerk to require additional/supplemental information to confirm the reasons for delay. Please forward the following information for consideration along with your request for extension:

1. A statement stating that you are continuing your appeal with the State.
2. Proof that the appeal process is moving forward.
3. The date the appeal will be heard.

Please submit the required documentation to this office within 10 business days from the date of this letter. Extension(s) will be granted or denied at the discretion of the city. (Section 46-502)(h).

If you have any questions, please do not hesitate to contact my office.

Regards,

Robin Connor
CITY OF ADRIAN
City Clerk's Office
517-264-4866

EXHIBIT 29

## REQUEST FOR EXTENSION OF PROVISIONAL PERMIT
## MEDICAL MARIHUANA FACILITIES

The City of Adrian Code of Ordinances, Chapter 46, Section 506(f) states that a provisional permit will lapse and be void if such other required permits, valid state licensing, and approvals are not diligently pursued to completion, but in any event no later than 120 days after the provisional permit is issued.

I, _____, hereby request an extension of the provisional permit for a Medical Marihuana Facility issued to me on _____. I request an extension of:

□ 30 days
□ 60 days
□ 90 days
□ 120 days

Reasons for Extension (please attach separate page if necessary)

_____
_____
_____
_____
_____
_____

I, _____, understand that a staff review of this request for extension is required. I have attached all relevant documentation to this request, including but not limited to site plans, investment documentation, correspondence with the State of Michigan, etc.

Dated: _____           _____

| From: | Robin Connor |
|---|---|
| To: | Andrew Sereno; agsolutions110@gmail.com; Marie; Eric Kennedy; travis@azpremiermanagement.com; David Malinoski; Leah Bailey; JIM_ARMOUR@YMAIL.COM; tgermain1220@gmail.com; Louis Meeks; dlofton47@aol.com; Zen Republic; DAVE@NORTHCOASTTESTINGLABS.COM; D.A.MOORHEAD@GMAIL.COM |
| Subject: | MEETING |
| Date: | Wednesday, December 19, 2018 1:48:05 PM |

City Attorney, Tamaris Henagan  would like to invite each of you to join us for a round table discussion regarding the Marihuana Industry in Adrian.  The meeting will be held at the City of Adrian, 135 E. Maumee St, Adrian at 1:30 pm on January 2, 2019.  We will be meeting on the Mezzanine level of City Hall.

Please let me know if you can attend.

We hope you can join us.


If you have any questions, please feel free to contact me.

Thank You

Robin Connor
CITY OF ADRIAN
City Clerk
517-264-4866
WEB: adriancity.com

EXHIBIT 30

| From: | Robin Connor |
|---|---|
| To: | Leah Bailey |
| Subject: | RE: MEETING |
| Date: | Wednesday, December 19, 2018 3:13:25 PM |

I am so glad you can be there.  Please feel free to bring her also.  We have not decided our position on recreational yet.  That will be part of the discussion.

If you have any questions, please feel free to contact me.

Thank You

Robin Connor
CITY OF ADRIAN
City Clerk
517-264-4866
WEB: adriancity.com

**From:** Leah Bailey [mailto:lbailey@fluresh.com]
**Sent:** Wednesday, December 19, 2018 2:59 PM
**To:** Robin Connor <RConnor@adrianmi.gov>
**Subject:** RE: MEETING

Robin,

I moved the doctor's appointment and will be at the meeting on January 2 in Adrian.  I am traveling with another member of our management team.  May I bring her also?

Thanks,

Leah

**From:** Leah Bailey
**Sent:** Wednesday, December 19, 2018 1:13 PM
**To:** 'Robin Connor' <RConnor@adrianmi.gov>
**Subject:** RE: MEETING

Hi Robin,

Almost happy holidays!  I was going to write to you today also.  I wanted to understand Adrian's position on recreational marihuana.  Will this meeting help me in that regard?

EXHIBIT 31

I have a conflict on January 2 with a doctor's appointment for my daughter that is hard to schedule. I will try to reschedule. If I am not able to do so, would I be able to send someone else from Fluresh in my place?

Thanks so much,

Leah

**From:** Robin Connor <RConnor@adrianmi.gov>
**Sent:** Wednesday, December 19, 2018 12:48 PM
**To:** Andrew Sereno <andrew.sereno@gmail.com>; agsolutions110@gmail.com; Marie <marie_mcphail@yahoo.com>; Eric Kennedy <eric@urbanfarms.farm>; travis@azpremiermanagement.com; David Malinoski <dmventure16@gmail.com>; Leah Bailey <lbailey@fluresh.com>; JIM_ARMOUR@YMAIL.COM; tgermain1220@gmail.com; Louis Meeks <meeks2000@gmail.com>; dlofton47@aol.com; Zen Republic <zenrepublic@mail.com>; DAVE@NORTHCOASTTESTINGLABLS.COM; D.A.MOORHEAD@GMAIL.COM
**Subject:** MEETING

City Attorney, Tamaris Henagan  would like to invite each of you to join us for a round table discussion regarding the Marihuana Industry in Adrian.  The meeting will be held at the City of Adrian, 135 E. Maumee St, Adrian at 1:30 pm on January 2, 2019.  We will be meeting on the Mezzanine level of City Hall.

Please let me know if you can attend.

We hope you can join us.

If you have any questions, please feel free to contact me.

Thank You

Robin Connor
CITY OF ADRIAN
City Clerk
517-264-4866
WEB: adriancity.com



January 3, 2019

Dear Mayor Jacobson and Commissioners,

We are very excited to be part of the Adrian community and have broken ground at 1751 W. Beecher on our medical marihuana growing and processing facility.  Fluresh is proud to have received unanimous pre-qualification approval from the state on 10/18/18.  The BMMR has also reviewed our preliminary facility plans and we are confident that we will receive full regulatory approval and our final state license this summer.

To date, we have invested $3M of an estimated $12M Phase 1 build out in our Adrian project. This covers a main building (structure is up) and two greenhouses (delivered today).  Our plan is to expand on our 29+ acres to 6-10 greenhouses for a total investment of $20-$25M.

We came to Adrian because we believed we could develop a strong business for us and bring economic development to the city.  Your team has been outstanding to work with and we believe our choice of location was fortunate.

Fluresh's plans call for good, stable employment of 60-100 people in your community.  We support responsible regulation of the recreational marijuana industry and we are committed to helping Adrian maintain a safe and vibrant community.

Fluresh's large investment in Adrian is premised on the assumption that the City will not opt out of Michigan's recreational marihuana marketplace.  We believe users of medical marihuana will migrate to the recreational marihuana market, resulting in a very limited market for medical marijuana after MRTMA.

It is our intention to create a large, quality focused national brand in cannabis products.  We are happy to call Adrian home.  We were encouraged to hear that City's goal is to definitively decide the future of recreational marihuana by January/February.  Should Adrian opt out of MRTMA, Fluresh's initial and future investments would be pointless, rendering our operation in Adrian commercially infeasible.

Thank you for your understanding, support and ongoing cooperation,

Leah S. Bailey
Chief Executive Officer

Fluresh

lbailey@fluresh.com

EXHIBIT 32



# City of Adrian

Office of the City Clerk

135 E. Maumee St. - Adrian, Michigan 49221

(517) 264-4866 - Fax (517) 266-8016

February 4, 2019

Nichole Hernandez
M.S.C.3
3540 Benner Hwy
Adrian MI 49221

Dear Ms. Hernandez,

On November 21, 2018 this office contacted you in response to your request for extension of your medical marihuana facility permit. In response to the request for extension, this office required additional/supplemental information to confirm the reasons for delay. The requested documentation was required to be submitted within 10 business days. As of the date of this letter, the City has received no response or additional documentation on your behalf.

Under Sec 46-502(f) of the medical marihuana ordinance, if a permit holder has not obtained a valid state license within 180 days of issuance of the city permit they may request an extension of time from the city clerk. Additionally, Sec 46-502 (h) authorizes the city clerk to require additional/supplemental information to confirm the reasons for the delay.

Your failure to respond to our request for additional/supplemental information results in a violation of the Secs. 46-507-(a) requiring the permit holder to comply at all times with ordinances] and 46-507(c) [requiring a permit holder to notify the clerk of updated information or any changes which may materially affect the state license or permit], each of which are civil infractions (Sec. 46-507(g). In addition, you are in violation of Sec. 46-509(f) [requiring the permit holder to comply with the city ordinance as a condition of maintenance of the permit], which is a civil infraction with a daily fine of $500.00 per day. Though civil infractions are not being issued at this time, the City reserves the right to take action on these violations. Further, your request for extension has been denied.

As your permit is already in a suspended status, per Sec. 4-53, Chapter 46 - Licenses, Permits and Miscellaneous Regulations, Article II - Business Licenses of the city code of ordinances, a recommendation to revoke your permit for cause will be presented to the City Commission at the regularly scheduled meeting on Monday, February 18, 2019 at 7:00PM.

If you have any questions, please do not hesitate to contact my office.

Regards,

Robin Connor
CITY OF ADRIAN
City Clerk's Office
517-264-4866

EXHIBIT 33

Partner Attorneys:
  Matthew R. Abel, J.D.
  Ann M. Cisco, J.D.
  Thomas M.J. Lavigne, J.D.

Associate Attorneys:
  Julia A. Gilbert, J.D.
  Sean M. Myers, J.D.

Of Counsel:
  Alan L. Kaufman, J.D.
  Steven N. Rich, J.D.



Since 1990 - Cannabis Counsel®
Is a Registered Trademark of
Rivertown Law Firm P.L.C.

www.cannabiscounsel.com

2930 Jefferson Avenue East
Detroit, Michigan 48207
tel. 313-446-2235
fax. 313-784-9327

Info@cannabiscounsel.com

# Cannabis Counsel®

Robin Conner, Office of the City Clerk
City of Adrian
135 E. Maumee Street
Adrian, MI 49221

   Re: MSC3 Extension Supplemental Information

Dear Robin Conner,

As per our telephone call, I nor my client received any request for additional information, to augment our November 2018 written request for extension of the Provisioning Center Permit.

I understand that you wanted a status report and documentation of the date of the evidentiary, investigatory hearing by the Administrative Law Judge; attached.

Attached is the Order Following Prehearing Conference and Notice of Hearing.

The status remains as a pending applicant's request for public investigative hearing.

The reason for the extension is the likelihood of success at the public investigative hearing given the application submitted and the baselessness of the purported reasons for the medical marijuana licensing board's initial denial; together with the time it is taking for the public investigative hearing process and the eventual expected granting of the state license for a Provisioning Center.

Therefore, we again request 120-days, not knowing how long the ALJ will take to render his post hearing order.

Sincerely,

Thomas Lavigne

Enclosures.

EXHIBIT 34

STATE OF MICHIGAN
MICHIGAN ADMINISTRATIVE HEARING SYSTEM

IN THE MATTER OF:

Medicinal Solutions Compassionate Care
Corp.,
     Petitioner

v

Bureau of Marijuana Regulation,
     Respondent

Docket No.: 18-018700

Case No.:   ERGA-18000304

Agency:   Bureau of Marijuana
                Regulation

Case Type:  Facility License

Filing Type: Intent to Deny

Issued and entered
this 15th day of January 2019
by: Thomas A. Halick
Administrative Law Judge

## ORDER FOLLOWING PREHEARING CONFERENCE AND NOTICE OF HEARING

On December 10, 2018, counsel for the parties appeared by telephone, and the hearing was converted to a prehearing conference, with consent of the parties.

NOW THEREFORE, IT IS DETERMINED OR ORDERED AS FOLLOWS:

1. A *final* witness list, a *final* list of exhibits, and copies of exhibits intended to be offered at the hearing must be received by the Administrative Law Judge, his assistant, and all parties, no later than **February 13, 2019**. Any witness may testify by telephone.

2. Prior to the hearing, the Petitioner's proposed exhibits shall be marked numerically beginning as P-1; the Respondent's proposed exhibits shall be marked alphabetically beginning as R-A; any Joint exhibits shall be marked numerically beginning with Jt-1. The parties are encouraged to submit joint exhibits to the extent possible.

3. Failure to provide copies of proposed exhibit lists or witness lists to the opposing party may result in the denial of their admission or the denial of witness testimony.

4. There shall be no *ex parte* communication with the Administrative Law Judge. Any written communications with the Administrative Law Judge, whether by mail, electronic mail, or facsimile transmission must be simultaneously copied/delivered to the other party. Email to the

18-018700
Page 2

Administrative Law Judge shall be addressed to Elaine Cussans at CussansE@Michigan.gov

5.   The hearing shall commence at **9:00 a.m. on February 27, 2019.**

6.   The hearing shall be held at the following location:

Michigan Administrative Hearing System
Ottawa Building, Second Floor
611 W. Ottawa Street
Lansing, MI 48909
(517) 335-2484

7.   Government-issued Identification (available upon check-in at the Ottawa Building) is required to enter the Ottawa Building where the hearing will be held and individuals without identification will be denied entry.

8.   No further adjournments shall be granted absent an unforeseen emergency by one of the parties, witnesses, or representatives.

9.   The participants shall review this document upon receipt and any perceived error or omission in the document must be disclosed, in writing, to the opposing party and the Administrative Law Judge without delay.

Thomas A. Halick
Administrative Law Judge

18-018700
Page 3

## PROOF OF SERVICE

I hereby state, to the best of my knowledge, information and belief, that a copy of the foregoing document was served upon all parties and/or attorneys of record in this matter by Inter-Departmental mail to those parties employed by the State of Michigan and by UPS/Next Day Air, facsimile, and/or by mailing same to them via first class mail and/or certified mail, return receipt requested, at their respective addresses as disclosed below this _15th_ day of January 2019.

_Christine Gibson_

Christine Gibson
**Michigan Administrative Hearing System**

Colleen Curtis
Bureau of Marijuana Regulation
BMR Manager
P.O. Box 30083
Lansing, MI 48909

Medicinal Solutions Compassionate Care Corp.
152 East Front Street
Adrian, MI 49221

Risa Hunt-Scully
Assistant Attorney General
PO Box 30755
Lansing , MI 48909

Thomas MJ Lavigne
Cannabis Counsel, PLC
2930 East Jefferson Avenue
Detroit, MI 48207

2/6/2019                                   Gmail - Attention Jennifer - M.S.C.3

 **Gmail**                Thomas Lavigne <lawyer.lavigne@gmail.com>

## Attention Jennifer - M.S.C.3

2 messages

**Nicole Hernandez** <nicole_hernandez@me.com>              Thu, Aug 30, 2018 at 6:32 PM
To: LARA-BMMR-Legal@michigan.gov
Cc: Matt Abel <attorneyabel@me.com>, tom@cannabiscounsel.com

Hi Jennifer,

My name is Nicole Hernandez we spoke early on the telephone.
During our conversation you stated that actually in fact I did not have to close my business and stated that because my
business appealed the state board decision I had not technically been denied a license, and that because I have been
issued my city permit and temporary authorization to operate as well as passed all my inspections I have been and am
still able to operate my business under rule 19 until the state deadline of Sept 15th (unless that gets extended).
Could you please confirm this.
I just want to make sure I am understanding this correctly.
Your attention to this email and timely response is greatly appreciated.

Thank you,
Nicole Hernandez

---

**Nicole Hernandez** <nicole_hernandez@me.com>              Tue, Sep 4, 2018 at 12:23 PM
To: Matt Abel <attorneyabel@me.com>, tom@cannabiscounsel.com, Julia Gilbert <julia@cannabiscounsel.com>

I also received a response to my email... this was what I received... still waiting for tamaris to send.

Sent from my iPhone

Begin forwarded message:

> **From:** LARA-BMMR-Legal <LARA-BMMR-Legal@michigan.gov>
> **Date:** September 4, 2018 at 11:12:50 AM EDT
> **To:** Nicole Hernandez <nicole_hernandez@me.com>
> **Subject: RE: Attention Jennifer - M.S.C.3**
>
> Nicole,
>
> The Department does not plan to take action at this time pending an applicant's request for public
> investigative hearing. An applicant may temporarily operate if they meet the requirements of Rule 19,
> request a public investigative hearing as provided under the Emergency Rules, and as long as there is also
> continued municipal authorization and no violation occurs. An applicant who has been served with a Cease
> and Desist letter should discontinue temporary operation immediately.
>
> I hope this helps,
>
> Legal Division
> Bureau of Medical Marihuana Regulation
> Licensing and Regulatory Affairs
> LARA-BMMR-Legal@michigan.gov
> [Quoted text hidden]

Partner Attorneys:
  Matthew R. Abel, J.D.
  Ann M. Cisco, J.D.
  Thomas M.J. Lavigne, J.D.

Associate Attorneys:
  Julia A. Gilbert, J.D.
  Sean M. Myers, J.D.

Of Counsel:
  Alan L. Kaufman, J.D.
  Steven N. Rich, J.D.



Since 1990 - Cannabis Counsel®
Is a Registered Trademark of
Rivertown Law Firm P.L.C.

www.cannabiscounsel.com

2930 Jefferson Avenue East
Detroit, Michigan 48207
tel. 313-446-2235
fax. 313-784-9327

info@cannabiscounsel.com

# Cannabis Counsel®

2/21/19

Nathan Burd, City Supervisor
City of Adrian
135 E. Maumee Street
Adrian, MI 49221

Re: Unsuspend the Permit of MSC3; & Extension of Permit

Dear City Supervisor Burd,

This letter is intended to follow-up on your meeting last week with MSC3 regarding the requested unsuspension of the permit and an extension of the permit for MSC3,

Applicant's appeal of the state licensing board's vote to deny licensing to MSC3 is done through a request for public investigative hearing, before an administrative law judge. Thus, the state license denial does not become final pending the investigative hearing. This is set for February 27, 2019.

November 14, 2018 a written request for the extension of the MSC3 City Permit was provided to the city at the end of a letter requesting they reverse the suspension and explaining the improprieties surrounding the suspension. Rather than receiving a reply, my client found the next hearing had us on the agenda so we attended.

At the November 19th city commission hearing, the city attorney acknowledged receipt of the written request for the extension when we orally requested the extension. Whereupon we informed the Commission of the status of the appeal, the schedule, and the delay being caused by the State failing to provide discovery of our file. At that time the hearing had been scheduled for December 10th, but the documents never came, so the Administrative Law Judge adjourned. No changes which materially affect MSC3's permit have occurred; had any, we would have informed the City.

As a Commissioner-voted Permit holder MSC3 has a property interest, by definition; therefore, due process is due our client. Since it was voted on by the commission it was not a provisional permit subject to administrative suspension. It was a permit and only the commission is authorized to suspend it. The commission did not acknowledge this definitional distinction and just orally denied our appeal of the administrative suspension and never sent us anything in writing.

EXHIBIT 35

Michigan's Bureau for Marijuana Regulation made it clear that pending the outcome of an appeal on an investigative hearing Temporary Operators were entitled to remain open.

The ultimate purpose of this letter is to open MSC3, pursuant to the permit previously granted pursuant to the Adrian ordinance and the Marihuana Facilities Licensing Act and the guidance given by the State of Michigan's Bureau of Medical Marihuana Regulation ("BMMR"). The Adrian Ordinance Sec. 46-502(e) provides:

> A permit holder must submit to the city a copy of their valid state license within 180-days of issuance of the permit under this article. ...

When we asked the State of Michigan BMR whether we could open the shop pending the appeal, they replied in the affirmative as follows:

> The Department does not plan to take action at this time pending an applicant's request for public investigative hearing. An applicant may temporarily operate if they meet the requirements of Rule 19, request a public investigative hearing as provided under the Emergency Rules, and as long as there is also continued municipal authorization and no violation occurs. An applicant who has been served with a Cease and Desist letter should discontinue temporary operation immediately.

The new 9/11/18 Advisory Bulletin from BMMR, categorized temporary operators like MSC3 as being qualified to remain open because she submitted both phases of her Medical Marihuana Facilities Licensing Act Application before February 15, 2018.

The last excuse for denying my client due process was that the then existing rule was that temporary operators had to close by October 31st 2018 and it was September, so there was not much time ....   What kind of an excuse is that?  A denial of due process type of excuse.

Also, we informed the City of Adrian in our November 14, 2018 letter of the court injunction that was rendered before October 31st where the court ruled BMR may not set another deadline for patient access until further order of the court. *First Class Inc. v. State of Michigan*, Michigan Court of Claims, Case No. 18-000229-MB.  This meant MSC3 should have been allowed to remain open all of this time for safe access for Adrian patients.

Therefore, we again request the removal of the suspension of the permit and extension of the permit 180-days, not knowing how long the ALJ will take to render his post hearing order.

Sincerely,

Thomas Lavigne

Enclosures.

**AGENDA**
**SPECIAL MEETING**
**ADRIAN CITY COMMISSION**
**April 29, 2019,**
**7:00PM**

I.    PRAYER AND PLEDGE OF ALLEGIANCE TO THE FLAG

II.   ROLL CALL

III.  REGULAR AGENDA

    A. ORDINANCES

          1. **Ord. 18-009,** Introduction and adoption of amendments to Ordinance 18-009, Article XI – Commercial Medical Marihuana Facilities.

    B. RESOLUTIONS

       1. **R19-052. City Attorney.** Resolution approving Medical Marihuana renewal application and new application period and fee schedule.

       2. **R19-053. Administration.** Resolution approving a lease agreement for property formerly known as the Witt Farm.

       3. **R19-054. Administration.** Resolution approving a lease agreement for property formerly known as the Marvin Farm (53 acres).

       4. **R19-055. Administration.** Resolution approving a lease agreement for property formerly known as the Marvin Farm (157 acres).

       5. **R19-056. Administration.** Resolution approving a lease agreement for property in the Industrial Park.

       6. **R19-057. Community Development.** Resolution to authorize the grant application for the Michigan Department of Agriculture and Rural Development (MDARD) Value-Added Grant Program and to approve match funding for the grant.

IV.   PUBLIC COMMENT

V.    COMMISSIONER COMMENTS

EXHIBIT 36



# REGULAR AGENDA

Ordinance No. 18-009

ARTICLE XI. - COMMERCIAL MEDICAL MARIHUANA FACILITIES **AND ADULT USE ESTABLISHMENTS**

DIVISION 1. - GENERALLY

Sec. 46-500. - Legislative intent.

The purpose of this article is to implement the provisions of the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016, **and the Michigan Regulation and Taxation Act Initiated Law 1 of 2018,** which authorizes the licensing and regulation of commercial medical marihuana facilities **or commercial adult use establishments;** affords the city the option to allow commercial medical marihuana facilities **or commercial adult use establishments;** and the authority to regulate commercial medical marihuana facilities **or commercial use establishments** by requiring a permit and compliance with requirements as provided in this article, in order to maintain the public health, safety and welfare of the public.

Nothing in this article is intended to grant immunity from criminal or civil prosecution, penalty, or sanction for the cultivation, manufacture, possession, use, sale, or distribution of marihuana, in any form, that is not in compliance with the Michigan Medical Marihuana Act, Initiated Law of 2008, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; the Michigan Marihuana Tracking Act, MCL 333.27901 et seq.; **the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq.;** and all other applicable rules promulgated by the state of Michigan.

As of the effective date of this article, marihuana remains classified as a Schedule 1 controlled substance under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq., which makes it unlawful to manufacture, distribute, or dispense marihuana, or possess marihuana with the intent to manufacture, distribute, or dispense marihuana. Nothing in this article is intended to grant immunity from any criminal prosecution under federal laws.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 6-7-2018)

Sec. 46-501. - Definitions.

For the purpose of this article the following words, terms, and phrases shall have the meanings ascribed to them in this section, except when the context clearly indicates a different meaning.

Any term defined by the Michigan Medical Marihuana Act. MCL 333.2621 et seq., shall have the definition given in the Michigan Medical Marihuana Act.

Any term defined by the Michigan Medical Marihuana Facilities Licensing Act. MCL 333.27101 et seq., shall have the definition given in the Michigan Medical Marihuana Facilities Licensing Act.

Any term defined by the Michigan Medical Marihuana Tracking Act. MCL 333.27901 et seq., shall have the definition given in the Michigan Medical Marihuana Tracking Act

**Any term defined by the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq., shall have the definition given in the Michigan Regulation and Taxation of Marihuana Act.**

*City* means the City of Adrian.

*Department* means the Michigan State Department of Licensing and Regulatory Affairs or any authorized designated Michigan agency authorized to regulate, issue or administer a Michigan license for a commercial medical marihuana facility or commercial adult use establishments.

*Enclosed building* means a combination of materials forming a structure affording a facility or shelter for use or occupancy by individuals or property in which a proper ventilation system allows for all windows, entrances, and exits may safely remain closed, with the exceptions of normal entry and exit of the building for business purposes, and safety or emergency purposes i.e. fire. Building includes a part or parts of the building and all equipment in the building. A building shall not be construed to mean a building incidental to the use for agricultural purposes of the land on which the building is located.

*Grower* or *grower facility* means a commercial entity that cultivates, dries, trims, or cures and packages marihuana for sale to a processor or provisioning center. Grower facilities are divided into classes: Class A facility — up to 500 plants; Class B facility — up to 1,000 plants; and Class C facility — up to 1,500 plants.

*License* means a current, valid license for a commercial medical marihuana facility issued by the State of Michigan.

*Licensee* means a person holding a current, valid Michigan license for a commercial medical marihuana facility.

*Marihuana* means that term as defined in section 7106 of the public health code, 1978 PA 368, MCL 333.7106.

*Marihuana plant(s)"* means any plant of the species Cannabis sativa L.

*Medical Marihuana* means that term as defined in the Public Health Code, MCL 333.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; and the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.

*Medical marihuana facility(s)* means any facility, establishment and/or center at a specific location which is licensed under this article to operate under the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., including a provisioning center, grower, processor, safety compliance facility, and secure transporter. The term does not include or apply to a "primary caregiver" or "caregiver" as the term is defined in the Michigan Medical Marihuana Act, MCL 333.26421 et seq.

*Permit* means a current, valid permit for a commercial medical marihuana facility issued pursuant to this article, granted to a permit holder valid for a specific permitted premises and a specific permitted property.

*Permit holder* means the person that holds a current, valid permit under this article.

*Permitted premises* means the particular building or buildings within which the permit holder will be authorized to conduct the facility's activities pursuant to the permit.

*Permitted property* means the real property comprised of the lot, parcel or other designated unit of real property upon which the permitted premises is situated.

*Person* means a natural person, company, partnership, profit or non-profit corporation, limited liability company, or any joint venture for a common purpose.

*Processor* or *processor facility* means a commercial entity that purchases marihuana from a grower and that extracts resin from the marihuana or creates a marihuana-infused product for sale and transfer in packaged form to a provisioning center.

*Provisioning center* means a commercial entity that purchases marihuana from a grower or processor and sells, supplies, or provides marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers. Provisioning center includes any commercial property where marihuana is sold at retail to registered qualifying patients or registered primary caregivers. The term does not include or apply to a non-commercial location used by a primary caregiver to assist a qualifying patient connected to the caregiver through the department's marihuana registration process in accordance with the MMMA.

*Safety compliance facility* means a commercial entity that receives marihuana from a medical marihuana facility or registered primary caregiver, tests it for contaminants and for tetrahydrocannabinol and other cannabinoids, returns the test results, and may return the marihuana to the medical marihuana facility.

*School* (as defined in MCL 257.627a) means an educational institution operated by a local school district or by a private, denominational, or parochial organization. School does not include either of the following:

(1)  An educational institution that the department of education determines has its entire student population in residence at the institution.

(2)  An educational institution to which all students are transported in motor vehicles.

*Secure transporter* means a commercial entity that stores medical marihuana and transports medical marihuana between medical marihuana facilities for a fee.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 6-7-2018)

DIVISION 2. - PERMITS

Sec. 46-502. – ~~Required~~. **Generally.**

(a)  No person shall operate a commercial ~~medical~~ marihuana facility, **establishment or other business which requires State Licensure,** in the city without first obtaining a permit from the City Clerk. **Further, any permit application approved pursuant to this article should not be effective and no marihuana facility, establishment, or other business which requires state licensure may operate unless said operation is pursuant to a license or approval issued under the authorized State Licensing Agency.**

(b)  The issuance of any permit or renewal permit pursuant to this article shall not confer any vested rights, **property or other right, duty, privilege or interest in a permit of any kind or nature whatsoever including, but not limited to, any claim of entitlement** or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval.

(c)  ~~A completed application for a renewal permit must be received by the City Clerk no later than 90 days prior to the expiration of the current permit. Pending applications for annual renewal or amendments of existing permits shall be reviewed, and granted or denied by the City Clerk prior to new permit applications being considered.~~

(c)  **A permit holder may transfer a permit issued under this article to a different location upon receiving approval from the City Commission. In order to request approval to transfer a permit location, the permit holder must make a written request to the City Clerk, indicating the current permit location and the proposed permit location. Upon receiving the written request, the City Clerk shall refer a copy of the written request to each of the following for their approval: the Fire Department, the Building Inspection Department, the Police Department, the Zoning Administrator, and the City Treasurer. Prior to final approval of transfer the permit holder must submit an updated application and any supporting documents. No permit transfer shall be recommended for approval unless each individual department gives written approval that the permit holder and the proposed permit location meet the standards identified in this article, including but not limited to Section 46-505, and the City Clerk has determined the proposed location meets the requirements of Section 46-505.**

(d)  ~~No permit issued under this section may be transferred or assigned and no license is valid for any location other than the location specified in the license.~~ **A permit holder may transfer a valid permit issued under this article to a new individual or entity upon obtaining approval from the City Commission. A request for transfer of a valid permit to a new individual or entity must be made in writing, to the City Clerk. The permit holder must provide documentation from the State Agency indicating the State License may be transferred. Upon receiving the written request the City Clerk shall consider the request as a new application for a permit and the procedures set forth in Section (46-505) shall be followed including submission of the non-refundable permit application fee. Application fees are non-transferable.**

(e)  A permit holder must submit to the City a copy of their valid state license within 180 days of issuance of the permit under this article. Failure to provide such proof ~~will~~ **may** result in ~~revocation~~ **suspension** ~~of~~ or ~~suspension~~ **revocation** of the permit.

(f) If a permit holder has not obtained a valid state license at the end of 180 days, they may request an extension of time ~~from~~ **on a form provided by** the City Clerk. **The City Clerk may require additional/supplemental information to confirm the reasons for delay. Failure to provide the required information may result in denial of extension. Extensions will be granted or denied by the City Clerk. The granting of an extension shall not exceed 120 days or the expiration date of the current permit.**

(g) If the facility is a new build/ ~~and~~ construction **and** ~~or~~ **State** licensing **has not been issued** ~~is not complete after~~ **within** 180 days, the permit holder may request~~,~~ a form from the City Clerk~~,~~ **to apply** ~~for an extension of time to obtain the state license.~~ **building and/or fire inspection waivers. A waiver will be granted or denied by the City Clerk. The granting of a waiver shall not exceed one year or the expiration date of the current permit.**

~~(h) The City Clerk may require additional/supplemental information to confirm the reasons for delay. Extensions will be granted or denied at the discretion of the city.~~

(h) **To the extent permissible under law, all information submitted in conjunction with an application for a permit or permit renewal required by this article is confidential and exempt from disclosure under the Michigan Freedom of Information Act, 1976 PA 442, MCL 15.231 et seq., including the trade secrets or commercial or financial information exemptions available under section 13(f) of the Michigan Freedom of Information Act. Furthermore, no personal or medical information concerning the applicant shall be submitted to the Medical Marihuana Commission.**

Sec. 46-503. - Commercial medical marihuana facilities authorized to operate in the city.

(a) Growers, Class A, B and C.

(b) Processors.

(c) Provisioning centers.

(d) Safety compliance facilities.

(e) Secure transporters.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-504. - Number of facilities authorized by city.

(a) Growers:

Class A: unlimited

Class B: unlimited

Class C: unlimited

(b) Processors: unlimited

(c) Provisioning centers: Ten permits in the B-1 and B-2 districts combined, unlimited in the Industrial overlay district.

(d) Safety compliance facilities: unlimited

(e) Secure transporters: unlimited

Sec. 46-505. -- Requirements **for permit application submission.** ~~and procedure for application.~~

No person shall operate a marihuana facility in the City without a current, valid marihuana facility permit issued by The city pursuant to the provisions of this article. The permit requirements set forth in this chapter shall be in addition to, not in lieu of any other licensing and/or permitting requirements imposed by any other federal, state, or local law. Applications for permits shall be made annually on forms provided by the city clerk and must meet the following requirements:

(1) Every applicant for a medical marihuana facility permit shall complete and file the application form provided by in the city clerk's office. Any application missing information in any required field will be deemed incomplete and is subject to denial of the permit by the city clerk. Each question in the application must be answered in its entirety and all the information requested and required by this article must be submitted in the application. Failure to comply with these rules and the application requirements in the article is grounds for denial of the application. The application shall contain any information required by the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., and the following information:

1. Every marihuana facility, establishment, or other business in the City shall be subject to the terms and provisions set forth in this article. No person shall operate a marihuana facility, establishment, or other business in the City without a current, valid permit issued by the City pursuant to the provisions of this article. The permit requirements set forth in this article shall be in addition to, not in lieu of any other licensing and/or permitting requirements imposed by any other federal, state, or local law.

2. Applications for permits shall be made annually. Each complete application for a permit or permits required by this article shall be made on forms provided by the City Clerk.

3. Every applicant for a marihuana facility, establishment, or other business permit shall complete and file the application form provided by the City Clerk's office. Any application missing information in any required field will be deemed incomplete and is subject to denial of the permit by the City Clerk. Each question in the application must be answered in its entirety and all the information requested and required by this article must be submitted with the application. Failure to comply with these rules and the application requirements in this article is grounds for denial of the application. An application for a medical marihuana facility permit shall contain any information required by the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., and shall also contain all of the following:

   a. Name, address, and telephone number of the owner(s) of all real property where the facility is located.

   a. Current documentation from the State of Michigan showing approved pre-qualification status for a State Medical Marihuana License or a copy of a valid State Medical Marihuana License.

   b. Name, address, and telephone number of the of the proposed permit holder. If the applicant is an individual, the applicant's name, date of birth, physical address, email, one or more phone numbers, including emergency contact information, and a copy of a valid unexpired driver's license or State ID for the applicant. Acceptable ID will be issued by the State in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.

   c. If the property owner and the proposed permit holder are not the same person, all documentation showing the proposed permit holder's valid tenancy, ownership or other legal interest in the proposed permitted property and permitted premises. If the applicant is not an individual, the names, dates of birth, physical addresses, email addresses, and one or more phone numbers of each stakeholder of the applicant, including designation of a stake holder as an emergency contact person and contact information for the emergency contact person, a copy of a valid unexpired driver's license or State ID for each applicant or stakeholder of the applicant. Acceptable ID

will be issued by the state in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq. Additionally, if the applicant is a Limited Liability Company, articles of incorporation of organization, internal revenue service SS-4 EIN confirmation letter, and the operating agreement or bylaws of the applicant, are required.

d. ~~If the proposed permit holder is not the owner of the property, a notarized statement from the owner of such property authorizing the use of the property for commercial medical marihuana facility.~~

d. The name and address of the proposed medical marihuana facility and any additional contact information deemed necessary by the City Clerk including name, address, and telephone number of the owner(s) of all real property where the facility is located.

e. ~~A copy of a valid unexpired driver's license or state ID for the proposed permit holder. Acceptable ID will be issued by the state in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.~~

e. One of the following: (a) proof of ownership of the entire premises wherein the medical marihuana facility is to be operated; or (b) a notarized statement from the property owner for use of the premises in a manner requiring licensure under this article along with a copy of any lease for the premises.

f. ~~If the proposed permit holder is a corporation, non-profit organization, limited liability company or any other entity other than a natural person it must state its legal status, attach a copy of all company formation documents (including amendments), proof of registration with the State of Michigan and a certificate of good standing along with the articles, resolutions and by-laws/operating agreements, and a copy of a valid unexpired driver's license or state issued ID for all owners, directors, officers and managers of the entity.~~

f. A signed release shall be provided, on a form included with the application, permitting the City Police Department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any disqualifying felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other State or the United States.

g. ~~A signed release shall be provided, on a form included with the application, permitting the city police department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other state or the United States.~~

~~h.~~g. A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim demand, action, legal redress or recourse against the city, its elected and appointed officials and its employees and agents for any claims, damages, liabilities, causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders, employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the city, its elected and appointed officials, employees, attorneys, and agents.

~~i.~~ h. A signed acknowledgement that all cultivation must be performed in an enclosed building.

~~j.~~ i. An affidavit that **neither** the applicant **nor any stakeholder of the applicant** is ~~not~~ in default to the City~~.,~~ ~~S~~specifically~~,~~ that the applicant **or stakeholder of the applicant** has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the City.

k. ~~Proof of a surety bond in the amount of $100,000.00 with the city listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article or in the alternative applicant can create an escrow account for the benefit of the city at a city-approved financial institution in the amount of $20,000.00.~~

j. For each permit type the following documentation is required:
   a. Proof of a surety bond in the amount of $100,000.00 with the City listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article in a manner and surety approved by the City Attorney: or, in the alternative,
   b. Proof of creation of an escrow account as follows:
      I. The account must be provided by a State or federally regulated financial institution or other financial institution approved by the City Attorney based upon an objective assessment of the institution's financial stability; and
      II. The account must be for the benefit of the City to guarantee performance by licensee in compliance with this article and applicable law; and
      III. The account must be in the amount of $20,000.00 and in a form prescribed by the City Attorney.

k. Proof of an insurance policy covering each facility and naming the City, its elected and appointed officials, employees, and agents, as additional insured parties, available for the payment of any damages arising out of an act or omission of the applicant or its stakeholders, agents, employees, or subcontractors, in the amount of (a) at least $1,000,000.00 for property damage: (b) at least $1,000,000.00 for injury to one person; and (c) at least $2,000,000.00 for injury to two or more persons resulting from the same occurrence. The insurance policy underwriter must have a minimum A.M. Best Company insurance ranking of B+, consistent with State law. The policy shall provide that the City shall be notified by the insurance carrier 30 days in advance of any cancellation.

l. Any other information deemed by the city to be required for consideration of a permit.

4. All applications shall be accompanied by a non-refundable permit application fee for each permit type. The renewal fee is established to defray the costs of the administration of this article and is set by resolution of the City Commission.

Sec. 46-506 –Requirements for application for renewal of annual permit.

a) A completed application for a renewal permit must be received by the City Clerk no later than 90 days prior to the expiration of the current permit. Pending applications for annual renewal or amendments of existing permits shall be reviewed, and granted or denied by the City Commission prior to new permit applications being considered.

b) Applications for renewal of permits shall be made annually. Each complete application for a permit or permits required by this article shall be made on forms provided by the City Clerk and must meet all requirements of Section 46-505.
   1. Applications for renewal of permits issued in 2018 only shall qualify for an exception to Sec. 506 (a).

c) All renewal applications shall be accompanied by a non-refundable permit application fee for each permit type. The renewal fee is established to defray the costs of the administration of this article, and is set by resolution of the City Commission.

Sec. 46-5067. - Issuance or denial of **new or renewal** permit.

(a) Upon submission of an applicant's completed application, including all required information and documentation, the City Clerk shall accept the application and assign it a sequential number based on the date and time the application was accepted **and refer a copy of the application to each of the following for their approval: the Fire Department, the Building Inspection Department, the Police Department, the Zoning Administrator, the City Treasurer, and the Legal Department.**

(b) ~~Within 60 days of receipt of a complete application and all required fees, all inspections, review and processing of the application shall be completed, and the City Clerk shall approve or deny the marihuana facility permit. The City Clerk shall issue marihuana facility permits in order of sequential application number previously assigned.~~

~~(c)~~ **(b)** A ~~provisional~~ permit means only that the applicant has submitted a valid application for a marihuana facility, **establishment, or other business** permit, and that the applicant shall not locate or operate a marihuana facility without obtaining all other permits and approvals required by all other applicable ordinances and regulations of the City, as well as, all statutes and regulations of the State of Michigan including but not limited to the Public Health Code, MCL 333.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.; and **the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq.**

(c) **A permit is valid only for the permit holder and location identified on the permit and may only be transferred by approval of the City Commission pursuant to Sections 46-502 (c) & (d) of this article.**

(d) **The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.**

~~(d)~~ **(e)** The City Clerk shall not **recommend a permit for approval** ~~issue a permit until~~ unless all of the following conditions have been met:

(1) The fire department and building department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this article.

(2) The zoning administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit and zoning exception permit.

(3) The City Treasurer has confirmed that the applicant and the proposed location are not in default to the City.

(4) The police department has determined that the applicant has met the requirements of this article with respect to the background check and security plan.

(5) **The legal department has determined that the applicant has satisfied the requirements of this article with respect to submission of all required documents and completeness of the application.**

(6) **All additional information deemed by the City to be required for consideration of a permit.**

~~(e)~~ ~~If approved the city clerk shall issue the applicant a provisional permit or renew an annual permit.~~

~~(f)~~ ~~A provisional permit will lapse and be void if such other required permits, valid state licensing, and approvals are not diligently pursued to completion, but in any event no later than 120 days after the provisional permit is issued.~~

(f)    The City Clerk shall not recommend a permit for renewal unless all of the following additional conditions have been met:

    (1)    The applicant possesses the necessary State license or approvals, including those issued pursuant to all applicable State and local laws, rules, or ordinances.

    (2)    The applicant has operated the marihuana facility, establishment or other business in accordance with the conditions and requirements of this article.

    (3)    The marihuana facility, establishment, or other business has not been declared a public nuisance

    (4)    The applicant is operating the marihuana facility, establishment or other business in accordance with Federal, State, and local laws and regulations.

(g)    If written approval is given by each individual, department, or entity in subsection (e), the City Clerk shall recommend the permit or renewal of an annual permit to the City Commission for approval.

(f) (h)    A provisional permit will lapse and be void if such other required permits, valid state licensing, and approvals are not diligently pursued to completion, but in any event no later than 1280 days after the provisional permit is issued.

(g)    A signed acknowledgement of permit holder's intent to acquire and maintain a valid marihuana facility license from the State of Michigan is a condition for issuance and maintenance of a marihuana facility permit under this article. In the event of a lapse in the State-issued medical marihuana facility license, for any reason, the applicant may not continue operation of any marihuana facility in the City of Adrian, unless and until a valid State license is reinstated or obtained.

(h) (i)    Any applicant for a commercial medical marihuana facility, establishment or other business permit whose building is not yet in existence at the time of City Commission approval shall have one year immediately following the date of approval to complete construction of the building, in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.

(j)    Within 90 days of receipt of a complete application and all required fees, all inspections, review and processing of the application shall be completed, and the City Clerk shall make a recommendation to the City Commission to approve or deny the marihuana facility permit.

(i) (k)    The City commission shall approve or deny a permit within 120 days of receipt of the completed application and fees. The processing time may be extended upon written notice by the City for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. No permit is valid until final approval of the City Commission. The City has no obligation to process or approve any incomplete application, and any times provided under this article shall not begin to run until the City receives a completed application, as determined by the City Clerk. A determination of a complete application shall not prohibit the City from requiring supplemental information. The City may delay an application while additional information is requested including, but not limited to, requests for additional disclosures and documentation to be furnished to the department.

(l)    The City has no obligation to process or approve any incomplete application. Any time period provided under this article shall not commence until the City receives a completed application, as determined by the City Clerk. A determination of a complete application shall not prohibit the City from requiring supplemental information. The City may delay an application while additional information is requested including, but not limited to, requests for additional disclosures and documentation to be furnished to the City Clerk.

(j) (m)    If more qualified applications are received than the number of permits allowed for provisioning centers in the B-1 and B-2 districts under this article, the City Commission may review and amend this ordinance as it determines advisable.

(k) **(n)** If applicant fails to comply with this article, a permit may be denied as provided under this article. In addition to failing to comply with this article, a permit may be denied for the following reasons:

  (1)   The applicant made a material misrepresentation on the application.

  (2)   The applicant fails to correct any deficiencies in the application or supply additional required information.

  (3)   The applicant fails to satisfy compliance with the municipality, state law, or this ordinance.

  (4)   The applicant is operating a medical marihuana facility without a current, valid permit.

  Any denial of a provisional permit shall be in writing and shall state the reason for the denial.

(l) **(o)** ~~Denial of a permit by the City Clerk may be may be appealed to the City Commission.~~ Denial of permit by the City Commission may be appealed to the Circuit Court of this state.

Sec. 46-50~~7~~8. - Conduct of permit holder.

(a)   Each permit holder shall, as a condition of obtaining and maintaining a permit, agree to comply at all times with applicable local and state building, zoning, fire, health and sanitation statutes, ordinances and regulations.

(b)   The premises shall be operated and maintained at all times consistent with responsible business practices and so that no excessive demands will be placed upon public health or safety services, nor any excessive risk of harm to the public health, safety or sanitation.

(c)   Permit holder shall immediately notify the City Clerk and update as required the information provided on the application and the permit. Further, the permit holder shall notify the City Clerk, within 10 business days, of any other changes in **the information required by this article or** that may materially affect the state license or the permit. Failure to do so may result in suspension or revocation of the permit.

(d)   An applicant or permit holder has a duty to notify the City Clerk in writing **within 10 business days** of any pending criminal charge, and any criminal conviction or other offense, including but not limited to, Michigan Medical Marihuana Act (MCL 333.26421 et seq.) violations, Medical Marihuana Facilities Licensing Act (MCL 333.27101 et seq.) violations, building, fire, zoning violations by the applicant, permit holder, any owner, principal, officer, director, manager or employee relating to the cultivation, processing, manufacture, storage, sale, distribution, testing or consumption of any form of marihuana within ten days of the event.

(e)   The permit holder may not operate any other commercial medical marihuana facility in the permitted premises or on the permitted property, or in its name at any other location within the city without first obtaining a separate permit.

(f)   ~~The permit holder may not transfer the permit to any other individual or entity.~~ **A signed acknowledgement of the permit holder's intent to acquire and maintain a valid marihuana facility license from the State of Michigan is a condition for issuance and maintenance of a marihuana facility permit under this article. In the event of a lapse in the State issued medical marihuana facility license, for any reason, the applicant may not continue operation of any marihuana facility in the City of Adrian, unless and until a valid State license is reinstated or obtained.**

(g)   Failure to comply with the requirements contained in this ~~section~~ article is a civil infraction.

Sec. 46-50~~8~~9. - Operational requirements.

A commercial medical marihuana facility issued a permit under this article and operating in the city shall at all times comply with the following operational requirements, which the city commission may review and amend from time to time as it determines reasonable.

(1) Commercial medical marihuana facilities shall comply with the zoning code, the building code, and the property maintenance code at all times.

(2) The facility must hold a valid local permit and state medical marihuana facility license for the type of commercial medical marihuana facility carried out at the permitted property.

(3) Each commercial medical marihuana facility shall be operated from the permitted premises on the permitted property. No commercial medical marihuana facility shall be permitted to operate from a moveable, mobile or transitory location, except for a permitted and licensed secure transporter when engaged in the lawful transport of marihuana.

(4) No person under the age of 18 shall be permitted to enter into the permitted premises without a parent or legal guardian.

(5) Medical marihuana facilities shall be closed for business and no sale or other distribution of marihuana in any form shall occur upon the premises or be delivered from the premises between the hours of 9:00 p.m. and 7:00 a.m.

(6) Permit holders shall at all times maintain a security system that meets state law requirements, and shall also include:

   a. Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the permitted premises;

   b. Burglary alarm systems which are professionally monitored and operated 24 hours a day, seven days a week;

   c. A locking safe permanently affixed to the permitted premises that shall store all marihuana and cash remaining at the facility overnight;

   d. All marihuana in whatever form stored at the permitted premises shall be kept in a secure manner and shall not be visible from outside the permitted premises, nor shall it be grown, processed, exchanged, displayed or dispensed outside the permitted premises;

   e. All security recordings and documentation shall be preserved for at least 48 hours by the permit holder and made available to law enforcement upon request for inspection.

(7) No commercial provisioning center shall be located within 1,000 feet of any of the following uses:

   a. A school, public or private, including pre-school through college or within 250 feet of any of the following uses:

      1. A church or house of worship located in a residential district.

      2. A park or playground.

      3. A state licensed day-care facility as defined in the City of Adrian Zoning Ordinance, definition(s) 2.46.

      4. A facility that provides substances abuse disorder services as defined by MCL 330.6230S.

(8) The amount of marihuana on the permitted property and under the control of the permit holder, owner or operator of the facility shall not exceed the amount permitted by the state license.

(9) The marihuana offered for sale and distribution must be packaged and labeled in accordance with state law. Provisioning centers are prohibited from selling, soliciting or receiving orders for marihuana or marihuana products over the internet.

(10) No pictures, photographs, drawings, or other depictions of marihuana or marihuana paraphernalia shall appear on the outside of any permitted premises nor be visible outside of the permitted premises on the permitted property. The words "marihuana," "cannabis" and any other words used or intended to convey the presence or availability of marihuana shall not

appear on the outside of the permitted premises nor be visible outside of the permitted premises on the permitted property.

(11) The sale, consumption, or use of alcohol or tobacco products on the permitted premises is prohibited. Smoking or consumption of controlled substances, including marihuana, on the permitted premises is prohibited.

(12) All activities of commercial medical marihuana facilities, including without limitation, distribution, growth, cultivation, or the sale of marihuana, and all other related activity permitted under the permit holder's license or permit must occur indoors. The facility's operation and design shall minimize any impact to adjacent uses, including the control of any odor by maintaining and operating an air filtration system so that no odor is detectable outside the permitted premises.

(13) A patient may not grow his or her own marihuana at a commercial medical marihuana facility.

(14) No person operating a facility shall provide or otherwise make available marihuana to any person who is not legally authorized to receive marihuana under state law.

(15) All necessary building, electrical, plumbing and mechanical permits must be obtained for any part of the permitted premises in which electrical, wiring, lighting or watering devices that support the cultivation, growing, harvesting or testing of marijuana are located.

(16) The permit holder, owner and operator of the facility shall use lawful methods in controlling waste or by-products from any activities allowed under the license or permit.

(17) Marihuana may be transported by a secure transporter within the city under this article, and to effectuate its purpose, only:

a. By persons who are otherwise authorized by state law to possess marihuana for medical purposes;

b. In a manner consistent with all applicable state laws and rules, as amended;

c. In a secure manner designed to prevent the loss of the marihuana;

d. No vehicle used for transportation or delivery of marihuana under this article shall have for markings the words "marihuana," "cannabis," or any similar words; pictures or other renderings of the marihuana plant; advertisements for marihuana or for its sale, transfer, cultivation, delivery, transportation or manufacture, or any other word, phrase or symbol indicating or tending to indicate that the vehicle is transporting marihuana.

e. No vehicle may be used for the ongoing or continuous storage of marihuana, but may only be used incidental to, and in furtherance of, the transportation of marihuana.

(18) The city commission may impose such reasonable terms and conditions on a commercial medical marihuana facility special use as may be necessary to protect the public health, safety and welfare, and to obtain compliance with the requirements of this article and applicable law.

(19) No facility shall be operated in a manner creating noise, dust, vibration, glare, fumes, or odors beyond the boundaries of the property on which the facility is operated; or creating any other nuisance that hinders the public health, safety and welfare of the residents of the City of Adrian.

Sec. 46-509010. - Effective permit; suspension; daily violation.

(a) A permit is valid only for the location identified on the permit and cannot be transferred to another location in the city without a new application.

(b) A permit is valid for one year from the date of issuance.

(c) The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.

(d) (a) Acceptance by the permit holder of the permit constitutes consent by the permit holder and its owners, officers, managers, agents and employees for any state, federal or local law enforcement to

conduct random and unannounced examinations of the facility and all articles of property in that facility at any time to ensure compliance with this article, and any other local regulations. and with the permit.

(b) The City may require an applicant or permit holder of a marihuana facility, establishment, or other business to produce documents, records, or any other material pertinent to the investigation of an application or alleged violation of this article. Failure to provide the required material may be grounds for application denial or permit revocation.

(e) (c) Issuance of a permit does not prohibit prosecution by the federal government for violation of its laws or prosecution by state authorities for violations of the Act or other violations not protected by the Act.

(f) (d) Compliance with city ordinances and state statutes is a condition of maintenance of a permit and a permit may be suspended for failure to comply with any of the provisions of this section article. The City Administrator may suspend the permit for failure to comply. Appeals of an administrative suspension must be made in writing, to the attention of the City Clerk, within 30 days after the suspension notice has been served on the permit holder or posted on the permitted premises. Appeals shall be heard by the City Commission at the next regularly scheduled meeting after receipt of the written appeal.

(g) Suspension of a permit is not an exclusive remedy and nothing contained herein is intended to limit the city's ability to prosecute code violations that may have been the cause of the suspension or any other code violations not protected by this Act.

(h) Violations of the provisions of this article or failure to comply with any of the requirements of this article is a civil infraction. The fine for this civil infraction is $500.00 and abatement costs of each violation together with all remedies available under MCL 600.8701 et seq. Each day a violation continues shall be deemed a separate civil infraction.

(i) Operating a medical marihuana facility without a valid permit or assisting in the operation of a medical marihuana facility without a valid permit for that property is a civil infraction. The fine for this civil infraction shall be $500.00. Each day that a person shall operate a medical marihuana facility without a permit or assist in the operation of a medical marijuana facility without a valid permit in effect for that property shall constitute as a separate offense.

(e) Suspension of a permit is not an exclusive remedy and the penalty provisions of this article are not intended to foreclose any other remedy or sanction that might be available to, or imposed by the City, including criminal prosecution.

(j) (f) In addition to any other remedies, the City may institute proceedings for injunction, mandamus, abatement or other appropriate remedies to prevent, enjoin, abate or remove any violations of this article. The rights and remedies provided herein are civil in nature. The imposition of a fine shall not exempt the violator from compliance with the provisions of this article.

Sec 46-511 - Permit revocation; bases for revocation or denial; appeal of permit revocation or denial.

a) Any permit issued under this article may be recommended for revocation by the City Clerk to the Adrian City Commission if the City Clerk finds and determines that grounds for revocation exist. Any grounds for revocation must be provided to the permit holder at least ten days prior to the date of the City Commission meeting at which the recommendation for revocation will be heard. Notice of the meeting shall be sent by first

class mail to the mailing address given on the permit application or any updated mailing address provided to the City Clerk in writing subsequent to the filing of an application.

b) A permit applied for or Issued may be denied or revoked on any basis provided under this article including the following:

(1) A material violation of any provision of this article, including, but not limited to, the failure to submit a complete application under Sec. 46-505; or

(2) Any conviction of a disqualifying felony by the permit holder, stakeholder, or any person holding an ownership interest In the permit; or

(3) Commission of fraud or misrepresentation or the making of a false statement by the applicant, permit holder, or any stakeholder of the applicant or permit holder while engaging in any activity for which this article requires a permit; or

(4) Failure to obtain, maintain or renew a permit issued by the City Clerk pursuant to this article; or

(5) Failure of the permit holder or the marihuana facility, establishment or other business to obtain or maintain a license or approval from the State pursuant to the State or other laws; or

(6) The marihuana facility, establishment or other business is determined by the City to have become a public nuisance or otherwise is operating in a manner detrimental to the public health, safety or welfare.

c) The denial of an application or revocation of a permit by the City Commission shall be final for purposes of judicial review.

Sec. 46-512. – Violations municipal civil infraction.

Any person and/or entity in violation of any provision of this article or failure to comply with any of the requirements of this article, Including the operation of a marihuana facility, establishment, or other business without a permit issued pursuant to this article, is responsible for a municipal civil Infraction violation. The City shall assess fines and abatement costs of each violation together with all remedies available under MCL 600.8701 et seq.  Increased civil fines may be imposed for a repeat violation. As used In this section "repeat violation" shall mean a second or any subsequent infraction of the same requirement or provision committed by a person or establishment within any 12-month period.  Fines for each offense shall be as set forth in Section 2-373 of the Adrian City Code.

Each day a violation continues, including each day that a person shall operate a medical marihuana facility without a permit or assist in the operation of a medical marijuana facility without a valid permit in effect for that property, shall constitute a separate offense. Upon the third offense In any 12-month period, a recommendation for permit denial or revocation may be made to the City Commission.

Sec. 46-51~~0~~3. - Fees for permits ~~licenses~~.

The fees for the permit herein defined shall be set by resolution of the city commission. The fee shall defray the costs incurred by the city for inspection, administration and enforcement of this article and shall not exceed any limitations imposed by Michigan law.

Sec. 46-51~~1~~4. - Severability.

The provisions of this article are hereby declared severable. If any part of this article is declared invalid for any reason by a court of competent jurisdiction, that declaration does not affect or impair the validity of all other provisions that are not subject to that declaration.

**R19-052**                                                                April 29, 2019

**RE:    CITY ATTORNEY – Approval of Medical Marihuana Renewal
        Application and New Application Period and Fee Schedule**

**RESOLUTION**

WHEREAS, on December 13, 2017 the Adrian City Commission adopted an ordinance to create Section 46-500 of Chapter 46 of the Adrian City Code titled "Commercial Medical Marihuana Facilities"; and

WHEREAS, on April 2, 2018, the Adrian City Commission approved resolution R18-042 approving a medical marihuana application period and application fee for 2018; and

WHEREAS, an annual application period schedule needs to be set for 2019; and

WHEREAS, it is the recommendation of City staff to accept applications for renewal permits beginning May 8, 2019 until close of business May 31, 2019; and

WHEREAS, it is also the recommendation of City staff to accept applications for new permits beginning June 3, 2019 until close of business on July 31, 2019; and

WHEREAS, City staff further recommends that a nonrefundable $5,000 fee be established for renewal applications and new applications for each permit type applied for to defray administrative and enforcement costs.

NOW THEREFORE, BE IT RESOLVED that the Adrian City Commission by this resolution approves of a renewal permit application period from May 8, 2019 until close of business on May 31, 2019.

BE IT FURTHER RESOLVED that the Adrian City Commission by this resolution approves of an new permit application period from June 3, 2019 until close of business on July 31, 2019.

BE IT FURTHER RESOLVED that the Adrian City Commission by this resolution sets a nonrefundable $5,000 fee for renewal applications and new applications for each permit type applied for to defray administrative and enforcement costs.

On motion by Commissioner _____, seconded
by Commissioner _____, this resolution was _____
by a _____ vote

MINUTES
SPECIAL MEETING
ADRIAN CITY COMMISSION
April 29, 2019 @ 7:00PM

Official proceedings of the April 29, 2019 Special Meeting of the City Commission, Adrian, Michigan.

The meeting was opened with a moment of silence and followed by the Pledge of Allegiance to the Flag.

PRESENT: Mayor Jacobson & Commissioners Heldt, Watson, Dudas, Strayer and Roberts.
ABSENT:   Commissioner Valentine

On motion by Commissioner **Heldt**, and seconded by Commissioner **Dudas**, the motion to excuse Commissioner Valentine was approved by **6-0** vote.

Mayor Jacobson in the Chair.

**REGULAR AGENDA**

**Mayor Jacobson made a motion to remove Resolution R19-054 from the Agenda.**

On motion by Commissioner **Watson**, and seconded by Commissioner **Dudas**, the motion to remove Resolution R19-054 from the agenda was approved by a **6-0** vote.

**ORDINANCES**

**PUBLIC COMMENT**

Nicole Hernandez - Voiced her concerns over the passing of the ordinance and not being in compliance with the City Charter.

ARTICLE XI. - COMMERCIAL MEDICAL MARIHUANA FACILITIES **AND ADULT USE ESTABLISHMENTS**

DIVISION 1. - GENERALLY

Sec. 46-500. - Legislative intent.

The purpose of this article is to implement the provisions of the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016, **and the Michigan Regulation and Taxation Act Initiated Law 1 of 2018,** which authorizes the licensing and regulation of commercial medical marihuana facilities **or commercial adult use establishments;** affords the city the option to allow commercial medical marihuana facilities **or commercial adult use establishments;** and the authority to regulate commercial medical marihuana facilities **or commercial use establishments** by requiring a permit and compliance with requirements as provided in this article, in order to maintain the public health, safety and welfare of the public.

Nothing in this article is intended to grant immunity from criminal or civil prosecution, penalty, or sanction for the cultivation, manufacture, possession, use, sale, or distribution of marihuana, in any form, that is not in compliance with the Michigan Medical Marihuana Act, Initiated Law of 2008, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; the Michigan Marihuana Tracking Act, MCL 333.27901 et seq.; **the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq.;** and all other applicable rules promulgated by the state of Michigan.

As of the effective date of this article, marihuana remains classified as a Schedule 1 controlled substance under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq., which makes it

EXHIBIT 37

unlawful to manufacture, distribute, or dispense marihuana, or possess marihuana with the intent to manufacture, distribute, or dispense marihuana. Nothing in this article is intended to grant immunity from any criminal prosecution under federal laws.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 6-7-2018)

Sec. 46-501. - Definitions.

For the purpose of this article the following words, terms, and phrases shall have the meanings ascribed to them in this section, except when the context clearly indicates a different meaning.

Any term defined by the Michigan Medical Marihuana Act. MCL 333.2621 et seq., shall have the definition given in the Michigan Medical Marihuana Act.

Any term defined by the Michigan Medical Marihuana Facilities Licensing Act. MCL 333.27101 et seq., shall have the definition given in the Michigan Medical Marihuana Facilities Licensing Act.

Any term defined by the Michigan Medical Marihuana Tracking Act. MCL 333.27901 et seq., shall have the definition given in the Michigan Medical Marihuana Tracking Act

**Any term defined by the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq., shall have the definition given in the Michigan Regulation and Taxation of Marihuana Act.**

*City* means the City of Adrian.

*Department* means the Michigan State Department of Licensing and Regulatory Affairs or any authorized designated Michigan agency authorized to regulate, issue or administer a Michigan license for a commercial medical marihuana facility or commercial adult use establishments.

*Enclosed building* means a combination of materials forming a structure affording a facility or shelter for use or occupancy by individuals or property in which a proper ventilation system allows for all windows, entrances, and exits may safely remain closed, with the exceptions of normal entry and exit of the building for business purposes, and safety or emergency purposes i.e. fire. Building includes a part or parts of the building and all equipment in the building. A building shall not be construed to mean a building incidental to the use for agricultural purposes of the land on which the building is located.

*Grower* or *grower facility* means a commercial entity that cultivates, dries, trims, or cures and packages marihuana for sale to a processor or provisioning center. Grower facilities are divided into classes: Class A facility — up to 500 plants; Class B facility — up to 1,000 plants; and Class C facility — up to 1,500 plants.

*License* means a current, valid license for a commercial medical marihuana facility issued by the State of Michigan.

*Licensee* means a person holding a current, valid Michigan license for a commercial medical marihuana facility.

*Marihuana* means that term as defined in section 7106 of the public health code, 1978 PA 368, MCL 333.7106.

*Marihuana plant(s)*" means any plant of the species Cannabis sativa L.

*Medical Marihuana* means that term as defined in the Public Health Code, MCL 333.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; and the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.

*Medical marihuana facility(s)* means any facility, establishment and/or center at a specific location which is licensed under this article to operate under the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., including a provisioning center, grower, processor, safety compliance facility, and secure transporter. The term does not include or apply to a "primary

caregiver" or "caregiver" as the term is defined in the Michigan Medical Marihuana Act, MCL 333.26421 et seq.

*Permit* means a current, valid permit for a commercial medical marihuana facility issued pursuant to this article, granted to a permit holder valid for a specific permitted premises and a specific permitted property.

*Permit holder* means the person that holds a current, valid permit under this article.

*Permitted premises* means the particular building or buildings within which the permit holder will be authorized to conduct the facility's activities pursuant to the permit.

*Permitted property* means the real property comprised of the lot, parcel or other designated unit of real property upon which the permitted premises is situated.

*Person* means a natural person, company, partnership, profit or non-profit corporation, limited liability company, or any joint venture for a common purpose.

*Processor* or *processor facility* means a commercial entity that purchases marihuana from a grower and that extracts resin from the marihuana or creates a marihuana-infused product for sale and transfer in packaged form to a provisioning center.

*Provisioning center* means a commercial entity that purchases marihuana from a grower or processor and sells, supplies, or provides marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers. Provisioning center includes any commercial property where marihuana is sold at retail to registered qualifying patients or registered primary caregivers. The term does not include or apply to a non-commercial location used by a primary caregiver to assist a qualifying patient connected to the caregiver through the department's marihuana registration process in accordance with the MMMA.

*Safety compliance facility* means a commercial entity that receives marihuana from a medical marihuana facility or registered primary caregiver, tests it for contaminants and for tetrahydrocannabinol and other cannabinoids, returns the test results, and may return the marihuana to the medical marihuana facility.

*School* (as defined in MCL 257.627a) means an educational institution operated by a local school district or by a private, denominational, or parochial organization. School does not include either of the following:

(1) An educational institution that the department of education determines has its entire student population in residence at the institution.

(2) An educational institution to which all students are transported in motor vehicles.

*Secure transporter* means a commercial entity that stores medical marihuana and transports medical marihuana between medical marihuana facilities for a fee.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 6-7-2018)

DIVISION 2. - PERMITS

Sec. 46-502. – ~~Required.~~ **Generally.**

(a) No person shall operate a commercial ~~medical~~ marihuana facility**, establishment or other business which requires State Licensure,** in the city without first obtaining a permit from the City Clerk. **Further, any permit application approved pursuant to this article should not be effective and no marihuana facility, establishment, or other business which requires state licensure may operate unless said operation is pursuant to a license or approval issued under the authorized State Licensing Agency.**

(b) The issuance of any permit or renewal permit pursuant to this article shall not confer any vested rights, **property or other right, duty, privilege or interest in a permit of any kind or nature whatsoever including, but not limited to, any claim of entitlement** or reasonable

expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year Immediately following Its approval.

(e) ~~A completed application for a renewal permit must be received by the City Clerk no later than 90 days prior to the expiration of the current permit. Pending applications for annual renewal or amendments of existing permits shall be reviewed, and granted or denied by the City Clerk prior to new permit applications being considered.~~

(c) **A permit holder may transfer a permit issued under this article to a different location upon receiving approval from the City Commission. In order to request approval to transfer a permit location, the permit holder must make a written request to the City Clerk, indicating the current permit location and the proposed permit location. Upon receiving the written request, the City Clerk shall refer a copy of the written request to each of the following for their approval: the Fire Department, the Building Inspection Department, the Police Department, the Zoning Administrator, and the City Treasurer. Prior to final approval of transfer the permit holder must submit an updated application and any supporting documents. No permit transfer shall be recommended for approval unless each Individual department gives written approval that the permit holder and the proposed permit location meet the standards identified in this article, including but not limited to Section 46-505, and the City Clerk has determined the proposed location meets the requirements of Section 46-505.**

(d) ~~No permit issued under this section may be transferred or assigned and no license is valid for any location other than the location specified in the license.~~ **A permit holder may transfer a valid permit issued under this article to a new Individual or entity upon obtaining approval from the City Commission. A request for transfer of a valid permit to a new individual or entity must be made in writing, to the City Clerk. The permit holder must provide documentation from the State Agency Indicating the State License may be transferred. Upon receiving the written request the City Clerk shall consider the request as a new application for a permit and the procedures set forth In Section (46-505) shall be followed including submission of the non-refundable permit application fee. Application fees are non-transferable.**

(e) A permit holder must submit to the City a copy of their valid state license within 180 days of Issuance of the permit under this article. Failure to provide such proof ~~will~~ **may** result In ~~revocation~~ **suspension** ~~of~~ or ~~suspension~~ **revocation** of the permit.

(f) If a permit holder has not obtained a valid state license at the end of 180 days, they may request an extension of time ~~from~~ **on a form provided by** the City Clerk. **The City Clerk may require additional/supplemental information to confirm the reasons for delay. Failure to provide the required Information may result in denial of extension. Extensions will be granted or denied by the City Clerk. The granting of an extension shall not exceed 120 days or the expiration date of the current permit.**

(g) If the facility is a new build/ ~~and~~ construction **and** ~~or~~ **State** licensing **has not been Issued** ~~is not complete after~~ **within** 180 days, the permit holder may request~~,~~ **a form** from the City Clerk~~,~~ **to apply for** ~~an extension of time to obtain the state license.~~ **building and/or fire inspection waivers. A waiver will be granted or denied by the City Clerk. The granting of a waiver shall not exceed one year or the expiration date of the current permit.**

(h) ~~The City Clerk may require additional/supplemental information to confirm the reasons for delay. Extensions will be granted or denied at the discretion of the city.~~

(h) **To the extent permissible under law, all Information submitted in conjunction with an application for a permit or permit renewal required by this article Is confidential and exempt from disclosure under the Michigan Freedom of Information Act, 1976 PA 442, MCL 15.231 et seq., including the trade secrets or commercial or financial information exemptions available under section 13(f) of the Michigan Freedom of Information Act. Furthermore, no personal or medical Information concerning the applicant shall be submitted to the Medical Marihuana Commission.**

Sec. 46-503. - Commercial medical marihuana facilities authorized to operate in the city.

(a)  Growers, Class A, B and C.

(b)  Processors.

(c)  Provisioning centers.

(d)  Safety compliance facilities.

(e)  Secure transporters.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-504. - Number of facilities authorized by city.

(a)  Growers:

Class A: unlimited

Class B: unlimited

Class C: unlimited

(b)  Processors: unlimited

(c)  Provisioning centers: Ten permits in the B-1 and B-2 districts combined, unlimited in the Industrial overlay district.

(d)  Safety compliance facilities: unlimited

(e)  Secure transporters: unlimited

Sec. 46-505. – Requirements **for permit application submission.** and procedure for application.

No person shall operate a marihuana facility in the City without a current, valid marihuana facility permit issued by The city pursuant to the provisions of this article. The permit requirements set forth in this chapter shall be in addition to, not in lieu of any other licensing and/or permitting requirements imposed by any other federal, state, or local law. Applications for permits shall be made annually on forms provided by the city clerk and must meet the following requirements:

(1) Every applicant for a medical marihuana facility permit shall complete and file the application form provided by in the city clerk's office. Any application missing information in any required field will be deemed incomplete and is subject to denial of the permit by the city clerk. Each question in the application must be answered in its entirety and all the information requested and required by this article must be submitted in the application. Failure to comply with these rules and the application requirements in the article is grounds for denial of the application. The application shall contain any information required by the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., and the following information:

1.  **Every marihuana facility, establishment, or other business in the City shall be subject to the terms and provisions set forth in this article. No person shall operate a marihuana facility, establishment, or other business in the City without a current, valid permit issued by the City pursuant to the provisions of this article. The permit requirements set forth in this article shall be in addition to, not in lieu of any other licensing and/or permitting requirements imposed by any other federal, state, or local law.**

2.  **Applications for permits shall be made annually. Each complete application for a permit or permits required by this article shall be made on forms provided by the City Clerk.**

3. Every applicant for a marihuana facility, establishment, or other business permit shall complete and file the application form provided by the City Clerk's office. Any application missing information in any required field will be deemed incomplete and is subject to denial of the permit by the City Clerk. Each question in the application must be answered in its entirety and all the information requested and required by this article must be submitted with the application. Failure to comply with these rules and the application requirements in this article is grounds for denial of the application. An application for a medical marihuana facility permit shall contain any information required by the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., and shall also contain all of the following:

   a. ~~Name, address, and telephone number of the owner(s) of all real property where the facility is located.~~

   a. Current documentation from the State of Michigan showing approved pre-qualification status for a State Medical Marihuana License or a copy of a valid State Medical Marihuana License.

   b. ~~Name, address, and telephone number of the of the proposed permit holder.~~ If the applicant is an individual, the applicant's name, date of birth, physical address, email, one or more phone numbers, including emergency contact information, and a copy of a valid unexpired driver's license or State ID for the applicant. Acceptable ID will be issued by the State in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.

   c. ~~If the property owner and the proposed permit holder are not the same person, all documentation showing the proposed permit holder's valid tenancy, ownership or other legal interest in the proposed permitted property and permitted premises.~~ If the applicant is not an individual, the names, dates of birth, physical addresses, email addresses, and one or more phone numbers of each stakeholder of the applicant, including designation of a stake holder as an emergency contact person and contact information for the emergency contact person, a copy of a valid unexpired driver's license or State ID for each applicant or stakeholder of the applicant. Acceptable ID will be issued by the state in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq. Additionally, if the applicant is a Limited Liability Company, articles of incorporation of organization, internal revenue service SS-4 EIN confirmation letter, and the operating agreement or bylaws of the applicant, are required.

      ~~d. If the proposed permit holder is not the owner of the property, a notarized statement from the owner of such property authorizing the use of the property for commercial medical marihuana facility.~~

   d. The name and address of the proposed medical marihuana facility and any additional contact information deemed necessary by the City Clerk including name, address, and telephone number of the owner(s) of all real property where the facility is located.
      ~~e. A copy of a valid unexpired driver's license or state ID for the proposed permit holder. Acceptable ID will be issued by the state in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.~~

   e. One of the following: (a) proof of ownership of the entire premises wherein the medical marihuana facility is to be operated; or (b) a notarized statement from the property owner for use of the premises in a manner requiring licensure under this article along with a copy of any lease for the premises.

   f. ~~If the proposed permit holder is a corporation, non-profit organization, limited liability company or any other entity other than a natural person it must state its legal status, attach a copy of all company formation documents (including amendments), proof of registration with the State of Michigan and a certificate of good standing along with the articles, resolutions and by-laws/operating agreements, and a copy of a valid unexpired driver's license or state issued ID for all owners, directors, officers and managers of the entity.~~

f. A signed release shall be provided, on a form included with the application, permitting the City Police Department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any disqualifying felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other State or the United States.

g. ~~A signed release shall be provided, on a form included with the application, permitting the city police department to perform a criminal-background check to ascertain whether any person named on the application has been convicted of any felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other state or the United States.~~

~~h.~~g. A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim demand, action, legal redress or recourse against the city, its elected and appointed officials and its employees and agents for any claims, damages, liabilities, causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders, employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the city, its elected and appointed officials, employees, attorneys, and agents.

~~i.~~h. A signed acknowledgement that all cultivation must be performed in an enclosed building.

~~j.~~i. An affidavit that **neither** the applicant **nor any stakeholder of the applicant** is ~~not~~ in default to the City~~.~~, ~~S~~specifically~~,~~ that the applicant **or stakeholder of the applicant** has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the City.

~~k. Proof of a surety bond in the amount of $100,000.00 with the city listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article or in the alternative applicant can create an escrow account for the benefit of the city at a city-approved financial institution in the amount of $20,000.00.~~

j. For each permit type the following documentation is required:
   a. Proof of a surety bond in the amount of $100,000.00 with the City listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article in a manner and surety approved by the City Attorney: or, in the alternative,

   b. Proof of creation of an escrow account as follows:
      I. The account must be provided by a State or federally regulated financial institution or other financial institution approved by the City Attorney based upon an objective assessment of the institution's financial stability; and
      II. The account must be for the benefit of the City to guarantee performance by licensee in compliance with this article and applicable law; and
      III. The account must be in the amount of $20,000.00 and in a form prescribed by the City Attorney.

k. Proof of an insurance policy covering each facility and naming the City, its elected and appointed officials, employees, and agents, as additional insured parties, available for the payment of any damages arising out of an act or omission of the applicant or its stakeholders, agents, employees, or subcontractors, in the amount of (a) at least $1,000,000.00 for property damage: (b) at least $1,000,000.00 for injury to one person; and (c) at least

$2,000,000.00 for injury to two or more persons resulting from the same occurrence. The insurance policy underwriter must have a minimum A.M. Best Company Insurance ranking of B+, consistent with State law. The policy shall provide that the City shall be notified by the insurance carrier 30 days in advance of any cancellation.

l. Any other information deemed by the city to be required for consideration of a permit.

4. All applications shall be accompanied by a non-refundable permit application fee for each permit type. The renewal fee is established to defray the costs of the administration of this article and is set by resolution of the City Commission.

**Sec. 46–506 –Requirements for application for renewal of annual permit.**

a) A completed application for a renewal permit must be received by the City Clerk no later than 90 days prior to the expiration of the current permit. Pending applications for annual renewal or amendments of existing permits shall be reviewed, and granted or denied by the City Commission prior to new permit applications being considered.

b) Applications for renewal of permits shall be made annually. Each complete application for a permit or permits required by this article shall be made on forms provided by the City Clerk and must meet all requirements of Section 46-505.

   1. Applications for renewal of permits issued in 2018 only shall qualify for an exception to Sec. 506 (a).

c) All renewal applications shall be accompanied by a non-refundable permit application fee for each permit type. The renewal fee is established to defray the costs of the administration of this article, and is set by resolution of the City Commission.

Sec. 46-506~~7~~. - Issuance or denial of **new or renewal** permit.

(a) Upon submission of an applicant's completed application, including all required information and documentation, the City Clerk shall accept the application and assign it a sequential number based on the date and time the application was accepted **and refer a copy of the application to each of the following for their approval: the Fire Department, the Building Inspection Department, the Police Department, the Zoning Administrator, the City Treasurer, and the Legal Department.**

~~(b)        Within 60 days of receipt of a complete application and all required fees, all inspections, review and processing of the application shall be completed, and the City Clerk shall approve or deny the marihuana facility permit. The City Clerk shall issue marihuana facility permits in order of sequential application number previously assigned.~~

~~(c)~~ **(b)** A ~~provisional~~ permit means only that the applicant has submitted a valid application for a marihuana facility, **establishment, or other business** permit, and that the applicant shall not locate or operate a marihuana facility without obtaining all other permits and approvals required by all other applicable ordinances and regulations of the City, as well as, all statutes and regulations of the State of Michigan including but not limited to the Public Health Code, MCL 333.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.; and **the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq.**

(c) **A permit is valid only for the permit holder and location identified on the permit and may only be transferred by approval of the City Commission pursuant to Sections 46-502 (c) & (d) of this article.**

    **(d)**     **The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.**

  ~~(d)~~ **(e)**   The City Clerk shall not **recommend a permit for approval** ~~issue a permit until~~ unless all of the following conditions have been met:

      (1) The fire department and building department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this article.

      (2) The zoning administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit and zoning exception permit.

      (3) The City Treasurer has confirmed that the applicant and the proposed location are not in default to the City.

      (4) The police department has determined that the applicant has met the requirements of this article with respect to the background check and security plan.

      **(5) The legal department has determined that the applicant has satisfied the requirements of this article with respect to submission of all required documents and completeness of the application.**

      **(6) All additional information deemed by the City to be required for consideration of a permit.**

  ~~(e)~~ ~~If approved the city clerk shall issue the applicant a provisional permit or renew an annual permit.~~

  ~~(f)~~ ~~A provisional permit will lapse and be void if such other required permits, valid state licensing, and approvals are not diligently pursued to completion, but in any event no later than 120 days after the provisional permit is issued.~~

  **(f)**   **The City Clerk shall not recommend a permit for renewal unless all of the following additional conditions have been met:**

      **(1) The applicant possesses the necessary State license or approvals, including those issued pursuant to all applicable State and local laws, rules, or ordinances.**

      **(2) The applicant has operated the marihuana facility, establishment or other business in accordance with the conditions and requirements of this article.**

      **(3) The marihuana facility, establishment, or other business has not been declared a public nuisance**

      **(4) The applicant is operating the marihuana facility, establishment or other business in accordance with Federal, State, and local laws and regulations.**

  **(g)**  **If written approval is given by each individual, department, or entity in subsection (e), the City Clerk shall recommend the permit or renewal of an annual permit to the City Commission for approval.**

  ~~(f)~~ **(h)**  A ~~provisional~~ permit will lapse and be void if such other required permits, valid state licensing, and approvals are not diligently pursued to completion, but in any event no later than ~~120~~ 80 days after the ~~provisional~~ permit is issued.

  ~~(g)~~ ~~A signed acknowledgement of permit holder's intent to acquire and maintain a valid marihuana facility license from the State of Michigan is a condition for issuance and maintenance of a marihuana facility permit under this article. In the event of a lapse in the State issued medical marihuana facility license, for any reason, the applicant may not continue operation of any marihuana facility in the City of Adrian, unless and until a valid State license is reinstated or obtained.~~

  ~~(h)~~ **(i)**  Any applicant for a commercial ~~medical~~ marihuana facility, **establishment or other business** permit whose building is not yet in existence at the time of City Commission approval shall have one year immediately following the date of approval to complete construction of the building, in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.

**(j)** Within 90 days of receipt of a complete application and all required fees, all inspections, review and processing of the application shall be completed, and the City Clerk shall make a recommendation to the City Commission to approve or deny the marihuana facility permit.

~~(l)~~ **(k)** The City commission shall approve or deny a permit within 120 days of receipt of the completed application and fees. The processing time may be extended upon written notice by the City for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. No permit is valid until final approval of the City Commission. ~~The City has no obligation to process or approve any incomplete application, and any times provided under this article shall not begin to run until the City receives a completed application, as determined by the City Clerk. A determination of a complete application shall not prohibit the City from requiring supplemental information. The City may delay an application while additional information is requested including, but not limited to, requests for additional disclosures and documentation to be furnished to the department.~~

**(l)** The City has no obligation to process or approve any incomplete application. Any time period provided under this article shall not commence until the City receives a completed application, as determined by the City Clerk. A determination of a complete application shall not prohibit the City from requiring supplemental information. The City may delay an application while additional information is requested including, but not limited to, requests for additional disclosures and documentation to be furnished to the City Clerk.

~~(j)~~ **(m)** If more qualified applications are received than the number of permits allowed for provisioning centers in the B-1 and B-2 districts under this article, the City Commission may review and amend this ordinance as it determines advisable.

~~(k)~~ **(n)** If applicant fails to comply with this article, a permit may be denied as provided under this article. In addition to failing to comply with this article, a permit may be denied for the following reasons:

(1) The applicant made a material misrepresentation on the application.

(2) The applicant fails to correct any deficiencies in the application or supply additional required information.

(3) The applicant fails to satisfy compliance with the municipality, state law, or this ordinance.

(4) The applicant is operating a medical marihuana facility without a current, valid permit.

Any denial of a provisional permit shall be in writing and shall state the reason for the denial.

~~(l)~~ **(o)** ~~Denial of a permit by the City Clerk may be may be appealed to the City Commission.~~ Denial of permit by the City Commission may be appealed to the Circuit Court of this state.

Sec. 46-50~~78~~. - Conduct of permit holder.

(a) Each permit holder shall, as a condition of obtaining and maintaining a permit, agree to comply at all times with applicable local and state building, zoning, fire, health and sanitation statutes, ordinances and regulations.

(b) The premises shall be operated and maintained at all times consistent with responsible business practices and so that no excessive demands will be placed upon public health or safety services, nor any excessive risk of harm to the public health, safety or sanitation.

(c) Permit holder shall immediately notify the City Clerk and update as required the information provided on the application and the permit. Further, the permit holder shall notify the City Clerk, within 10 business days, of any other changes in **the information required by this article or** that may materially affect the state license or the permit. Failure to do so may result in suspension or revocation of the permit.

(d) An applicant or permit holder has a duty to notify the City Clerk in writing **within 10 business days** of any pending criminal charge, and any criminal conviction or other offense, including but

not limited to, Michigan Medical Marihuana Act (MCL 333.26421 et seq.) violations, Medical Marihuana Facilities Licensing Act (MCL 333.27101 et seq.) violations, building, fire, zoning violations by the applicant, permit holder, any owner, principal, officer, director, manager or employee relating to the cultivation, processing, manufacture, storage, sale, distribution, testing or consumption of any form of marihuana within ten days of the event.

(e)   The permit holder may not operate any other commercial medical marihuana facility in the permitted premises or on the permitted property, or in its name at any other location within the city without first obtaining a separate permit.

(f)   ~~The permit holder may not transfer the permit to any other individual or entity.~~ **A signed acknowledgement of the permit holder's intent to acquire and maintain a valid marihuana facility license from the State of Michigan is a condition for issuance and maintenance of a marihuana facility permit under this article. In the event of a lapse in the State issued medical marihuana facility license, for any reason, the applicant may not continue operation of any marihuana facility in the City of Adrian, unless and until a valid State license is reinstated or obtained.**

(g)   Failure to comply with the requirements contained in this ~~section~~ article is a civil infraction.

Sec. 46-50~~88~~89. - Operational requirements.

A commercial medical marihuana facility issued a permit under this article and operating in the city shall at all times comply with the following operational requirements, which the city commission may review and amend from time to time as it determines reasonable.

(1)   Commercial medical marihuana facilities shall comply with the zoning code, the building code, and the property maintenance code at all times.

(2)   The facility must hold a valid local permit and state medical marihuana facility license for the type of commercial medical marihuana facility carried out at the permitted property.

(3)   Each commercial medical marihuana facility shall be operated from the permitted premises on the permitted property. No commercial medical marihuana facility shall be permitted to operate from a moveable, mobile or transitory location, except for a permitted and licensed secure transporter when engaged in the lawful transport of marihuana.

(4)   No person under the age of 18 shall be permitted to enter into the permitted premises without a parent or legal guardian.

(5)   Medical marihuana facilities shall be closed for business and no sale or other distribution of marihuana in any form shall occur upon the premises or be delivered from the premises between the hours of 9:00 p.m. and 7:00 a.m.

(6)   Permit holders shall at all times maintain a security system that meets state law requirements, and shall also include:

a.   Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the permitted premises;

b.   Burglary alarm systems which are professionally monitored and operated 24 hours a day, seven days a week;

c.   A locking safe permanently affixed to the permitted premises that shall store all marihuana and cash remaining at the facility overnight;

d.   All marihuana in whatever form stored at the permitted premises shall be kept in a secure manner and shall not be visible from outside the permitted premises, nor shall it be grown, processed, exchanged, displayed or dispensed outside the permitted premises;

e.   All security recordings and documentation shall be preserved for at least 48 hours by the permit holder and made available to law enforcement upon request for inspection.

(7)   No commercial provisioning center shall be located within 1,000 feet of any of the following uses:

a.  A school, public or private, including pre-school through college or within 250 feet of any of the following uses:

  1.  A church or house of worship located in a residential district.

  2.  A park or playground.

  3.  A state licensed day-care facility as defined in the City of Adrian Zoning Ordinance, definition(s) 2.46.

  4.  A facility that provides substances abuse disorder services as defined by MCL 330.6230S.

(8)  The amount of marihuana on the permitted property and under the control of the permit holder, owner or operator of the facility shall not exceed the amount permitted by the state license.

(9)  The marihuana offered for sale and distribution must be packaged and labeled in accordance with state law. Provisioning centers are prohibited from selling, soliciting or receiving orders for marihuana or marihuana products over the internet.

(10) No pictures, photographs, drawings, or other depictions of marihuana or marihuana paraphernalia shall appear on the outside of any permitted premises nor be visible outside of the permitted premises on the permitted property. The words "marihuana," "cannabis" and any other words used or intended to convey the presence or availability of marihuana shall not appear on the outside of the permitted premises nor be visible outside of the permitted premises on the permitted property.

(11) The sale, consumption, or use of alcohol or tobacco products on the permitted premises is prohibited. Smoking or consumption of controlled substances, including marihuana, on the permitted premises is prohibited.

(12) All activities of commercial medical marihuana facilities, including without limitation, distribution, growth, cultivation, or the sale of marihuana, and all other related activity permitted under the permit holder's license or permit must occur indoors. The facility's operation and design shall minimize any impact to adjacent uses, including the control of any odor by maintaining and operating an air filtration system so that no odor is detectable outside the permitted premises.

(13) A patient may not grow his or her own marihuana at a commercial medical marihuana facility.

(14) No person operating a facility shall provide or otherwise make available marihuana to any person who is not legally authorized to receive marihuana under state law.

(15) All necessary building, electrical, plumbing and mechanical permits must be obtained for any part of the permitted premises in which electrical, wiring, lighting or watering devices that support the cultivation, growing, harvesting or testing of marijuana are located.

(16) The permit holder, owner and operator of the facility shall use lawful methods in controlling waste or by-products from any activities allowed under the license or permit.

(17) Marihuana may be transported by a secure transporter within the city under this article, and to effectuate its purpose, only:

  a.  By persons who are otherwise authorized by state law to possess marihuana for medical purposes;

  b.  In a manner consistent with all applicable state laws and rules, as amended;

  c.  In a secure manner designed to prevent the loss of the marihuana;

  d.  No vehicle used for transportation or delivery of marihuana under this article shall have for markings the words "marihuana," "cannabis," or any similar words; pictures or other renderings of the marihuana plant; advertisements for marihuana or for its sale, transfer, cultivation, delivery, transportation or manufacture, or any other word, phrase or symbol indicating or tending to indicate that the vehicle is transporting marihuana.

e. No vehicle may be used for the ongoing or continuous storage of marihuana, but may only be used incidental to, and in furtherance of, the transportation of marihuana.

(18) The city commission may impose such reasonable terms and conditions on a commercial medical marihuana facility special use as may be necessary to protect the public health, safety and welfare, and to obtain compliance with the requirements of this article and applicable law.

(19) No facility shall be operated in a manner creating noise, dust, vibration, glare, fumes, or odors beyond the boundaries of the property on which the facility is operated; or creating any other nuisance that hinders the public health, safety and welfare of the residents of the City of Adrian.

Sec. 46-50910. - Effective permit; suspension; daily violation.

(a) A permit is valid only for the location identified on the permit and cannot be transferred to another location in the city without a new application.

(b) A permit is valid for one year from the date of issuance.

(c) The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.

(d) (a) Acceptance by the permit holder of the permit constitutes consent by the permit holder and its owners, officers, managers, agents and employees for any state, federal or local law enforcement to conduct random and unannounced examinations of the facility and all articles of property in that facility at any time to ensure compliance with this article, and any other local regulations. and with the permit.

(b) **The City may require an applicant or permit holder of a marihuana facility, establishment, or other business to produce documents, records, or any other material pertinent to the investigation of an application or alleged violation of this article. Failure to provide the required material may be grounds for application denial or permit revocation.**

(e) (c) **Issuance of** a permit does not prohibit prosecution by the federal government for violation of its laws or prosecution by state authorities for violations of the Act or other violations not protected by the Act.

(f) (d) Compliance with city ordinances and state statutes is a condition of maintenance of a permit and a permit may be suspended for failure to comply with any of the provisions of this section **article. The City Administrator may suspend the permit for failure to comply. Appeals of an administrative suspension must be made in writing, to the attention of the City Clerk, within 30 days after the suspension notice has been served on the permit holder or posted on the permitted premises. Appeals shall be heard by the City Commission at the next regularly scheduled meeting after receipt of the written appeal.**

(g) Suspension of a permit is not an exclusive remedy and nothing contained herein is intended to limit the city's ability to prosecute code violations that may have been the cause of the suspension or any other code violations not protected by this Act.

(h) Violations of the provisions of this article or failure to comply with any of the requirements of this article is a civil infraction. The fine for this civil infraction is $500.00 and abatement costs of each violation together with all remedies available under MCL 600.8701 et seq. Each day a violation continues shall be deemed a separate civil infraction.

(i) Operating a medical marihuana facility without a valid permit or assisting in the operation of a medical marihuana facility without a valid permit for that property is a civil infraction. The fine for this civil infraction shall be $500.00. Each day that a person shall operate a medical

~~marihuana facility without a permit or assist in the operation of a medical marijuana facility without a valid permit in effect for that property shall constitute as a separate offense.~~

(e) Suspension of a permit is not an exclusive remedy and the penalty provisions of this article are not intended to foreclose any other remedy or sanction that might be available to, or imposed by the City, including criminal prosecution.

~~(f)~~ (f) In addition to any other remedies, the City may institute proceedings for injunction, mandamus, abatement or other appropriate remedies to prevent, enjoin, abate or remove any violations of this article. The rights and remedies provided herein are civil in nature. The imposition of a fine shall not exempt the violator from compliance with the provisions of this article.

**Sec 46-511 - Permit revocation; bases for revocation or denial; appeal of permit revocation or denial.**

a) Any permit issued under this article may be recommended for revocation by the City Clerk to the Adrian City Commission if the City Clerk finds and determines that grounds for revocation exist. Any grounds for revocation must be provided to the permit holder at least ten days prior to the date of the City Commission meeting at which the recommendation for revocation will be heard.  Notice of the meeting shall be sent by first class mail to the mailing address given on the permit application or any updated mailing address provided to the City Clerk in writing subsequent to the filing of an application.

b) A permit applied for or issued may be denied or revoked on any basis provided under this article including the following:

(1) A material violation of any provision of this article, including, but not limited to, the failure to submit a complete application under Sec. 46-505; or

(2) Any conviction of a disqualifying felony by the permit holder, stakeholder, or any person holding an ownership interest in the permit; or

(3) Commission of fraud or misrepresentation or the making of a false statement by the applicant, permit holder, or any stakeholder of the applicant or permit holder while engaging in any activity for which this article requires a permit; or

(4) Failure to obtain, maintain or renew a permit issued by the City Clerk pursuant to this article; or

(5) Failure of the permit holder or the marihuana facility, establishment or other business to obtain or maintain a license or approval from the State pursuant to the State or other laws; or

(6) The marihuana facility, establishment or other business is determined by the City to have become a public nuisance or otherwise is operating in a manner detrimental to the public health, safety or welfare.

c) The denial of an application or revocation of a permit by the City Commission shall be final for purposes of judicial review.

**Sec. 46-512. - Violations municipal civil infraction.**

Any person and/or entity in violation of any provision of this article or failure to comply with any of the requirements of this article, including the operation of a marihuana facility, establishment, or other business without a permit issued pursuant to this article, is responsible for a municipal civil infraction violation. The City shall assess fines and abatement costs of each violation together with all remedies available under MCL 600.8701

et seq.  Increased civil fines may be imposed for a repeat violation. As used in this section "repeat violation" shall mean a second or any subsequent infraction of the same requirement or provision committed by a person or establishment within any 12-month period. Fines for each offense shall be as set forth in Section 2-373 of the Adrian City Code.

Each day a violation continues, including each day that a person shall operate a medical marihuana facility without a permit or assist in the operation of a medical marijuana facility without a valid permit in effect for that property, shall constitute a separate offense.  Upon the third offense in any 12-month period, a recommendation for permit denial or revocation may be made to the City Commission.

Sec. 46-51̶0̶3. - Fees for **permits** l̶i̶c̶e̶n̶s̶e̶s̶.

The fees for the permit herein defined shall be set by resolution of the city commission. The fee shall defray the costs incurred by the city for inspection, administration and enforcement of this article and shall not exceed any limitations imposed by Michigan law.

Sec. 46-51̶1̶4. - Severability.

The provisions of this article are hereby declared severable. If any part of this article is declared invalid for any reason by a court of competent jurisdiction, that declaration does not affect or impair the validity of all other provisions that are not subject to that declaration.

INTRODUCTION .............................................................April 29, 2019

ADOPTION ....................................................................April 29, 2019

EFFECTIVE DATE............................................................May 14, 2019

Commissioners had questions regarding our waitlisted applicants and suspended permit holders.  City Attorney Henagan addressed their questions and explained the process we use.  Also discussed was the option to add more applicants to the B1/B2 district and if that could be done by Resolution.

On motion by Commissioner **Dudas,** seconded by Commissioner **Strayer,** this Ordinance was **adopted** by a **6-0** vote.  EFFECTIVE DATE:  May 14, 2019

**RESOLUTIONS**

**R19-052 - CITY ATTORNEY** – Approval of Medical Marihuana Renewal Application and New Application Period and Fee Schedule

**RESOLUTION**

WHEREAS, on December 13, 2017 the Adrian City Commission adopted an ordinance to create Section 46-500 of Chapter 46 of the Adrian City Code titled "Commercial Medical Marihuana Facilities"; and

WHEREAS, on April 2, 2018, the Adrian City Commission approved resolution R18-042 approving a medical marihuana application period and application fee for 2018; and

WHEREAS, an annual application period schedule needs to be set for 2019; and

WHEREAS, it is the recommendation of City staff to accept applications for renewal permits beginning May 8, 2019 until close of business May 31, 2019; and

WHEREAS, it is also the recommendation of City staff to accept applications for new permits beginning June 3, 2019 until close of business on July 31, 2019; and

WHEREAS, City staff further recommends that a nonrefundable $5,000 fee be established for renewal applications and new applications for each permit type applied for to defray administrative and enforcement costs.

NOW THEREFORE, BE IT RESOLVED that the Adrian City Commission by this resolution approves of a renewal permit application period from May 8, 2019 until close of business on May 31, 2019.

BE IT FURTHER RESOLVED that the Adrian City Commission by this resolution approves of an new permit application period from June 3, 2019 until close of business on July 31, 2019.

BE IT FURTHER RESOLVED that the Adrian City Commission by this resolution sets a nonrefundable $5,000 fee for renewal applications and new applications for each permit type applied for to defray administrative and enforcement costs.

**On motion by Commissioner Heldt, seconded by Commissioner Dudas, this Resolution was approved by a 6-0 vote.**

**R19-053 - ADMINISTRATION – Farm Lease Agreement with Shane Bierman – Former Witt Farm**

**RESOLUTION**

WHEREAS, the City of Adrian is the owner of approximately Forty Seven and 68/100 (47.68) acres of land adjacent to M-52, formerly known as the Witt Farm; and

WHEREAS, a portion of the real estate is tillable; and

WHEREAS, the Witt farm was previously leased for several years by Fred Feight, however this year Mr. Feight informed the City he no longer wished to lease the property; and

WHEREAS, City of Adrian Purchasing Office has solicited and received a sole bid for $225.00 per acre from Shane Bierman on April 10, 2019; and

WHEREAS, it is the recommendation of City staff that the lease of property formerly known as the Witt Farm to the sole bidder, Shane Bierman, be approved.

NOW, THEREFORE, IT IS HEREBY RESOLVED that the Mayor is hereby authorized to enter into a Farm Lease Agreement with Shane Bierman to rent approximately Forty Seven and 68/100 (47.68) acres of tillable ground on the above-mentioned parcel of real estate for Two Hundred Twenty Five ($225.00) Dollars per acre for a period ending December 31, 2019, and subject to other terms acceptable to the City Administrator.

**On motion by Commissioner Dudas, seconded by Commissioner Strayer, this Resolution was approved by a 6-0 vote.**

**R19-054. ADMINISTRATION** - Resolution approving a lease agreement for property formerly known as the Marvin Farm (53 acres). **REMOVED FROM AGENDA**

**R19-055 - ADMINISTRATION – Farm Lease Agreement with James Marvin – Former Marvin Farm**

**RESOLUTION**

WHEREAS, the City of Adrian is the owner of approximately one hundred fifty seven (157) acres of land adjacent to Beecher Road in the City of Adrian; and

WHEREAS, a portion of the real estate is tillable; and

**R19-052**                                                    April 29, 2019

**RE:    CITY ATTORNEY – Approval of Medical Marihuana Renewal Application and New Application Period and Fee Schedule**

### RESOLUTION

WHEREAS, on December 13, 2017 the Adrian City Commission adopted an ordinance to create Section 46-500 of Chapter 46 of the Adrian City Code titled "Commercial Medical Marihuana Facilities"; and

WHEREAS, on April 2, 2018, the Adrian City Commission approved resolution R18-042 approving a medical marihuana application period and application fee for 2018; and

WHEREAS, an annual application period schedule needs to be set for 2019; and

WHEREAS, it is the recommendation of City staff to accept applications for renewal permits beginning May 8, 2019 until close of business May 31, 2019; and

WHEREAS, it is also the recommendation of City staff to accept applications for new permits beginning June 3, 2019 until close of business on July 31, 2019; and

WHEREAS, City staff further recommends that a nonrefundable $5,000 fee be established for renewal applications and new applications for each permit type applied for to defray administrative and enforcement costs.

NOW THEREFORE, BE IT RESOLVED that the Adrian City Commission by this resolution approves of a renewal permit application period from May 8, 2019 until close of business on May 31, 2019.

BE IT FURTHER RESOLVED that the Adrian City Commission by this resolution approves of an new permit application period from June 3, 2019 until close of business on July 31, 2019.

BE IT FURTHER RESOLVED that the Adrian City Commission by this resolution sets a nonrefundable $5,000 fee for renewal applications and new applications for each permit type applied for to defray administrative and enforcement costs.

On motion by Commissioner _____, seconded by Commissioner _____, this resolution was _____ by a _____ vote

EXHIBIT 38

**AGENDA**
**ADRIAN CITY COMMISSION**
**SPECIAL MEETING**
**May 9, 2019 @ 7:00PM**

Official proceedings of the May 9, 2019 Special Meeting of the City Commission, Adrian, Michigan.

The meeting was opened with a moment of silence and followed by the Pledge of Allegiance to the Flag.

PRESENT: Mayor Jacobson & Commissioners Heldt, Watson, Dudas, Strayer, Roberts and Valentine.

Mayor Jacobson in the Chair.

I. DISCUSSION OF COMPLAINT BROUGHT AGAINST PUBLIC OFFICER, EMPLOYEE, STAFF MEMBER OR INDIVIDUAL AGENT.

  o Mayor Jacobson mentioned that it was a complaint brought against the City Attorney.

- The mayor explained to City Attorney Tamaris Henagan that she had the option to have the meeting in public session or go into closed session.
- City Attorney Tamaris Henagan chose to go into closed session.

A motion was made by Commissioner Heldt for the City Commission to go into closed session under Section 8a of the OMA to hear a complaint against the individual agent. This was supported by Commissioner Watson, and was approved by a 7-0 vote.

**PUBLIC COMMENT**

Public comment was heard regarding the passing of ordinances the past year and if the issues are being looked into.

**COMMISSIONER COMMENTS**

None

EXHIBIT 39

**AGENDA**
**ADRIAN CITY COMMISSION**
**May 20, 2019,**
**7:00PM**

I.     PRAYER AND PLEDGE OF ALLEGIANCE TO THE FLAG

II.    ROLL CALL

III.   APPROVAL OF THE MINUTES OF THE MAY 6, 2019 REGULAR MEETING OF THE ADRIAN CITY COMMISSION.

IV.    APPROVAL OF THE MINUTES OF THE MAY 9, 2019 SPECIAL MEETING OF THE ADRIAN CITY COMMISSION.

V.     PRESENTATION OF ACCOUNTS

VI.    COMMUNICATIONS

    1. **C-1. Finance.**  Revenue & Expenditure Report for April.

VII.   REGULAR AGENDA

    A.  ORDINANCES

        1. **Ord. 19-001.**  First reading and Introduction of an ordinance to amend Article XI of the Adrian City Code, Commercial Medical Marihuana Facilities and Adult Use Establishments.

    B.  RESOLUTIONS

        1. **R19-068.  Administration.**  Resolution to approve revised Medical Marihuana Renewal and New Application Period.

        2. **R19-069.  Transportation.**  Resolution to approve a project authorization for Federal Operating Assistance for the Adrian Dial-A-Ride.

        3. **R19-070.  Parks & Engineering Services.**  Resolution to award a bid for Design & Construction Oversight of College Avenue Bridge & Bent Oak Bridge Preventative Maintenance.

        4. **R19-071.  Parks & Engineering Services.**  Resolution to award a bid for Portable Toilets.

        5. **R19-072.  Community Development.**  Resolution to support the Reinstatement of State Historic Tax Credits.

VIII.  MISCELLANEOUS

    1.  Adrian Fire Department Report.

EXHIBIT 40

2. Departmental Report.

3. D.A.R.T. Passenger Ridership Report.

4. Code Enforcement Report.

5. Planning Commission Meeting Minutes.

6. HRC Meeting Minutes.

7. DDA Meeting Minutes.

IX.  PUBLIC COMMENT

X.  COMMISSIONER COMMENTS



# REGULAR AGENDA

ARTICLE XI. - COMMERCIAL MEDICAL MARIHUANA FACILITIES AND ADULT USE ESTABLISHMENTS

DIVISION 1. - GENERALLY

Sec. 46-500. - Legislative intent.

The purpose of this article is to implement the provisions of the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016, and the Michigan Regulation and Taxation Act initiated Law 1 of 2018, which authorizes the licensing and regulation of commercial medical marihuana facilities or commercial adult use establishments; affords the city the option to allow commercial medical marihuana facilities or commercial adult use establishments; and the authority to regulate commercial medical marihuana facilities or commercial use establishments by requiring a permit and compliance with requirements as provided in this article, in order to maintain the public health, safety and welfare of the public.

Nothing in this article is intended to grant immunity from criminal or civil prosecution, penalty, or sanction for the cultivation, manufacture, possession, use, sale, or distribution of marihuana, in any form, that is not in compliance with the Michigan Medical Marihuana Act, Initiated Law of 2008, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; the Michigan Marihuana Tracking Act, MCL 333.27901 et seq.; the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq.; and all other applicable rules promulgated by the state of Michigan.

As of the effective date of this article, marihuana remains classified as a Schedule 1 controlled substance under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq., which makes it unlawful to manufacture, distribute, or dispense marihuana, or possess marihuana with the intent to manufacture, distribute, or dispense marihuana. Nothing in this article is intended to grant immunity from any criminal prosecution under federal laws.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 6-7-2018)

Sec. 46-501. - Definitions.

For the purpose of this article the following words, terms, and phrases shall have the meanings ascribed to them in this section, except when the context clearly indicates a different meaning.

Any term defined by the Michigan Medical Marihuana Act. MCL 333.2621 et seq., shall have the definition given in the Michigan Medical Marihuana Act.

Any term defined by the Michigan Medical Marihuana Facilities Licensing Act. MCL 333.27101 et seq., shall have the definition given in the Michigan Medical Marihuana Facilities Licensing Act.

Any term defined by the Michigan Medical Marihuana Tracking Act. MCL 333.27901 et seq., shall have the definition given in the Michigan Medical Marihuana Tracking Act

Any term defined by the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq., shall have the definition given in the Michigan Regulation and Taxation of Marihuana Act.

*City* means the City of Adrian.

*Department* means the Michigan State Department of Licensing and Regulatory Affairs or any authorized designated Michigan agency authorized to regulate, issue or administer a Michigan license for a commercial medical marihuana facility or commercial adult use establishments.

*Enclosed building* means a combination of materials forming a structure affording a facility or shelter for use or occupancy by individuals or property in which a proper ventilation system allows for all windows, entrances, and exits may safely remain closed, with the exceptions of normal entry and exit of the building for business purposes, and safety or emergency purposes i.e. fire. Building includes a part or parts of the building and all equipment in the building. A building shall not be construed to mean a building incidental to the use for agricultural purposes of the land on which the building is located.

*Grower* or *grower facility* means a commercial entity that cultivates, dries, trims, or cures and packages marihuana for sale to a processor or provisioning center. Grower facilities are divided into classes: Class A facility — up to 500 plants; Class B facility — up to 1,000 plants; and Class C facility — up to 1,500 plants.

*License* means a current, valid license for a commercial medical marihuana facility issued by the State of Michigan.

*Licensee* means a person holding a current, valid Michigan license for a commercial medical marihuana facility.

*Marihuana* means that term as defined in section 7106 of the public health code, 1978 PA 368, MCL 333.7106.

*Marihuana plant(s)"* means any plant of the species Cannabis sativa L.

*Medical Marihuana* means that term as defined in the Public Health Code, MCL 333.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; and the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.

*Medical marihuana facility(s)* means any facility, establishment and/or center at a specific location which is licensed under this article to operate under the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., including a provisioning center, grower, processor, safety compliance facility, and secure transporter. The term does not include or apply to a "primary caregiver" or "caregiver" as the term is defined in the Michigan Medical Marihuana Act, MCL 333.26421 et seq.

*Permit* means a current, valid permit for a commercial medical marihuana facility issued pursuant to this article, granted to a permit holder valid for a specific permitted premises and a specific permitted property.

*Permit holder* means the person that holds a current, valid permit under this article.

*Permitted premises* means the particular building or buildings within which the permit holder will be authorized to conduct the facility's activities pursuant to the permit.

*Permitted property* means the real property comprised of the lot, parcel or other designated unit of real property upon which the permitted premises is situated.

*Person* means a natural person, company, partnership, profit or non-profit corporation, limited liability company, or any joint venture for a common purpose.

*Processor* or *processor facility* means a commercial entity that purchases marihuana from a grower and that extracts resin from the marihuana or creates a marihuana-infused product for sale and transfer in packaged form to a provisioning center.

*Provisioning center* means a commercial entity that purchases marihuana from a grower or processor and sells, supplies, or provides marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers. Provisioning center includes any commercial property where marihuana is sold at retail to registered qualifying patients or registered primary caregivers. The term does not include or apply to a non-commercial location used by a primary caregiver to assist a qualifying patient connected to the caregiver through the department's marihuana registration process in accordance with the MMMA.

*Safety compliance facility* means a commercial entity that receives marihuana from a medical marihuana facility or registered primary caregiver, tests it for contaminants and for tetrahydrocannabinol and other cannabinoids, returns the test results, and may return the marihuana to the medical marihuana facility.

*School* (as defined in MCL 257.627a) means an educational institution operated by a local school district or by a private, denominational, or parochial organization. School does not include either of the following:

(1) An educational institution that the department of education determines has its entire student population in residence at the institution.

(2) An educational institution to which all students are transported in motor vehicles.

*Secure transporter* means a commercial entity that stores medical marihuana and transports medical marihuana between medical marihuana facilities for a fee.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 6-7-2018)

DIVISION 2. - PERMITS

Sec. 46-502. —Generally.

(a) No person shall operate a commercial marihuana facility, establishment or other business which requires State Licensure, in the city without first obtaining a permit from the City Clerk. Further, any permit application approved pursuant to this article should not be effective and no marihuana facility, establishment, or other business which requires state licensure may operate unless said operation is pursuant to a license or approval issued under the authorized State Licensing Agency.

(b) The issuance of any permit or renewal permit pursuant to this article shall not confer any vested rights, property or other right, duty, privilege or interest in a permit of any kind or nature whatsoever including, but not limited to, any claim of entitlement or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval.

(c) A permit holder may transfer a permit issued under this article to a different location upon receiving approval from the City Commission. In order to request approval to transfer a permit location, the permit holder must make a written request to the City Clerk, indicating the current permit location and the proposed permit location. Upon receiving the written request, the City Clerk shall refer a copy of the written request to each of the following for their approval: the Fire Department, the Building Inspection Department, the Police Department, the Zoning Administrator, and the City Treasurer. Prior to final approval of transfer the permit holder must submit an updated application and any supporting documents. No permit transfer shall be recommended for approval unless each individual department gives written approval that the permit holder and the proposed permit location meet the standards identified in this article, including but not limited to Section 46-505, and the City Clerk has determined the proposed location meets the requirements of Section 46-505.

(d) A permit holder may transfer a valid permit issued under this article to a new individual or entity upon obtaining approval from the City Commission. A request for transfer of a valid permit to a new individual or entity must be made in writing, to the City Clerk. The permit holder must provide documentation from the State Agency indicating the State License may be transferred. Upon receiving the written request the City Clerk shall consider the request as a new application for a permit and the procedures set forth in Section (46-505) shall be followed including submission of the non-refundable permit application fee. Application fees are non-transferable.

(e) A permit holder must submit to the City a copy of their valid state license within 180 days of issuance of the permit under this article. Failure to provide such proof may result in suspension or revocation of the permit.

(f) If a permit holder has not obtained a valid state license at the end of 180 days, they may request an extension of time on a form provided by the City Clerk. The City Clerk may require additional/supplemental information to confirm the reasons for delay. Failure to provide the required information may result in denial of extension. Extensions will be granted or denied by the City Clerk. The granting of an extension shall not exceed 120 days or the expiration date of the current permit.

(g) If the facility is a new build/construction and State licensing has not been issued within 180 days, the permit holder may request a form from the City Clerk to apply for building and/or fire inspection waivers. A waiver will be granted or denied by the City Clerk. The granting of a waiver shall not exceed one year or the expiration date of the current permit.

(h) To the extent permissible under law, all information submitted in conjunction with an application for a permit or permit renewal required by this article is confidential and exempt from disclosure under the Michigan Freedom of Information Act, 1976 PA 442, MCL 15.231 et seq., including the trade secrets or commercial or financial information exemptions available under section 13(f) of the Michigan Freedom of Information Act. Furthermore, no personal or medical information concerning the applicant shall be submitted to the Medical Marihuana Commission.

Sec. 46-503. - Commercial medical marihuana facilities authorized to operate in the city.

(a) Growers, Class A, B and C.

(b) Processors.

(c) Provisioning centers.

(d) Safety compliance facilities.

(e) Secure transporters.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-504. - Number of facilities authorized by city.

(a) Growers:

Class A: unlimited

Class B: unlimited

Class C: unlimited

(b) Processors: unlimited

(c) Provisioning centers: Ten permits in the B-1 and B-2 districts combined, unlimited in the Industrial overlay district.

(d) Safety compliance facilities: unlimited

(e) Secure transporters: unlimited

Sec. 46-505. – Requirements for permit application submission.

1. Every marihuana facility, establishment, or other business in the City shall be subject to the terms and provisions set forth in this article. No person shall operate a marihuana facility, establishment, or other business in the City without a current, valid permit issued by the City pursuant to the provisions of this article. The permit requirements set forth in this article shall be in addition to, not in lieu of any other licensing and/or permitting requirements imposed by any other federal, state, or local law.

2. Applications for permits shall be made annually. Each complete application for a permit or permits required by this article shall be made on forms provided by the City Clerk.

3. Every applicant for a marihuana facility, establishment, or other business permit shall complete and file the application form provided by the City Clerk's office. Any application missing information in any required field will be deemed incomplete and is subject to denial of the permit by the City Clerk. Each question in the application must be answered in its entirety and all the information requested and required by this article must be submitted with the application. Failure to comply with these rules and the application requirements in this article is grounds for denial of the application. An application for a medical marihuana facility permit shall contain any information required by the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., and shall also contain all of the following:

a. Current documentation from the State of Michigan showing approved pre-qualification status for a State Medical Marihuana License or a copy of a valid State Medical Marihuana License.

b. If the applicant is an individual, the applicant's name, date of birth, physical address, email, one or more phone numbers, including emergency contact information, and a copy of a valid unexpired driver's license or State ID for the applicant. Acceptable ID will be issued by the State in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.

c. If the applicant is not an individual, the names, dates of birth, physical addresses, email addresses, and one or more phone numbers of each stakeholder of the applicant, including designation of a stake holder as an emergency contact person and contact information for the emergency contact person, a copy of a valid unexpired driver's license or State ID for each applicant or stakeholder of the applicant. Acceptable ID will be issued by the state in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq. Additionally, if the applicant is a Limited Liability Company, articles of incorporation of organization, internal revenue service SS-4 EIN confirmation letter, and the operating agreement or bylaws of the applicant, are required.

d. The name and address of the proposed medical marihuana facility and any additional contact information deemed necessary by the City Clerk including name, address, and telephone number of the owner(s) of all real property where the facility is located.

e. One of the following: (a) proof of ownership of the entire premises wherein the medical marihuana facility is to be operated; or (b) a notarized statement from the property owner for use of the premises in a manner requiring licensure under this article along with a copy of any lease for the premises.

f. A signed release shall be provided, on a form included with the application, permitting the City Police Department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any disqualifying felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other State or the United States.

g. A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim demand, action, legal redress or recourse against the city, its elected and appointed officials and its employees and agents for any claims, damages, liabilities, causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders, employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the city, its elected and appointed officials, employees, attorneys, and agents.

h. A signed acknowledgement that all cultivation must be performed in an enclosed building.

i. An affidavit that neither the applicant nor any stakeholder of the applicant is in default to the City, specifically that the applicant or stakeholder of the applicant has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the City.

j. For each permit type the following documentation is required:

a. Proof of a surety bond in the amount of $100,000.00 with the City listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article in a manner and surety approved by the City Attorney: or, in the alternative,

b. Proof of creation of an escrow account as follows:

   I. The account must be provided by a State or federally regulated financial institution or other financial institution approved by the City Attorney based upon an objective assessment of the institution's financial stability; and

   II. The account must be for the benefit of the City to guarantee performance by licensee in compliance with this article and applicable law; and

   III. The account must be in the amount of $20,000.00 and in a form prescribed by the City Attorney.

k. Proof of an insurance policy covering each facility and naming the City, its elected and appointed officials, employees, and agents, as additional insured parties, available for the payment of any damages arising out of an act or omission of the applicant or its stakeholders, agents, employees, or subcontractors, in the amount of (a) at least $1,000,000.00 for property damage: (b) at least $1,000,000.00 for injury to one person; and (c) at least $2,000,000.00 for injury to two or more persons resulting from the same occurrence. The insurance policy underwriter must have a minimum A.M. Best Company insurance ranking of B+, consistent with State law. The policy shall provide that the City shall be notified by the insurance carrier 30 days in advance of any cancellation.

l. Any other information deemed by the city to be required for consideration of a permit.

4. All applications shall be accompanied by a non-refundable permit application fee for each permit type. The renewal fee is established to defray the costs of the administration of this article and is set by resolution of the City Commission.

Sec. 46–506 –Requirements for application for renewal of annual permit.

a) A completed application for a renewal permit must be received by the City Clerk no later than 90 days prior to the expiration of the current permit. Pending applications for annual renewal or amendments of existing permits shall be reviewed, and granted or denied by the City Commission prior to new permit applications being considered.

b) Applications for renewal of permits shall be made annually. Each complete application for a permit or permits required by this article shall be made on forms provided by the City Clerk and must meet all requirements of Section 46-505.

   1. Applications for renewal of permits issued in 2018 only shall qualify for an exception to Sec. 506 (a).

c) All renewal applications shall be accompanied by a non-refundable permit application fee for each permit type. The renewal fee is established to defray the costs of the administration of this article, and is set by resolution of the City Commission.

Sec. 46-507. – Issuance or denial of new or renewal permit.

(a) Upon submission of an applicant's completed application, including all required information and documentation, the City Clerk shall accept the application and assign it a sequential number based on the date and time the application was accepted and refer a copy of the application to

each of the following for their approval: the Fire Department, the Building Inspection Department, the Police Department, the Zoning Administrator, the City Treasurer, and the Legal Department.

(b) A permit means only that the applicant has submitted a valid application for a marihuana facility, establishment, or other business permit, and that the applicant shall not locate or operate a marihuana facility without obtaining all other permits and approvals required by all other applicable ordinances and regulations of the City, as well as, all statutes and regulations of the State of Michigan including but not limited to the Public Health Code, MCL 333.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.; and the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq.

(c) A permit is valid only for the permit holder and location identified on the permit and may only be transferred by approval of the City Commission pursuant to Sections 46-502 (c) & (d) of this article.

(d) The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.

(e) The City Clerk shall not recommend a permit for approval unless all of the following conditions have been met:

    (1) The fire department and building department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this article.

    (2) The zoning administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit and zoning exception permit.

    (3) The City Treasurer has confirmed that the applicant and the proposed location are not in default to the City.

    (4) The police department has determined that the applicant has met the requirements of this article with respect to the background check and security plan.

    (5) The legal department has determined that the applicant has satisfied the requirements of this article with respect to submission of all required documents and completeness of the application.

    (6) All additional information deemed by the City to be required for consideration of a permit.

(f) The City Clerk shall not recommend a permit for renewal unless all of the following additional conditions have been met:

    (1) The applicant possesses the necessary State license or approvals, including those issued pursuant to all applicable State and local laws, rules, or ordinances.

    (2) The applicant has operated the marihuana facility, establishment or other business in accordance with the conditions and requirements of this article.

    (3) The marihuana facility, establishment, or other business has not been declared a public nuisance

    (4) The applicant is operating the marihuana facility, establishment or other business in accordance with Federal, State, and local laws and regulations.

(g) If written approval is given by each individual, department, or entity in subsection (e), the City Clerk shall recommend the permit or renewal of an annual permit to the City Commission for approval.

(h) A permit will lapse and be void if such other required permits, valid state licensing, and approvals are not diligently pursued to completion, but in any event no later than 180 days after the permit is issued.

(i)     Any applicant for a commercial marihuana facility, establishment or other business permit whose building is not yet in existence at the time of City Commission approval shall have one year immediately following the date of approval to complete construction of the building, in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.

(j)     Within 90 days of receipt of a complete application and all required fees, all inspections, review and processing of the application shall be completed, and the City Clerk shall make a recommendation to the City Commission to approve or deny the marihuana facility permit.

(k)     The City commission shall approve or deny a permit within 120 days of receipt of the completed application and fees. The processing time may be extended upon written notice by the City for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. No permit is valid until final approval of the City Commission.

(l)     The City has no obligation to process or approve any incomplete application. Any time period provided under this article shall not commence until the City receives a completed application, as determined by the City Clerk. A determination of a complete application shall not prohibit the City from requiring supplemental information. The City may delay an application while additional information is requested including, but not limited to, requests for additional disclosures and documentation to be furnished to the City Clerk.

(m)    If more qualified applications are received than the number of permits allowed for provisioning centers in the B-1 and B-2 districts under this article, the City Commission may review and amend this ordinance as it determines advisable.

(n)     If applicant fails to comply with this article, a permit may be denied as provided under this article. In addition to failing to comply with this article, a permit may be denied for the following reasons:

    (1)     The applicant made a material misrepresentation on the application.

    (2)     The applicant fails to correct any deficiencies in the application or supply additional required information.

    (3)     The applicant fails to satisfy compliance with the municipality, state law, or this ordinance.

    (4)     The applicant is operating a medical marihuana facility without a current, valid permit.

    Any denial of a provisional permit shall be in writing and shall state the reason for the denial.

(o)     Denial of permit by the City Commission may be appealed to the Circuit Court of this state.

Sec. 46-508. - Conduct of permit holder.

(a)     Each permit holder shall, as a condition of obtaining and maintaining a permit, agree to comply at all times with applicable local and state building, zoning, fire, health and sanitation statutes, ordinances and regulations.

(b)     The premises shall be operated and maintained at all times consistent with responsible business practices and so that no excessive demands will be placed upon public health or safety services, nor any excessive risk of harm to the public health, safety or sanitation.

(c)     Permit holder shall immediately notify the City Clerk and update as required the information provided on the application and the permit. Further, the permit holder shall notify the City Clerk, within 10 business days, of any other changes in the information required by this article or that may materially affect the state license or the permit. Failure to do so may result in suspension or revocation of the permit.

(d)     An applicant or permit holder has a duty to notify the City Clerk in writing within 10 business days of any pending criminal charge, and any criminal conviction or other offense, including but not limited to, Michigan Medical Marihuana Act (MCL 333.26421 et seq.) violations, Medical Marihuana Facilities Licensing Act (MCL 333.27101 et seq.) violations, building, fire, zoning violations by the

applicant, permit holder, any owner, principal, officer, director, manager or employee relating to the cultivation, processing, manufacture, storage, sale, distribution, testing or consumption of any form of marihuana within ten days of the event.

(e)   The permit holder may not operate any other commercial medical marihuana facility in the permitted premises or on the permitted property, or in its name at any other location within the city without first obtaining a separate permit.

(f)   A signed acknowledgement of the permit holder's intent to acquire and maintain a valid marihuana facility license from the State of Michigan is a condition for issuance and maintenance of a marihuana facility permit under this article. In the event of a lapse in the State issued medical marihuana facility license, for any reason, the applicant may not continue operation of any marihuana facility in the City of Adrian, unless and until a valid State license is reinstated or obtained.

(g)   Failure to comply with the requirements contained in this article is a civil infraction.

Sec. 46-509. - Operational requirements.

A commercial medical marihuana facility issued a permit under this article and operating in the city shall at all times comply with the following operational requirements, which the city commission may review and amend from time to time as it determines reasonable.

(1)   Commercial medical marihuana facilities shall comply with the zoning code, the building code, and the property maintenance code at all times.

(2)   The facility must hold a valid local permit and state medical marihuana facility license for the type of commercial medical marihuana facility carried out at the permitted property.

(3)   Each commercial medical marihuana facility shall be operated from the permitted premises on the permitted property. No commercial medical marihuana facility shall be permitted to operate from a moveable, mobile or transitory location, except for a permitted and licensed secure transporter when engaged in the lawful transport of marihuana.

(4)   No person under the age of 18 shall be permitted to enter into the permitted premises without a parent or legal guardian.

(5)   Medical marihuana facilities shall be closed for business and no sale or other distribution of marihuana in any form shall occur upon the premises or be delivered from the premises between the hours of 9:00 p.m. and 7:00 a.m.

(6)   Permit holders shall at all times maintain a security system that meets state law requirements, and shall also include:

a.   Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the permitted premises;

b.   Burglary alarm systems which are professionally monitored and operated 24 hours a day, seven days a week;

c.   A locking safe permanently affixed to the permitted premises that shall store all marihuana and cash remaining at the facility overnight;

d.   All marihuana in whatever form stored at the permitted premises shall be kept in a secure manner and shall not be visible from outside the permitted premises, nor shall it be grown, processed, exchanged, displayed or dispensed outside the permitted premises;

e.   All security recordings and documentation shall be preserved for at least 48 hours by the permit holder and made available to law enforcement upon request for inspection.

(7)   No commercial provisioning center shall be located within 1,000 feet of any of the following uses:

      a.    A school, public or private, including pre-school through college or within 250 feet of any of the following uses:

          1.    A church or house of worship located in a residential district.

          2.    A park or playground.

          3.    A state licensed day-care facility as defined in the City of Adrian Zoning Ordinance, definition(s) 2.46.

          4.    A facility that provides substances abuse disorder services as defined by MCL 330.6230S.

(8)    The amount of marihuana on the permitted property and under the control of the permit holder, owner or operator of the facility shall not exceed the amount permitted by the state license.

(9)    The marihuana offered for sale and distribution must be packaged and labeled in accordance with state law. Provisioning centers are prohibited from selling, soliciting or receiving orders for marihuana or marihuana products over the internet.

(10)    No pictures, photographs, drawings, or other depictions of marihuana or marihuana paraphernalia shall appear on the outside of any permitted premises nor be visible outside of the permitted premises on the permitted property. The words "marihuana," "cannabis" and any other words used or intended to convey the presence or availability of marihuana shall not appear on the outside of the permitted premises nor be visible outside of the permitted premises on the permitted property.

(11)    The sale, consumption, or use of alcohol or tobacco products on the permitted premises is prohibited. Smoking or consumption of controlled substances, including marihuana, on the permitted premises is prohibited.

(12)    All activities of commercial medical marihuana facilities, including without limitation, distribution, growth, cultivation, or the sale of marihuana, and all other related activity permitted under the permit holder's license or permit must occur indoors. The facility's operation and design shall minimize any impact to adjacent uses, including the control of any odor by maintaining and operating an air filtration system so that no odor is detectable outside the permitted premises.

(13)    A patient may not grow his or her own marihuana at a commercial medical marihuana facility.

(14)    No person operating a facility shall provide or otherwise make available marihuana to any person who is not legally authorized to receive marihuana under state law.

(15)    All necessary building, electrical, plumbing and mechanical permits must be obtained for any part of the permitted premises in which electrical, wiring, lighting or watering devices that support the cultivation, growing, harvesting or testing of marijuana are located.

(16)    The permit holder, owner and operator of the facility shall use lawful methods in controlling waste or by-products from any activities allowed under the license or permit.

(17)    Marihuana may be transported by a secure transporter within the city under this article, and to effectuate its purpose, only:

      a.    By persons who are otherwise authorized by state law to possess marihuana for medical purposes;

      b.    In a manner consistent with all applicable state laws and rules, as amended;

      c.    In a secure manner designed to prevent the loss of the marihuana;

      d.    No vehicle used for transportation or delivery of marihuana under this article shall have for markings the words "marihuana," "cannabis," or any similar words; pictures or other renderings of the marihuana plant; advertisements for marihuana or for its sale, transfer, cultivation, delivery, transportation or manufacture, or any other word, phrase or symbol indicating or tending to indicate that the vehicle is transporting marihuana.

e.   No vehicle may be used for the ongoing or continuous storage of marihuana, but may only be used incidental to, and in furtherance of, the transportation of marihuana.

(18) The city commission may impose such reasonable terms and conditions on a commercial medical marihuana facility special use as may be necessary to protect the public health, safety and welfare, and to obtain compliance with the requirements of this article and applicable law.

(19) No facility shall be operated in a manner creating noise, dust, vibration, glare, fumes, or odors beyond the boundaries of the property on which the facility is operated; or creating any other nuisance that hinders the public health, safety and welfare of the residents of the City of Adrian.

Sec. 46-510. - Effective permit; suspension; daily violation.

(a)   Acceptance of the permit constitutes consent by the permit holder and its owners, officers, managers, agents and employees for any state, federal or local law enforcement to conduct random and unannounced examinations of the facility and all articles of property in that facility at any time to ensure compliance with this article, and any other local regulations.

(b)   The City may require an applicant or permit holder of a marihuana facility, establishment, or other business to produce documents, records, or any other material pertinent to the investigation of an application or alleged violation of this article. Failure to provide the required material may be grounds for application denial or permit revocation.

(c)   Issuance of a permit does not prohibit prosecution by the federal government for violation of its laws or prosecution by state authorities for violations of the Act or other violations not protected by the Act.

(d)   Compliance with city ordinances and state statutes is a condition of maintenance of a permit and a permit may be suspended for failure to comply with any of the provisions of this article. The City Administrator may suspend the permit for failure to comply.  Appeals of an administrative suspension must be made in writing, to the attention of the City Clerk, within 30 days after the suspension notice has been served on the permit holder or posted on the permitted premises. Appeals shall be heard by the City Commission at the next regularly scheduled meeting after receipt of the written appeal.

(e)   Suspension of a permit is not an exclusive remedy and the penalty provisions of this article are not intended to foreclose any other remedy or sanction that might be available to, or imposed by the City, including criminal prosecution.

(f)   In addition to any other remedies, the City may institute proceedings for injunction, mandamus, abatement or other appropriate remedies to prevent, enjoin, abate or remove any violations of this article. The rights and remedies provided herein are civil in nature. The imposition of a fine shall not exempt the violator from compliance with the provisions of this article.

Sec 46-511 - Permit revocation; bases for revocation or denial; appeal of permit revocation or denial.

a)   Any permit issued under this article may be recommended for revocation by the City Clerk to the Adrian City Commission if the City Clerk finds and determines that grounds for revocation exist. Any grounds for revocation must be provided to the permit holder at least ten days prior to the date of the City Commission meeting at which the recommendation for revocation will be heard. Notice of the meeting shall be sent by first class mail to the mailing address given on the permit application or any updated mailing address provided to the City Clerk in writing subsequent to the filing of an application.

b) A permit applied for or issued may be denied or revoked on any basis provided under this article including the following:

    (1) A material violation of any provision of this article, including, but not limited to, the failure to submit a complete application under Sec. 46-505; or

    (2) Any conviction of a disqualifying felony by the permit holder, stakeholder, or any person holding an ownership interest in the permit; or

    (3) Commission of fraud or misrepresentation or the making of a false statement by the applicant, permit holder, or any stakeholder of the applicant or permit holder while engaging in any activity for which this article requires a permit; or

    (4) Failure to obtain, maintain or renew a permit issued by the City Clerk pursuant to this article; or

    (5) Failure of the permit holder or the marihuana facility, establishment or other business to obtain or maintain a license or approval from the State pursuant to the State or other laws; or

    (6) The marihuana facility, establishment or other business is determined by the City to have become a public nuisance or otherwise is operating in a manner detrimental to the public health, safety or welfare.

c) The denial of an application or revocation of a permit by the City Commission shall be final for purposes of judicial review.

Sec. 46-512. – Violations municipal civil infraction.

Any person and/or entity in violation of any provision of this article or failure to comply with any of the requirements of this article, including the operation of a marihuana facility, establishment, or other business without a permit issued pursuant to this article, is responsible for a municipal civil infraction violation. The City shall assess fines and abatement costs of each violation together with all remedies available under MCL 600.8701 et seq.   Increased civil fines may be imposed for a repeat violation. As used in this section "repeat violation" shall mean a second or any subsequent infraction of the same requirement or provision committed by a person or establishment within any 12-month period. ~~Fines for each offense shall be as set forth in Section 2-373 of the Adrian City Code.~~ Each day a violation continues, including each day that a person shall operate a medical marihuana facility without a permit or assist in the operation of a medical marijuana facility without a valid permit in effect for that property, shall constitute a separate offense.  Upon the third offense in any 12-month period, a recommendation for permit denial or revocation may be made to the City Commission. **Fines for each offense shall be as set forth in Section 2-373 of the Adrian City Code.**

Sec. 46-513. - Fees for ~~licenses~~ **permits**.

The fees for the permit herein defined shall be set by resolution of the city commission. The fee shall defray the costs incurred by the city for inspection, administration and enforcement of this article and shall not exceed any limitations imposed by Michigan law.

Sec. 46-514. - Severability.

The provisions of this article are hereby declared severable. If any part of this article is declared invalid for any reason by a court of competent jurisdiction, that declaration does not affect or impair the validity of all other provisions that are not subject to that declaration.

**R19-068**

May 20, 2019

RE:   **CITY ATTORNEY – Approval of Revised Medical Marihuana Renewal and New Application Period**

**RESOLUTION**

WHEREAS, on April 29, 2019, the Adrian City Commission approved resolution R19-052 approving a medical marihuana application period and application fee for 2019; and

WHEREAS, the annual application period schedule needs to be revised for 2019; and

WHEREAS, it is the recommendation of City staff to extend the application period for renewal permits beginning May 8, 2019 until close of business June 10, 2019; and

WHEREAS, it is also the recommendation of City staff to extend the application period for new permits beginning June 3, 2019 until close of business on August 12, 2019.

NOW THEREFORE, BE IT RESOLVED that the Adrian City Commission by this resolution approves of a revised renewal permit application period from May 8, 2019 until close of business on June 10, 2019.

BE IT FURTHER RESOLVED that the Adrian City Commission by this resolution approves of a revised new permit application period from June 3, 2019 until close of business on August 12, 2019.

On motion by Commissioner _____, seconded by Commissioner _____, this resolution was _____ by a _____ vote

**AGENDA**
**ADRIAN CITY COMMISSION**
**JUNE 3, 2019,**
**7:00PM**

I.  PRAYER AND PLEDGE OF ALLEGIANCE TO THE FLAG

II.  ROLL CALL

III.  APPROVAL OF THE MINUTES OF THE MAY 20, 2019 REGULAR MEETING OF THE ADRIAN CITY COMMISSION.

IV.  PRESENTATION OF ACCOUNTS

V.  COMMUNICATIONS

> 1. **C-1. PlaneWave Instruments.** Presentation by PlaneWave Instruments.

VI.  REGULAR AGENDA

A.  ORDINANCES

> 1. **Ord. 19-001.** Second reading and adoption of an ordinance to amend Article XI of the Adrian City Code, Commercial Medical Marihuana Facilities and Adult Use Establishments.
>
> 2. **Ord. 19-002.** First reading and introduction of an ordinance to amend Chapter 58, Section 58-112 of the Adrian City Code, Fireworks.

B.  RESOLUTIONS

> 1. **R19-074. Utilities.** Resolution to award a bid for Treatment Chemicals at the Water Treatment Plant.
>
> 2. **R19-075. Utilities.** Resolution to award chemical consortium bids for Treatment Chemicals at the Water & Wastewater Plants.
>
> 3. **R19-076. Parks & Engineering Services.** Resolution to award a bid for Limestone and Backfill Material.
>
> 4. **R19-077. Parks & Engineering Services.** Resolution to award a bid for Mulch and Ice Melt.
>
> 5. **R19-078. Parks & Engineering Services.** Resolution to award a bid for Oil Changes.
>
> 6. **R19-079. Parks & Engineering Services.** Resolution to award a bid for Preventative Maintenance – Overband Crack Sealing.

EXHIBIT 41

7. **R19-080. Transportation.** Resolution to approve an Addendum to the Rural Transit Assistance Program (RTAP) Third Party Contract between the City of Adrian and Michigan Public Transit Association.

8. **R19-081. Administration.** Resolution to approve the sale of various vacant lots.

9. **R19-082. Community Development.** Resolution to approve the proposed 2019-20 LDFA SmartZone Board budget.

VII.   MISCELLANEOUS

1. Criminal Justice Report – April.

VIII.   PUBLIC COMMENT

IX.   COMMISSIONER COMMENTS



# MINUTES

**MINUTES**
**ADRIAN CITY COMMISSION**
**May 20, 2019 @ 7:00PM**

The City Commission met for a pre-meeting study session at 5:30pm at the City Chambers Building. The following items were discussed:

1. Exploratory Recreation Discussion with Adrian Public Schools and the YMCA.
2. Raisin Township/City of Adrian Water Franchise Agreement.
3. Discussion about the resolution regarding Downtown Dempsey's.

Public Comment was heard.

Meeting adjourned at 6:53 pm.

**The Commission began the regularly scheduled meeting at 7:00 pm.**

Official proceedings of the May 20, 2019 regular meeting of the City Commission, Adrian, Michigan.

The regular meeting was opened with a moment of silence followed by the Pledge of Allegiance.

**PRESENT**: Mayor Jacobson &, Commissioners Valentine, Heldt, Watson, Dudas, Roberts and Strayer.

**On motion by Commissioner Heldt, seconded by Commissioner Valentine, the minutes of the May 6, 2019 Regular Meeting of the Adrian City Commission, were approved by a 7-0 vote.**

**On motion by Commissioner Dudas, seconded by Commissioner Valentine, the minutes of the May 9, 2019 Special Meeting of the Adrian City Commission, were approved by a 7-0 vote.**

Mayor Jacobson in the Chair

**PRESENTATION OF ACCOUNTS**

Utility Department Vouchers

| | |
|---|---|
| Vouchers #4727 through #4729 | $3,242.05 |
| General Fund | |
| Vouchers #24016 through #24023 | $14,211.64 |
| Clearing Account Vouchers | |
| amounting to | $380,854.21 |
| TOTAL EXPENDITURES | $398,307.90 |

On motion by Commissioner Watson, seconded by Commissioner Strayer, this Resolution was approved by a 7-0 vote.

## COMMUNICATIONS

C-1. Finance. Revenue & Expenditure Report for April.

## REGULAR AGENDA

On motion by Commissioner Roberts, and seconded by Commissioner Valentine the motion to amend the Regular Agenda to include R19-073 as item B6 on the agenda was approved by a 7-0 vote.

## ORDINANCES

Ord. 19-001. First reading and introduction of an ordinance to amend Article XI of the Adrian City Code, Commercial Medical Marihuana Facilities and Adult Use Establishments.

INTRODUCTION.................................................................... May 20, 2019

SUMMARY PUBLISHED......................................................

ADOPTION...........................................................................

COMPLETED PUBLICATION................................................

EFFECTIVE DATE................................................................

## RESOLUTIONS

### R19-068 – CITY ATTORNEY – Approval of Revised Medical Marihuana Renewal and New Application Period

#### RESOLUTION

WHEREAS, on April 29, 2019, the Adrian City Commission approved resolution R19-052 approving a medical marihuana application period and application fee for 2019; and

WHEREAS, the annual application period schedule needs to be revised for 2019; and

WHEREAS, it is the recommendation of City staff to extend the application period for renewal permits beginning May 8, 2019 until close of business June 10, 2019; and

WHEREAS, it is also the recommendation of City staff to extend the application period for new permits beginning June 3, 2019 until close of business on August 12, 2019.

NOW THEREFORE, BE IT RESOLVED that the Adrian City Commission by this resolution approves of a revised renewal permit application period from May 8, 2019 until close of business on June 10, 2019.

BE IT FURTHER RESOLVED that the Adrian City Commission by this resolution approves of a revised new permit application period from June 3, 2019 until close of business on August 12, 2019.

On motion by Commissioner Heldt, seconded by Commissioner Strayer, this Resolution was approved by a 6-1 vote.

YES: Mayor Jacobson, Commissioners Strayer, Dudas, Watson, Roberts and Heldt

NO: Commissioner Valentine

**R19-069 - TRANSPORTATION – Resolution approving a project authorization for Federal Operating Assistance for the Adrian Dial-A-Ride and to authorize the Mayor and City Clerk to execute said project authorization.**

### RESOLUTION

WHEREAS, the City of Adrian desires to continue provisions of Dial-A-Ride service, and,

WHEREAS, a Project Authorization has been proposed which provides FY 2019 Section 5311 Operating assistance for such service, effective October 1, 2018 and expiring September 30, 2019, based on 18% of the estimated eligible costs, or $72,012, and,

WHEREAS, the maximum amount to be paid will not exceed 18% of the audited costs and if funds are insufficient to reimburse at 18% of the audited costs, a new reimbursement percentage will be calculated for all agencies, and, be it,

RESOLVED, that the City Commission of the City of Adrian does hereby approve the proposed Agreement No. 2017-0002, Authorization No. P5 for FY 2019 Section 5311 Operating Assistance, and be it,

FURTHER RESOLVED, that the monies from the grant be given to Adrian Dial-A-Ride in accordance with the terms of the Authorization No. P5, and,

HEREBY, authorize the Mayor and City Clerk to execute Authorization No. P5 for and on behalf of the City of Adrian.

**On motion by Commissioner Watson, seconded by Commissioner Dudas, this Resolution was approved by a 7-0 vote.**

**R19-070 - PARKS & ENGINEERING SERVICES DEPARTMENT– Design & Construction Oversight of College Avenue Bridge & Bent Oak Bridge Preventative Maintenance**

### RESOLUTION

WHEREAS the City of Adrian Parks & Engineering Services Project Manager solicited a proposal for engineering services for the College Avenue Bridge and Bent Oak Bridge for Preventative Maintenance; and

WHEREAS the Parks & Engineering Project Manager and City Administrator recommend acceptance of Williams & Works, Grand Rapids, MI, with a total cost not to exceed $53,415; and

WHEREAS the Finance Director indicates that sufficient funds are available for this purpose in the approved FY2019-20 Budgets

Major Street – Routine Maintenance - Bridges      202-473.00-801.000

NOW THEREFORE BE IT RESOLVED that the Adrian City Commission, by this resolution, hereby approves the acceptance of the low bidder, Williams & Works, Grand Rapids, MI for engagement in the City's Standard Professional Services Contract.

**On motion by Commissioner Roberts, seconded by Commissioner Dudas, this Resolution was approved by a 7-0 vote.**

**R19-071 - PARKS & ENGINEERING SERVICES – Portable Toilets**

### RESOLUTION

WHEREAS, the City of Adrian Purchasing Office, in collaboration with the Parks & Engineering Department, has solicited and received bids on Tuesday, May 7, 2019 for portable toilets for one (1) year beginning on May 20, 2019.

WHEREAS, three (3) bids were received as follows:

| BIDDER | Short Term Rental | Long Term Rental | Additional for Extra Cleaning |
|---|---|---|---|
| Black Swamp Equipment Adrian, MI | $81.50/mo. – regular $121.50/mo. - handicap | $81.50/mo. – regular $121.50/mo. - handicap | $35.00 per cleaning |
| Stevens Stop & Go Portable Toilets Petersburg, MI | $85.00/mo. – regular $120.00/mo. - handicap | $75.00/mo. – regular $110.00/mo. - handicap | $35.00 per cleaning |
| Lenawee Port-O-Toilet Tecumseh, MI | $100.00/mo. - regular $135.00/mo. - handicap | $100.00/mo. – regular $135.00/mo. - handicap | $25.00 per cleaning |

;and

WHEREAS, the Parks & Engineering Services Project Manager and City Administrator recommend the acceptance of the low bidder, Stevens Stop & Go Portable Toilets, Adrian, MI, based on the number of handicapped units rented, and the long term usage; and

WHEREAS, the Finance Director indicates that there are sufficient funds to support this contract in the approved FY2018/2019 and the proposed FY2019/2020 budget as follows:

| | |
|---|---|
| 101-697.00-801.000 | Parks & Forestry Contract Service |
| 101-698.00-801.000 | Heritage Park Contract Services |
| 205-699.00-801.000 | Fee Estate Contract Services |

NOW, THEREFORE, BE IT RESOLVED, that the Adrian City Commission, by this resolution, hereby authorizes the acceptance of the bid from Black Swamp Equipment, for engagement in the City's Standard Professional Services Contract.

**Mayor Jacobson mentioned a correction in the resolution that it should have Stevens Stop & Go Portable Toilets as the lowest bidder.**

**On motion by Commissioner Watson, seconded by Commissioner Dudas, this Resolution was approved by a 7-0 vote.**

**R19-072 - COMMUNITY DEVELOPMENT – Support the Reinstatement of State Historic Tax Credits – Senate Bill 54, House Bill 4100**

**RESOLUTION**

WHEREAS, In the City of Adrian's 2018-2019 Strategic Plan, Goal four is to "Sustain Effort to Leverage Community Investment"; and

WHEREAS the City has recognized the value of its historic buildings by establishing Neighborhood Enterprise Zones and the residential Historic District, and by working with downtown building owners to renovate their historic buildings; and

WHEREAS, the preservation and renovation of historic buildings contributes to the beauty, character, and economic vitality of Adrian all Michigan communities; and

WHEREAS, the labor-intensive nature of historic renovation creates jobs and investments in local businesses and has been proven to generate more economic activity than equivalent new construction; and

WHEREAS, the Michigan Historic Tax Credit was an effective tool that helped in the renovation of historic buildings across the state and leveraged $251 million in Federal Historic Tax Credits; and

WHEREAS, every dollar of State Historic Tax Credit issued yielded $11.37 in direct economic impact; and

WHEREAS, the Michigan Legislature is currently considering SB 54 and HB 4100 that would reinstate an up-to-25 percent investment tax credit for owners of historic residential and commercial properties who substantially renovate their properties.

NOW, THEREFORE, BE IT RESOLVED that the Adrian City Commission hereby endorses and supports SB54 and HB4100 and encourages the Michigan Legislature to approve this legislation and Governor Whitmer to sign it, in order to stimulate historic renovation and to protect the historic character and unique assets these structures bring to Michigan and to Adrian.

**On motion by Commissioner Roberts, seconded by Commissioner Dudas, this Resolution was approved by a 7-0 vote.**

**R19-073. Community Development.** Resolution to issue a redevelopment liquor license for Downtown Dempsey's, LLC.

**On motion by Commissioner Watson, seconded by Commissioner Heldt, this Resolution was approved by a 7-0 vote.**

**PUBLIC COMMENT**

Comments were heard regarding issues over an ordinance that was presented for introduction. Also comments were heard about the existing problems with the pension and other items pertaining to the City.

**COMMISSIONER COMMENTS**

Commissioner Roberts thanked Greg Adams for the event held on Sunday and having the partnership with the Adrian Public Schools. She mentioned to see the joy on the children's faces that were running she had wished she had that opportunity available at that young age.

Commissioner Valentine voiced concerns over the constant negative public comment regarding the City Commission.

**MOTION TO ADJOURN – 7:30 pm**

On motion by Commissioner Watson, seconded by Commissioner Heldt, the motion to adjourn was approved by an all yes vote.

The next regular meeting of the Adrian City Commission will be held at 7:00 pm on Monday, June 3, 2019 at the City Chambers Building, 159 E. Maumee Street, Adrian, MI 49221

Chuck Jacobson
Mayor

Robin Connor
City Clerk



# REGULAR AGENDA

**ORDINANCE NO. 19-001**

## AN ORDINANCE TO AMEND ARTICLE XI OF THE ADRIAN CODE, ENTITLED "COMMERCIAL MEDICAL MARIHUANA FACILITIES AND ADULT USE ESTABLISHMENTS"

Article XI of the Adrian Code is hereby amended to read as follows:

ARTICLE XI. - COMMERCIAL MEDICAL MARIHUANA FACILITIES AND ADULT USE ESTABLISHMENTS

DIVISION 1. - GENERALLY

Sec. 46-500. - Legislative intent.

The purpose of this article is to implement the provisions of the Michigan Marihuana Facilities Licensing Act, Public Act 281 of 2016, and the Michigan Regulation and Taxation Act initiated Law 1 of 2018, which authorizes the licensing and regulation of commercial medical marihuana facilities or commercial adult use establishments; affords the city the option to allow commercial medical marihuana facilities or commercial adult use establishments; and the authority to regulate commercial medical marihuana facilities or commercial use establishments by requiring a permit and compliance with requirements as provided in this article, in order to maintain the public health, safety and welfare of the public.

Nothing in this article is intended to grant immunity from criminal or civil prosecution, penalty, or sanction for the cultivation, manufacture, possession, use, sale, or distribution of marihuana, in any form, that is not in compliance with the Michigan Medical Marihuana Act, Initiated Law of 2008, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; the Michigan Marihuana Tracking Act, MCL 333.27901 et seq.; the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq.; and all other applicable rules promulgated by the state of Michigan.

As of the effective date of this article, marihuana remains classified as a Schedule 1 controlled substance under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq., which makes it unlawful to manufacture, distribute, or dispense marihuana, or possess marihuana with the intent to manufacture, distribute, or dispense marihuana. Nothing in this article is intended to grant immunity from any criminal prosecution under federal laws.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 6-7-2018)

Sec. 46-501. - Definitions.

For the purpose of this article the following words, terms, and phrases shall have the meanings ascribed to them in this section, except when the context clearly indicates a different meaning.

Any term defined by the Michigan Medical Marihuana Act. MCL 333.2621 et seq., shall have the definition given in the Michigan Medical Marihuana Act.

Any term defined by the Michigan Medical Marihuana Facilities Licensing Act. MCL 333.27101 et seq., shall have the definition given in the Michigan Medical Marihuana Facilities Licensing Act.

Any term defined by the Michigan Medical Marihuana Tracking Act. MCL 333.27901 et seq., shall have the definition given in the Michigan Medical Marihuana Tracking Act

Any term defined by the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq., shall have the definition given in the Michigan Regulation and Taxation of Marihuana Act.

*City* means the City of Adrian.

*Department* means the Michigan State Department of Licensing and Regulatory Affairs or any authorized designated Michigan agency authorized to regulate, issue or administer a Michigan license for a commercial medical marihuana facility or commercial adult use establishments.

*Enclosed building* means a combination of materials forming a structure affording a facility or shelter for use or occupancy by individuals or property in which a proper ventilation system allows for all windows, entrances, and exits may safely remain closed, with the exceptions of normal entry and exit of the building for business purposes, and safety or emergency purposes i.e. fire. Building includes a part or parts of the building and all equipment in the building. A building shall not be construed to mean a building incidental to the use for agricultural purposes of the land on which the building is located.

*Grower* or *grower facility* means a commercial entity that cultivates, dries, trims, or cures and packages marihuana for sale to a processor or provisioning center. Grower facilities are divided into classes: Class A facility — up to 500 plants; Class B facility — up to 1,000 plants; and Class C facility — up to 1,500 plants.

*License* means a current, valid license for a commercial medical marihuana facility issued by the State of Michigan.

*Licensee* means a person holding a current, valid Michigan license for a commercial medical marihuana facility.

*Marihuana* means that term as defined in section 7106 of the public health code, 1978 PA 368, MCL 333.7106.

*Marihuana plant(s)"* means any plant of the species Cannabis sativa L.

*Medical Marihuana* means that term as defined in the Public Health Code, MCL 333.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; and the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.

*Medical marihuana facility(s)* means any facility, establishment and/or center at a specific location which is licensed under this article to operate under the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., including a provisioning center, grower, processor, safety compliance facility, and secure transporter. The term does not include or apply to a "primary caregiver" or "caregiver" as the term is defined in the Michigan Medical Marihuana Act, MCL 333.26421 et seq.

*Permit* means a current, valid permit for a commercial medical marihuana facility issued pursuant to this article, granted to a permit holder valid for a specific permitted premises and a specific permitted property.

*Permit holder* means the person that holds a current, valid permit under this article.

*Permitted premises* means the particular building or buildings within which the permit holder will be authorized to conduct the facility's activities pursuant to the permit.

*Permitted property* means the real property comprised of the lot, parcel or other designated unit of real property upon which the permitted premises is situated.

*Person* means a natural person, company, partnership, profit or non-profit corporation, limited liability company, or any joint venture for a common purpose.

*Processor* or *processor facility* means a commercial entity that purchases marihuana from a grower and that extracts resin from the marihuana or creates a marihuana-infused product for sale and transfer in packaged form to a provisioning center.

*Provisioning center* means a commercial entity that purchases marihuana from a grower or processor and sells, supplies, or provides marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers. Provisioning center includes any commercial property where marihuana is sold at retail to registered qualifying patients or registered primary caregivers. The term does not include or apply to a non-commercial location used by a primary caregiver to assist a qualifying

patient connected to the caregiver through the department's marihuana registration process in accordance with the MMMA.

*Safety compliance facility* means a commercial entity that receives marihuana from a medical marihuana facility or registered primary caregiver, tests it for contaminants and for tetrahydrocannabinol and other cannabinoids, returns the test results, and may return the marihuana to the medical marihuana facility.

*School* (as defined in MCL 257.627a) means an educational institution operated by a local school district or by a private, denominational, or parochial organization. School does not include either of the following:

(1)  An educational institution that the department of education determines has its entire student population in residence at the institution.

(2)  An educational institution to which all students are transported in motor vehicles.

*Secure transporter* means a commercial entity that stores medical marihuana and transports medical marihuana between medical marihuana facilities for a fee.

(Ord. No. 17-035, 12-13-2017; Ord. No. 18-009, 6-7-2018)

DIVISION 2. - PERMITS

Sec. 46-502. —Generally.

(a)  No person shall operate a commercial marihuana facility, establishment or other business which requires State Licensure, in the city without first obtaining a permit from the City Clerk. Further, any permit application approved pursuant to this article should not be effective and no marihuana facility, establishment, or other business which requires state licensure may operate unless said operation is pursuant to a license or approval issued under the authorized State Licensing Agency.

(b)  The issuance of any permit or renewal permit pursuant to this article shall not confer any vested rights, property or other right, duty, privilege or interest in a permit of any kind or nature whatsoever including, but not limited to, any claim of entitlement or reasonable expectation of subsequent renewal on the applicant or permit holder and shall remain valid only for one year immediately following its approval.

(c)  A permit holder may transfer a permit issued under this article to a different location upon receiving approval from the City Commission. In order to request approval to transfer a permit location, the permit holder must make a written request to the City Clerk, indicating the current permit location and the proposed permit location. Upon receiving the written request, the City Clerk shall refer a copy of the written request to each of the following for their approval: the Fire Department, the Building Inspection Department, the Police Department, the Zoning Administrator, and the City Treasurer. Prior to final approval of transfer the permit holder must submit an updated application and any supporting documents. No permit transfer shall be recommended for approval unless each individual department gives written approval that the permit holder and the proposed permit location meet the standards identified in this article, including but not limited to Section 46-505, and the City Clerk has determined the proposed location meets the requirements of Section 46-505.

(d)  A permit holder may transfer a valid permit issued under this article to a new individual or entity upon obtaining approval from the City Commission. A request for transfer of a valid permit to a new individual or entity must be made in writing, to the City Clerk. The permit holder must provide documentation from the State Agency indicating the State License may be transferred. Upon receiving the written request the City Clerk shall consider the request as a new application for a permit and the procedures set forth in Section (46-505) shall be followed including submission of the non-refundable permit application fee. Application fees are non-transferable.

(e) A permit holder must submit to the City a copy of their valid state license within 180 days of issuance of the permit under this article. Failure to provide such proof may result in suspension or revocation of the permit.

(f) If a permit holder has not obtained a valid state license at the end of 180 days, they may request an extension of time on a form provided by the City Clerk. The City Clerk may require additional/supplemental information to confirm the reasons for delay. Failure to provide the required information may result in denial of extension. Extensions will be granted or denied by the City Clerk. The granting of an extension shall not exceed 120 days or the expiration date of the current permit.

(g) If the facility is a new build/construction and State licensing has not been issued within 180 days, the permit holder may request a form from the City Clerk to apply for building and/or fire inspection waivers. A waiver will be granted or denied by the City Clerk. The granting of a waiver shall not exceed one year or the expiration date of the current permit.

(h) To the extent permissible under law, all information submitted in conjunction with an application for a permit or permit renewal required by this article is confidential and exempt from disclosure under the Michigan Freedom of Information Act, 1976 PA 442, MCL 15.231 et seq., including the trade secrets or commercial or financial information exemptions available under section 13(f) of the Michigan Freedom of Information Act. Furthermore, no personal or medical information concerning the applicant shall be submitted to the Medical Marihuana Commission.

Sec. 46-503. - Commercial medical marihuana facilities authorized to operate in the city.

(a) Growers, Class A, B and C.

(b) Processors.

(c) Provisioning centers.

(d) Safety compliance facilities.

(e) Secure transporters.

(Ord. No. 17-035, 12-13-2017)

Sec. 46-504. - Number of facilities authorized by city.

(a) Growers:

Class A: unlimited

Class B: unlimited

Class C: unlimited

(b) Processors: unlimited

(c) Provisioning centers: Ten permits in the B-1 and B-2 districts combined, unlimited in the Industrial overlay district.

(d) Safety compliance facilities: unlimited

(e) Secure transporters: unlimited

Sec. 46-505. – Requirements for permit application submission.

1. Every marihuana facility, establishment, or other business in the City shall be subject to the terms and provisions set forth in this article. No person shall operate a marihuana facility, establishment, or other business in the City without a current, valid permit issued by the City pursuant to the provisions of this article. The permit requirements set forth in this article shall be in addition to, not in

lieu of any other licensing and/or permitting requirements imposed by any other federal, state, or local law.

2.  Applications for permits shall be made annually. Each complete application for a permit or permits required by this article shall be made on forms provided by the City Clerk.

3.  Every applicant for a marihuana facility, establishment, or other business permit shall complete and file the application form provided by the City Clerk's office. Any application missing information in any required field will be deemed incomplete and is subject to denial of the permit by the City Clerk. Each question in the application must be answered in its entirety and all the information requested and required by this article must be submitted with the application. Failure to comply with these rules and the application requirements in this article is grounds for denial of the application. An application for a medical marihuana facility permit shall contain any information required by the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq., and shall also contain all of the following:

    a.  Current documentation from the State of Michigan showing approved pre-qualification status for a State Medical Marihuana License or a copy of a valid State Medical Marihuana License.

    b.  If the applicant is an individual, the applicant's name, date of birth, physical address, email, one or more phone numbers, including emergency contact information, and a copy of a valid unexpired driver's license or State ID for the applicant. Acceptable ID will be issued by the State in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.

    c.  If the applicant is not an individual, the names, dates of birth, physical addresses, email addresses, and one or more phone numbers of each stakeholder of the applicant, including designation of a stake holder as an emergency contact person and contact information for the emergency contact person, a copy of a valid unexpired driver's license or State ID for each applicant or stakeholder of the applicant. Acceptable ID will be issued by the state in accordance with the Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq. Additionally, if the applicant is a Limited Liability Company, articles of incorporation of organization, internal revenue service SS-4 EIN confirmation letter, and the operating agreement or bylaws of the applicant, are required.

    d.  The name and address of the proposed medical marihuana facility and any additional contact information deemed necessary by the City Clerk including name, address, and telephone number of the owner(s) of all real property where the facility is located.

    e.  One of the following: (a) proof of ownership of the entire premises wherein the medical marihuana facility is to be operated; or (b) a notarized statement from the property owner for use of the premises in a manner requiring licensure under this article along with a copy of any lease for the premises.

    f.  A signed release shall be provided, on a form included with the application, permitting the City Police Department to perform a criminal background check to ascertain whether any person named on the application has been convicted of any disqualifying felony or any controlled-substance-related misdemeanor under Michigan law or the law of any other State or the United States.

    g.  A signed acknowledgement that the applicant is aware and understands that all matters related to marihuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to state laws, rules and regulations, and that the approval or granting of a permit hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules and regulations or exposure to any penalties associated therewith; and further the applicant waives and forever releases any claim demand, action, legal redress or recourse against the city, its elected and appointed officials and its

employees and agents for any claims, damages, liabilities, causes of action, and attorney fees that applicant may incur as a result of a violation by applicant, its officials, members, partners, shareholders, employees and agents, of those laws, rules and regulations and hereby waives and assumes the risk of any such claims and damages and lack of recourse against the city, its elected and appointed officials, employees, attorneys, and agents.

h.  A signed acknowledgement that all cultivation must be performed in an enclosed building.

i.  An affidavit that neither the applicant nor any stakeholder of the applicant is in default to the City, specifically that the applicant or stakeholder of the applicant has not failed to pay any property taxes, special assessments, fines, fees or other financial obligation to the City.

j.  For each permit type the following documentation is required:
    a.  Proof of a surety bond in the amount of $100,000.00 with the City listed as the obligee to guarantee the performance by applicant of the terms, conditions and obligations of this article in a manner and surety approved by the City Attorney: or, in the alternative,

    b.  Proof of creation of an escrow account as follows:

        I.   The account must be provided by a State or federally regulated financial institution or other financial institution approved by the City Attorney based upon an objective assessment of the institution's financial stability; and

        II.  The account must be for the benefit of the City to guarantee performance by licensee in compliance with this article and applicable law; and

        III. The account must be in the amount of $20,000.00 and in a form prescribed by the City Attorney.

k.  Proof of an insurance policy covering each facility and naming the City, its elected and appointed officials, employees, and agents, as additional insured parties, available for the payment of any damages arising out of an act or omission of the applicant or its stakeholders, agents, employees, or subcontractors, in the amount of (a) at least $1,000,000.00 for property damage: (b) at least $1,000,000.00 for injury to one person; and (c) at least $2,000,000.00 for injury to two or more persons resulting from the same occurrence.  The insurance policy underwriter must have a minimum A.M. Best Company insurance ranking of B+, consistent with State law.  The policy shall provide that the City shall be notified by the insurance carrier 30 days in advance of any cancellation.

l.  Any other information deemed by the city to be required for consideration of a permit.

4.  All applications shall be accompanied by a non-refundable permit application fee for each permit type. The renewal fee is established to defray the costs of the administration of this article and is set by resolution of the City Commission.

Sec. 46–506 –Requirements for application for renewal of annual permit.

a)  A completed application for a renewal permit must be received by the City Clerk no later than 90 days prior to the expiration of the current permit. Pending applications for annual renewal or amendments of existing permits shall be reviewed, and granted or denied by the City Commission prior to new permit applications being considered.

b)  Applications for renewal of permits shall be made annually. Each complete application for a permit or permits required by this article shall be made on forms provided by the City Clerk and must meet all requirements of Section 46-505.

       1.   Applications for renewal of permits issued in 2018 only shall qualify for an exception to Sec. 506 (a).

  c)  All renewal applications shall be accompanied by a non-refundable permit application fee for each permit type. The renewal fee is established to defray the costs of the administration of this article, and is set by resolution of the City Commission.

Sec. 46-507. - Issuance or denial of new or renewal permit.

(a)    Upon submission of an applicant's completed application, including all required information and documentation, the City Clerk shall accept the application and assign it a sequential number based on the date and time the application was accepted and refer a copy of the application to each of the following for their approval: the Fire Department, the Building Inspection Department, the Police Department, the Zoning Administrator, the City Treasurer, and the Legal Department.

(b)    A permit means only that the applicant has submitted a valid application for a marihuana facility, establishment, or other business permit, and that the applicant shall not locate or operate a marihuana facility without obtaining all other permits and approvals required by all other applicable ordinances and regulations of the City, as well as, all statutes and regulations of the State of Michigan including but not limited to the Public Health Code, MCL 333.1101 et seq.; the Michigan Medical Marihuana Act, MCL 333.26421 et seq.; the Michigan Medical Marihuana Facilities Licensing Act, MCL 333.27101 et seq.; the Michigan Medical Marihuana Tracking Act, MCL 333.27901 et seq.; and the Michigan Regulation and Taxation of Marihuana Act MCL 333.27951 et seq.

(c)    A permit is valid only for the permit holder and location identified on the permit and may only be transferred by approval of the City Commission pursuant to Sections 46-502 (c) & (d) of this article.

(d)    The permit shall be prominently displayed at the permitted premises in a location where it can be easily viewed by the public, law enforcement and administrative authorities.

(e)    The City Clerk shall not recommend a permit for approval unless all of the following conditions have been met:

    (1)   The fire department and building department have inspected the proposed location for compliance with all laws for which they are charged with enforcement and for compliance with this article.
    (2)   The zoning administrator has confirmed that the proposed location complies with the zoning code and issues a zoning compliance permit and zoning exception permit.
    (3)   The City Treasurer has confirmed that the applicant and the proposed location are not in default to the City.
    (4)   The police department has determined that the applicant has met the requirements of this article with respect to the background check and security plan.
    (5)   The legal department has determined that the applicant has satisfied the requirements of this article with respect to submission of all required documents and completeness of the application.
    (6)   All additional information deemed by the City to be required for consideration of a permit.

(f)  The City Clerk shall not recommend a permit for renewal unless all of the following additional conditions have been met:

    (1)   The applicant possesses the necessary State license or approvals, including those issued pursuant to all applicable State and local laws, rules, or ordinances.
    (2)   The applicant has operated the marihuana facility, establishment or other business in accordance with the conditions and requirements of this article.

(3) The marihuana facility, establishment, or other business has not been declared a public nuisance

(4) The applicant is operating the marihuana facility, establishment or other business in accordance with Federal, State, and local laws and regulations.

(g) If written approval is given by each individual, department, or entity in subsection (e), the City Clerk shall recommend the permit or renewal of an annual permit to the City Commission for approval.

(h) A permit will lapse and be void if such other required permits, valid state licensing, and approvals are not diligently pursued to completion, but in any event no later than 180 days after the permit is issued.

(i) Any applicant for a commercial marihuana facility, establishment or other business permit whose building is not yet in existence at the time of City Commission approval shall have one year immediately following the date of approval to complete construction of the building, in accordance with applicable zoning ordinances, building codes and other applicable state or local laws, rules or regulations, and to commence business operations.

(j) Within 90 days of receipt of a complete application and all required fees, all inspections, review and processing of the application shall be completed, and the City Clerk shall make a recommendation to the City Commission to approve or deny the marihuana facility permit.

(k) The City commission shall approve or deny a permit within 120 days of receipt of the completed application and fees. The processing time may be extended upon written notice by the City for good cause, and any failure to meet the required processing time shall not result in the automatic grant of the permit. No permit is valid until final approval of the City Commission.

(l) The City has no obligation to process or approve any incomplete application. Any time period provided under this article shall not commence until the City receives a completed application, as determined by the City Clerk. A determination of a complete application shall not prohibit the City from requiring supplemental information. The City may delay an application while additional information is requested including, but not limited to, requests for additional disclosures and documentation to be furnished to the City Clerk.

(m) If more qualified applications are received than the number of permits allowed for provisioning centers in the B-1 and B-2 districts under this article, the City Commission may review and amend this ordinance as it determines advisable.

(n) If applicant fails to comply with this article, a permit may be denied as provided under this article. In addition to failing to comply with this article, a permit may be denied for the following reasons:

(1) The applicant made a material misrepresentation on the application.

(2) The applicant fails to correct any deficiencies in the application or supply additional required information.

(3) The applicant fails to satisfy compliance with the municipality, state law, or this ordinance.

(4) The applicant is operating a medical marihuana facility without a current, valid permit.

Any denial of a provisional permit shall be in writing and shall state the reason for the denial.

(o) Denial of permit by the City Commission may be appealed to the Circuit Court of this state.

Sec. 46-508. - Conduct of permit holder.

(a) Each permit holder shall, as a condition of obtaining and maintaining a permit, agree to comply at all times with applicable local and state building, zoning, fire, health and sanitation statutes, ordinances and regulations.

(b) The premises shall be operated and maintained at all times consistent with responsible business practices and so that no excessive demands will be placed upon public health or safety services, nor any excessive risk of harm to the public health, safety or sanitation.

(c) Permit holder shall immediately notify the City Clerk and update as required the information provided on the application and the permit. Further, the permit holder shall notify the City Clerk, within 10 business days, of any other changes in the information required by this article or that may materially affect the state license or the permit. Failure to do so may result in suspension or revocation of the permit.

(d) An applicant or permit holder has a duty to notify the City Clerk in writing within 10 business days of any pending criminal charge, and any criminal conviction or other offense, including but not limited to, Michigan Medical Marihuana Act (MCL 333.26421 et seq.) violations, Medical Marihuana Facilities Licensing Act (MCL 333.27101 et seq.) violations, building, fire, zoning violations by the applicant, permit holder, any owner, principal, officer, director, manager or employee relating to the cultivation, processing, manufacture, storage, sale, distribution, testing or consumption of any form of marihuana within ten days of the event.

(e) The permit holder may not operate any other commercial medical marihuana facility in the permitted premises or on the permitted property, or in its name at any other location within the city without first obtaining a separate permit.

(f) A signed acknowledgement of the permit holder's intent to acquire and maintain a valid marihuana facility license from the State of Michigan is a condition for issuance and maintenance of a marihuana facility permit under this article. In the event of a lapse in the State issued medical marihuana facility license, for any reason, the applicant may not continue operation of any marihuana facility in the City of Adrian, unless and until a valid State license is reinstated or obtained.

(g) Failure to comply with the requirements contained in this article is a civil infraction.

Sec. 46-509. - Operational requirements.

A commercial medical marihuana facility issued a permit under this article and operating in the city shall at all times comply with the following operational requirements, which the city commission may review and amend from time to time as it determines reasonable.

(1) Commercial medical marihuana facilities shall comply with the zoning code, the building code, and the property maintenance code at all times.

(2) The facility must hold a valid local permit and state medical marihuana facility license for the type of commercial medical marihuana facility carried out at the permitted property.

(3) Each commercial medical marihuana facility shall be operated from the permitted premises on the permitted property. No commercial medical marihuana facility shall be permitted to operate from a moveable, mobile or transitory location, except for a permitted and licensed secure transporter when engaged in the lawful transport of marihuana.

(4) No person under the age of 18 shall be permitted to enter into the permitted premises without a parent or legal guardian.

(5) Medical marihuana facilities shall be closed for business and no sale or other distribution of marihuana in any form shall occur upon the premises or be delivered from the premises between the hours of 9:00 p.m. and 7:00 a.m.

(6) Permit holders shall at all times maintain a security system that meets state law requirements, and shall also include:

　　a. Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the permitted premises;

    b.    Burglary alarm systems which are professionally monitored and operated 24 hours a day, seven days a week;

    c.    A locking safe permanently affixed to the permitted premises that shall store all marihuana and cash remaining at the facility overnight;

    d.    All marihuana in whatever form stored at the permitted premises shall be kept in a secure manner and shall not be visible from outside the permitted premises, nor shall it be grown, processed, exchanged, displayed or dispensed outside the permitted premises;

    e.    All security recordings and documentation shall be preserved for at least 48 hours by the permit holder and made available to law enforcement upon request for inspection.

(7)    No commercial provisioning center shall be located within 1,000 feet of any of the following uses:

    a.    A school, public or private, including pre-school through college or within 250 feet of any of the following uses:

        1.    A church or house of worship located in a residential district.

        2.    A park or playground.

        3.    A state licensed day-care facility as defined in the City of Adrian Zoning Ordinance, definition(s) 2.46.

        4.    A facility that provides substances abuse disorder services as defined by MCL 330.6230S.

(8)    The amount of marihuana on the permitted property and under the control of the permit holder, owner or operator of the facility shall not exceed the amount permitted by the state license.

(9)    The marihuana offered for sale and distribution must be packaged and labeled in accordance with state law. Provisioning centers are prohibited from selling, soliciting or receiving orders for marihuana or marihuana products over the internet.

(10)    No pictures, photographs, drawings, or other depictions of marihuana or marihuana paraphernalia shall appear on the outside of any permitted premises nor be visible outside of the permitted premises on the permitted property. The words "marihuana," "cannabis" and any other words used or intended to convey the presence or availability of marihuana shall not appear on the outside of the permitted premises nor be visible outside of the permitted premises on the permitted property.

(11)    The sale, consumption, or use of alcohol or tobacco products on the permitted premises is prohibited. Smoking or consumption of controlled substances, including marihuana, on the permitted premises is prohibited.

(12)    All activities of commercial medical marihuana facilities, including without limitation, distribution, growth, cultivation, or the sale of marihuana, and all other related activity permitted under the permit holder's license or permit must occur indoors. The facility's operation and design shall minimize any impact to adjacent uses, including the control of any odor by maintaining and operating an air filtration system so that no odor is detectable outside the permitted premises.

(13)    A patient may not grow his or her own marihuana at a commercial medical marihuana facility.

(14)    No person operating a facility shall provide or otherwise make available marihuana to any person who is not legally authorized to receive marihuana under state law.

(15)    All necessary building, electrical, plumbing and mechanical permits must be obtained for any part of the permitted premises in which electrical, wiring, lighting or watering devices that support the cultivation, growing, harvesting or testing of marijuana are located.

(16)    The permit holder, owner and operator of the facility shall use lawful methods in controlling waste or by-products from any activities allowed under the license or permit.

(17) Marihuana may be transported by a secure transporter within the city under this article, and to effectuate its purpose, only:

    a.    By persons who are otherwise authorized by state law to possess marihuana for medical purposes;

    b.    In a manner consistent with all applicable state laws and rules, as amended;

    c.    In a secure manner designed to prevent the loss of the marihuana;

    d.    No vehicle used for transportation or delivery of marihuana under this article shall have for markings the words "marihuana," "cannabis," or any similar words; pictures or other renderings of the marihuana plant; advertisements for marihuana or for its sale, transfer, cultivation, delivery, transportation or manufacture, or any other word, phrase or symbol indicating or tending to indicate that the vehicle is transporting marihuana.

    e.    No vehicle may be used for the ongoing or continuous storage of marihuana, but may only be used incidental to, and in furtherance of, the transportation of marihuana.

(18) The city commission may impose such reasonable terms and conditions on a commercial medical marihuana facility special use as may be necessary to protect the public health, safety and welfare, and to obtain compliance with the requirements of this article and applicable law.

(19) No facility shall be operated in a manner creating noise, dust, vibration, glare, fumes, or odors beyond the boundaries of the property on which the facility is operated; or creating any other nuisance that hinders the public health, safety and welfare of the residents of the City of Adrian.

Sec. 46-510. - Effective permit; suspension; daily violation.

(a)    Acceptance of the permit constitutes consent by the permit holder and its owners, officers, managers, agents and employees for any state, federal or local law enforcement to conduct random and unannounced examinations of the facility and all articles of property in that facility at any time to ensure compliance with this article, and any other local regulations.

(b)    The City may require an applicant or permit holder of a marihuana facility, establishment, or other business to produce documents, records, or any other material pertinent to the investigation of an application or alleged violation of this article. Failure to provide the required material may be grounds for application denial or permit revocation.

(c)    Issuance of a permit does not prohibit prosecution by the federal government for violation of its laws or prosecution by state authorities for violations of the Act or other violations not protected by the Act.

(d)    Compliance with city ordinances and state statutes is a condition of maintenance of a permit and a permit may be suspended for failure to comply with any of the provisions of this article. The City Administrator may suspend the permit for failure to comply. Appeals of an administrative suspension must be made in writing, to the attention of the City Clerk, within 30 days after the suspension notice has been served on the permit holder or posted on the permitted premises. Appeals shall be heard by the City Commission at the next regularly scheduled meeting after receipt of the written appeal.

(e)    Suspension of a permit is not an exclusive remedy and the penalty provisions of this article are not intended to foreclose any other remedy or sanction that might be available to, or imposed by the City, including criminal prosecution.

(f)    In addition to any other remedies, the City may institute proceedings for injunction, mandamus, abatement or other appropriate remedies to prevent, enjoin, abate or remove any violations of this

article. The rights and remedies provided herein are civil in nature. The imposition of a fine shall not exempt the violator from compliance with the provisions of this article.

Sec 46-511 - Permit revocation; bases for revocation or denial; appeal of permit revocation or denial.

a) Any permit issued under this article may be recommended for revocation by the City Clerk to the Adrian City Commission if the City Clerk finds and determines that grounds for revocation exist. Any grounds for revocation must be provided to the permit holder at least ten days prior to the date of the City Commission meeting at which the recommendation for revocation will be heard. Notice of the meeting shall be sent by first class mail to the mailing address given on the permit application or any updated mailing address provided to the City Clerk in writing subsequent to the filing of an application.

b) A permit applied for or issued may be denied or revoked on any basis provided under this article including the following:

   (1) A material violation of any provision of this article, including, but not limited to, the failure to submit a complete application under Sec. 46-505; or

   (2) Any conviction of a disqualifying felony by the permit holder, stakeholder, or any person holding an ownership interest in the permit; or

   (3) Commission of fraud or misrepresentation or the making of a false statement by the applicant, permit holder, or any stakeholder of the applicant or permit holder while engaging in any activity for which this article requires a permit; or

   (4) Failure to obtain, maintain or renew a permit issued by the City Clerk pursuant to this article; or

   (5) Failure of the permit holder or the marihuana facility, establishment or other business to obtain or maintain a license or approval from the State pursuant to the State or other laws; or

   (6) The marihuana facility, establishment or other business is determined by the City to have become a public nuisance or otherwise is operating in a manner detrimental to the public health, safety or welfare.

c) The denial of an application or revocation of a permit by the City Commission shall be final for purposes of judicial review.

Sec. 46-512. – Violations municipal civil infraction.

Any person and/or entity in violation of any provision of this article or failure to comply with any of the requirements of this article, including the operation of a marihuana facility, establishment, or other business without a permit issued pursuant to this article, is responsible for a municipal civil infraction violation. The City shall assess fines and abatement costs of each violation together with all remedies available under MCL 600.8701 et seq. Increased civil fines may be imposed for a repeat violation. As used in this section "repeat violation" shall mean a second or any subsequent infraction of the same requirement or provision committed by a person or establishment within any 12-month period. ~~Fines for each offense shall be as set forth in Section 2-373 of the Adrian City Code.~~ Each day a violation continues, including each day that a person shall operate a medical marihuana facility without a permit or assist in the operation of a medical marijuana facility without a valid permit in effect for that property, shall constitute a separate offense. Upon the third offense in any 12-month period, a recommendation for permit denial or revocation may be made to the City Commission. **Fines for each offense shall be as set forth in Section 2-373 of the Adrian City Code.**

Sec. 46-513. - Fees for ~~licenses~~ **permits**.

The fees for the permit herein defined shall be set by resolution of the city commission. The fee shall defray the costs incurred by the city for inspection, administration and enforcement of this article and shall not exceed any limitations imposed by Michigan law.

Sec. 46-514. - Severability.

The provisions of this article are hereby declared severable. If any part of this article is declared invalid for any reason by a court of competent jurisdiction, that declaration does not affect or impair the validity of all other provisions that are not subject to that declaration.



**City of Adrian**

Office of the City Clerk

135 E. Maumee St • Adrian, Michigan 49221

(517) 264-4866• Fax (517) 266-8016

09/05/2019

M.S.C.3
Nicole Hernandez
3540 Benner Hwy
Adrian MI 49221

RE:    RENEWAL APPLICATION

Dear Permit Holder,

On Friday, August 23, 2019 a deficiency notice was emailed to you with the following deficiencies indicated (with the exception of item #1):

1. The current permit for MSC3 has expired as of 7/31/2019.
2. The application is not a renewal application as it was received after the deadline.
3. The application was received as a new application and as such requires pre-qualification status from the State.
4. Also the notarized checklist states that a pre-qualification document was submitted with the application, however it is not in the packet.   Please submit the State prequalification notification within 10 days to the City Clerk's Office.

Based on the fact that this information was not provided, you are currently not in compliance with our ordinance and at this time it will be my recommendation to deny your renewal application for a 2019-2020 permit at the next City Commission meeting on Monday, September 16, 2019.

Should you have any questions regarding this matter, please contact this department.

Respectfully,

Robin Connor
City of Adrian
City Clerk
518-264-4866

EXHIBIT 42



**City of Adrian**

Office of the City Clerk

135 E. Maumee St. • Adrian, Michigan 49221

(517) 264-4866 • Fax (517) 266-8016

09/10/2019

M.S.C.3
Nicole Hernandez
3540 Benner Hwy
Adrian MI 49221

RE:     DEFICIENCIES – 2ND NOTICE

Dear Permit Holder,

On Friday, August 23, 2019 a deficiency notice was emailed to you with the following deficiencies indicated (with the exception of item #1):

1. The 2018-2019 permit for MSC3 has expired as of 7/31/2019.
2. The application is not a renewal application as it was received after the deadline.
3. The application was received as a new application and as such requires pre-qualification status from the State.
4. Also, the notarized checklist states that a pre-qualification document was submitted with the application, however it is not in the packet. Please submit the State prequalification notification within 10 days to the City Clerk's Office.

Based on the fact that this information was not provided, you are currently not in compliance with our ordinance and at this time it will be my recommendation to deny your new application for a 2019-2020 permit at the City Commission meeting on Monday, October 7, 2019.

Should you have any questions regarding this matter, please contact this department.

Respectfully,

Robin Connor
City of Adrian
City Clerk
518-264-4866



## MEMORANDUM

Date:       March 16, 2020

TO:         Nathan Burd, City Administrator
            Honorable Mayor Angela Heath
            City Commissioners

FROM:       Robin Connor, City Clerk

SUBJECT:    2019/2020 Medical Marijuana Facility Application Renewal

---

City staff has reviewed and approved the following Medical Marijuana Facility Application for renewal:

Oasis Wellness Center of Adrian, LLC          1032 S. Main Street

Provisioning Center

Application #RMM19-012

I have also reviewed the application and recommend the renewal of a Medical Marijuana Facilities Permit for Oasis Wellness Center of Adrian, LLC, 1032 S. Main Street, Adrian, Michigan 49221. This recommendation will not alter the terms for the September 2019 signed agreement between the City of Adrian and Oasis Wellness Center of Adrian.

Thank you,


Robin Connor
City Clerk

EXHIBIT 43



September 20, 2019

### Agreement between Oasis Wellness Center of Adrian, LLC and the City of Adrian
### Resolution to Proposed Recommendation to Revoke and Deny Permit

Oasis Wellness Center of Adrian, LLC (Oasis or Permit Holder), desires to operate a medical marijuana facility, specifically a provisioning center at 1032 S. Main St., in the B1/B2 zoning district of the City of Adrian (The City). On or about June 17, 2018, Oasis was issued an annual medical marijuana facility permit which was valid from June 11, 2018 to July 16, 2019. Oasis timely applied for renewal of the annual permit on or about June 10, 2019.

On or about September 10, 2018 Oasis was denied a state license to operate a medical marihuana facility. On or about October 26, 2018, The City administratively suspended the municipal permit pending a successful appeal of that license denial. Since that time Oasis and The City have had an open line of communication regarding the status of Oasis' appeal. On August 6, 2019, the Marijuana Regulatory Agency issued a Final Decision, and the denial of the state operating license for Oasis was affirmed. The City discovered this denial while processing the permit renewal application for Oasis and (i) issued a civil infraction for failure to report the denial, (ii) an administrative suspension for cause based on the civil infraction, and (iii) a recommendation was made to the City Commission to revoke the 2018-2019 permit and deny the 2019-2020 renewal application.

After consideration from both Oasis and the City, an agreement was reached to remove the recommendation for revocation and denial from the September 16, 2019 City Commission agenda. Oasis is seeking to continue the renewal application process. The City is willing to continue its consideration of the application upon execution of this agreement.

The following are elements of the resolution:

- **Civil Infraction**

   Oasis will promptly address the civil infraction issued on or about September 4, 2019 including submission of any payment due, based upon the fee schedule referenced in Sec 46-512 of the city code, the City of Adrian within ten (10) days of the signing of this agreement. Further, Oasis acknowledges its responsibility to fully comply with all relevant codes, including but not limited to Section 508 (c), *"Permit holder shall immediately notify the City Clerk and update as required the information provided on the application and the permit. Further, permit holder shall notify the City Clerk, within 10 business days, of any other changes in the information required by this article or that may materially affect the state license or the permit. Failure to do so may result suspension or revocation of the permit."*

- **Prohibition of Operation of a Licensed Medical Marihuana Facility**

  Oasis will adhere to a 180 day administrative suspension of their right to operate any medical marijuana facility within the City, specifically those rights associated with Permit Number MMP18-003. The City agrees that the suspension of the right to operate does not prevent Oasis from submission of site plans, application for zoning exception or compliance permits, or other actions required to move through the permit renewal process or further comply with state and local codes, rules, or statutes. Oasis fully understands that the suspension will not be lifted until 180 days from the date of signing of this Agreement and that acquisition of a state license to operate does not supersede this Agreement.

  **Date of Expiration of Suspension: Wednesday, March __, 2020**

- **Application for NEW Zoning Exception and Zoning Compliance Permit**

  Based upon the expiration of the zoning exception and zoning compliance permits previously granted to Oasis by the City of Adrian Planning Commission on June 5, 2018, Oasis understands that they do not currently meet the requirements for a medical marihuana facility permit. Therefore, Oasis agrees to promptly submit to the City all required applications, fees, site plans, and any other documentation required by the building or zoning department for consideration of a zoning exception and zoning compliance permit. Oasis further understands that the planning commission only meets once per month and that even with expeditious compliance with this term, the earliest date for consideration of the above-mentioned materials would be in November 2019.

- **Waiver of Recommendation on Renewal Application within 90/120 days**

  Oasis understands that their 2019-2020 renewal application is deficient in that the proper zoning requirements have not been met. The City agrees to consider the application IF the deficiency is cured under the terms of this Agreement. As such, Oasis voluntarily waives the right to receive a recommendation for approval or denial of their 2019-2020 renewal application within the required timeframes (City Clerk within 90 days and 120 days from the City Commission).

  Oasis further understands that they are fully bound by all requirements of Article XI Section 46-500-46-513 of the City Code and that failure to meet those requirements may result in denial of the renewal application and that by entering this Agreement The City does not make any guarantee of approval of the renewal permit.

- **Update 2019-2020 Renewal Application to Reflect Current Information**

  Oasis understands that the recent denial by the State is required information under Section A (5) of the renewal application and therefore must be updated per the code. Further, the permit renewal application no longer accurately lists the members of the entity (Section D) due to a recent submission of a new MMFLA application to the MRA. As such, the application cannot be considered for approval without compliance with Section 46-508 (c). The City agrees to allow Oasis 10 days from the

date of submission of the new MMFLA application to the state to update the permit renewal application.

• **Seek Approval of transfer under Section 46-502 (d)**

Oasis agrees that the submission of a new MMFLA application to the MRA with new membership or entity requires submission of a request to transfer the municipal permit and further obligates Oasis to meet all requirements of Section 46-502 (d), including approval of the City Commission, prior to the transfer being approved. Oasis understands that a notarized statement from the exiting member, relinquishing any potential interest in the current city permit would be a condition precedent to requesting the transfer to a new member or entity. Upon completion of the foregoing terms of this agreement and successful approval of the 2019-2020 permit renewal application, The City agrees to work with Oasis in defining the required steps to seek approval of transfer of the permit to current ownership.

It is the understanding of the parties, that in the event this timeline cannot be met, it is the sole responsibility of Oasis to contact the City, in writing, at least 30 days prior to December 31, 2019 to request and negotiate an extension. Should Oasis fail to do its due diligence to complete the terms of this Agreement, the City may reinstate the recommendations to revoke the 2018-2019 permit and deny the 2019-2020 medical marihuana facility permit renewal application.

Agreed to by Oasis:

Paul Weisberger, Member of Permit Holder      9/25/2019   Date

Mazin Samona, Member of Permit Holder      9/25/2019   Date

NEW MEMBER , LJA Holdings, LLC      9/25/2019   Date

Agree to by The City:

Nathan Burd, City Administrator      9/27/19   Date

Tamaris Henagan, City Attorney      09/24/2019   Date

Final Revision 09/24/2019 2:33PM TH

March 16, 2020

**R20-052**

RE:  **CITY CLERK – Approval of the Renewal of a Medical Marihuana Facility Permit for Oasis Wellness Center of Adrian LLC (Application #MM19-015)**

### RESOLUTION

WHEREAS, the Adrian City Commission has adopted a Commercial Medical Marihuana Facility & Adult Use Ordinance, Commercial Marihuana Zoning Ordinances, and Commercial Marihuana Zoning Ordinance Overlays; and

WHEREAS, Oasis Wellness Center LLC (Application #MM19-015) has submitted a Medical Marihuana Facility Permit Application for renewal at 1032 S. Main Street, Adrian, Michigan; and

WHEREAS, the City Clerk has reviewed the application, confirms that the required inspections have been conducted or the required waiver of inspections have been submitted, and that the application meets the requirements of the adopted Commercial Medical Marihuana Facility & Adult Use Establishment Ordinance, and recommends approval of a permit renewal to Oasis Wellness Center of Adrian LLC for 1032 S. Main Street, Adrian, Michigan.

WHEREAS, the approval of a permit will in no way alter the terms of the September 2019 signed agreement between the City of Adrian and Oasis Wellness Center of Adrian, LLC.; and

NOW, THEREFORE BE IT RESOLVED, that the Adrian City Commission by this resolution, hereby approves the renewal of a Medical Marihuana Permit (for Oasis Wellness Center of Adrian, LLC. at 1032 S. Main Street, Adrian, Michigan.

**On motion by Commissioner _____, seconded by Commissioner _____,**

**this Resolution was _____ by a _____ vote.**

Partner Attorneys:
 Matthew R. Abel, J.D.
 Ann M. Cisco, J.D.
 Thomas M.J. Lavigne, J.D.

Associate Attorneys:
 Julia A. Gilbert, J.D.
 Sean M. Myers, J.D.

Of Counsel:
 Alan L. Kaufman, J.D.
 Steven N. Rich, J.D.



Since 1999 - Cannabis Counsel®
a Registered Trademark & d/b/a of
Rivertown Law Firm P.L.C.

www.cannabiscounsel.com

2930 Jefferson Avenue East
Detroit, Michigan 48207
tel. 313-446-2235
fax. 313-784-9327

info@cannabiscounsel.com

# Cannabis Counsel®

September 10, 2019

City of Adrian
Attention Robin Conner, City Clerk
135 E. Maumee St.
Adrian, MI 49221  via certified mail and fax 517-266-8016 and email

 Re:  MSC3 - Medicinal Solutions Compassionate Care Corp

Dear Clerk, Robin Conner,

This is in reply to your September 5, 2019 letter to MSC3.  Please remove from the city commission's agenda for Monday, September 16, 2019.  MSC3 still awaits a final determination from the State of Michigan Marijuana Regulatory Agency with respect to whether to grant or deny MSC3's provisioning center license. We will inform you as soon as this final determination is rendered.

We were told by Adrian to inform Adrian as soon as MRA makes a final determination on MSC3's pending state prequalification and full facility license.

MSC3 applied for renewal of their property right permit in a timely manner given the defectiveness of, and the timing of, the passing of the ordinance and its amendments.

The check box of prequalification status already being granted was accidentally clicked.  Or were you asking for the application for prequalification?

Sincerely,

Thomas Lavigne
Attorney for MSC3

EXHIBIT 44

Case 2:20-cv-12559-MAG-RSW   ECF No. 1, PageID.357   Filed 09/18/20   Page 357 of 409

adriancity.com

Mayors of   Planning Co...   Appeals cou...   https://www...   arbitrary and...   Five Ways to...   (22) Facebook   Adrian City C...

Home   Government   Services   Business   Community   Reference Desk   Transparency   Contact Us

## AGENDA & COMMISSION PACKET

Library Millage

May 1, 2015   at 6:19 am

Facebook 0 Twitter

The Adrian City Commission will convene for a Special Meeting on Monday, November 5, 2018 at 5:30pm in the City Chambers, at 159 East Maumee Street, Adrian, Michigan 49221. The purpose of the Special Meeting is to discuss pending litigation. The Commission may go into closed session for this meeting.

The Adrian City Commission will then convene for a pre-meeting at 6:00pm, followed by the regular meeting at 7:00pm, both also held in the City Chambers Building. Both meetings are open to the public and the public is encouraged to attend.

Commission Packet

To view agendas and minutes from previous meetings please visit our Agendas and Minutes section under Reference Desk

## Upcoming Events

**FRI 17** — **Adrian International Film Festival**
May 17 – May 18

**MON 20** — **Adrian City Commission Meeting**
May 20 @ 7:00 pm - 9:00 pm
Adrian MI
United States

**TUE 21** — **Historic District Commission**
May 21 @ 7:00 pm
Adrian MI
United States

**TUE 28** — **Human Relations Commission Meeting**
May 28 @ 7:00 pm - 9:00 pm
Adrian MI

## Leave a Comment

Your email address will not be published. Required fields are marked *

EXHIBIT 45

https://drive.google.com/drive/folders/1ePEHR_dYMCl_rdsO6kgk-ij2RUD7lGd9

**AGENDA**
**ADRIAN CITY COMMISSION**
**November 5, 2018,**
**7:00PM**

I.   PRAYER AND PLEDGE OF ALLEGIANCE TO THE FLAG

II.   ROLL CALL

III.   APPROVAL OF THE MINUTES OF THE OCTOBER 15, 2018 REGULAR MEETING OF THE ADRIAN CITY COMMISSION.

IV.   PRESENTATION OF ACCOUNTS

V.   COMMUNICATIONS

1.   **C-1. Finance.** Presentation by the firm of Clark, Schaefer, Hackett of the Comprehensive Annual Financial Report (CAFR).

VI.   REGULAR AGENDA

RESOLUTIONS

1.   **R18-181. Finance.** Resolution to approve the FY2017-28 Comprehensive Annual Financial Report (CAFR) and authorize year-end encumbrances and carry-forwards, as well as designations of general fund unassigned fund balance. ***A copy of the CAFR is available in the City Clerk's Office at City Hall for public inspection prior to the meeting. Electronic copies are available upon request.***

2.   **R18-182. Finance.** Resolution to authorize the Department of Finance to amend the FY2018-19 Budget in accordance with the attached schedule entitled FY2018-19 First Quarter Budget Amendments.

3.   **R18-183. Administration.** Resolution to authorize Sarah Osburn of Cohl, Stoker & Toskey, P.C. to act on the recommendation of legal counsel regarding Auto-Owners v. Campbell- Durocher v. City of Adrian.

4.   **R18-184. City Clerk.** Resolution to deny a Medical Marihuana Facility Permit for GH2-AG, for 1201 E. Beecher Street.

5.   **R18-185. City Clerk.** Resolution to deny a Medical Marihuana Facility Permit for Erigere Rapid US Solutions Inc., for 1751 W. Beecher Street, Suite H.

6.   **R18-186. City Clerk.** Resolution to approve a Medical Marihuana Facility Permit for Herb of Life Inc., dba as Oxford Farms for 329 Logan Street.

**On motion by Commissioner Dudas, seconded by Commissioner Valentine, the Resolution was approved by a 7-0 vote.**

**R18-183 - ADMINISTRATION – Authorize the Recommendation of Legal Counsel Regarding Auto-Owners v. Campbell-Durocher v. City of Adrian**

### RESOLUTION

WHEREAS, the City of Adrian has contracted with Sarah Osburn of Cohl, Stoker & Toskey, P.C., for representation in the matter of Auto-Owners v. Campbell-Durocher v. City of Adrian; and

WHEREAS, a case evaluation was held on October 18, 2018 in this matter; and

WHEREAS, Attorney Osburn has presented the findings to the Adrian City Commission in a closed session on Monday, November 5, 2018 at 5:30pm and made a recommendation.

NOW THEREFORE, IT IS HEREBY RESOLVED that the Adrian City Commission authorizes Sarah Osburn, of Cohl, Stoker & Toskey, P.C., to act on the recommendation made to the Adrian City Commission in a closed session held on November 5, 2018 at 5:30pm.

**On motion by Commissioner Watson, seconded by Commissioner Dudas, the Resolution was approved by a 7-0 vote.**

**R18-184 - CITY CLERK – Recommendation for Denial of a Medical Marihuana Facility Permit for GH2-AG (Application #MM18-028)**

### RESOLUTION

WHEREAS, the Adrian City Commission has adopted a Commercial Medical Marihuana Facilities Ordinance, Medical Marihuana Zoning Ordinances, and Medical Marihuana Zoning Ordinance Overlays; and

WHEREAS, GH2-AG has made misrepresentations on their application for a Medical Marihuana Facility Permit for 1201 E. Beecher Street, Adrian, Michigan; and

WHEREAS, GH2-AG has failed to provide a completed application for a Medical Marihuana Facilities Permit.

NOW, THEREFORE BE IT RESOLVED, that the Adrian City Commission by this resolution, hereby confirms the recommendation of the Adrian City Clerk and denies a Medical Marihuana Facility Permit for GH2-AG, for 1201 E. Beecher Street, Adrian, Michigan (Application #MM18-028).

**On motion by Commissioner Heldt, seconded by Commissioner Dudas, the motion to table the Resolution was approved by a 7-0 vote.**

**R18-185 - CITY CLERK – Recommendation for Denial of a Medical Marihuana Facility Permit for Erigere Rapid US Solutions Inc. (Application #MM18-025)**



# MINUTES

## MINUTES
## ADRIAN CITY COMMISSION
### November 5, 2018 @ 7:00PM

The City Commission met for a pre-meeting study session on Monday, October 15, 2018 at 5:30pm at the City Chambers Building at 159 East Maumee Street, Adrian, Michigan for a work study session. The following items were discussed:

1. Recreational Marihuana - City Attorney Tamaris Henagan discussed the issues regarding the proposal if passed, how it would affect the City.
2. Handicap Ramp Permit Fee – Discussed waiving fees.
3. Other Items as Time Permits – Recycling issues were discussed.
4. Public Comment – Commented on the need for the handicap ramps increasing, waiving the fees were a way to give a little back to the citizens and if the fee was waived it would be a boost to the community.

**The Commission began the regularly scheduled meeting at 7:00pm.**

Official proceedings of the November 5, 2018 regular meeting of the City Commission, Adrian, Michigan.

The regular meeting was opened with a moment of silence followed by the Pledge of Allegiance.

**PRESENT:** Mayor Jacobson &, Commissioners Dudas, Valentine, Heldt, Faulhaber, Watson and Strayer.

**On motion by Commissioner Heldt, seconded by Commissioner Watson, the minutes of the October 15, 2018 Regular Meeting of the Adrian City Commission, were approved by a 7-0 vote.**

Mayor Jacobson in the Chair.

## PRESENTATION OF ACCOUNTS

Utility Department Vouchers

Vouchers #4668 through #4673 ................................... $53,929.72

General Fund

Vouchers #23825 through #23846 .............................. $194,285.52

Clearing Account Vouchers

amounting to............................................................. $1,752,646.52

TOTAL EXPENDITURES ............................................................. $2,000,861.76

**On motion by Commissioner <u>Dudas</u>, seconded by Commissioner <u>Heidt</u> and Commissioner <u>Watson</u>, the vouchers were approved by a <u>7-0</u> vote.**

## COMMUNICATIONS

**C-1. Finance.** Presentation by the firm of Clark, Schaefer, Hackett of the Comprehensive Annual Financial Report (CAFR).

Brian Mosier gave a summary of their findings. Went over some of the highlights of the audit.

## REGULAR AGENDA

## RESOLUTIONS

**R18-181 - RE: DEPARTMENT OF FINANCE – Approval of FY2017-18 Comprehensive Annual Financial Report (CAFR) and Authorization of Year-End Encumbrances and Carry-Forwards, as well as Designations of General Fund Unassigned Fund Balance**

### RESOLUTION

WHEREAS Public Act 2 of 1968, the Uniform Budgeting and Accounting Act (as amended) specifies that the Chief Administrative Officer of each local unit shall make an annual financial report...and Chapter Eight, Section 8.7 of the City Charter further specifies that *The City Administrator shall prepare an annual report of the affairs of the City, including a financial report; and*

WHEREAS, the Governmental Accounting Standards Board (GASB) Statement 54, Fund Balance Reporting, indicates that Designations of General Fund Unassigned Fund Balance can be authorized by either the Chief Administrative Officer or City Commission, and, the Government Finance Officers' Association (GFOA) recommends that the legislative branch of local government authorize Year-End Encumbrances and Carry-Forwards as amendments to the ensuing year's budget; and

WHEREAS, the CAFR has been prepared and presented and the audit completed by the independent certified public accounting firm of Clark, Schaefer, Hackett, reflecting an opinion as follows:

*In our opinion, the financial statements referred to above present fairly, in all material respects, the respective financial position of the governmental activities, the business-type activities, each major fund, and the aggregate remaining fund information of the City of Adrian, Michigan, and its discretely presented component units, the Brownfield Redevelopment Authority and Downtown Development Authority, as of June 30, 2018, and the respective changes in financial position and, where applicable, cash flows thereof and the respective budgetary comparison for the General Fund and the Major Streets, and the Community Development special revenue funds for the year then ended in accordance with accounting principles generally accepted in the United States of America.*

WHEREAS, included in the CAFR, the City Administrator recommends the following Designations to the General Fund Unassigned Fund Balance:

| | | |
|---|---|---|
| 1) Pending Michigan Tax Tribunal Claims | | $ 35,000 |
| 2) Blight Elimination | | $150,000 |

| | |
|---|---|
| 3) Union Negotiations | $100,000 |
| 4) Local Grant Match | $ 25,000 |
| 5) Ambulance Purchase | $220,000 |
| 6) Bohn Pool Boiler Replacement | $100,000 |

; and

WHEREAS, the Finance Director and City Administrator recommend approval of this resolution including: 1) Comprehensive Annual Financial Report (CAFR) 2) Designations to General Fund Unassigned Fund Balance detailed above, and 3) Year-End Encumbrances and carry-forwards in the total amount of $3,764,340.96.

NOW THEREFORE BE IT RESOLVED that the Adrian City Commission, by this resolution and in accordance with Public Act 2 of 1968, the Uniform Budgeting and Accounting Act (as amended), hereby approves this resolution including: 1) Comprehensive Annual Financial Report (CAFR), 2) Designations to General Fund Unassigned Fund Balance detailed above, and 3) year-end encumbrances and carryforwards in the total amount of $3,746,340.96.

**On motion by Commissioner Heldt, seconded by Commissioner Strayer, the Resolution was approved by a 7-0 vote.**

**R18-182 - DEPARTMENT OF FINANCE – FY2018-19 FIRST QUARTER BUDGET AMENDMENTS**

**RESOLUTION**

WHEREAS Public Act 621 of 1978, the Uniform Budgeting and Accounting act for Local Units of Government, provides for adjustments to the Adopted Budget; and

WHEREAS the Financial Forecast, prepared by the City of Adrian's Finance Department, has identified several variances between current projections and Estimated Revenues and Appropriations included in the Adopted and Amended FY2018-19 Budget, and recommends appropriate budget amendments; and

WHEREAS the recommended budget amendments comply with the Uniform Budgeting and Accounting Act requirement that no appropriations measure may be submitted to the City Commission that would allow total expenditures/expenses, including an accrued deficit, to exceed total estimated revenues, including an available surplus; and

WHEREAS the City Administrator has reviewed the Financial Forecast and proposed budget amendments and recommends their adoption.

NOW THEREFORE BE IT RESOLVED that the Adrian City Commission authorizes the Department of Finance to amend the FY2018-19 Budget in accordance with the attached schedule entitled City of Adrian FY2018-19 First Quarter Recommended Budget Amendments.

BE IT FURTHER RESOLVED that the resulting Amended Budget shall comply with the Uniform Budgeting and Accounting Act (Public Act 621 of 1978) for Local Units of Government, which requires that no appropriations measure may be adopted in which total expenditures/expenses, including an accrued deficit, exceed total estimated revenues, including any available surplus.

**On motion by Commissioner Dudas, seconded by Commissioner Valentine, the Resolution was approved by a 7-0 vote.**

**R18-183 - ADMINISTRATION – Authorize the Recommendation of Legal Counsel Regarding Auto-Owners v. Campbell-Durocher v. City of Adrian**

### RESOLUTION

WHEREAS, the City of Adrian has contracted with Sarah Osburn of Cohl, Stoker & Toskey, P.C., for representation in the matter of Auto-Owners v. Campbell-Durocher v. City of Adrian; and

WHEREAS, a case evaluation was held on October 18, 2018 in this matter; and

WHEREAS, Attorney Osburn has presented the findings to the Adrian City Commission in a closed session on Monday, November 5, 2018 at 5:30pm and made a recommendation.

NOW THEREFORE, IT IS HEREBY RESOLVED that the Adrian City Commission authorizes Sarah Osburn, of Cohl, Stoker & Toskey, P.C., to act on the recommendation made to the Adrian City Commission in a closed session held on November 5, 2018 at 5:30pm.

**On motion by Commissioner Watson, seconded by Commissioner Dudas, the Resolution was approved by a 7-0 vote.**

**R18-184 - CITY CLERK – Recommendation for Denial of a Medical Marihuana Facility Permit for GH2-AG (Application #MM18-028)**

### RESOLUTION

WHEREAS, the Adrian City Commission has adopted a Commercial Medical Marihuana Facilities Ordinance, Medical Marihuana Zoning Ordinances, and Medical Marihuana Zoning Ordinance Overlays; and

WHEREAS, GH2-AG has made misrepresentations on their application for a Medical Marihuana Facility Permit for 1201 E. Beecher Street, Adrian, Michigan; and

WHEREAS, GH2-AG has failed to provide a completed application for a Medical Marihuana Facilities Permit.

NOW, THEREFORE BE IT RESOLVED, that the Adrian City Commission by this resolution, hereby confirms the recommendation of the Adrian City Clerk and denies a Medical Marihuana Facility Permit for GH2-AG, for 1201 E. Beecher Street, Adrian, Michigan (Application #MM18-028).

**On motion by Commissioner Heldt, seconded by Commissioner Dudas, the motion to table the Resolution was approved by a 7-0 vote.**

**R18-185 - CITY CLERK – Recommendation for Denial of a Medical Marihuana Facility Permit for Erigere Rapid US Solutions Inc. (Application #MM18-025)**

## RESOLUTION

WHEREAS, the Adrian City Commission has adopted a Commercial Medical Marihuana Facilities Ordinance, Medical Marihuana Zoning Ordinances, and Medical Marihuana Zoning Ordinance Overlays; and

WHEREAS, Erigere Rapid US Solutions Inc. has failed to provide a complete application for a Medical Marihuana Facility Permit for 1751 W. Beecher Street, Adrian, Michigan; and

WHEREAS, Erigere Rapid US Solutions Inc. has failed to correct deficiencies in their application for a Medical Marihuana Facilities Permit.

NOW, THEREFORE BE IT RESOLVED, that the Adrian City Commission by this resolution, hereby confirms the recommendation of the Adrian City Clerk and denies a Medical Marihuana Facility Permit for Erigere Rapid US Solutions Inc., for 1751 W. Beecher Street, Adrian, Michigan, (Application #MM18-025).

**On motion by Commissioner <u>Watson</u>, seconded by Commissioner <u>Dudas</u>, the Resolution was approved by a <u>7-0</u> vote.**

**R18-186 – CITY CLERK – Recommendation for Approval of a Medical Marihuana Facility Permit for Herb of Life, Inc., DBA Oxford Farms (Application #MM18-027)**

## RESOLUTION

WHEREAS, the Adrian City Commission has adopted a Commercial Medical Marihuana Facilities Ordinance, Medical Marihuana Zoning Ordinances, and Medical Marihuana Zoning Ordinance Overlays; and

WHEREAS, Herb of Life, Inc. dba Oxford Farms, has submitted an application for a Medical Marihuana Facility Permit for 329 Logan Street Adrian, Michigan; and

WHEREAS, the City Clerk has reviewed the application, confirms that the required waivers for inspections have been issued, and that the application meets the requirements of the adopted Medical Marihuana Facility Ordinances, and recommends approval of a permit as a Grower Class A to Herb of Life, Inc. dba Oxford Farms for 329 Logan Street, Adrian, Michigan.

NOW, THEREFORE BE IT RESOLVED, that the Adrian City Commission by this resolution, hereby confirms the recommendation of the Adrian City Clerk and approves a Medical Marihuana Facility Permit (Grower Class A) for Herb of Life, Inc. dba Oxford Farms, for 329 Logan Street, Adrian, Michigan (Application #MM18-027).

**On motion by Commissioner <u>Heldt</u>, seconded by Commissioner <u>Strayer</u>, the Resolution was approved by a <u>5-2</u> vote.**

**YES:   Mayor Jacobson, Commissioners Heldt, Faulhaber, Strayer, Heldt**

**NO:   Commissioners Dudas and Valentine**

**R18-187 - CITY CLERK – Reinstate a Medical Marihuana Facility Permit for MEM Gardens, LLC for 346 Logan Street (Application #MM18-004, Permit #MMG18-001 & MMPR18-001)**

## RESOLUTION

WHEREAS, the Adrian City Commission has adopted a Commercial Medical Marihuana Facilities Ordinance, Medical Marihuana Zoning Ordinances, and Medical Marihuana Zoning Ordinance Overlays; and

WHEREAS, the Adrian City Commission previously revoked a Grower Processor Medical Marihuana Permit (Application #18-004) to MEM Gardens, LLC for 1020-1022 E Michigan Street; and

WHEREAS, MEM Gardens, LLC has relocated their facility to 346 Logan Street.

NOW, THEREFORE BE IT RESOLVED, that the Adrian City Commission by this resolution, hereby reinstates the Medical Marihuana Grower/Processor Permit for MEM Gardens, LLC, for 346 Logan Street (Application #MM18-004, Permit #MMG18-001 & MMPR18-001).

**On motion by Commissioner Heldt, seconded by Commissioner Strayer, the Resolution was approved by a 5-2 vote.**

**YES:  Mayor Jacobson, Commissioners Heldt, Faulhaber, Strayer, Heldt**

**NO:  Commissioners Dudas and Valentine**

**R18-188 – COMMUNITY DEVELOPMENT – Approve accepting donations on behalf of citizen group raising funds for downtown decorations**

## RESOLUTION

WHEREAS, the City of Adrian has engaged in a variety of Placemaking projects, renovations projects, art displays and capital projects in an effort to enhance the quality of life for Adrian residents; and

WHEREAS, a local citizens group approached the Mayor and Downtown Development Authority about raising funds to be used in the beautification and decoration of Historic Downtown Adrian; and

WHEREAS, the City of Adrian, and the Downtown Development Authority both made contributions to this effort; and

WHEREAS, a number of Adrian businesses, foundations, and individuals also desire to support this effort.

NOW, THEREFORE, BE IT RESOLVED that the Adrian City Commission approves accepting gifts on behalf of the citizens who are raising funds and who will then use those funds to purchase goods and services designed to accelerate and expand the beautification

of Downtown Adrian, and expresses its appreciation of this effort and of the individuals leading it.

**On motion by Commissioner Dudas, seconded by Commissioner Heldt, the Resolution was approved by a 7-0 vote.**

**R18-189 – COMMUNITY DEVELOPMENT – Approve Project Rising Tide partnership with Michigan Economic Development Corporation and authorize signatories to related documents**

### RESOLUTION

WHEREAS, the City of Adrian has engaged in a variety of economic development initiatives, Placemaking projects, grants and various incentive programs to support the Adrian area economy; and

WHEREAS, the State of Michigan developed Project Rising Tide to assist communities with structural economic development challenges; and

WHEREAS, the City of Adrian, as a county seat, has a variety of economic development challenges including a significant amount of untaxable property, a diverse population with the highest demand on public safety and human service organizations, and household incomes below state and national averages; and

WHEREAS, the State of Michigan has offered to partner with the City of Adrian and provide coordinated state resources, technical assistance, and a Rising Tide fellowship design to support City of Adrian economic development initiatives.

NOW, THEREFORE, BE IT RESOLVED that the Adrian City Commission approves the Project Rising Tide partnership with the Michigan Economic Development Corporation and authorizes the Mayor to sign any documents related to the program, and to identify the Host Community Point Person.

**On motion by Commissioner Watson, seconded by Commissioner Dudas, the Resolution was approved by a 7-0 vote.**

**R18-190 – CITY COMMISSION – Approve the Closure of City Facilities on Wednesday, November 21, 2018 at 12:00pm and Give all Full-Time and Regular Part-Time City Employees a Paid Half Day Off.**

### RESOLUTION

WHEREAS, the City Commission has provided for additional paid leave time to all full-time and regular part-time employees over the past five years either over the Thanksgiving or Christmas Holidays; and

WHEREAS, the City Commission would like to provide all full-time and regular part-time city employees with a paid half day off regardless of whether they are scheduled to work on Wednesday November 21, 2018; and

NOW THEREFORE, IT IS HEREBY RESOLVED that the City shall close for regular business at 12:00pm on Wednesday November 21, 2018.  All full-time and regular part-time city employees who are required to work after 12:00pm on Wednesday November 21, 2018 shall receive a paid half day off to be taken at the discretion of their Department Head, in accordance with scheduling needs.

NOW THEREFORE, IT IS FURTHER RESOLVED that all full-time and regular part-time city employees not scheduled to work on Wednesday November 21, 2018 shall also receive a paid half day off to be taken at the discretion of their Department Head, in accordance with scheduling needs.

**On motion by Commissioner Watson, seconded by Commissioner Dudas, the Resolution was approved by a 7-0 vote.**

**PUBLIC COMMENT**

Brittany Dulbs
659 W. Beecher St. Apt 40

Discussed comments being made about water issues.

**COMMISSIONER COMMENTS**

Commissioner Faulhaber announced his resignation as a City Commissioner.  He gave a brief history of his years involved in the Commission and all the work he has done for the City over the years.

Mayor Jacobson presented a proclamation to Commissioner Faulhaber thanking him for all of his years of service to the City.

**On motion by Commissioner Heldt and seconded by Commissioner Watson the motion to accept Commissioner Faulhaber's resignation was adopted unanimous vote.**

The Commissioners thanked Commissioner Faulhaber for his passion and service to the City.

**Motion to adjourn meeting was approved by an all yes vote.**

**Meeting adjourned at 8:04 pm.**

The next regular meeting of the Adrian City Commission will be held at 7:00 pm on Monday, November 19, 2018 at the City Chambers Building, 159 E. Maumee Street, Adrian, MI 49221

Chuck Jacobson                                                           Robin Connor
Mayor                                                                         City Clerk

**ADRIAN CITY COMMISSION**
**AGENDA**
**PRE-MEETING STUDY SESSION**
**MONDAY**
**November 5, 2018**

The City Commission will meet for a pre-meeting study session on Monday, November 5, 2018 at 6:00pm at the City Chambers Building at 159 East Maumee Street, Adrian, Michigan for a work study session.

1. Recreational Marihuana Discussion.
2. Handicap Ramp Permit Fee Discussion.
3. Other Items as Time Permits.
4. Public Comment.

*Pre-meeting study sessions are open to the public and the public is encouraged to attend. Should attendance exceed the capacity of the conference room, the study session will be moved to the main commission chambers.*

Case 2:20-cv-12559-MAG-RSW   ECF No. 1, PageID.370   Filed 09/18/20   Page 370 of 409

EXHIBIT 46



Safari   File   Edit   View   History   Bookmarks   Window   Help

adriancity.com

Mayors of   Planning Co...   Appeals cou...   https://www...   arbitrary and...   Five Ways to...   (22) Facebook   Adrian City C...

Home  Government  Services  Business  Community  Reference Desk  Transparency  Contact Us

Adrian District
Library Millage

May 1, 2015   at 8:19 am

Facebook0Twitter

The Adrian City Commission will convene for a Special Meeting on Monday, December 17, 2018 at 5:30pm in the City Chambers, at 159 East Maumee Street, Adrian, Michigan 49221. The purpose of the Special Meeting is to discuss pending litigation. The Commission may go into closed session for this meeting.

The Adrian City Commission will then convene for a pre-meeting at 5:45pm, followed by the regular meeting at 7:00pm, both also held in the City Chambers Building. Both meetings are open to the public and the public is encouraged to attend.

Commission Packet

To view agendas and minutes from previous meetings please visit our Agendas and Minutes section under Reference Desk

## Upcoming Events

**FRI 17**  Adrian International Film Festival
May 17 – May 18

**MON 20**  Adrian City Commission Meeting
May 20 @ 7:00 pm - 9:00 pm
Adrian MI
United States

**TUE 21**  Historic District Commission
May 21 @ 7:00 pm
Adrian MI
United States

**AGENDA**
**ADRIAN CITY COMMISSION**
**December 17, 2018,**
**7:00PM**

I.    PRAYER AND PLEDGE OF ALLEGIANCE TO THE FLAG

II.   ROLL CALL

III.  APPROVAL OF THE MINUTES OF THE DECEMBER 3, 2018 REGULAR MEETING OF THE ADRIAN CITY COMMISSION.

IV.   APPROVAL OF THE MINUTES OF THE DECEMBER 10, 2018 SPECIAL MEETING OF THE ADRIAN CITY COMMISSION.

V.    PRESENTATION OF ACCOUNTS

VI.   COMMUNICATIONS

    1. **C-1. Adrian College.** Presentation of MICR based Victim Statistics Study by Gabrielle Novak and Dr. Boxer of Adrian College.

    2. **C-2. Finance.** Revenue and expenditure report for November.

    3. **C-3. Finance.** Communication regarding SAD #390 Vine Street interest rate.

VII.  REGULAR AGENDA

    A. ORDINANCES

        **Ord. 18-020.** Reading and adoption of an ordinance to amend Section 3.1 of Article III of the City of Adrian Zoning/Development Regulations, and the Zoning Map to the extent of deleting 721 Riverside Ave. from the OS-1 Office Service and including the same in the R-4 Single Family Residential.

    B. RESOLUTIONS

        1. **R18-213. Transportation.** Resolution to approve a revised Title VI Program for the City of Adrian developed for Dial-A-Ride and to authorize the Mayor and City Clerk to sign the Acknowledgement of the program.

        2. **R18-214. City Commission.** Resolution to appoint Hope Bernard as Chair of the Human Relations Commission.

        3. **R18-215. City Commission.** Resolution to appoint Casey Noce to the Downtown Development Authority.

4. **R18-216. City Commission.** Resolution to appoint Kevin Iott to the Downtown Development Authority.

5. **R18-217. City Commission.** Resolution to waive the handicap ramp permit fees.

6. **R18-218. Administration.** Resolution to amend the Witt Farm Lease.

7. **R18-219. Administration.** Resolution to authorize the recommendation of legal counsel regarding Auto-Owners v. Campbell Durocher v. City of Adrian.

VIII.    MISCELLANEOUS

1. Departmental Report.

2. D.A.R.T. Passenger Ridership Report.

3. Adrian Fire Department Report.

4. Criminal Justice Reports (October & November)

5. Code Enforcement Report.

6. Engage Adrian (seeclickfix) Report.

7. Planning Commission Meeting minutes.

8. DDA Meeting minutes.

IX.    PUBLIC COMMENT

X.    COMMISSIONER COMMENTS

WHEREAS, the construction of handicap ramps is often completed by non-profit organizations for individuals in need; and

WHEREAS, waiving the permit fee for the construction of handicap ramps is in the best interest of the residents of the City of Adrian.

NOW, THEREFORE, BE IT RESOLVED that the Adrian City Commission hereby waives the permit fees for construction of all handicap ramps until further resolution by the Adrian City Commission.

**On motion by Commissioner Watson, seconded by Commissioner Dudas, this Resolution was approved by a 7-0 vote.**

Mayor Jacobson mentioned that if it didn't affect the City greatly we should wave the fee. Also that the money to build these ramps was usually donated.

### R18-218 - ADMINISTRATION – Farm Lease Agreement with Fred Feight – Former Witt Farm

### RESOLUTION

WHEREAS, the City of Adrian is the owner of approximately Forty Seven and 68/100 (47.68) acres of land adjacent to M-52, formerly known as the Witt Farm; and

WHEREAS, a portion of the real estate is tillable; and

WHEREAS, the Adrian City Commission on May 7, 2018 by resolution R18-054 approved a lease agreement with Fred Feight to rent approximately fifty-two (52) acres of tillable ground on the above mentioned parcel of real estate for One Hundred ($125) Dollars per acre for a period ending December 31, 2018; and

WHEREAS, it has come to the attention of City staff that the tillable acreage is only Forty Seven and 68/100 (47.68) acres; and

WHEREAS, it is the recommendation of City staff that the lease agreement between the City of Adrian and Fred Feight be amended to reflect the actual tillable acreage.

NOW, THEREFORE, IT IS HEREBY RESOLVED that the Mayor is hereby authorized to enter into an Amended Farm Lease Agreement with Fred Feight to rent approximately Forty Seven and 68/100 (47.68) acres of tillable ground on the above-mentioned parcel of real estate for One Hundred ($125.00) Dollars per acre for a period ending December 31, 2018, and subject to other terms acceptable to the City Administrator.

**On motion by Commissioner Dudas, seconded by Commissioner Valentine, this Resolution was approved by a 7-0 vote.**

### R18-219 - ADMINISTRATION – Authorize the Recommendation of Legal Counsel Regarding Auto-Owners v. Campbell-Durocher v. City of Adrian

### RESOLUTION

WHEREAS, the City of Adrian has contracted with Sarah Osburn of Cohl, Stoker & Toskey, P.C., for representation in the matter of Auto-Owners v. Campbell-Durocher v. City of Adrian; and

WHEREAS, a settlement conference was attended by Attorney Sarah Osburn and Acting Administrator Vince Emrick on November 28, 2018 in this matter; and

WHEREAS, the Adrian City Commission discussed the proposed Settlement Agreement with the City Attorney during a closed session on Monday, December 17, 2018 at 5:30pm.

NOW THEREFORE, IT IS HEREBY RESOLVED that the Adrian City Commission authorizes the Mayor to act on the recommendation made to the Adrian City Commission by the City Attorney in a closed session held on December 17, 2018 at 5:30pm, and further authorizes the Mayor to execute the proposed Settlement Agreement.

**On motion by Commissioner Heldt, seconded by Commissioner Valentine, this Resolution was approved by a 7-0 vote.**

## MISCELLANEOUS

- Departmental Report.
- D.A.R.T. Passenger Ridership Report.
- Adrian Fire Department Report.
- Criminal Justice Reports (October & November)
- Code Enforcement Report.
- Engage Adrian (seeclickfix) Report.
- Planning Commission Meeting minutes.
- DDA Meeting minutes.

## PUBLIC COMMENT

**Gary Moore**
**1019 Vine St.**

Expressed his concerns that questions were not answered from the last conversation he had with the Commission over the problems with his property. He feels mistakes were made and he should not have to pay for it.

## COMMISSIONER COMMENTS

Welcomed Nathan Burd as the new City Administrator and also welcomed Mary Roberts as the new City Commissioner.

## MOTION TO ADJOURN MEETING

**On motion by Commissioner Dudas, and seconded by Commissioner Watson, the motion to adjourn the meeting was approved by an all yes vote.**

*Meeting adjourned at: 7:39 pm*

The next regular meeting of the Adrian City Commission will be held at 7:00 pm on Monday, January 7, 2019 at the City Chambers Building, 159 E. Maumee Street, Adrian, MI 49221

---

Chuck Jacobson                                         Robin Connor
Mayor                                                       City Clerk

EXHIBIT 47



**MINUTES**
**ADRIAN CITY COMMISSION**
**April 1, 2019 @ 7:00PM**

The City Commission met for a pre-meeting study session at 6:30 pm at the City Chambers Building. The following items were discussed:

- Budget information
- Marihuana Issues

Meeting adjourned at 6:50 pm.

**The Commission began the regularly scheduled meeting at 7:00pm.**

Official proceedings of the April 1, 2019 regular meeting of the City Commission, Adrian, Michigan.

The regular meeting was opened with a moment of silence followed by the Pledge of Allegiance.

**PRESENT:**   Mayor Jacobson &, Commissioners Valentine, Dudas and Strayer.
**ABSENT:**   Commissioners Heldt, Roberts and Watson.

**On motion by Commissioner Strayer, seconded by Commissioner Valentine, the motion to excuse Commissioners Heldt, Roberts and Watson, was approved by a 3-1 vote.**

**On motion by Commissioner Valentine, seconded by Commissioner Dudas, the minutes of the April 1, 2019 Regular Meeting of the Adrian City Commission, were approved by a 4-0 vote.**

Mayor Jacobson in the Chair

**PRESENTATION OF ACCOUNTS**

| | |
|---|---:|
| Utility Department Vouchers | |
| Vouchers #4717 through #4720 | $53,347.95 |
| General Fund | |
| Vouchers #23980 through #23991 | $57,285.40 |
| Clearing Account Vouchers | |
| amounting to | $232,019.08 |
| TOTAL EXPENDITURES | $342,652.43 |

**On motion by Commissioner Dudas, seconded by Commissioner Valentine, the Vouchers were approved by a 4-0 vote.**

**REGULAR AGENDA**

**R19-034 - FINANCE DEPARTMENT – Special Assessment Roll – Delinquent Invoices**

## RESOLUTION

WHEREAS, the City Administrator has directed the City Treasurer, pursuant to Sections 70-12 and 74-169 of the Adrian City Code, to prepare a Special Assessment Roll to cover all delinquent charges for rental registration and inspection fees, parking assessments, improvements or abatements of public hazards on single lots in the City of Adrian, and other miscellaneous invoices; and

WHEREAS, such assessment roll shall be reported to the City Commission in the same manner as other rolls and, likewise, includes a ten (10%) percent penalty for late payment; and

WHEREAS, the City Administrator and City Treasurer have forwarded said roll to the City Commission with recommendation that it be approved; and

WHEREAS Notice of Hearing on the confirmation of the roll shall be given not less than ten (10) days before the hearing by first class mail, addressed to the owner or party in interest of the land to be assessed as shown by the last local tax assessment records in the office of the City Assessor; and

WHEREAS, upon confirmation of the aforementioned Special Assessment Roll, the special assessments shall constitute a lien upon the premises and a charge against the owner thereof until paid.

NOW, THEREFORE, BE IT RESOLVED that the Adrian City Commission, by this resolution, hereby approves the Special Assessment Roll for delinquent rental registration and inspection fees, parking assessments, improvements or abatements of public hazards on single lots in the City of Adrian, and other miscellaneous invoices, including a ten (10%) percent penalty for late payment, and that said Special Assessment Roll be filed forthwith in the office of the City Clerk for public examination.

BE IT, FURTHER, RESOLVED that the City Commission shall meet in the Commission Chambers, 159 E. Maumee Street, Adrian, MI, at 7:00 p.m. on Monday, April 15, 2019, for the purpose of reviewing said roll and hearing and considering any objections thereto.

BE IT, FURTHER, RESOLVED that the City Clerk is hereby directed to give notice that the said Special Assessment Roll is on file for public examination and to give notice of said meeting and hearing set forth above pursuant to the provisions of Title I, Chapter 8, Section 70-13 of the Adrian City Code.

**On motion by Commissioner Dudas, seconded by Commissioner Strayer, the Resolution was approved by a 4-0 vote.**

**R19-035 - FINANCE DEPARTMENT – Special Assessment Roll – Delinquent Water and Sewer Charges**

## RESOLUTION

WHEREAS, Section 94-247 of the Adrian City Code specifies that charges for water service and sanitary sewer service under the provisions of Public Act No. 94 of 1933 (MCL 141,101 et seq.), are made a lien on the premises to which furnished; and

WHEREAS, the aforementioned Section further requires the City Administrator to annually present, at the first Commission meeting in April a report of all delinquent charges that have remained unpaid for a period of six months; and

WHEREAS, the City Administrator and Utilities Director have forwarded said report to the City Commission for unpaid amounts totaling $17,361.67 dating to November 1, 2018, with recommendation that it be approved; and

WHEREAS, Section 70-12 of the Adrian City Code, Single Lot Assessment requires that Notice of Hearing on the confirmation of the roll shall be given not less than ten (10) days before the hearing by first class mail, addressed to the owner or party in interest of the land to be assessed as shown by the last local tax assessment records in the office of the City Assessor; and

WHEREAS, upon confirmation of the aforementioned Special Assessment Roll of delinquent water and sewer charges, the special assessments shall constitute a lien upon the premises and a charge against the owner thereof until paid.

NOW, THEREFORE, BE IT RESOLVED that the Adrian City Commission, by this resolution, hereby approves the Special Assessment Roll for delinquent water and sewer charges in the amount of $17,361.67 including a ten (10%) percent penalty for late payment, and that said Special Assessment Roll be filed forthwith in the office of the City Clerk for public examination.

BE IT, FURTHER RESOLVED that the City Commission shall meet in the Commission Chambers 159 E. Maumee Street, Adrian MI, at 7:00 p.m. on Monday, April 15, 2019, for the purpose of reviewing said roll and hearing and considering any objections thereto.

BE IT FURTHER, RESOLVED that the City Clerk is hereby directed to give notice that the said Special Assessment Roll is on file for public examination and to give notice of said meeting and hearing set forth above pursuant to the provisions of Title I, Chapter 8, Section 70-13 of the Adrian City Code.

**On motion by Commissioner Dudas, seconded by Commissioner Valentine, the Resolution was approved by a 4-0 vote.**

### R19-036 – PARKS & ENGINEERING SERVICES – Supplemental Mowing at Heritage Park

### RESOLUTION

WHEREAS, on behalf of the Parks & Engineering Services Department, the City of Adrian Purchasing Office has solicited and received bids on Thursday, March 21, 2019, for a contractor to complete supplemental mowing of Heritage Park. (The mowable area is approximately 94 acres, comprised of common areas, softball, soccer, and other sporting fields and a disc golf course. All chain link fence lines are included for trimming); and

WHEREAS, in response to a Request-for-Proposal, a total of nine (9) bids were received. A detailed bid tabulation is listed below; and

| | Labor, equipment, materials-Sports Fields Mowed Area (per acre) |
| --- | --- |
| Adams Property Services<br>Adrian, MI | $20.00 |
| Your Design or Mine Landscaping & Snow Removal<br>Detroit, MI | $21.00 |
| M&M Lawn Care & Landscaping<br>Adrian, MI | $26.80 |
| Comar Outdoor Services<br>Adrian, MI | $32.00 |
| Cut Right Lawn Care, LLC<br>Adrian, MI | $23.00 |
| Stratton's Landscape<br>Adrian, MI | $28.00 |
| VanErt's LLC<br>Adrian, MI | $54.00 |

| | |
|---|---|
| Allen's Quickly Lawn Service<br>Britton, MI | $20.00 |
| Elysian Landscape & Flatwork LLC<br>Jackson, MI | $39.50 |

WHEREAS, the Project Manager of Parks & Engineering Services and the City Administrator recommend acceptance of the low bid from Adams Property Services, Adrian, MI; and

WHEREAS, the Finance Director indicates that there are sufficient funds to support a contract, in the following accounts:

101-698.00-801.000          Heritage Park Contract Services

NOW, THEREFORE, BE IT RESOLVED, that the Adrian City Commission, by this resolution, hereby authorizes the acceptance of the bid from Adams Property Services, Adrian, MI, for engagement in the City's Standard Professional Services Contract.

**On motion by Commissioner Dudas, seconded by Commissioner Strayer, the Resolution was approved by a 4-0 vote.**

**MOTION TO ADJOURN 7:08 pm**

**On motion by Commissioner Dudas, seconded by Commissioner Strayer, the motion to Adjourn was approved by an all yes vote.**

The next regular meeting of the Adrian City Commission will be held at 7:00 pm on Monday, April 15, 2019 at the City Chambers Building, 159 E. Maumee Street, Adrian, MI 49221

Chuck Jacobson                                    Robin Connor
Mayor                                                    City Clerk

Case 2:20-cv-12559-MAG-RSW   ECF No. 1, PageID.380   Filed 09/18/20   Page 380 of 409



EXHIBIT 48

EXHIBIT 4

**MINUTES
ADRIAN CITY COMMISSION
April 1, 2019 @ 7:00PM**

The City Commission met for a pre-meeting study session at 6:30 pm at the City Chambers Building. The following items were discussed:

- Budget information
- Marihuana Issues

Meeting adjourned at 6:50 pm.

**The Commission began the regularly scheduled meeting at 7:00pm.**

Official proceedings of the April 1, 2019 regular meeting of the City Commission, Adrian, Michigan.

The regular meeting was opened with a moment of silence followed by the Pledge of Allegiance.

**PRESENT:** Mayor Jacobson &, Commissioners Valentine, Dudas and Strayer.
**ABSENT:** Commissioners Heldt, Roberts and Watson.

**On motion by Commissioner Strayer, seconded by Commissioner Valentine, the motion to excuse Commissioners Heldt, Roberts and Watson, was approved by a 3-1 vote.**

**On motion by Commissioner Valentine, seconded by Commissioner Dudas, the minutes of the April 1, 2019 Regular Meeting of the Adrian City Commission, were approved by a 4-0 vote.**

Mayor Jacobson in the Chair

**PRESENTATION OF ACCOUNTS**

| | |
|---|---|
| Utility Department Vouchers | |
| Vouchers #4717 through #4720 | $53,347.95 |
| General Fund | |
| Vouchers #23980 through #23991 | $57,285.40 |
| Clearing Account Vouchers | |
| amounting to | $232,019.08 |
| | |
| TOTAL EXPENDITURES | $342,652.43 |

**On motion by Commissioner Dudas, seconded by Commissioner Valentine, the Vouchers were approved by a 4-0 vote.**

**REGULAR AGENDA**

**R19-034 - FINANCE DEPARTMENT – Special Assessment Roll – Delinquent Invoices**

## RESOLUTION

WHEREAS, the City Administrator has directed the City Treasurer, pursuant to Sections 70-12 and 74-169 of the Adrian City Code, to prepare a Special Assessment Roll to cover all delinquent charges for rental registration and inspection fees, parking assessments, improvements or abatements of public hazards on single lots in the City of Adrian, and other miscellaneous invoices; and

WHEREAS, such assessment roll shall be reported to the City Commission in the same manner as other rolls and, likewise, includes a ten (10%) percent penalty for late payment; and

WHEREAS, the City Administrator and City Treasurer have forwarded said roll to the City Commission with recommendation that it be approved; and

WHEREAS Notice of Hearing on the confirmation of the roll shall be given not less than ten (10) days before the hearing by first class mail, addressed to the owner or party in interest of the land to be assessed as shown by the last local tax assessment records in the office of the City Assessor; and

WHEREAS, upon confirmation of the aforementioned Special Assessment Roll, the special assessments shall constitute a lien upon the premises and a charge against the owner thereof until paid.

NOW, THEREFORE, BE IT RESOLVED that the Adrian City Commission, by this resolution, hereby approves the Special Assessment Roll for delinquent rental registration and inspection fees, parking assessments, improvements or abatements of public hazards on single lots in the City of Adrian, and other miscellaneous invoices, including a ten (10%) percent penalty for late payment, and that said Special Assessment Roll be filed forthwith in the office of the City Clerk for public examination.

BE IT, FURTHER, RESOLVED that the City Commission shall meet in the Commission Chambers, 159 E. Maumee Street, Adrian, MI, at 7:00 p.m. on Monday, April 15, 2019, for the purpose of reviewing said roll and hearing and considering any objections thereto.

BE IT, FURTHER, RESOLVED that the City Clerk is hereby directed to give notice that the said Special Assessment Roll is on file for public examination and to give notice of said meeting and hearing set forth above pursuant to the provisions of Title I, Chapter 8, Section 70-13 of the Adrian City Code.

**On motion by Commissioner Dudas, seconded by Commissioner Strayer, the Resolution was approved by a 4-0 vote.**

**R19-035 - FINANCE DEPARTMENT – Special Assessment Roll – Delinquent Water and Sewer Charges**

## RESOLUTION

WHEREAS, Section 94-247 of the Adrian City Code specifies that charges for water service and sanitary sewer service under the provisions of Public Act No. 94 of 1933 (MCL 141,101 et seq.), are made a lien on the premises to which furnished; and

WHEREAS, the aforementioned Section further requires the City Administrator to annually present, at the first Commission meeting in April a report of all delinquent charges that have remained unpaid for a period of six months; and

WHEREAS, the City Administrator and Utilities Director have forwarded said report to the City Commission for unpaid amounts totaling $17,361.67 dating to November 1, 2018, with recommendation that it be approved; and

WHEREAS, Section 70-12 of the Adrian City Code, Single Lot Assessment requires that Notice of Hearing on the confirmation of the roll shall be given not less than ten (10) days before the hearing by first class mail, addressed to the owner or party in interest of the land to be assessed as shown by the last local tax assessment records in the office of the City Assessor; and

WHEREAS, upon confirmation of the aforementioned Special Assessment Roll of delinquent water and sewer charges, the special assessments shall constitute a lien upon the premises and a charge against the owner thereof until paid.

NOW, THEREFORE, BE IT RESOLVED that the Adrian City Commission, by this resolution, hereby approves the Special Assessment Roll for delinquent water and sewer charges in the amount of $17,361.67 including a ten (10%) percent penalty for late payment, and that said Special Assessment Roll be filed forthwith in the office of the City Clerk for public examination.

BE IT, FURTHER RESOLVED that the City Commission shall meet in the Commission Chambers 159 E. Maumee Street, Adrian MI, at 7:00 p.m. on Monday, April 15, 2019, for the purpose of reviewing said roll and hearing and considering any objections thereto.

BE IT FURTHER, RESOLVED that the City Clerk is hereby directed to give notice that the said Special Assessment Roll is on file for public examination and to give notice of said meeting and hearing set forth above pursuant to the provisions of Title I, Chapter 8, Section 70-13 of the Adrian City Code.

**On motion by Commissioner Dudas, seconded by Commissioner Valentine, the Resolution was approved by a 4-0 vote.**

### R19-036 - PARKS & ENGINEERING SERVICES – Supplemental Mowing at Heritage Park

### RESOLUTION

WHEREAS, on behalf of the Parks & Engineering Services Department, the City of Adrian Purchasing Office has solicited and received bids on Thursday, March 21, 2019, for a contractor to complete supplemental mowing of Heritage Park.  (The mowable area is approximately 94 acres, comprised of common areas, softball, soccer, and other sporting fields and a disc golf course.  All chain link fence lines are included for trimming); and

WHEREAS, in response to a Request-for-Proposal, a total of nine (9) bids were received. A detailed bid tabulation is listed below; and

|  | Labor, equipment, materials-Sports Fields Mowed Area (per acre) |
|---|---|
| Adams Property Services<br>Adrian, MI | $20.00 |
| Your Design or Mine Landscaping & Snow Removal<br>Detroit, MI | $21.00 |
| M&M Lawn Care & Landscaping<br>Adrian, MI | $26.80 |
| Comar Outdoor Services<br>Adrian, MI | $32.00 |
| Cut Right Lawn Care, LLC<br>Adrian, MI | $23.00 |
| Stratton's Landscape<br>Adrian, MI | $28.00 |
| VanErt's LLC<br>Adrian, MI | $54.00 |

| Allen's Quickly Lawn Service<br>Britton, MI | $20.00 |
| Elysian Landscape & Flatwork LLC<br>Jackson, MI | $39.50 |

WHEREAS, the Project Manager of Parks & Engineering Services and the City Administrator recommend acceptance of the low bid from Adams Property Services, Adrian, MI; and

WHEREAS, the Finance Director indicates that there are sufficient funds to support a contract, in the following accounts:

101-698.00-801.000          Heritage Park Contract Services

NOW, THEREFORE, BE IT RESOLVED, that the Adrian City Commission, by this resolution, hereby authorizes the acceptance of the bid from Adams Property Services, Adrian, MI, for engagement in the City's Standard Professional Services Contract.

**On motion by Commissioner Dudas, seconded by Commissioner Strayer, the Resolution was approved by a 4-0 vote.**

**MOTION TO ADJOURN 7:08 pm**

**On motion by Commissioner Dudas, seconded by Commissioner Strayer, the motion to Adjourn was approved by an all yes vote.**

The next regular meeting of the Adrian City Commission will be held at 7:00 pm on Monday, April 15, 2019 at the City Chambers Building, 159 E. Maumee Street, Adrian, MI 49221

---

Chuck Jacobson                          Robin Connor
Mayor                                     City Clerk

# STATE OF MICHIGAN

# COURT OF CLAIMS

GREEN GENIE, INC. et al,

    Plaintiffs,

v

STATE OF MICHIGAN et al.,

    Defendants.

                         /

## OPINION AND ORDER

Case Nos.  19-000045-MB; 19-000046-MZ; 19-000047-MB; 19-000049-MB; 19-000050-MB; 19-000051-MZ; 19-000052-MZ; 19-000053-MB

Hon. Stephen L. Borrello

Pending before the Court in these actions for declaratory and injunctive relief are defendants' motions for summary disposition. For the reasons that follow, defendants' motions are DENIED in those cases where plaintiffs have satisfied MCL 600.6431(1)'s requirements, but are GRANTED in Docket Nos. 19-000045-MB, 19-000050-MB, 19-000052-MZ, and 19-000053-MB, for the reason that plaintiffs in those cases failed to comply strictly with the notice-and-verification requirements set forth in MCL 600.6431(1). And as to cases where this procedural flaw does not exist, Docket Nos. 19-000046-MZ, 19-000047-MB, 19-000049-MB, and 19-000051-MZ, the Court GRANTS judgment in favor of plaintiffs, the non-moving parties, pursuant to MCR 2.116(I)(2). Finally, the Court DENIES as moot the motion for immediate consideration and the motion for leave to file an amicus brief in Docket No. 19-000052-MZ.

EXHIBIT 49

-1-

## I. BACKGROUND

The circumstances leading to the filing of this lawsuit are lengthy, and an extensive recitation of the facts would be of no great benefit to any of the parties involved; for this reason, the Court will offer only a brief summary. Following the 2016 passage of the Medical Marijuana Facilities Licensing Act (MMFLA), facilities were permitted to apply for licensing as provisioning centers, growers, and processors. For reasons that are neither pertinent nor readily apparent, the licensing process and regulatory bodies were ill-equipped to timely review and rule on licensing applications. As a result, entities which met certain requirements were permitted to operate temporarily while their respective applications were being reviewed.

This temporary operating status led to the creation of various iterations of emergency rules by the Department of Licensing and Regulatory Affairs (LARA) which, among other matters, provided a regularly changing date after which the unlicensed facilities would have to cease operations. One of the problems this created was that many license applicants (hereinafter "applicant-plaintiffs") had yet to receive a ruling on their applications by the various dates chosen in the emergency rules. For reasons unknown, LARA exacerbated this problem, in fact doing so several times, leading to looming shut-down dates and concocted threats of forfeiture actions and/or criminal prosecution, all of which prompted various entities to seek relief in this Court. As a result, the Court issued, on more than one occasion, injunctive relief to those entities seeking licensure and on whose applications LARA had not yet ruled or otherwise issued final decisions.

LARA abandoned the emergency rules in late 2018. However, in January 2019, the Medical Marijuana Licensing Board took an approach similar to the former emergency rules and issued a resolution stating that it would not take disciplinary action against applicant-plaintiffs

-2-

who were temporarily operating until March 31, 2019, provided certain requirements were met. At this point, it had been well over a year since provisional operations began, and LARA still had not completed its review of many license applications.

The new deadline—March 31, 2019—was set without any apparent regard for whether LARA would rule on all of the pending applications by its passage. And, despite the passage of additional time, not all of the applications received a decision by the looming deadline. Moreover, for the applicant-plaintiffs who were denied a license, the March 31, 2019 deadline was set to expire before the process for appealing a license denial had run its course. Stated otherwise, the expiration of the deadline would have forced entities which had yet to receive rulings on their applications, as well as any appealing entities, to immediately cease operations, or face possible criminal and civil forfeiture actions. It thus became clear that the looming deadline was decided and announced, notwithstanding the ongoing application process or ongoing appellate process. Plaintiff Top Dollar Holdings, LLC, was one of those entities that faced being shut down before the appellate process had even begun. According to ¶ 49 of its complaint, Top Dollar's license application was denied on or about March 21, 2019, "with little discussion and no evidence" cited in support of the denial.

At or around this same time, the Marijuana Regulatory Agency (MRA) was created by way of Executive Order 2019-07. Effective April 30, 2019, the executive order transferred all of the "authorities, powers, duties, functions, and responsibilities" of the Medical Marijuana Licensing Board to the newly created MRA. Section 5(j) of Executive Order 2019-07 specified that the order was: "not intended to abate a proceeding commenced by, against, or before an officer or entity affected by this order. A proceeding may be maintained by, against, or before

-3-

the successor of any officer or entity affected by this order." Thus, the order preserves any ongoing proceedings involving the soon-to-be-defunct Licensing Board.

## II. DISCUSSION AS TO ENTITIES SEEKING LICENSURE

Applicant-plaintiffs in these consolidated cases have asked the Court for declaratory and injunctive relief. Injunctive relief "represents an extraordinary and drastic use of judicial power that should be employed sparingly and only with full conviction of its urgent necessity." *Davis v Detroit Fin Review Team*, 296 Mich App 568, 613; 821 NW2d 896 (2012) (citation and quotation marks omitted). "Stated another way, injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Id.* (citation and quotation marks omitted).

The Court begins its analysis by again stating that use of its injunctive power is reserved only for the rarest of cases. And, while the underlying subject-matter of these cases gives them curb appeal, the grounds on which relief is warranted—process and procedure—are significantly less stirring. To that end, the Court agrees with the pertinent plaintiffs that the state's action in this case offends due process and the Administrative Procedures Act (APA) and entitles applicant-plaintiffs to the requested relief. Turning first to due process, "The Due Process Clause of the Fourteenth Amendment provides that '[no] State [shall] deprive any person of life, liberty, or property, without due process of law[.]' " *In re Forfeiture of 2000 GMC Denali & Contents*, 316 Mich App 562, 573; 892 NW2d 388 (2016). "[T]he touchstone of due process, generally, is protection of the individual against arbitrary action of government[.]" *Bonner v City of Brighton*, 495 Mich 209, 224; 848 NW2d 380 (2014) (citation and quotation marks omitted). The substantive component of due process "protects against the arbitrary exercise of governmental power, whereas the procedural component is fittingly aimed at ensuring

-4-

constitutionally sufficient procedures for the protection of life, liberty, and property interests." *Id.* (citation and quotation marks omitted). In order for the procedural protections of the due process clause to apply, a litigant must have a property or liberty interest. *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 130-131; 715 NW2d 398 (2006). The source of a property interest is typically state law. *Id.*, citing *Bd of Regents of State Colleges v Roth*, 408 US 564, 576-577; 92 S Ct 2701; 33 L Ed 2d 548 (1972).

Defendants first argue that plaintiffs' due process claims fail because they contend that plaintiffs have no property rights at stake, such that they cannot even petition the Court for relief. In support, they cite MCL 333.27409, which declares that a "state operating license" issued under the MMFLA "is a revocable privilege granted by this state and is not a property right." And, according to defendants, if a license cannot create a property right, the provisional interest held by applicant-plaintiffs certainly creates no property rights. The Court rejects that position, as well as the notion that any license granted under the MMFLA does not create a property right. The MMFLA cannot, by creating a license with all the traditional trappings of a property right, arbitrarily ignore those characteristics and simply declare that no property right exists. A license granted by the state to operate or to take some action is, by all accounts, a benefit. See, e.g., *Bundo v Walled Lake*, 395 Mich 679, 693; 238 NW2d 154 (1976). As explained by the United States Supreme Court in *Perry v Sinderman*, 408 US 593, 601; 92 S Ct 2694; 33 L Ed 2d 570 (1972), "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support [the plaintiff's] claim of entitlement to the benefit and that [the plaintiff] may invoke at a hearing." In other words, it is whether the benefit is protected by existing rules or understandings that is dispositive in determining whether a property right exists, not whether or how the benefit has been labeled. *Id.*

In the matters presented to this Court, a license under the MMFLA is plainly a property right. Indeed, licenses under the act are surrounded by all the traditional trappings of property rights, including notice and hearings—albeit post-deprivation or post-suspension hearings—and appellate procedures. See, e.g., MCL 333.27407(1)-(5). See also *Bundo*, 395 Mich App at 695-696 (discussing liquor licenses and property rights created thereby). In addition, as will be discussed in more detail below, the provisional licenses under which the applicant-plaintiffs operated in these cases were sufficient to create property rights as well.

With that backdrop, the Court concludes that the state's actions offended due process for the reason that they were arbitrary and capricious, they continue to be arbitrary and capricious, and because the state's actions infringed on the pertinent plaintiffs' property interests without affording plaintiff's procedural due process. At the outset, the Court notes that LARA's entire method of handling license applications has been "apt to sudden change, freakish, or whimsical[.]"[1] See *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 141; 807 NW2d 866 (2011) (describing the arbitrary and capricious standard) (citation and quotation marks omitted). In reliance on permission and approval from LARA, the pertinent plaintiffs began operating their respective facilities pending a final decision on licensure. Plaintiffs did so with the understanding that their applications might not be granted. In fact, had the respective applications been denied and had plaintiffs had a full and fair opportunity to

---

[1] During oral argument the state asserted its main goal in the numerous announcements of looming deadlines was to further its regulatory goal of licensing all providers of medical marijuana. However, the state failed to provide any rationale for how the continuous setting of looming deadlines promotes a more regulated market. And to the extent that the state might continue with this variation on a theme, such deadlines, enacted under the misleading guise of proper regulation, will likely continue to be constitutionally infirm as well.

appeal those denials, this might very well be a completely different case with a completely different outcome. However, LARA has repeatedly attempted to revoke operating status—on which applicant-plaintiffs were induced by defendants to rely—before ruling on the merits of many of the applications. The shut-down date has been ever-changing, with the only constant being that the shut-down date moves without regard for whether all of the applications have received a substantive and final decision on the merits. These bait-and-switch announcements effectuated by LARA were entirely arbitrary and capricious.

As for procedural due process, the Court concludes that applicant-plaintiffs in this case had a provisional license, as the term "license" is understood under the APA. Indeed, MCL 24.205(a) defines a "license" as "the whole or part of an agency permit, certificate, *approval, registration, charter, or similar form of permission required* by law." During the pendency of the application process, plaintiffs plainly had approval and permission from LARA to operate their respective facilities. The existence of this provisional license is significant, because it brings into play MCL 24.291(2) of the APA, which states that:

> When a licensee makes timely and sufficient application for renewal of a license or *a new license with reference to activity of a continuing nature, the existing license does not expire until a decision on the application is finally made by the agency, and if the application is denied or the terms of the new license are limited, until the last day for applying for judicial review of the agency order* or a later date fixed by order of the reviewing court. [Emphasis added.]

Here, the provisionally licensed plaintiffs applied for "new" licenses with reference to an activity of a continuing nature. As a result, the APA forbids LARA from revoking these provisional

-7-

licenses "until a decision on the application is finally made by the agency[.]"[2] Hence, LARA cannot impose an arbitrary deadline and force applicant-plaintiffs to cease operations regardless of whether it has made a decision on their applications. The imposition of the March 31, 2019 deadline by way of the Board resolution is thus contrary to MCL 24.291(2).

As for the "final agency" decision contemplated by MCL 24.291(2) in this case, the Court turns its attention to the MMFLA. The MMFLA states at MCL 333.27407(2) that the soon-to-be-replaced Medical Marijuana Licensing Board "shall comply with the administrative procedures act" (APA) "when denying, revoking, suspending, or restricting a license or imposing a fine." In addition, MCL 333.27407(3) states that, if the Board denies a license, it "shall, upon request, provide a public investigative hearing at which the applicant is given the opportunity to present testimony and evidence to establish its suitability for a license."[3] As a result, the APA mandates that applicant-plaintiffs in these cases must be permitted to continue operating and that their provisional licenses do not expire until: (1) in the case of an application that is granted, the day of the agency's final determination; and (2) in the case of an application that is denied, "until the last day for applying for judicial review of the agency order[.]" MCL 24.291(2). The

---

[2] The Court's ruling should not be understood as prohibiting LARA from taking action against these provisionally licensed entities should LARA determine the entities are in violation of the law in any other respects. However, it appears there are no such allegations with respect to applicant-plaintiffs at this time.

[3] The allegations in plaintiff Top Dollar's complaint include that LARA denied its application without citing any facts or evidence and with little discussion. A review of the complaints filed by applicant-plaintiffs reveals that these allegations sound a common refrain. If true, such allegations sound in the nature of an arbitrary and capricious denial, and could very well be grounds for reversal of the initial licensure denial and/or may be indicative of the notion that the applicant has satisfied its obligation of establishing eligibility for licensure under the act. See Mich Admin Code, R 333.293(8) (discussing the burden an applicant for licensure must meet under the MMFLA). Indeed, the lack of rationale provided for the application denial would appear to go directly to the heart of the strength (or lack thereof) of the case against licensure.

-8-

MMFLA does not expressly provide for judicial review; instead, it points to the APA. "The APA's procedure for judicial review of an agency's decision states that 'a petition for review shall be filed in the circuit court for the county where petitioner resides or has his or her principal place of business in this state, or in the circuit court for Ingham County.' " *Teddy 23, LLC v Mich Film Office*, 313 Mich App 557, 567; 884 NW2d 799 (2015), quoting MCL 24.303. The time for seeking judicial review in circuit court under the APA is 60 days "after the date of mailing notice of the final decision or order of the agency[.]" MCL 24.304(1).

In light of the above, LARA is prohibited from arbitrarily revoking the provisional licenses held by applicant-plaintiffs until it issues a decision and, if the application is denied, until 60 days after the date of mailing notice of the final agency decision. See MCL 24.291(2). To this end, defendants are enjoined and restrained from enforcing the March 31, 2019 shut-down date with respect to all applicants—whether named as plaintiffs in these actions or otherwise—until 60 days post-issuance of the final licensing decision denying licensure.[4] The injunctive relief granted by this Court will remain in effect for 60 days after the date of mailing notice to the respective applicants of any final agency decision denying licensure.

For the avoidance of doubt, this Court's order only restrains and enjoins defendants from enforcing the March 31, 2019 shut-down date set forth in the January 2019 Board resolution. All other matters covered in the January resolution, such as those pertaining to testing of products, are not the subject of this Court's grant of injunctive relief, for the reason that there have been no

---

[4] If that time period has already expired for applicants and seeking judicial review in circuit court is no longer an option, then those applicants are not entitled to any relief under this Court's opinion and order.

meritorious issues raised with respect to the same. Instead, those matters remain subject to LARA's decision-making and rule-making authority, with which this Court will not interfere.

### III. ANALYSIS AS TO LICENSED PLAINTIFF, THE CURING CORNER LLC

As for matters within the province of LARA and which there have been no meritorious grounds raised which would permit this Court to interfere with LARA's authority, one of the plaintiffs in these consolidated cases, The Curing Corner, LLC (Docket No. 19-000052-MZ), asks this Court for declaratory relief of a different nature. Chiefly, plaintiff Curing Corner asks this Court to essentially require LARA to extend previous iterations of now-expired emergency rules. There are numerous reasons why the Court declines to grant the relief requested by plaintiff Curing Corner. Firstly, as defendants correctly note, plaintiff Curing Corner failed to comply with the unambiguous condition precedent set forth in MCL 600.6431(1) for commencing its action against the state. The complaint was neither signed nor verified, and plaintiff's subsequent attempts to cure that deficiency are ineffective. *Progress Mich v Attorney General*, 324 Mich App 659, 673-674; 922 NW2d 654 (2018). As a result, the complaint filed by plaintiff Curing Corner must be dismissed and summary disposition must issue in defendants' favor pursuant to MCR 2.116(C)(7). See *id.*[5] Secondly, the Court is without authority to grant

---

[5] This same procedural flaw exits in Docket Nos. 19-000045-MB, 19-000050-MB, and 19-000053-MB, as outlined in defendants' briefing in those cases. And, because plaintiffs in those cases failed to follow the unambiguous notice-and-verification requirements contained in the Court of Claims Act, the Court is bound to dismiss those cases as well. *Progress Mich*, 324 Mich App at 673-674. Nevertheless, the relief granted in this case will work to the benefit of the plaintiffs in those dismissed cases, notwithstanding their lack of compliance with the necessary conditions precedent for suing the state in this Court. Lastly, as it concerns compliance with § 6431, the Court disagrees with defendants' assertions that the respective plaintiffs in Docket Nos. 19-000047-MB, 19-000049-MB, and 19-000051-MZ failed to strictly comply with the statute. Rather—as to Docket Nos. 19-000049-MB and 19-000051-MZ—the Court concludes that the verification pages attached to the respective complaints, which bear signatures by

the relief plaintiff Curing Corner requests and it will not dictate to LARA procedures for the sale of medical marijuana. This Court is not the appropriate forum for plaintiff Curing Corner to address those concerns. Thirdly, plaintiff Curing Corner has failed to present any evidence or expert testimony to substantiate the alleged harm(s) necessary to state a prima facie case for injunctive relief. Hence, even if plaintiff had complied with the requirements of MCL 600.6431(1), the Court would decline to grant the relief requested by plaintiff Curing Corner.

---

individuals who aver to be members capable of signing the verification in representative capacities and who aver that the allegations in the complaint are true to the best of their knowledge and belief, satisfy § 6431. And as it concerns Docket No. 19-000047-MB, it appears the states' briefing has overlooked the signed and verified notice of intent filed by the plaintiff in that case.

-11-

## IV. CONCLUSIONS

IT IS HEREBY ORDERED that defendants' motions for summary disposition are GRANTED in Docket Nos. Docket Nos. 19-000045-MB; 19-000050-MB; 19-000052-MZ; and 19-000053-MZ, with the dismissals in Docket Nos. 19-000045-MB; 19-000050-MB; and 19-000053 being solely occasioned on the failure to comply with MCL 600.6431. Nevertheless, the injunctive relief granted in the following paragraph of this order will apply to those plaintiffs, and to all similarly situated plaintiffs in this state.

IT IS HEREBY FURTHER ORDERED that judgment is GRANTED to plaintiffs, the non-moving parties, in the cases where the failure to comply with MCL 600.6431 does not exist, Docket Nos. 19-000046-MZ, 19-000047-MB, 19-000049-MB, and 19-000051-MZ, for the reason that defendants' actions offend due process and violate the APA. The provisional licenses granted to applicant-plaintiffs remain in effect until a final decision is made on the applications, and if an application is denied, for 60 days after the denial in accordance with MCL 24.291(2). Defendants are hereby ENJOINED and RESTRAINED from enforcing any shut-down date before ruling on the applications and before the time period for seeking judicial review in circuit court expires.

IT IS HEREBY FURTHER ORDERED that the motion for immediate consideration and the motion to file an amicus brief in Docket No. 19-000052-MZ are DENIED as moot.

This order resolves the last pending claim and closes these consolidated cases.

Dated: April 30, 2019

Stephen L. Borrello, Judge
Court of Claims

-12-

Approved, SCAO

| STATE OF MICHIGAN | | ORDER OF | CASE NO. |
|---|---|---|---|
| 39th | JUDICIAL DISTRICT | DISQUALIFICATION/REASSIGNMENT | |
| | JUDICIAL CIRCUIT | | 20-6567-NZ |
| LENAWEE | COUNTY PROBATE | | |

| Court address | Court telephone no. |
|---|---|
| 425 N. Main Street, Adrian, MI 49221 | 517-264-4597 |

| Plaintiff name(s) and address(es) | | Defendant name(s) and address(es) |
|---|---|---|
| NICOLE HERNANDEZ and MEDICINAL SOLUTIONS COMPASSIONATE CARE CORP DBA M.S.C.3 | v | CITY OF ADRIAN, CITY ATTORNEY TAMARIS HENAGAN, FORMER CITY ATTORNEY SARAH OSBURN, ET AL |

| Plaintiff's attorney, bar no., address, and telephone no. | Defendant's attorney, bar no., address, and telephone no. |
|---|---|
| Thomas MJ Lavigne (P58395) Julia A. Gilbert (P74262) 2930 E. Jefferson Avenue Detroit, MI 48207 313-446-2235 | FILED 39TH CIRCUIT COURT UG – 3 2020 LENAWEE COUNTY CLERK ADRIAN, MICHIGAN |

In the matter of _____

## IT IS ORDERED:

I, Hon. MICHAEL R. OLSAVER   P60444   , ☐ on motion of _____ ,
                              Bar no.    ☑ on my own motion,

am disqualified under MCR 2.003 from hearing this case and I am requesting assignment of another judge for the following reason:

☐ 1. I am biased or prejudiced for or against a party or attorney.

☐ 2. I have, based on objective and reasonable perceptions, a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009).

☒ 3. I believe, based on objective and reasonable perceptions, my continued assignment would create an appearance of impropriety.

☐ 4. I have personal knowledge of disputed evidentiary facts concerning the proceeding.

☐ 5. I have been consulted or employed as an attorney in the matter in controversy.

☐ 6. I was a partner of a party, attorney for a party, or a member of a law firm representing a party within the preceding two years.

☐ 7. I know that I, individually or as a fiduciary, or my spouse, parent, or child wherever residing, or any other member of my family residing in my household, have more than a de minimis economic interest in the subject matter in controversy that could be substantially impacted by the proceeding.

☐ 8. I or my spouse, or a person within the third degree of relationship to either of us, or the spouse of such a person: (i) is a party to the proceeding, or an officer, director, or trustee of a party; (ii) is acting as a lawyer in the proceeding; (iii) is known by me to have a more than de minimis interest that could be substantially affected by the proceeding; or (iv) is to my knowledge likely to be a material witness in the proceeding.

☐ 9. Other: (specify)

7-21-2020
Date

Judge

P60444
Bar no.

MC 264 (3/12) **ORDER OF DISQUALIFICATION/REASSIGNMENT**                    MCR 2.003, MCR 8.111(C)

---

## ADDITIONAL DISQUALIFICATIONS

NOTE:  If there are not enough signature slots, attach additional sheets.

The undersigned judge(s) is/are also disqualified and refer by number to the reason printed on the front of this form.
**NOTE:  IF REASON 9 IS ENTERED, THE COMMENT SECTION MUST BE COMPLETED.**

| REASON 1-9 | DATE | SIGNATURE | COMMENT |
|---|---|---|---|
| 3 | 7/21/20 | *Ann Marie Angalore* | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

---

## REQUEST FOR REFERRAL TO SCAO

All of the judges of this court have disqualified themselves and have signed this order, indicating their reason for disqualification pursuant to MCR 2.003.

The designated Visiting Judge Clerk shall submit a copy of this order, **ALONG WITH THE REQUEST FOR ASSIGNMENT**, to the appropriate State Court Administrative Office to have another judge assigned to hear this case pursuant to MCR 2.003(D)(4).

_____          _____          _____
Date                                                         Chief Judge                                                 Bar no.

## INTERNAL REASSIGNMENT REQUEST

Judge__Catherine M. Sala__ P71752_____ ,...s been chosen by lot or local administrative order from the judges not
                                Bar no.

disqualified in this case. I request that this case be reassigned to this judge.

**JUL 3 1 2020**
_____          *Shelly Everitt Deputy*
Date                                        Court Administrator or Clerk of the Court

Reassignment approved as requested.

*X-3-20*
_____          *Ann Marie Slagter*                P63267
Date                                        Chief Judge                                                       Bar no.

STATE OF MICHIGAN
IN THE 39ᵀᴴ CIRCUIT COURT FOR THE COUNTY OF LENAWEE

NICOLE HERNANDEZ and
MEDICINAL SOLUTIONS COMPASSIONATE
CARE CORP., DBA M.S.C.3,
                    Plaintiff(s),

vs

CITY OF ADRIAN,
CITY ATTORNEY TAMARIS HENAGAN,
FORMER CITY ATTORNEY SARAH OSBURN,
COMMISSIONER ALLEN HELDT,
COMMISSIONER LAD STRAYER,
COMMISSIONER BRAD WATSON,
COMMISSIONER MARY ROBERTS,
FORMER COMMISSIONER THOMAS FAULHABER,
FORMER COMMISSIONER JOHN DUDAS,
FORMER COMMISSIONER KIRK VALENTINE,
CLERK ROBIN CONNOR,
FORMER CLERK PAT BAKER,
FORMER INTERIM ADMINISTRATOR RICHARD HABERMAN,
FORMER ADMINISTRATOR NATHAN BURD,
FORMER MAYOR CHUCK JACOBSON,
                    Defendant(s).

_____/

**NOTICE OF PRE-TRIAL**
(1ˢᵗ Pre-Trial)

**Case No. 20-6567-NZ**

FILED
39TH CIRCUIT COURT

AUG 1 4 2020

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

This case is hereby set for a pre-trial conference before

___ **THE HONORABLE MICHAEL R. OLSAVER, Circuit Court I**
___ **THE HONORABLE ANNA MARIE ANZALONE, Circuit Court II**
X **THE HONORABLE CATHERINE A. SALA, Probate Court**

on _September 24, 2020_ at _1:30_ A.M./P.M.

- All attorneys in charge of the case are to be present in person.

- All parties must be present in person or represented by counsel.

- A pre-trial statement on the attached form <u>must</u> be filed with the Clerk at least 7 days prior to the pre-trial.

- The purposes of the pre-trial include presentation of proofs, entry of judgment, and/or:
  - Setting calendar for future action in this case through trial, including:
    - Discovery cut-off
    - Date of exchange of witnesses and exhibits (witnesses and exhibits not disclosed on the date scheduled may not be used at trial absent order of the Court on good cause shown)
    - Case evaluation date, if to be case evaluated

- • Next pre-trial date
- • Date for filing and hearing motions.
- • Setting trial date
- • Making any stipulations that may assist in preparation of case.
- Other matters may be raised during the conference.

**MICHAEL R. OLSAVER**
**ANNA MARIE ANZALONE**
**Circuit Judge**
**CATHERINE A. SALA**
**Probate Judge**

cc:   Attorney for Plaintiff(s), for service on Defendant(s)

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

_____
Plaintiff(s)

vs                                                                        Case No.

_____
Defendant(s)/

PRE-TRIAL STATEMENT OF
_____

1. BRIEF STATEMENT OF THEORY OF CASE:

2. REQUESTED ADMISSIONS OF FACT:

3. REQUESTED STIPULATIONS:

4. TIME REQUESTED TO COMPLETE DISCOVERY:                    _____ Days

5. ESTIMATED TIME REQUIRED FOR TRIAL:                           _____ Days

                    _____ Jury              _____ Non-Jury

6. SETTLEMENT POSSIBILITY: _____

7. ALL CLAIMS ARISING OUT OF THE TRANSACTION OR OCCURRENCE THAT IS THE SUBJECT MATTER OF THE
   ACTION HAVE BEEN JOINED AS REQUIRED BY MCR 2.203:          _____ Yes          _____ No

8. OTHER MATTERS:

Dated: _____          _____
                                            Attorney for
                                            Business Address:

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

NICOLE HERNANDEZ and MEDICINAL
SOLUTIONS COMPASSIONATE CARE
CORP DBA M.S.C.3,

          Plaintiff,

vs.

                                    File No. 20-6567-NZ

CITY OF ADRIAN, CITY ATTORNEY TAMARIS
HENAGAN, FORMER CITY ATTORNEY SARAH
OSBURN, COMMISIONER ALLEN HELDT,
COMMISSIONER LAD STRAYER, COMMISSIONER
BRAD WATSON, COMMISSIONER MARY ROBERTS,
FORMER COMMISSIONER THOMAS FAULHABER,
FORMER COMMISSIONER JOHN DUDAS, FORMER
COMISSIONER KIRK VALENTINE, CLERK ROBIN
CONNOR, FORMER CLERK PAT BAKER, FORMER
INTERIM ADMINISTRATOR RICHARD HABERMAN,
FORMER ADMINISTRATOR NATHAN BURD,
FORMER MAYOR CHUCK JACOBSON,

          Defendants.

_____/

28TH CIRCUIT COURT

AUG 14 2020

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

## ORDER

At a session of said Court held at the Courthouse in the City of
Adrian, County of Lenawee, and State of Michigan
on this 13th day of August, 2020.

PRESENT:    HONORABLE CATHERINE A. SALA, Circuit Judge

The Court having reviewed Plaintiffs' Ex Parte Motion for Temporary Restraining Order, Show Cause Order, and Preliminary Injunction, and the Court being fully advised in the premises;

The Court finds that, after careful consideration of the motion, facts will be best determined after a hearing wherein a record of the proceedings can be made and preserved accordingly, and Defendants have been afforded an opportunity to respond. No irreparable harm will come to either party by this delay.

1

A hearing on Plaintiff's Motion is set for September 24, 2020 at 1:30PM. Defendants shall file a response within 14 days of the entry of this Order. No reply shall be permitted unless further ordered pursuant to MCR 2.119(2)(b).

**IT IS SO ORDERED.**

HON. CATHERINE A. SALA
CIRCUIT COURT JUDGE
Dated: August 13, 2020

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE HERNANDEZ and MEDICINAL
SOLUTIONS COMPASSIONATE CARE
CORP DBA M.S.C.3,

    Plaintiffs,

vs.

CITY OF ADRIAN, CITY ATTORNEY TAMARIS
HENAGAN, FORMER CITY ATTORNEY SARAH
OSBURN, COMMISSIONER ALLEN HELDT,
COMMISSIONER LAD STRAYER, COMMISSIONER
BRAD WATSON, COMMISSIONER MARY
ROBERTS, FORMER COMMISSIONER THOMAS
FAULHABER, FORMER COMMISSIONER JOHN
DUDAS, FORMER COMMISSIONER KIRK
VALENTINE, CLERK ROBIN CONNOR, FORMER
CLERK PAT BAKER, FORMER INTERIM
ADMINISTRATOR RICHARD HABERMAN,
FORMER ADMINISTRATOR NATHAN BURD,
FORMER MAYOR CHUCK JACOBSON,

    Defendants.

Case No:
Hon:
Magistrate:

**AFFIDAVIT**

| | |
|---|---|
| Thomas M.J. Lavigne (P58395) | John J. Gillooly (P41948) |
| Julia A. Gilbert (P74262) | GARAN LUCOW MILLER, P.C. |
| RIVERTOWN LAW FIRM, PLC | Attorney for Defendants |
| Attorneys for Plaintiff | 1155 Brewery Park Blvd., Suite 200 |
| 2930 E. Jefferson Ave. | Detroit, MI  48207 |
| Detroit, MI  48207 | 313.446.5501 |
| 313.446.2235 | jgillooly@garanlucow.com |
| tom@cannabiscounsel.com | |
| http://www.cannabiscounsel.com | |

# AFFIDAVIT

STATE OF MICHIGAN )

                        ) ss.

COUNTY OF WAYNE )

      JOHN J. GILLOOLY, being first duly sworn, deposes and says, that he is associated with the law firm of GARAN LUCOW MILLER, P.C. and that he has been charged with the defense and representation of, CITY OF ADRIAN, CITY ATTORNEY TAMARIS HENAGAN, FORMER CITY ATTORNEY SARAH OSBURN, COMMISSIONER ALLEN HELDT, COMMISSIONER LAD STRAYER, COMMISSIONER BRAD WATSON, COMMISSIONER MARY ROBERTS, FORMER COMMISSIONER THOMAS FAULHABER, FORMER COMMISSIONER JOHN DUDAS, FORMER COMMISSIONER KIRK VALENTINE, CLERK ROBIN CONNOR, FORMER CLERK PAT BAKER, FORMER INTERIM ADMINISTRATOR RICHARD HABERMAN, FORMER ADMINISTRATOR NATHAN BURD, FORMER MAYOR CHUCK JACOBSON, Defendants, herein; that in such capacity he has prepared the foregoing Notice for Removal of Cause to the United States District Court, Eastern District of Michigan, Southern Division, that the matters set forth in said Notice are true except as to those matters stated herein to be upon his information and belief as to which matters he is informed and believes same to be true.

      Further deponent sayeth not.

                                     /s/John J. Gillooly
                                    JOHN J. GILLOOLY (P41948)

Subscribed and sworn to before me
on the 18th day of September, 2020.

/s/Deborah Brossoit
Deborah Brossoit, Notary Public
County of Wayne, State of Michigan
My Commission Expires: 09/19/2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE HERNANDEZ and MEDICINAL
SOLUTIONS COMPASSIONATE CARE
CORP DBA M.S.C.3,

      Plaintiffs,

vs.

CITY OF ADRIAN, CITY ATTORNEY TAMARIS
HENAGAN, FORMER CITY ATTORNEY SARAH
OSBURN, COMMISSIONER ALLEN HELDT,
COMMISSIONER LAD STRAYER, COMMISSIONER
BRAD WATSON, COMMISSIONER MARY
ROBERTS, FORMER COMMISSIONER THOMAS
FAULHABER, FORMER COMMISSIONER JOHN
DUDAS, FORMER COMMISSIONER KIRK
VALENTINE, CLERK ROBIN CONNOR, FORMER
CLERK PAT BAKER, FORMER INTERIM
ADMINISTRATOR RICHARD HABERMAN,
FORMER ADMINISTRATOR NATHAN BURD,
FORMER MAYOR CHUCK JACOBSON,

      Defendants.

Case No:
Hon:
Magistrate:

**PROOF OF SERVICE**

---

| | |
|---|---|
| Thomas M.J. Lavigne (P58395) | John J. Gillooly (P41948) |
| Julia A. Gilbert (P74262) | GARAN LUCOW MILLER, P.C. |
| RIVERTOWN LAW FIRM, PLC | Attorney for Defendants |
| Attorneys for Plaintiff | 1155 Brewery Park Blvd., Suite 200 |
| 2930 E. Jefferson Ave. | Detroit, MI  48207 |
| Detroit, MI  48207 | 313.446.5501 |
| 313.446.2235 | jgillooly@garanlucow.com |
| tom@cannabiscounsel.com | |
| http://www.cannabiscounsel.com | |

## <u>PROOF OF SERVICE</u>

STATE OF MICHIGAN )
                               ) ss.
COUNTY OF WAYNE )

      DEBORAH BROSSOIT, being first duly sworn, deposes and says that she is employed by GARAN LUCOW MILLER, P.C., and that on the 18th day of September, 2020, she caused to be served a true copy of **NOTICE FOR REMOVAL, AFFIDAVIT, and PROOF OF SERVICE** upon the following:

| | |
|---|---|
| **Thomas M.J. Lavigne, Esq.** | Clerk of the Court |
| **Julia A. Gilbert, Esq.** | Lenawee County Circuit Court |
| Rivertown Law Firm, PLC | 1425 N. Main Street |
| 2930 E. Jefferson Ave. | Adrian, MI 49221 |
| Detroit, MI 48207 | |
| tom@cannabiscounsel.com | |
| http://www.cannabiscounsel.com | |

by electronic correspondence and by enclosing same in a pre-addressed, pre-stamped envelope and depositing same in the United States Mail.

                       /s/Deborah Brossoit

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

NICOLE HERNANDEZ and MEDICINAL
SOLUTIONS COMPASSIONATE CARE
CORP DBA M.S.C.3,,

      Plaintiffs,

Case No: 20-6567-NZ
Judge Catherine A. Sala

CITY OF ADRIAN, CITY ATTORNEY TAMARIS
HENAGAN, FORMER CITY ATTORNEY SARAH
OSBURN, COMMISSIONER ALLEN HELDT,
COMMISSIONER LAD STRAYER, COMMISSIONER
BRAD WATSON, COMMISSIONER MARY
ROBERTS, FORMER COMMISSIONER THOMAS
FAULHABER, FORMER COMMISSIONER JOHN
DUDAS, FORMER COMMISSIONER KIRK
VALENTINE, CLERK ROBIN CONNOR, FORMER
CLERK PAT BAKER, FORMER INTERIM
ADMINISTRATOR RICHARD HABERMAN,
FORMER ADMINISTRATOR NATHAN BURD,
FORMER MAYOR CHUCK JACOBSON,

      Defendants.

---

| | |
|---|---|
| Thomas M.J. Lavigne (P58395)<br>Julia A. Gilbert (P74262)<br>RIVERTOWN LAW FIRM, PLC<br>Attorneys for Plaintiff<br>2930 E. Jefferson Ave.<br>Detroit, MI 48207<br>313.446.2235<br>tom@cannabiscounsel.com<br>http://www.cannabiscounsel.com | John J. Gillooly (P41948)<br>GARAN LUCOW MILLER, P.C.<br>Attorney for Defendants<br>1155 Brewery Park Blvd., Suite 200<br>Detroit, MI 48207<br>313.446.5501<br>jgillooly@garanlucow.com |

---

## NOTICE OF FILING OF REMOVAL

## NOTICE OF FILING OF REMOVAL

**PLEASE TAKE NOTICE** that a Notice of Removal of the entitled action from the Lenawee County Circuit Court, State of Michigan, to the United States District Court for the Eastern District of Michigan, a copy of which is attached hereto, was duly filed September 17, 2020, in the United States District Court for the Eastern District of Michigan.

Respectfully submitted,

John J. Gillooly (P41948)
GARAN LUCOW MILLER, P.C.
Attorney for Defendants
1155 Brewery Park Blvd., Ste 200
Detroit, MI   48207
313.446.5501
jgillooly@garanlucow.com

Dated:  September 18, 2020

#3877700

---

### PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause at their respective addresses as disclosed by the pleadings of record herein on **September 18, 2020**.

By:   **X U.S. Mail**      □ Facsimile
      □ Hand Delivery      □ Overnight Courier
      **X Electronic Mail**      □ E-File / Serve

*I declare under the penalty of perjury that the statement above is true to the best of my information, knowledge and belief.*

Deborah Brossoit